COALITION FOR EQUITY AND EXCELLENCE
IN MARYLAND HIGHER EDUCATION
300 Rockville Pike, Suite 400
Rockville, Maryland 20852

        Plaintiff

Sally C. McMillan

        Plaintiff

Tina M. Vines

        Plaintiff

v.

ROBERT L. EHRLICH, JR.
Governor
State House, 100 State Circle
Annapolis, Maryland 21401-3013

STATE OF MARYLAND

    Serve on:
    Nancy K. Kopp
    Maryland State Treasurer
    Goldstein Treasury Building
    80 Calvert Street, Room 400
    Annapolis, Maryland 21401-3013

MARYLAND HIGHER EDUCATION COMMISSION

    Serve on:
    Kevin M. O'Keefe, Chairman
    839 Bestgate Road
    Annapolis, Maryland 21401-3013

KEVIN M. O'KEEFE
Chairman
Maryland Higher Education Commission

    *
    *
    *
    *
    *
    *
    *
    *
    *
    *
    *

IN THE

CIRCUIT COURT

FOR

BALTIMORE

CITY

Case No.

839 Bestgate Road
Annapolis, Maryland 21401-3013

CALVIN W. BURNETT
Secretary of Higher Education
839 Bestgate Road, Suite 400
Annapolis, MD 21401-3013

      Defendants

## COMPLAINT FOR MANDAMUS, A DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

### Nature of Complaint

1.    This civil action for declaratory, injunctive and mandamus relief is brought on behalf of Plaintiffs seeking to prevent the State of Maryland from continuing to operate its public system of higher education in violation of Maryland and federal laws prohibiting: discrimination based on race in educational opportunities; prohibiting the maintenance of a dual system of education based on race; and mandating the creation of a public higher education system which ensures that the State's historically black institutions (HBCUs) are comparable and competitive with the State's traditionally white institutions (TWIs) in all facets of their operations and programs, enabling all institutions to compete for, be attractive to and provide a quality education, regardless of the race of the students who choose to attend them or the racial composition of a given institution of higher education.

2

## Authority

2.    This civil action for declaratory and relief is authorized by the *Uniform Declaratory Judgment Act*, Md. Code Ann., Cts. & Jud. Proc. § 3-401 et seq.  This civil action for injunctive relief is authorized pursuant to Chapter 500 of the *Maryland Rules*. This civil action for a writ of mandamus is authorized pursuant to Chapter 700 of the *Maryland Rules*.

3.    We also move this Court to order such other and further equitable relief as may be just and proper.

## Jurisdiction and Venue

4.    Jurisdiction is proper in this Court as all defendants regularly carry on business in Baltimore, Maryland and is in accordance with  Courts and Judicial Proceedings Article, Sections 3-401 et seq., and 3-8B-01

5.    Venue is proper in this Court pursuant to *Courts and Judicial Proceedings Article*, Section 6-201(a), as all defendants regularly carry on business in Baltimore, Maryland and the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24.

## Parties

6.    Plaintiff, The Coalition for Equity and Excellence in Maryland Higher Education, Inc. is a nonstock corporation incorporated in Maryland and doing business in Baltimore, Maryland, with a primary focus of the corporation being to ensure equity in Maryland higher education.

7.    Plaintiff,  Sally C. McMillan, is a student at Morgan State University.  She is a junior majoring in Political Science.

8.    Plaintiff, Tina M. Vines, is an student at Morgan State University.  She is a senior majoring in Electrical Engineering.

3

9.   Defendant, Robert L. Ehrlich, Jr. is and was at all times relevant to these proceedings, Governor of the State of Maryland, and is sued in his official capacity.

10.   Defendant Maryland Higher Education Commission (MHEC) is an agency and instrumentality of and created by defendant State of Maryland.

11   Defendant Kevin O'Keefe is and was at all times relevant to these proceedings, the Chairman of the MHEC, and is sued in his official capacity.

12.   Defendant Calvin W. Burnett is and was at all times relevant to these proceedings, the Secretary of the MHEC, and is sued in his official capacity.

## Facts Common to All Counts

13.   The Maryland Constitution mandates that the State provide a thorough and efficient public school system.  Maryland Constitution, Article VIII.

14.   The Maryland Charter for Higher Education is a statutory statement of policy for higher education in Maryland.  Md. Code Ann., Educ. § 10-201.

15.   The Maryland Charter for Higher Education sets forth principles on which higher education in Maryland should be based, to include among others: that the people of the State of Maryland expect quality in all aspects of public higher education (teaching, research, and public service), that public higher education should be accessible to all those who seek and qualify for admission, that public higher education should provide a diversity of quality educational opportunities; that adequate funding by the State of Maryland is critical if public higher education is to achieve its goal, that the people of Maryland are entitled to efficient and effective management of public higher education, and that the people of Maryland are entitled to capable and creative leadership in public higher education.  Md. Code Ann., Educ. § 10-202.

4

16.     The *Maryland Charter for Higher Education* requires the State's funding policies to allocate State resources efficiently while providing incentives for quality and institutional diversity.  Md. Code Ann., Educ. § 10-203.

17.     The *Maryland Charter for Higher Education* requires funding proposals to include base funding in accordance with the role and mission of the institutions and to include special initiative funding for academic programs at historically African American colleges and universities.  Md. Code Ann., Educ. § 10-203.

18.     The *Maryland Charter for Higher Education* requires the Governor and General Assembly to establish broad policy regarding higher education, to delegate implementation of the policy to appropriate boards, commissions, institutions and officials, to provide for the adequate financing of public higher education, and to demand accountability and effective management from public institutions of higher education.  Md. Code Ann., Educ. § 10-206.

19.     The *Maryland Charter for Higher Education* requires the Maryland Higher Education Commission to advise the Governor and General Assembly on statewide higher education policy, to conduct statewide planning for higher education, to coordinate and arbitrate among different segments of higher education in the State; to review, negotiate as necessary, and grant final approval of mission statement for each public institution of higher education and each regional higher education center that requests or receives state finding; to assess the adequacy of operating and capital funding for public higher education and establish operating funding guidelines based on comparison with peer institutions and on other relevant criteria and administer statewide programs of student financial assistance for higher education.  Md. Code Ann., Educ. § 10-207.

20.   MHEC is an agency and instrumentality of the State of Maryland.

21.   MHEC is the State's higher education board responsible for "coordinate[ing] the overall growth and development of postsecondary education in the State." Md. Code Ann., Educ. § 11-105(b).

22.   MHEC is responsible for developing and periodically updating an overall plan for higher education in the State known as the *State Plan for Higher Education*.

23.   The current *State Plan for Higher Education*, entitled *"2004 Maryland State Plan for Postsecondary Education"*, reports that "racial and ethnic minorities represented all of the enrollment growth in the state during the past 10 years, and that this trend will not abate", that half of all of the public high school students in Maryland in 2003 were minorities, that the percentage of African American and Hispanic secondary school students has risen steadily from 41 to 44 percent in the past four years, and that African Americans and Hispanics will constitute 80 percent of the growth in high school graduates in Maryland through 2008. *2004 Maryland State Plan for Postsecondary Education* at 7.

24.   The *2004 Maryland State Plan for Postsecondary Education* reports that financial aid is a critical component of the State's efforts to improve affordability and minimize financial barriers to higher education, that Maryland is ranked 23rd in State need-based grant aid per FTE, that additional funding is still necessary to assist all eligible needy students. *2004 Maryland State Plan for Postsecondary Education* at 21.

25.   The *2004 Maryland State Plan for Postsecondary Education* provides that it is important that Maryland's HBCUs, which are projected to absorb significant growth, are enhanced to ensure their appeal to new students. *2004 Maryland State Plan for Postsecondary Education* at 22.

26.     The *2004 Maryland State Plan for Postsecondary Education* provides that Maryland is committed to ensuring equal access to high quality education for all citizens regardless of race and that due to Maryland's history of de jure racial segregation, Maryland has an obligation under federal law and court decisions to remedy past discrimination and to remove the vestiges of the past system of dual and unequal education. *2004 Maryland State Plan for Postsecondary Education* at 25.

27.     The *2004 Maryland State Plan for Postsecondary Education* provides that Maryland has entered a partnership agreement with the U.S. Department of Education's Office for Civil Rights (OCR) to advance equal educational opportunity in the State with specific commitments to include among others, improving campus climate and environment, enhancing the State's HBCUs, avoiding unnecessary program duplication, enhancing mission and program uniqueness, and strengthening institutional identify at the HBCUs; it requires the State to evaluate on an ongoing basis the progress that it has made in these areas and to adjust policies, practices, and programs as needed and to determine how to maintain these efforts after the formal partnership agreement has ended and to identify additional steps that would enhance and strengthen diversity. *2004 Maryland State Plan for Postsecondary Education* at 25, 26.

28.     The *2004 Maryland State Plan for Postsecondary Education* requires the State to provide appropriate enhancement funding for its HBCUs consistent with the requirements set forth in the Partnership Agreement between the State of Maryland and the United States Department of Education, Office for Civil Rights (Maryland/OCR Partnership Agreement), and to design measures to make certain that the HBCUs are comparable and competitive with Maryland's traditionally white institutions in all facets

7

of their operations and programs, to ensure that the campus environments at the HBCUs are comparable to other institutions with respect to the physical characteristics of landscape, ambiance, appearance, as well as to the availability, quality, and adequacy of facilities necessary to support the missions and programs of the institutions. *2004 Maryland State Plan for Postsecondary Education* at 26.

29.   MHEC is obligated to "ensure that the *State Plan for Higher Education* complies with the State's equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act, " Md. Code Ann., Educ. § 11-105(b), including the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24, *U.S. v. Fordice*, 505 U.S. 717 (1992).

30.   MHEC is responsible for developing a program of desegregation and equal educational opportunity, including developing an enhancement plan, for historically African American colleges and universities and for monitoring progress, making recommendations regarding needed resources, requiring reports from each governing board and reporting to the Governor, regarding the State's progress toward desegregation and equal educational opportunity in the State. Md. Code Ann., Educ. § 11-105(f).

31.   MHEC is responsible for receiving budget submissions containing the annual operating budget requests and proposals for capital project submissions from the governing boards and to present to the Governor and General Assembly a consolidated operating and capital budget for higher education "that included the operating and capital budget requests of the governing boards and institutions" including the Board of Regents of the University System of Maryland, the Board of Regents of Morgan State University, the Board of Trustees of St. Mary's College of Maryland, the State Advisory

8

Council for Title I of the Higher Education Act of 1965, the Board of Trustees of Baltimore City Community College, the Board of the Maryland Higher Education Investment Program and the governing body of each regional higher education center." Md. Code Ann., Educ. § 11-105(i).

32.    MHEC is responsible for reviewing proposals for capital projects and improvements proposed by the public institutions of higher education in the State of Maryland and to develop and submit to the Governor and the General Assembly recommendations as to these projects consistent with the State Plan for Higher Education. " Md. Code Ann., Educ. § 11-105(l).

33.    MHEC has the statutory authority to authorize the Secretary, acting through the Attorney General, to seek an injunction or other judicial remedy for any violation of Title 11 of Md. Code Ann., Educ.

34.    MHEC's responsibilities include the review and approval of institutional mission statements to ensure that each is consistent with the *State Plan for Higher Education* and is obliged to return to the governing board a proposed mission statement which is not consistent with the *State Plan for Higher Education* and require the governing board of the institution to revise and amend the statement to make it consistent with the State Plan. Md. Code Ann., Educ. § 11-302(d).

35.    MHEC is responsible for reviewing proposals for new academic programs at public institutions of postsecondary education and either approve or disapprove the proposal. Md. Code Ann., Educ. § 11-206 (b).

36.    MHEC is responsible for adopting regulations establishing standards for determining whether two (2) or more programs are unreasonably duplicative and to

9

ensure that action is taken to eliminate unreasonable duplication. Md. Code Ann.,

Educ. § 11-206 (e).

37.   In December 1999, the State of Maryland and the United States Department

of Education, Office for Civil Rights signed an agreement (Maryland/OCR Partnership

Agreement) designed to "ensure equal access to high quality education for all of the

State's citizens regardless of race, color, or national origin." Maryland/OCR

Partnership Agreement at 22.

38.   The duration of the Maryland/OCR Partnership Agreement was "from the date

it was signed [December 2000] through December 31, 2005." Maryland/OCR

Partnership Agreement at 23.

39.   In the Maryland/OCR Partnership Agreement, Maryland made 9 commitments

to strengthen academic and teacher preparation programs, to strengthen the

partnership with elementary and secondary school stakeholders, to strengthen

recruitment and admissions, to strengthen retention and graduation, to improve campus

climate and environment, to improve diversity of faculty/staff and governing /advisory

boards, to improve and expand 2 + 2 partnerships and articulation, to avoid

unnecessary program duplication and to expand mission and program uniqueness and

institutional identity at the HBCUs, and to enhance Maryland's historically black

colleges and universities.

40.   In the Maryland/OCR Partnership Agreement, the State committed "to

developing high-demand academic programs at HBCUs and ensuring that they are not

unnecessarily duplicated at nearby institutions." Maryland/OCR Partnership Agreement

at 33.

41.   In the Maryland/OCR Partnership Agreement, the State committed "to design measures which ensure that the HBCUs are comparable and competitive with the TWIs in all facets of their operations and programs, as soon as possible and before the expiration of this Agreement. These measures will be designed to ensure that these institutions provide equal opportunity for a quality education to all students who choose to attend them and to enable them to compete for and be attractive to students regardless of race."

42.   The current *State Plan for Higher Education* provides that: "Because of its history of de jure racial segregation, Maryland has an obligation under federal law and court decisions to remedy past discrimination and remove the vestiges of the past system of dual and unequal education." *2004 State Plan for Postsecondary Education* at 25.

43.   Defendant Kevin M. O'Keefe is responsible for administering MHEC in a manner consistent with the *State Plan for Higher Education*. Md. Code Ann., Educ. § 11-105(b)(2)(i).

44.   Defendant Calvin W. Burnett is responsible for administering MHEC in a manner consistent with the *State Plan for Higher Education*. Md. Code Ann., Educ. § 11-105(b)(2)(i).

45.   Defendant Calvin W. Burnett is responsible for organizing and directing the staff of MHEC, Md. Code Ann., Educ. § 11-104(b)(i), and seeing that the policies and decisions of the commission are carried out in a manner consistent with the State Plan and the State Charter. Md. Code Ann., Educ. § 11-104(b)(iii).

46.   Defendant Calvin W. Burnett is a member of the Executive Council of the Governor, Defendant, Robert L. Ehrlich, Jr., Md. Code Ann., Educ. § 11-104(b)(v).

47.    Defendant Robert L. Ehrlich, Jr., is the "head of the Executive Branch of the [Maryland] State government and . . . shall supervise and direct the officers and units in the Branch." Md. Code Ann., St. Gov't § 3-302.

48.    Defendant Robert L. Ehrlich, Jr., is responsible for insuring the enforcement of State and federal laws, including but not limited to the *State Plan for Higher Education* complies with the State's equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act, " Md. Code Ann., Educ. § 11-105(b), the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24, and *U.S. v. Fordice*, 505 U.S. 717 (1992).

49.    On May 26, 2006, Defendant Robert L. Ehrlich vetoed legislation passed by the Maryland General Assembly (Senate Bill 998), which provided, among other matters, for the achievement of parity between HBCUs and TWI's in accordance with the State's equal educational opportunity, nondiscrimination based on race, and desegregation obligations under federal and State law.

50.    Morgan State University was statutorily designated as the State's "urban" institution in 1976 and was reaffirmed as "the State's public urban university" in 1988. Md. Code Ann., Educ. § 14-101(2).

51.    Pursuant to Education Article, §§11-302 and 303, Annotated Code of Maryland, the MHEC, with the assistance of the presidents of the public institutions of higher education, is required to develop mission statements for the respective campuses, and to establish and update them at least every four years.

## Count 1 - Mandamus and Injunctive Relief

52.    With regard to averments 52-105, 125-127, and 130-134, Defendants acts or failures to act was intentionally racially discriminatory and/or resulted in a racially discriminatory impact that Defendants knew or should have known would be the result.

53.    Defendants have engaged in a pattern and practice of long term failure and recalcitrance in performing their duty to enforce federal and State laws, federal and State equal educational opportunity laws, to make HBCUs comparable and competitive in all facts of their operations, to dismantle the remnants of the de jure racially segregated system of higher education in Maryland,  to eliminate all unnecessary academic program duplication, and  to honor the commitments contained in the Maryland/OCR Partnership Agreement; this combined with OCR's failure to effectively and aggressively enforce relevant desegregation and equal opportunity laws has resulted in great irreparable harm to all that benefit from the delivery of an effective, efficient, desegregated system of higher education free of racial discrimination and the remnants of the past de jure racially segregated system and its continuing effects.

54.    Historically and continuing, the Defendants have engaged in a pattern and practice of long term failure to perform their duty to enforce federal laws for the provision equal educational opportunity in Maryland public higher education system, including the U.S. Constitution, Title VI of the Civil Rights Act, "  Md. Code Ann., Educ. § 11-105(b), U.S. v. Fordice, 505 U.S. 717 (1992), and other relevant statutory and case law.

55.    The Defendants have engaged in an pattern and practice of long term failure to perform their duty to enforce federal laws for the provision equal educational opportunity in Maryland public higher education system, including the U.S. Constitution,

*Title VI of the Civil Rights Act,* " Md. Code Ann., Educ. § 11-105(b), *U.S. v. Fordice*, 505 U.S. 717 (1992), and other relevant statutory and case law.

56.   Historically and continuing, the Defendants have engaged in an <u>intentional</u> pattern and practice of long term failure to perform their duty to enforce state laws for the provision equal educational opportunity in Maryland public higher education system including the *Maryland Constitution*, the *Maryland Charter for Higher Education*, the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24, and other relevant statutory and case law.

57.   The Defendants have engaged in a pattern and practice of long term failure to perform their duty to enforce state laws for the provision equal educational opportunity in Maryland public higher education system including the *Maryland Constitution*, the *Maryland Charter for Higher Education*, the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24, and other relevant statutory and case law.

58.   The Defendants have failed to perform their duty to provide a thorough and efficient public school system in accordance with the Maryland Constitution.

59.   The Defendants have failed to perform their duty to act in accordance with the *Maryland Charter for Higher Education* and the principles it sets forth on which higher education in Maryland should be based, to include among others: that the people of Maryland requires quality in all aspects of public higher education (teaching, research, and public service), that public higher education should be accessible to all those who seek and qualify for admission, that public higher education should provide a diversity of quality educational opportunities; that adequate funding by the State is essential and critical if public higher education is to achieve its goal, that the people of Maryland are entitled to efficient and effective management of public higher education, and that the

14

people of Maryland are entitled to capable and creative leadership in public higher education.

60.     The Defendants have failed to perform their duty to act in accordance with the *Maryland Charter for Higher Education which* requires the State's funding policies allocate State resources efficiently while providing incentives for quality and institutional diversity.

61.     The Defendants have failed to perform their duty to act in accordance with The *Maryland Charter for Higher Education* to require funding proposals to include base funding in accordance with the role and mission of the institutions and to include special initiative funding for academic programs at historically African American colleges and universities.  Md. Code Ann., Educ. § 10-203.

62.     The Defendants have failed to perform their duty to act in accordance with the *Maryland Charter for Higher Education which* requires the Governor and General Assembly to establish broad policy regarding higher education, to delegate implementation of the policy to appropriate boards, commissions, institutions and officials, to provide for the adequate financing of public higher education, and to demand accountability and effective management from public institutions of higher education.

63.     The Defendants have failed to perform their duty to act in accordance with the *Maryland Charter for Higher Education* which requires the Maryland Higher Education Commission to advise the Governor and General Assembly on statewide higher education policy, to conduct statewide planning for higher education, to coordinate and arbitrate among different segments of higher education in the State; to review,

negotiate as necessary, and grant final approval of mission statement for each public institution of higher education and each regional higher education center that requests or receives state funding; to assess the adequacy of operating and capital funding for public higher education and establish operating funding guidelines based on comparison with peer institutions and on other relevant criteria and administer statewide programs of student financial assistance for higher education.

64.    MHEC has failed to perform its duty as the State's higher education board to coordinat[ing] the overall growth and development of postsecondary education in the State.

65.    The Defendants have failed to perform their duty to develop a system of higher education in accordance with the 2004 Maryland State Plan for Postsecondary Education , specifically as it relates to the Plan's report that "racial and ethnic minorities represented all of the enrollment growth in the state during the past 10 years, and that this trend will not abate", that half of all of the public high school students in Maryland in 2003 were minorities, that the percentage of African American and Hispanic secondary school students has risen steadily from 41 to 44 percent in the past four years, and that African Americans and Hispanics will constitute 80 percent of the growth in high school graduates in Maryland through 2008. *2004 Maryland State Plan for Postsecondary Education* at 7.

66.    The Defendants have failed to perform their duty to develop a system of higher education in accordance with the 2004 Maryland State Plan for Postsecondary Education , specifically as it relates to the Plan's report that  financial aid is a critical component of the State's efforts to improve affordability and minimize financial barriers

to higher education, that Maryland is ranked 23rd in State need-based grant aid per FTE, that additional funding is still necessary to assist all eligible needy students.

67.    The Defendants have failed to perform their duty to develop a system of higher education in accordance with the 2004 Maryland State Plan for Postsecondary Education, specifically as it relates to the Plan's report that it is important that Maryland's HBCUs, which are projected to absorb significant growth, are enhanced to ensure their appeal to new students.

68.    The Defendants have failed to perform their duty to develop a system of higher education in accordance with the 2004 Maryland State Plan for Postsecondary Education, specifically as it relates to the Plan's report that Maryland is to be committed to ensuring equal access to high quality education for all citizens regardless of race and that due to Maryland's history of de jure racial segregation, Maryland has an obligation under federal law and court decisions to remedy past discrimination and to remove the vestiges of the past system of dual and unequal education.

69.    The Defendants have failed to perform their duty to develop a system of higher education in accordance with the 2004 Maryland State Plan for Postsecondary Education, specifically as it relates to the Plan's report that Maryland has entered a partnership agreement with the U.S. Department of Education's Office for Civil Rights (OCR) to advance equal educational opportunity in the State with specific commitments to include among others, improving campus climate and environment, enhancing the State's HBCUs, avoiding unnecessary program duplication, enhancing mission and program uniqueness, and strengthening institutional identify at the HBIs; it requires the State to evaluate on an ongoing basis the progress that it has made in these areas and

17

to adjust policies, practices, and programs as needed and to determine how to maintain these efforts after the formal partnership agreement has ended and to identify additional steps that would enhance and strengthen diversity.

70.    The Defendants have failed to perform their duty to develop a system of higher education in accordance with the 2004 Maryland State Plan for Postsecondary Education, specifically as it relates to the Plan's report that the State provide appropriate enhancement funding for its HBCUs consistent with the requirements set forth in the Partnership Agreement between the State of Maryland and the United States Department of Education, Office for Civil Rights (Maryland/OCR Partnership Agreement), and to design measures to make certain that the HBCUs are comparable and competitive with Maryland's traditionally white institutions in all facets of their operations and programs, to ensure that the campus environments at the HBCUs are comparable to other institutions with respect to the physical characteristics of landscape, ambiance, appearance, as well as to the availability, quality, and adequacy of facilities necessary to support the missions and programs of the institutions.

71.    The Defendants have failed to perform their duty to develop a system of higher education in accordance with the 2004 Maryland State Plan for Postsecondary Education, specifically as it relates to the Plan's report that MHEC is obliged to "ensure that the *State Plan for Higher Education* complies with the State's equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act. "

72.    The Defendants have failed to perform their duty to develop a program of desegregation and equal educational opportunity, including developing an

18

enhancement plan, for historically African American colleges and universities and for monitoring progress, making recommendations regarding needed resources, requiring reports from each governing board and reporting to the Governor, regarding the State's progress toward desegregation and equal educational opportunity in the State.

73.    The Defendants have failed to perform their duty to review and approve institutional mission statements to ensure that each is consistent with the *State Plan for Higher Education* and reject and return to the governing board a proposed mission statement which is not consistent with the *State Plan for Higher Education* and require the governing board of the institution to revise and amend the statement to make it consistent with the State Plan.

74.    The Defendants have failed to perform their duty to appropriately review proposals for new academic programs at public institutions of postsecondary education and either approve or disapprove the proposal in accordance with state and federal law.

75.    The Defendants have failed to perform their duty to adopt regulations establishing standards for determining whether two (2) or more programs are unreasonably duplicative and to ensure that action is taken to eliminate unreasonable duplication.

76.    The Defendants have failed to perform their duty to create a budgetary and funding system whereby HBCUs are equitably funded such that they are comparable and competitive with Maryland's traditionally white institutions in all facets of their operations and programs, to ensure that the campus environments at the HBCUs are comparable to other institutions with respect to the physical characteristics of

19

landscape, ambiance, appearance, as well as to the availability, quality, and adequacy of facilities necessary to support the missions and programs of the institutions.

77.    The Defendants have failed to perform their duty to honor the State's contractual commitments under the Maryland/OCR Partnership Agreement (and OCR has yet to enforce the Agreement or to secure enforcement of the equal opportunity principles underlying the agreement) in which the State of Maryland made 9 commitments to strengthen academic and teacher preparation programs, to strengthen the partnership with elementary and secondary school stakeholders, to strengthen recruitment and admissions, to strengthen retention and graduation, to improve campus climate and environment, to improve diversity of faculty/staff and governing/advisory boards, to improve and expand 2 + 2 partnerships and articulation, to avoid unnecessary program duplication and to expand mission and program uniqueness and institutional identity at the HBCUs, and to enhance Maryland's historically black colleges and universities.

78.    The Defendants have failed to perform their duty to honor the State's contractual commitments under the Maryland/OCR Partnership Agreement in which the State committed "to developing high-demand academic programs at HBCUs and ensuring that they are not unnecessarily duplicated at nearby institutions." Maryland/OCR Partnership Agreement at 33.

79.    The Defendants have failed to perform their duty to honor the State's contractual commitments under the Maryland/OCR Partnership Agreement in which the State committed "to design measures which ensure that the HBCUs are comparable and competitive with the TWIs in all facets of their operations and programs, as soon as

possible and before the expiration of this Agreement. These measures will be designed to ensure that these institutions provide equal opportunity for a quality education to all students who choose to attend them and to enable them to compete for and be attractive to students regardless of race."

80.    Defendant Kevin M. O'Keefe has failed to perform his duty to administer MHEC in a manner consistent with the *State Plan for Higher Education*.

81.    Defendant Calvin W. Burnett has failed to perform his duty to administer MHEC in a manner consistent with the *State Plan for Higher Education*.

82.    Defendants MHEC, Kevin M. O'Keefe and Calvin W. Burnett have failed to perform their duties to organize and direct the staff of MHEC, and seeing that the policies and decisions of the commission are carried out in a manner consistent with the State Plan and the State Charter.

83.    Defendants have failed to perform their duty to develop academic programs at institutions of higher education in accordance with State and federal law and have unlawfully and unnecessarily duplicated academic programs at the State's HBCUs.

## Count 2- Mandamus and Injunctive Relief
### Breach of Duty to Maintain Distinct Missions and to
### Prevent Unnecessary Duplication of HBCU Missions and Academic Programs

84.    Plaintiffs repeat and reallege each allegation and assertion of each preceding and succeeding paragraph of this complaint as though fully set forth herein.

85.   The Defendants have failed to perform their duty to review and approve institutional mission statements to ensure that each is consistent with State and federal law and with the State Plan for Higher Education; to reject and return to the governing board a proposed mission statement which is not consistent with the *State Plan for Higher Education;* and to require the governing board of the proposing institution to revise and amend the statement to make it consistent with the State Plan.

86.   Defendants have failed to perform their duty to review, approve or reject academic program proposals from TWIs which would result in unnecessary program duplication at geographically proximate HBCUs in accordance with State and federal law.

87.   Defendants disregarded and breached their duty to prevent unnecessary mission and program duplication at geographically proximate HBCUs by engaging in whole institution duplication by creating or including in the State system whole, predominantly white, institutions, i.e., the creation of University of Maryland Baltimore County (UMBC) and acquisition of the University of Baltimore (UB) which duplicated institutions, missions, and programs at proximately-located HBCUs.

88.   Defendant Calvin W. Burnett failed and disregarded his duty to evaluate program proposal submissions and to approve or disapprove them in accordance with relevant information and data in accordance with State and federal law.

89.   Contrary to State and federal law prohibiting racial discrimination, Defendants have unnecessarily duplicated academic programs and missions of the State's HBCUs when they had a duty not to engage in such duplication.

90.    Contrary to their duty not to duplicate HBCU missions and programs, Defendants have wilfully authorized the duplication of institutional missions and academic programs of geographically proximate Maryland HBCUs.

91.    Contrary to State and federal law, Defendants have unnecessarily, for the purpose of continuing to maintain unlawful racial segregation, duplicated academic programs and missions of the State's HBCUs when they had a duty not to authorize such duplication.

92.    Defendants have failed to perform their duty in accordance with State law to provide notice to the institutions of higher education, regarding proposed academic programs and to provide opportunity for comments and/or objection on those proposals.

93.    Defendants, contrary to their duty not to permit unnecessary academic program duplication of HBCU programs at geographically proximate TWIs, have approved, the duplication of the following known programs (among other potential but unknown program duplications, unknown due to Defendants failure to provide statutorily required notice of proposed programs and to otherwise produce public records containing that information):

- Masters Business Administration (duplication of existing Morgan State University program)
- Computer/Electrical Engineering (duplication of existing Morgan State University program)
- Public Health (duplication of existing Morgan State University program)
- Math Education (duplication of existing Morgan State University program)

- Science Education (duplication of existing Morgan State University program)
- Master's in Education (duplication of existing Morgan State University program)

94.   Defendants violated the laws against racial segregation and breached their duty to ensure equitable funding by failing to fund academic programs approved for HBCUs, then duplicating the programs at nearby TWIs and then providing full funding to the duplicate programs, making it extraordinarily difficult for HBCUs to develop their programs, to achieve racial diversity in enrollments, to maintain student enrollments and to compete against the duplicate programs at the TWIs. The actions by the defendants have caused and continue to cause irreparable injury to the Plaintiffs.

95.   Contrary to their duty to prevent the duplication of HBCU missions and programs at proximately located TWIs, Defendants approved Towson University's mission as "the State's metropolitan university," which duplicated Morgan State University mission as "the State's public urban university" in violation of Maryland and federal law.

96.   Contrary to their duty not to duplicate HBCU missions and programs, Defendants approved and granted Towson University degree authority for the master's of business administration, thereby unnecessarily duplicating an existent MBA program at proximately located Morgan State University, in violation of Maryland and federal law.

97.   On or about September 20, 2005, Towson University submitted to MHEC a proposed mission statement, identifying the campus as "the State's metropolitan

24

university." This represented at least the second time Towson University attempted to duplicate Morgan State University's mission, as it sought recognition as a "metropolitan institution" in a 2000 submission to MHEC.

98.    Defendant Calvin W. Burnett circulated Towson's proposed mission statement to the other public higher education institutions for comment.

99.    By letter, dated December 9, 2005, Dr. Earl S. Richardson, President of Morgan State University, objected to Towson's proposed mission, as duplicative of Morgan's existing designation as "the State's public urban university."

100.   On February 15, 2006, and over Morgan State University's objection, Defendant Calvin W. Burnett submitted Towson's proposed mission to the MHEC, with a recommendation for "acceptance...pending a study of the issue , , , ."

101.   On February 15, 2006, MHEC accepted Defendant Calvin W. Burnett's recommendation and approved Towson's proposed mission statement.

102.   Towson University currently includes the mission designation in printed materials and on the University website.

103.   The duplication of missions and academic programs of Maryland HBCUs has caused substantial and irreparable harm to Maryland HBCUs.

104.   In March 2005, Defendant Calvin W. Burnett approved a proposal for a Master of Business Administration (MBA) to be jointly offered by Towson University and the University of Baltimore, which constituted a new program approval for Towson University.

105.   The process used to evaluate the Towson proposal was flawed and biased.

106.    The Towson MBA caused demonstrable harm to a Maryland HBCU, Morgan State University, by compromising efforts to achieve racial diversity in the Morgan student body; siphoning off enrollment and otherwise negatively impacting the institution's ability to develop the program.

107.    Unnecessary academic program duplication is harmful, socially and economically,  to  the citizenry of the State of Maryland, the HBCUs, students attending HBCUs and the public at large because the duplication: wastes and dilutes limited State resources when programs already exist to meet the demand and thereby reducing the economic efficiencies of the higher education system, undermines the State's diversity and desegregation efforts, perpetuates segregation, impairs HBCU enhancement efforts, impairs HBCU enrollment growth, and discourages cooperation among institutions.

108.    Unnecessary academic program duplication is harmful because the greater the duplication, the less likely it is that quality programs can be adequately supported since limited resources are spread out over more programs.

109.    Unnecessary academic program duplication is harmful because the more programs are duplicated, the less likely it is that quality programs can be adequately supported.

110.    Unnecessary academic program duplication is harmful because program duplication among geographically proximate campuses having different predominant races lessens the incentive for students to choose campuses on the basis of program availability and increases the likelihood that choice will be based on race, thereby undermining the State's diversity and desegregation goals and mandates.

## Count 3 - Mandamus, Injunctive Relief and Declaratory Judgment

111.    Plaintiffs repeat and reallege each allegation and assertion of each preceding and succeeding paragraph of this complaint as though fully set forth herein.

112.    Plaintiffs are entitled to an order in the nature of mandamus and injunctive relief to compel Defendants to discontinue institutional mission and academic program duplication because Defendants MHEC and Calvin W. Burnett have acted outside their authority.

113.    Defendant MHEC has a policy and/or practice of not circulating documents as required by statute and regulation.

114.    Defendant MHEC, on February 15, 2006, approved Towson's new mission statement as a "metropolitan" university, thereby duplicating Morgan's mission statement and statutory designation as "the State's public urban university." The terms "metropolitan" and "urban" are used interchangeably to describe Universities whose emphasis is on combining academic programming with interdisciplinary partnerships to resolve complex metropolitan problems. This approval is in violation of equal protection as guaranteed by the *Maryland Declaration of Rights*, Md. Code Ann., Const. Art. 24 and the Constitution and laws of the United States. Plaintiffs have been prejudiced by Defendant's actions and continues to suffer irreparable harm and injury. The duplication of Morgan's mission is more than symantics, as flowing from that designation is a broadening of Towson's mission into educational, research and service emphases which cause unnecessary duplication of HBCUs in all manner of operations to include

duplication of academic programs, all to the detriment HBCUs, the fulfillment of the State desegregation and equal educational opportunity obligations.

115.   Defendants MHEC and Calvin W. Burnett have exceeded their statutory authority and acted in an arbitrary and capricious manner in approving the duplicative mission statement of Towson University since the statute requires the Commission to reject the proposed mission statement if it is inconsistent with the state plan for higher education.  Md. Code Ann., Educ. § 11-302(d)(3).

116.   Plaintiffs are entitled to injunctive relief and an order of mandamus compelling Defendants to reverse the recent MHEC decision to approve Towson's mission statement.

117.   Plaintiffs are entitled to an injunction and an order of mandamus to compel Defendants to cease and desist from including said designation in printed and published materials.

118.   Plaintiffs repeat and reallege each allegation and assertion of each preceding and succeeding paragraph of this complaint as though fully set forth herein.

119.   Plaintiffs are entitled to a judgment declaring Towson's proposed mission statement as duplicative of Morgan State's University's existing mission statement and tp enjoin the same.

120.   Plaintiffs assert that the violations of the Maryland Declaration of Rights and other state and federal law being perpetrated by the Defendants, and being challenged by the Plaintiffs, constitutes an actual controversy between the parties to this lawsuit. Md. Code. Ann., Cts. & Jud. Proc. §3-409(a)(1).

121.    Plaintiffs assert that their present claims will lead to imminent and inevitable litigation.   Md. Code. Ann., Cts. & Jud. Proc. §3-409(a)(2).

122.    Plaintiffs assert that declaratory judgment and injunctive relief is necessary to terminate the controversy giving rise to this action.  Md. Code. Ann., Cts. & Jud. Proc. §3-409(a).  Morgan State University, through a letter from its President, has formally objected to the proposed mission statement of Towson University.  Defendants have persisted in their unlawful and unconstitutional policies and practices that have historically and continue to discriminate against the Plaintiffs, and Morgan State University and its student body.

## Count 4- Mandamus and Injunctive Relief
### Duty to require the annual submission of budgets

123.    Plaintiffs repeat and reallege each allegation and assertion of each preceding and succeeding paragraph of this complaint as though fully set forth herein.

124.    Defendant MHEC, failed to perform it duty to receive, require, and review budget submissions from all governing boards of State higher education institutions and to enforce that requirement on those recalcitrant in submitting the required budget proposals.

125.    The Defendants have failed to perform their duty to insure that MHEC receives budget submissions containing the annual operating budget requests and proposals for capital project submissions from the governing boards and presents to the Governor and General Assembly a consolidated operating and capital budget for higher education "that included the operating and capital budget requests of the

governing boards and institutions" including The Board of Regents of the University System of Maryland, the Board of Regents of Morgan State University, the Board of Trustees of St. Mary's College of Maryland, The State Advisory Council for Title I of the Higher Education Act of 1965, The Board of Trustees of Baltimore City Community College, the Board of the Maryland Higher Education Investment Program and the governing body of each regional higher education center."

126.   The Defendants have failed to perform their duty to insure that MHEC review proposals for capital projects and improvements proposed by the public institutions of higher education in the State of Maryland and develop and submit to the Governor and the General Assembly recommendations as to these projects consistent with the State Plan for Higher Education."

127.   MHEC has the statutory authority to authorize the Secretary, acting through the Attorney General, to seek an injunction or other judicial remedy for any violation of Title 11 of Md. Code Ann., Educ.

## INJUNCTIVE RELIEF

128.   Plaintiffs reallege and incorporate by reference each allegation and assertion of each preceding paragraph of this complaint as though fully set forth herein.

129.   By adopting the policies and practices set forth above, Defendants Erhlich, State of Maryland, Maryland Higher Education Commission, and Calvin W. Burnett, have caused and will continue to cause plaintiffs irreparable harm and injury, in that Plaintiffs have been denied, because of their race, equal opportunity in higher education due to the Defendants denial of equitable educational benefits because State resources have inequitably been distributed to the State's public institutions based on

the race of the individual students who attend those institutions, the predominate racial composition of the institutions' student body, the past and/or present racial identifiability of the institution, and/or the State's maintenance of a dual system of higher education based on race.

130.   Defendants pattern and practice of providing less resources to the State's HBCUs than to the States TWIs has resulted in HBCUs which are not comparable or competitive with the TWIs in all facets of their operations and adversely impacting the quality, attractiveness and viability of HBCUs in the following areas, all of which adversely impact and/or harm students, faculty, employees and the public: fewer and lesser quality facilities; smaller academic program inventories; less comprehensive missions; lesser capacity for generating revenue to support student financial aid; higher student-faculty ratios; less money for employee and faculty salaries and benefits affecting the institutions' ability to attract and retain quality faculty and employees consistent with the mission and Carnegie classification; and all other institutional operations and activities, all of which impact the quality, viability, and fiscal soundness of an institution of higher education.

131.   The lack of State resources to fund new academic programs at HBCUs, when new programs are funded at TWIs, impact the quality of the new programs which directly and adversely impacts the quality of the educational product delivered to students.

132.   The failure to make HBCUs comparable and competitive with TWIs in all facets of their operations and/or the duplications of HBCU academic programs, constrains the growth of HBCUs and reduces diversity in the student body which harms

students because they are not exposed to a diversity of students (racially, culturally, socio-economically, and by ability) are disadvantages since the academic enterprise is enhanced by a diversity of ideas and perspectives.

133.    The lack of resources artificially constrains the growth of HBCUs and prevents them from providing educational services to large numbers of persons qualified for admission (many of whom are African American and other minorities). This artificial constraint on growth adversely affects enrolled students because they are unable to realize the benefits of a vibrant, growing, institution. With increased institutional growth comes many benefits to include by way of examples: increased revenue streams from all sources (public and private); more capacity for State income; more tuition and fees revenue; better and greater buying power for all types of commodities and services; increased academic vitality that comes from the maintenance of mature, accomplished faculty with the perspective that comes from experience combined with an infusion of new faculty with new ideas, research, and ability to work side by side with earlier-hired faculty, thereby ensuring the vitality, resiliency, dynamism and growth of the academic enterprise; all of which enures to the benefit of students when present and to the detriment of students when absent.

134.    The availability of student financial aid, particularly institution-based financial aid, is directly and adversely affected by any and all factors that constrain institutional development. This harms students and the student Plaintiffs in need of financial aid because some must quit due to lack of financial resources, others must work thereby affecting the amount of time devoted to their studies and their ability to achieve the necessary levels of proficiency for graduate studies or discipline-related employment;

and still others are never able to matriculate to the institution due to financial constraints.  Reduced financial aid adversely and disproportionately affects HBCUs greater (than TWIs) because much higher proportions of African American students are in need of financial aid than white students, and HBCUs serve a higher proportion of African American students than do TWIs.

135.    The previously identified harms also harm the public and are adverse to the public interest because public institutions provide substantial services and benefits to the public in the form of research, services, and facilities as well as increased educational opportunities to the public and State's citizens increases the overall welfare of the citizenry, families, the State's revenue streams, the State's ability to compete in domestic and global economies, the ability of the State's citizens to engage in meaningful and productive vocations to the benefit of the State and society as a whole, and the cultivation of a labor force capable of sustaining our local, state, national and international communities.

136.    State actions which impair the vitality and growth of its public institutions adversely impact the public by reducing all that public institutions provide, as indicated in the number averment immediately preceding this one, and also results in less educational opportunities causing them to have lesser ability to reach their full potential and increased chances for them to engage in pursuits of less benefit to society.

137.    Plaintiffs have no remedy at law adequate to prevent the continuing wrong and irreparable injury caused by defendants' acts and omissions.

## DECLARATORY RELIEF

138.   An actual controversy exists between plaintiffs and defendants in that plaintiffs contend that the policies and practices set forth in paragraphs 1-138, supra, violate the U.S. Constitution, the State's equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act, " Md. Code Ann., Educ. § 11-105(b),  including the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24, *U.S. v. Fordice*, 505 U.S. 717 (1992).

139.   Unless there is a judicial declaration of plaintiff's rights, Defendants' unlawful conduct will continue.

WHEREFORE, plaintiffs pray for the following relief:

- For the issuance of a writ of mandamus ordering Defendants to perform their duties in all the areas identified in this Complaint.

- For the issuance of a writ of mandamus ordering Defendants to assert their authority over proposed budget submission for University System of Maryland and to enforce that authority if the necessary proposed budget(s) are submitted in accordance with State law.

- For the issuance of a writ of mandamus ordering Defendants to eliminate all unnecessary program duplication of academic programs at the State's HBCUs.

- For the issuance of a writ of mandamus ordering Defendants to provide Maryland HBCUs with all the necessary resources and support to insure that they  are comparable and competitive with Maryland's traditionally white

institutions in all facets of their operations and programs, to ensure that the campus environments at the HBCUs are comparable to TWIs with respect to the physical characteristics of landscape, ambiance, appearance, as well as to the availability, quality, and adequacy of facilities necessary to support the missions and programs of the institutions.

- For the issuance of a writ of mandamus ordering Defendants to fully fund all academic programs at HBCUs.

- For the issuance of a writ of mandamus ordering Defendants to develop, implement and enforce policies and procedures which insure that MHEC operates in an independent and objective manner with no opportunities for undue influence of one segment over another and that it develops sufficient transparency in its operations to allow it to operate in a racially equitable fashion.

- For the issuance of a writ of mandamus ordering Defendants to establish a system or disincentives and/or discipline for individual or institutional efforts to circumvent or undermine the State's equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act, " Md. Code Ann., Educ. § 11-105(b), including the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24, *U.S. v. Fordice*, 505 U.S. 717 (1992). Such a system shall designate certain goals to be achieved and the failure to achieve such goals treated in a manner as to discourage continued failure to achieve the goals.

- For the issuance of a writ of mandamus ordering Defendants to establish a system to reward any individual or institutional efforts to promote or enhance

35

the State's equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act, " Md. Code Ann., Educ. § 11-105(b), including the *Maryland Declaration of Rights*, Md. Code Ann, Const. Art. 24, *U.S. v. Fordice*, 505 U.S. 717 (1992). Such a system shall designate certain goals to be achieved and accomplishment of such goals treated in a manner as to promote the continued achievement of such goals.

- For the issuance of a writ of mandamus ordering Defendants to honor all commitments made in the OCR/Maryland Partnership Agreement no later that12 months after the issuance of the writ.

- For the issuance of a writ of mandamus ordering Defendants to immediately revise the State funding guidelines so as to create funding guidelines unique to HBCUs which do not compare them to other funding-challenged HBCUs and instead focus solely on enhancing the HBCUs to reach comparability and competitiveness with the State TWIs in all respects as identified in the OCR Partnership Agreement and all other relevant State and federal laws.

- For the issuance of a writ of mandamus ordering Defendants to transfer resources allocated to duplicate academic programs to HBCUs and to provide HBCUs with any additional resource and/or infrastructure needed to meet the demand.

- For the issuance of a writ of mandamus ordering Defendants to rescind decision to offer a 4-year program of study at the University of Baltimore.

- For the issuance of a writ of mandamus ordering Defendants act in accordance with all other duties required of them by State and federal law with regard to

36

equal educational opportunity desegregation and the elimination of racial discrimination in Maryland higher education.

- For the issuance of a writ of mandamus ordering Defendants to reverse the recent MHEC decision to approve Towson's mission statement to include a designation as the State's "metropolitan university".

- to reverse a recent decision of the Maryland Higher Education Commission to approve Towson University's mission as "the State's metropolitan university"

- to reverse the grant to Towson of degree authority for the master's of business administration which is duplicative of the Morgan State University mission as "the State's public urban university" and its existent MBA program in violation of Maryland and federal law.

- For a preliminary and permanent injunction restraining  Defendants from commencing or maintaining any improvements or enhancements to State TWIs until such time as HBCUs achieve parity and comparability with TWI's and then to provide equitable resources to both HBCUs and TWI's to insure that comparability, competitiveness, and parity is maintained in perpetuity.

- For a preliminary and permanent injunction rescinding MHEC's approval of the Towson MBA and all other programs which duplicate program offerings at proximate HBCUs.

- For a preliminary and permanent injunction preventing Defendants to approve or locate a branch program of an existing program at a TWI so that it is proximate and thereby duplicates a program at an HBCU.

37

- For a preliminary and permanent injunction restraining Defendants from including the designation of "the State's metropolitan university," or any derivation thereof, for Towson University in printed and published materials.

- For a preliminary and permanent injunction restraining Defendants from duplicating the institutional missions of HBCUs at proximately located TWIs.

- For a preliminary and permanent injunction restraining Defendants from duplicating academic program of HBCUs at proximately located TWIs.

- For a preliminary and permanent injunction restraining Defendants from acting in a manner inconsistent with the U.S. Constitution, the Maryland Constitution, the Maryland Charter for Higher Education, *the Maryland State Plan for Postsecondary Education,* the State's equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act, " Md. Code Ann., Educ. § 11-105(b),  including the *Maryland Declaration of Rights,* Md. Code Ann, Const. Art. 24, *U.S. v. Fordice,* 505 U.S. 717 (1992).

- For a declaratory judgment that Towson University's missions statement is duplicative of the mission statement of Morgan State University.

- For a declaratory judgment that the duplication by TWIs of academic programs, institutions, and missions of proximately located HBCUs is unlawful.

- That the Court grant such other and further relief as this Court deems proper under the circumstances.

- For court costs, other costs associated with these proceedings and reasonable attorneys fees;

• For an expedited hearing and issuance of a preliminary injunction preventing continuing injury to the Plaintiffs during the course of these proceedings, and

• For such other and further relief as the Court may deem just and proper and the nature of these proceedings require.

### Request for Jury Trial

Plaintiffs respectfully request a trial by jury for all counts and issues so triable.

Kenneth Lavon Johnson, Esquire
Attorney for the Plaintiffs

711 Saint Paul Street
Baltimore, Maryland 21202
(410) 727-0920