IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COALITION FOR EQUITY AND          *
EXCELLENCE IN MARYLAND
HIGHER EDUCATION, et al.          *

       Plaintiffs          *

    vs.                          *   CIVIL ACTION NO. MJG-06-2773

MARYLAND HIGHER EDUCATION          *
COMMISSION, et al.
                   *
       Defendants
*        *        *        *        *        *        *        *        *

## MEMORANDUM AND ORDER RE: CONTRACT CLAIM

The Court has before it Defendants' Motion for Partial Summary Judgment [Re: Contract Claim][[Document 40] and the papers submitted relating thereto.  The Court has held a hearing and had the benefit of the arguments of counsel.

## I.   BACKGROUND

### A.   The Parties

Plaintiff Coalition for Equity and Excellence in Maryland Higher Education (the "Coalition") is a Maryland corporation whose mission is to "ensure equity and excellence in higher education" through such efforts as community organizing and awareness campaigns, advocacy, research, and providing services to Maryland's State-funded Historically Black Colleges and Universities ("HBCUs").  Compl. ¶¶ 8-10.  The Coalition's members

are current students and alumni of public HBCUs in Maryland, as well as high school students who have expressed a desire to attend HBCUs in the future.

In addition to the Coalition, nine individual Plaintiffs (collectively "Plaintiffs") are current students or alumni of public HBCUs in Maryland.

Defendant Maryland Higher Education Commission ("MHEC", "Maryland" or "the State") is the State agency charged with ensuring that Maryland complies with its equal educational opportunity obligations under State and federal law, including Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et seq. Compl. ¶¶ 30-31.  Plaintiffs have also named as Defendants the MHEC Chair and Maryland's Secretary of Higher Education, in their official capacities (collectively "Defendants").

### B.   Claims Presented

It suffices for present purposes to state, simply, that Plaintiffs contend that the State of Maryland has not taken sufficient action to desegregate its public higher education system.

Plaintiffs present two causes of action based upon federal

law[1] and one on a state law contract theory based upon an
agreement between MHEC and the United States Department of
Education, Office for Civil Rights ("OCR").  Plaintiffs claim
standing to enforce the agreement as third party beneficiaries.
Defendants seek summary judgement, asserting that there is no
enforceable contract between MHEC and OCR and, even if there is
one, Plaintiffs lack standing as third party beneficiaries.


    C.  <u>The Partnership Agreement</u>

The alleged contract, "the Partnership Agreement," is set
forth in "Maryland's Report and The Partnership Agreement Between
the State of Maryland and the U.S. Department of Education,
Office for Civil Rights."  Defs.' Mot. Partial Summ. J., Ex. 2.
This document was finalized in December of 2000 and was the
result of negotiations between OCR and MHEC regarding Maryland's
obligations to desegregate its public higher education system.

The Report itself briefly describes Maryland's higher
education system, discusses the State's prior 1985-1989
desegregation plan, and summarizes twelve efforts that Maryland
had undertaken to "increase African American students' access,

---

[1]    Plaintiffs' first cause of action is brought under
Title VI of the Civil Rights Act and their second cause of action
is brought under the Equal Protection Clause.

retention, and graduation in higher education."   Id. at 1-18.

The Report also includes a discussion of the "partnership

process" which led to the Partnership Agreement between Maryland

and OCR:

> From the conclusion of Maryland's five-year Plan in
> 1989 until the current initiative, which officially
> began on October 4, 1999, OCR did not comment upon the
> status of the State's compliance with Title VI.
> However, in January 1994, Norma V. Cantú, Assistant
> Secretary for Civil Rights for the Department, informed
> the State of OCR's intent to reexamine the status of
> Maryland's desegregation efforts in its state supported
> system of higher education. In her October 4, 1999
> letter to Governor Parris N. Glendening [], Assistant
> Secretary Cantú acknowledged that since the conclusion
> of the five-year desegregation plan, Maryland has made
> significant progress in enhancing educational
> opportunities for African American students and
> providing equal educational opportunities for all
> Maryland residents. She also indicated OCR's desire to
> work collaboratively with the State to evaluate the
> State's desegregation efforts.
>
> In response to Assistant Secretary Cantú's letter,
> Governor Glendening indicated the State's interest in
> working with OCR on this endeavor [], and on October
> 25, 1999, an introductory meeting was held in Annapolis
> between representatives of the Governor, MHEC and OCR.
> MHEC invited OCR to accompany it on a series of
> previously scheduled on-site visits to each of
> Maryland's HBCUs pursuant to the State's Access and
> Success program. Consequently, between November 1999
> and January 2000, OCR visited all four Maryland HBCUs:
> University of Maryland Eastern Shore; Bowie State
> University; Coppin State College[2]; and Morgan State
> University. During March 2000, OCR also made separate
> visits to several [Traditionally White Institutions
> ("TWIs")]: University of Maryland, Baltimore County;

---

[2]   Now Coppin State University.

4

University of Baltimore; Towson University; Salisbury State University[3]; and Frostburg State University. OCR made follow-up visits to each of the HBCUs during May 2000.

The information from OCR's visits, as well as the data, documents and other materials gathered as part of this activity helped identify several issues of access and equity for African American students in Maryland. For example, Maryland officials and OCR recognize that the enhancement of the HBCUs will remain an important concern even though information provided by Maryland demonstrates that numerous enhancement initiatives were implemented as a result of the 1985-1989 desegregation plan and have continued since that time.

At the October 25, 1999 meeting, it was agreed that the State of Maryland would engage in this review through a partnership approach with OCR. During the meeting, OCR informed Maryland that, based upon its analysis, it would focus the review on the following issues:

> 1. Enhancing Maryland's four HBCUs in order to improve educational opportunities for African American students who attend them and to increase their attractiveness to students of all races, especially white students, including addressing the problem of unnecessary academic program duplication among the HBCUs and geographically proximate TWIs;

> 2. Enhancing initiatives at the TWIs and community colleges in the following areas:

> a) Campus Climate, including the employment of African Americans at all levels, which will assist in improving campus climates for African American students;

> b) Student Recruitment; and

> c) Student Retention and graduation; and

---

[3]    Now Salisbury University.

5

3. Access for African Americans to Maryland's
institutions of higher education, including
need-based and other financial assistance
programs, and access for African American students
to, and retention in, graduate and professional
schools in Maryland.

The Secretary of Higher Education, in her June 9, 2000
letter (Appendix J), invited key stakeholders to
participate in a workgroup with OCR to formally
commence the process which would conclude in an
executed Partnership Agreement.

Partnership Agreement at 20-22.

The partnership process ultimately resulted in the

Partnership Agreement.  Under the Partnership Agreement, OCR and

Maryland made commitments.  Maryland promised to engage in a

process of:

- Strengthening Academic and Teacher Preparation
  Programs;
- Strengthening the Partnership with Elementary and
  Secondary School Stakeholders;
- Strengthening Recruitment and Admissions;
- Strengthening Retention and Graduation;
- Improving Campus Climate and Environment;
- Improving Diversity of Faculty/Staff and
  Governing/Advisory Boards;
- Improving and Expanding 2 + 2 Partnerships and
  Articulation;
- Avoiding Unnecessary Program Duplication and Expansion
  of Mission and Program Uniqueness and Institutional
  Identity at the HBCUs; and
- Enhancing Maryland's Historically Black Colleges and
  Universities.

Partnership Agreement, Part III.A.  Some of these commitments

were stated broadly[4] and others more specifically.[5]

Most of the OCR commitments were stated broadly[6] but there was a specific commitment to withhold commencement of federal enforcement action, stating:

> [D]uring the period of implementation of these commitments, OCR will not initiate enforcement action against Maryland based on a claim of statewide segregation of or discrimination against African Americans in the State's public system of higher education, unless good faith efforts to resolve such issues have been attempted and exhausted."

Partnership Agreement, Part III at 23.

The Partnership Agreement expired in December of 2005. On

---

[4]     For example, "Maryland's public campuses will give priority to developing relationships with public schools, particularly those with high concentrations of low-income and under-prepared students, in an effort to improve student preparation for college." Partnership Agreement, Part III.A.2 ("Strengthening the Partnership with Elementary and Secondary School Stakeholders").

[5]     For example,"each public four-year institution will identify a school district or group of schools where, in its judgment, collaborations will continue to enhance the institution's diversity and initiate collaborations with them by the 2001-2002 academic year." Id.

[6]     For example, providing expeditious review of Maryland's reports to OCR regarding its progress, technical assistance to Maryland and its public HBCUs in achieving desegregation, cooperation, feedback and assistance in implementing the State's commitments, and aid in hosting two conferences on themes involving diversity in education. Partnership Agreement, Part III.B.

June 19, 2006, MHEC submitted its final report to OCR, stating
that its own investigation showed that Maryland had complied with
all of its commitments under the Partnership Agreement.  See
Cover Letter to "OCR Final Report and Attachments," found at
http://www.mhec.state.md.us/higherEd/ocrplan/OCRLetterandattachme
nts.pdf (last visited Aug. 18, 2008).  It appears[7] that, to date,
OCR has issued no finding regarding Maryland's compliance - or
lack thereof - with its Partnership Agreement commitments.


II.   SUMMARY JUDGMENT STANDARD

        A motion for summary judgment shall be granted if the
pleadings and supporting documents "show that there is no genuine
issue as to any material fact and that the movant is entitled to
a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2007).
The well-established principles pertinent to such motions can be
distilled to a simple statement.

        The Court may look at the evidence presented in regard to
the motion for summary judgment through the non-movant's rose
colored glasses, but must view it realistically. After so doing,
the essential question is whether the reasonable fact finder
could return a verdict for the non-movant or whether the movant
would, at trial, be entitled to judgment as a matter of law.

--------

        [7]      Defense counsel confirmed this at the motion hearing.

E.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);

Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Adickes v.

S.H. Kress & Co., 398 U.S. 144, 158-59 (1970); Shealy v. Winston,

929 F.2d 1009, 1012 (4th Cir. 1991).


III. DISCUSSION

     Defendants seek partial summary judgment as to Count III of

the Amended Complaint.  Defendants argue that the Partnership

Agreement is not an enforceable contract and, in the alternative,

even if the Partnership Agreement is a binding contract,

Plaintiffs do not have standing to enforce it.  The Court will

address these contentions in turn.


     A.   The Partnership Agreement as a Contract

     Defendants claim that the text of the Partnership Agreement

establishes that the document is not a contract, but rather a

non-binding, "agreed upon course of conduct or work plan . . . ."

Defs.' Mem.[8] at 7.

     Maryland law defines a contract as "a promise or set of

promises for breach of which the law gives a remedy, or the

performance of which the law in some way recognizes as a duty."

------

     [8]   Defendants' Memorandum in Support of Motion for Partial
Summary Judgment [Document 40-2].

9

County Comm'rs for Carroll County v. Forty West Builders, Inc.,
941 A.2d 1181, 1209 (Md. Ct. Spec. App. 2008) (internal quotation
marks and citations omitted).  An agreement which purports to be
a contract "must express with definiteness and certainty the
nature and extent of the parties' obligations."  Id.  A contract
normally requires consideration.  Id. at 1213; Hill v. Peoplesoft
USA, Inc., 412 F.3d 540, 543 (4th Cir. 2005).

     The Court begins its analysis with the Partnership
Agreement's text.  The State points to several of Maryland's
Partnership Agreement commitments as support for its position
that the Partnership Agreement is not a contract.  One example
put forward by the State is the State's promise that "MHEC will
provide assistance to the [State's public higher education]
institutions, as may be needed or appropriate, in the design,
implementation and analysis of self-evaluation measures."
Partnership Agreement Part III.A.3.c.  The State urges that the
commitments contained within the Partnership Agreement are
"insufficiently clear and definite" to constitute contractual
obligations.  Defs.' Mem. at 8.

     Plaintiffs respond that the Partnership Agreement "committed
the State of Maryland to undertake extraordinary and specific
steps toward desegregation" and points to commitments such as the
capital improvement projects listed in Part III.9.b.1:

                              10

9b1 ("Enhancing Maryland's Historically Black Colleges and Universities"): Capital Enhancements of HBCUs: Maryland commits to the expeditious completion of the following capital improvement projects which have been approved to begin at Bowie, UMES and Morgan:

| Institution | Project | Projected Date of Completion |
|---|---|---|
| Bowie | Campus Site Development | FY2002 |
| | New Science Building | FY2002 |
| UMES | Food Science & Technology Center | FY2002 |
| | Construct Social Science, Education & Health Sciences Building | FY2003 |
| | Construct New Physical Plant Building | FY2003 |
| | Renovate Waters/Somerset Halls | FY2003 |
| Morgan | Construct New Community Center | FY2004 |
| | Construct Science Research Facility with Greenhouse | FY2002 |
| | Montebello Site Improvements | FY2001 |

The Court finds that the promises exchanged by MHEC and OCR and set forth in the Partnership Agreement are typical of promises exchanged in contract negotiations.  In addition to the general commitments cited by Defendants in their Motion, the State agreed to take specific steps toward desegregating Maryland's higher education system in compliance with federal law.  These steps include, at a minimum:

4d ("Strengthening Retention and Graduation"): At the completion of each academic year, MHEC will report retention and graduation data to OCR and will provide OCR with copies of each public institution's retention program plans for the upcoming academic year.

7e ("Improving and Expanding 2 + 2 Partnerships and Articulation"): By August 15, 2001, MHEC will

11

report to OCR on each public four-year institution's
programs for the 2001-2002 academic year.

9a4 ("Enhancing Maryland's Historically Black
Colleges and Universities"): Beginning with FY 2002,
[the State will] increase from its current $3,000,000
funding level, with the goal of doubling by FY 2003,
Access and Success, a program to assist students
enrolled in each of its HBCUs.  MHEC will provide OCR
with a status report on August 15 of each year.

9a5 ("Enhancing Maryland's Historically Black
Colleges and Universities"): [The State will a]mend the
State's Private Donation Incentive Program for each of
its HBCUs matching two dollars of State funds for every
one dollar raised by each institution from the private
sector. . . . On January 31, 2001, April 30, 2001 and
August 15, 2001, MHEC will provide reports to OCR on
the status and progress of the State's enhancement
measures consistent with the provisions above.

9b1 ("Enhancing Maryland's Historically Black
Colleges and Universities"): Capital Enhancements of
HBCUs: Maryland commits to the expeditious completion
of the following capital improvement projects which
have been approved to begin at Bowie, UMES and Morgan:

| Institution | Project | Projected Date of Completion |
|---|---|---|
| Bowie | Campus Site Development | FY2002 |
|  | New Science Building | FY2002 |
| UMES | Food Science & Technology Center | FY2002 |
|  | Construct Social Science, Education & Health Sciences Building | FY2003 |
|  | Construct New Physical Plant Building | FY2003 |
|  | Renovate Waters/Somerset Halls | FY2003 |
| Morgan | Construct New Community Center | FY2004 |
|  | Construct Science Research Facility with Greenhouse | FY2002 |
|  | Montebello Site Improvements | FY2001 |

Partnership Agreement, Part III.A.

12

In turn, OCR committed itself to providing technical and other assistance to aid Maryland's efforts to desegregate.  More importantly, however, OCR made the very specific commitment to forbear litigation against the State throughout the duration of the Partnership process:

> Except as stated below, during the period of implementation of these commitments, OCR will not initiate enforcement action against Maryland based on a claim of statewide segregation of or discrimination against African Americans in the State's public system of higher education, unless good faith efforts to resolve such issues have been attempted and exhausted.

Partnership Agreement, Part III at page 23.

Each party made their commitments in consideration of the other party's promises.  In particular, in return for Maryland's commitments, OCR agreed not to commence an enforcement action. If Maryland were in compliance with its obligations, it would appear to have a right, based upon the Partnership Agreement, to prevent OCR from commencing an enforcement action.

There may be a fact question that would prevent summary judgment for Plaintiffs on the question of the existence of a contract.  However, most definitely the Defendants are not entitled to summary judgment on the issue.  It is, therefore, necessary to determine whether Plaintiffs can enforce the Partnership Agreement.

13

B.   <u>Plaintiffs as Third Party Beneficiaries</u>

Maryland law recognizes third-party beneficiaries as an exception to the privity requirement of contracts.  A non-party seeking to enforce a contract must first show that "the parties intended to recognize the third party as the primary party in interest and as privy to the promise."  <u>Lovell Land, Inc. v. State Highway Admin.</u>, 2008 WL 2610823, at *12 (Md. Ct. Spec. App. Jul. 3, 2008).  Intent is the "principal touchstone" for determining the existence of a third party beneficiary.  <u>Id.</u> (citing <u>Volcjak v. Washington County Hosp. Ass'n</u>, 723 A.2d 463, 477 (Md. Ct. Spec. App. 1999)).  "The primary source for determining whether the parties intended a third party to have standing to enforce the contractual provisions is the language of the contract itself."  <u>Volcjak</u>, 723 A.2d at 477.

The Plaintiffs are 1) a corporation with an interest in Maryland's State-funded Historically Black Colleges and Universities, and 2) individual African American students and alumni of Maryland's public HBCUs.  Plaintiffs would benefit from the State's efforts taken under the Partnership Agreement to desegregate its public higher education system.  But it is not sufficient that the Partnership Agreement operates for Plaintiffs' benefit.  <u>See</u> <u>Volcjak</u>, 723 A.2d at 477.  The

14

Partnership Agreement must demonstrate the parties' intent to confer upon Plaintiffs the right to enforce the Agreement's terms.

The Partnership Agreement does not state that there was any intent to confer enforcement standing upon any third party to the Agreement.  It is true that the Partnership Agreement's focus is on the needs of African American students in Maryland.  However, the contract is one between two government entities agreeing to avoid litigation between them, litigation as to which no non-governmental entity or individual would be a party.

Plaintiffs' sole support for their contention that they have standing to enforce the Agreement is a statement by John J. Oliver Jr.,[9] MHEC's Chair at the time it entered into the Partnership Agreement.  In his declaration, Oliver states: "When I signed the Partnership Agreement with the OCR, I understood Maryland as entering into an agreement to fulfill the nine outlined commitments enforceable by parties to the contract or any residents of Maryland affected by the state's failure to

_____

[9]     Plaintiffs have also produced a declaration by Raymond Pierce, who served as OCR's Assistant Secretary prior to the Partnership Agreement's signing.  Mr. Pierce was not with OCR at the time it entered into the Partnership Agreement, and his statement does not address the matter of any third party beneficiary status.

15

desegregate its higher education system."  Pls.' Opp., Ex. A at
2.  The Court has no reason to doubt the sincerity of Mr.
Oliver's statement - however, what is material is what was agreed
by the terms of the contract.  See Musick v. Musick, 144 Md. App.
494, 501(Md. Ct. Spec. App. 2002) ("parties to a written contract
will not be allowed to place their own interpretation on what it
means or was intended to mean").

     Under Maryland's objective theory of contract
interpretation, the terms of the Partnership Agreement must be
read from the perspective of the reasonable reader rather than
from the subjective point of view of the parties.  The text of
the Partnership Agreement demonstrates the absence of any intent
to grant standing to any third party beneficiary.  The record
does not contain evidence that would create any genuine issue of
material fact as to third party beneficiary status.

     Accordingly, Defendants are entitled to summary judgment on
Plaintiffs' third cause of action - breach of contract.[10]

---

[10]     The Court does not reach Defendants' sovereign immunity
and statute of limitations defenses.

16

**IV.   CONCLUSION**

For the foregoing reasons:

      1.    Defendants' Motion for Partial Summary Judgment
          [Re: Contract Claim][[Document 40] is GRANTED.

      2.    The case shall proceed with regard to Plaintiffs'
          First and Second Causes of Action.

So ORDERED, Wednesday, August 20, 2008.

_____/S/_____
Marvin J. Garbis
United States District Judge
