**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **THE COALITION FOR EQUITY AND EXCELLENCE IN MARYLAND HIGHER EDUCATION, et al.,** | * | **Trial Date: June 27, 2011** |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No. CCB-06-CV-2773** |
| **MARYLAND HIGHER EDUCATION COMMISSION, et al.,** | * | |
| **Defendants.** | * | |

***  *  *  *  *  *  *  *  *  *  *  *  *  ***

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* REGARDING CERTAIN OF DEFENDANTS' WITNESSES AND EXHIBITS**

Respectfully Submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

STEVEN M. SULLIVAN
Assistant Attorney General
Federal Bar No. 24930
CAMPBELL KILLEFER
Assistant Attorney General
Federal Bar No. 05707
CAROLYN W. SKOLNIK
Assistant Attorney General
Federal Bar No. 23484
BEATRICE NUÑEZ-BELLAMY
Honors Attorney
Federal Bar No. 29582

CATHERINE M. SHULTZ
Assistant Attorney General
Federal Bar No. 15635
DENISHA A. WATSON
Assistant Attorney General
Federal Bar No. 29214

Maryland Higher Education Commission
839 Bestgate Road, Suite 400
Annapolis, MD 21401-3013
Tel: (410) 260-4505

Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202-2021
Tel: (410) 576-7644

Counsel for Defendants

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................ ...1

ARGUMENT.................................................................................................................. ...2

I. PLAINTIFFS' BELATED DISSATISFACTION WITH THE RESULTS OF THEIR DISCOVERY AND TRIAL STRATEGY IS NO REASON TO PENALIZE DEFENDANTS ....................................................................................... ...2

A. Plaintiffs' Strategies and Not Defendants' Conduct Resulted in Plaintiffs' Lack of Awareness of Fourteen Witnesses.........................................................5

B. Plaintiffs Have Information on the Fourteen Witnesses They Seek to Bar Because They Decidedly Are Not "Never-Before-Heard-Of"………………… 8

C. Plaintiffs Are Not Harmed By the Few Remaining Categories of Witnesses that Defendants, By Necessity, Must Name Categorically……………………......15

D. Plaintiffs Have Primary Responsibility for the Imperfect Production of Academic Program Files…………………………………………………...…18

II. PLAINTIFFS' COMPLAINTS ABOUT DEFENDANTS' EXHIBIT LIST ARE OFF-THE-MARK AND, TO THE EXTENT THEIR CONCERNS HAVE ANY VALIDITY, ARE AND HAVE BEEN EASILY REMEDIED............................. 22

CONCLUSION ........................................................................................................ 22

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Maryland Higher Education Commission, *et al.* ("MHEC" or "Maryland"), respectfully submit this opposition to Plaintiffs' motion *in limine* seeking to bar two dozen witnesses from testifying and prevent Defendants from introducing many of their exhibits.

By the sweeping scope of Plaintiffs' Fourth Amended Complaint, Plaintiffs have created a complex case involving virtually every aspect of Maryland's public four-year higher education system – the thirteen institutions; the 157,962 students; the 10,619 faculty members; the 2,400 academic programs offered by these institutions; and the administrators, researchers, deans, provosts, financial aid officials, facilities managers and the like who are necessary to support student learning.[1] (Docket No. 165.) This case involves major public policy issues about the coordination of public higher education and the allocation of state resources, necessarily involving the Secretary and staff of the Maryland Higher Education Commission and their responsibilities for research, program approval, financial aid and review of funding levels and facilities, the Maryland General Assembly, and the Maryland Department of Budget and Management, among others.

Plaintiffs' 151-paragraph Fourth Amended Complaint contains allegations about

[1] See 2011 Maryland Higher Education Commission Data Book at page 7, which may be accessed at http://www.mhec.state.md.us/publications/research/AnnualPublications/2011DataBook.pdf. The academic program inventory for public four-year institutions may be derived from the information at http://www.mhec.state.md.us/higherEd/colleges_universities/index.asp.

resource allocation, public policy and many higher education issues spanning several decades. Discovery has taken place on these complex and numerous matters for more than two years, and has produced reams of paper and electronic documents. The parties in good faith have worked together to make the discovery process work as well as possible. That Plaintiffs and Defendants do not have a perfect grasp on each document and each witness is to be expected in such a massive case. Litigants rarely go to trial knowing absolutely everything ahead of time. This is especially true in a large complex case such as this one. Plaintiffs' request for relief from what amounts to the typical vicissitudes of major litigation, much of which is due to Plaintiffs' own strategy and focus of discovery, should be denied.

## ARGUMENT

### I. PLAINTIFFS' BELATED DISSATISFACTION WITH THE RESULTS OF THEIR DISCOVERY AND TRIAL STRATEGY IS NO REASON TO PENALIZE DEFENDANTS.

Plaintiffs made tactical and strategic decisions in drafting their extraordinarily broad complaint and their pursuit of extensive discovery. As often is the case, the results of those decisions are not without flaws, but Plaintiffs must live with the consequences of their decisions. Instead, Plaintiffs seek a Court Order barring the testimony of 14 named witnesses, four categories of witnesses, and numerous documents. Plaintiffs' efforts to shift responsibility to Defendants for the imperfect results of their tactical decisions -- particularly when there is no evidence of bad faith nor lack of diligence on the part of

Defendants -- should fail.

Fed. R. Civ. Proc. 37(c)(1) provides, in relevant part, that if a party fails to disclose information required by Rule 26(a), the party is not allowed to use that information or witness unless the failure "was substantially justified or is harmless." Here, Plaintiffs seek to preclude Defendants from offering witnesses and exhibits that Plaintiffs claim were not adequately disclosed. Plaintiffs' motion should be denied, because Defendants' responses and production were substantially justified, given the breadth and imprecision of Plaintiffs' discovery requests and the problems caused by Plaintiffs' discovery strategies and techniques. Further, Plaintiffs were not harmed by any alleged inadequacy in Defendants' responses.

Courts have broad discretion in determining whether nondisclosure of evidence is substantially justified or harmless under Rule 37(c). In exercising such discretion, the Court applies the following five-factor test:

1. The surprise to the party against whom the witness was to have testified;
2. The ability of the party to cure that surprise;
3. The extent to which allowing the testimony would disrupt the trial;
4. The explanation for the party's failure to name the witness before trial; and
5. The importance of the testimony.

*Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003).

As discussed below, these factors weigh in favor of Defendants. Plaintiffs have no basis to complain that they are "surprised" by the alleged nondisclosures. All of the names of the witnesses Plaintiffs claim were not timely identified were provided to Plaintiffs in discovery responses. *See, e.g., EMI Music Marketing v. Avatar Records, Inc.*, 334 F. Supp. 2d 442 (S.D. N.Y. 2004) (denying plaintiff's motion *in limine* to preclude testimony of witnesses and introduction of exhibits which plaintiff claimed had not previously been formally disclosed; although defendant may not have previously formally disclosed witnesses and exhibits, it was clear that plaintiff was aware of their existence and relevance, as witnesses included current or former employees whose names had been disclosed or included in documents, and challenged exhibits were documents which had been previously produced); *see also Rooney v. Sprague Energy Corp.*, 519 F. Supp. 110 (D. Me. 2007) (declining to grant plaintiff's motion in limine for allegedly late identification of witness where it was unclear whether plaintiff actually sought challenged information through its interrogatories and, in any event, plaintiff was made aware of identity of witness during a deposition).

Further, the information provided to Plaintiffs enabled them to determine, with little or no effort, the identity of all of Defendants' potential witnesses, even those identified by category. Plaintiffs now have as complete responses to Plaintiffs' discovery as Defendants are able to give. Any alleged inadequacy in Defendants' disclosure is harmless. As such, there is nothing to "cure."

Further, given the tremendous breadth of Plaintiffs' claims and the uncertainty as to which of the numerous aspects of their claims Plaintiffs will choose to focus upon at trial, Defendants necessarily provided broad information sufficient to apprise Plaintiffs of the categories of witnesses available to address each area. Plaintiffs chose *not* to further refine their requests, focus their inquiry, seek more specific information or inform the Defendants of the specific nature of their claims. In light of Plaintiffs' discovery approaches, Defendants' responses were both adequate and substantially justified.

### A. Plaintiffs' Strategies and Not Defendants' Conduct Resulted in Plaintiffs' Lack of Awareness of Fourteen Witnesses.

Plaintiffs decided what to allege in their complaint, the time periods covered by the complaint, their written discovery requests, when and how to conduct discovery, the individuals to be deposed, the use of Rule 30(b)(6) depositions for which they could not specify the deponent or deponents, the topics of all depositions, the questions asked in interrogatories and at deposition, and the documents requested. Ultimately, Plaintiffs took 27 depositions, ten of which were Rule 30(b)(6) depositions that involved the questioning of as many as five individuals.

Plaintiffs received more than 120,000 pages of documents and information from Defendants in response to their 11 sets of requests for documents (totaling 149 separately numbered requests), 20 interrogatories, and seven requests for admissions. Having pursued their chosen strategy of how to prosecute this case, Plaintiffs now cry foul and seek to bar the testimony of fourteen allegedly "never-before-heard-of" witnesses.

Plaintiffs' Memorandum in Support of their Motion in Limine at 2. (Doc. 223-1.) Plaintiffs assert that because they supposedly had no knowledge of these fourteen individuals, Plaintiffs did not depose them. Had Plaintiffs' counsel chosen a different approach, they could have deposed the witnesses. That Plaintiffs' approach proved to be imperfect is no reason to penalize Defendants.

By agreement, the parties disclosed their initial lists of individuals with personal knowledge pursuant to Fed. R. Civ. Proc. 26(a)(1) on October 30, 2008.[2] Rule 26 (a)(1) requires only that the Defendants disclose "information reasonably known" at the time of disclosure. Reflecting the complexity of the issues and numerous allegations spanning decades set forth in the complaint, Defendants listed 101 individuals by name, title and, to the extent possible, dates of service in their positions, ranging from 1982 to the present. See Defendants' Initial Witness Disclosures, attached hereto as Exhibit 1. In contrast, *Plaintiffs listed only two witnesses*. See Plaintiffs' Initial Witness Disclosures, attached hereto as Exhibit 2.

In addition to the named individuals, Defendants listed four categories of individuals with personal knowledge: (i) members and staff of a legislative commission on higher education funding; (ii) officials at the University System of Maryland; (iii) officials at Maryland's four-year institutions; and (iv) program analysts who may have reviewed a

[2] The parties, also by agreement, chose 45-days before trial -- an earlier time than that required by Fed. R. Civ. Proc. 26(a)(3) -- to disclose their final witness lists in acknowledgement of the complexity of this case and the likelihood of numerous witnesses. *See* Initial Joint Proposed Discovery Plan. (Doc. 131.)

program disputed by Plaintiffs.[3] At the early stage of the litigation and faced with a multi-allegation complaint, Defendants in good faith disclosed the names of those who "may have knowledge" of the facts and defenses related to the allegations in the complaints.

Plaintiffs already had begun serving the first of their 11 requests for production of documents when the parties exchanged their initial disclosure lists. Plaintiffs used the requests for production of documents to gather information on the legislative funding commission: the Commission to Develop the Maryland Model for Funding Higher Education. See Plaintiffs' Second Set of Requests for Production of Documents, attached hereto as Exhibit 3. Plaintiffs chose *not* to serve interrogatories to learn about the listed witnesses or to discover the identity of the unnamed individuals on the initial disclosure.

On August 24, 2009, Plaintiffs finally served interrogatories on all Defendants. Plaintiffs did not use the interrogatories to learn about the listed witnesses or categories of witnesses so that they might take their depositions. See Plaintiffs' First Set of Interrogatories to All Defendants, attached hereto as Exhibit 4. Perhaps most tellingly, Plaintiffs, with full knowledge of the 101 named individuals and four categories of

---

[3] Plaintiffs had the same ability as Defendants, The Maryland Higher Education Commission, its chair and Secretary, to determine the members of the first three categories, because the listed entities and their governing bodies are separate entities from Defendants, the State's coordinating body for higher education. Md. Annotated Code, Education Article § 10-207. The fourth category was added in recognition that other individuals, beyond the named analysts, may have been assigned to review one or more of the many programs not identified with specificity by Plaintiffs.

individuals and Defendants' statement that Defendants could not make assurances that their disclosures were complete, nonetheless agreed to limit each side to 25 depositions. That limitation agreement was incorporated in an Order of Court. *See* Court Order dated November 24, 2009 (Doc. 92).

Beginning in January 2010, Plaintiffs noted several Rule 30(b)(6) depositions and chose the topics that were to be covered. They did *not* use those depositions to discover information about the witnesses and categories of witnesses listed on the initial disclosure list. Plaintiffs also chose *not* to take a Rule 30(b)(6) deposition of the University System of Maryland, one of the entities for which unnamed officials were set forth in Defendants' initial disclosure. They also chose which individuals to depose. In September 2010, Plaintiffs agreed to forego exchanging an updated initial disclosure list. S*ee* E-mail exchange between Michael Jones and DeNisha Watson, attached hereto as Exhibit 5.

These and other specific, tactical decisions of Plaintiffs – singly or taken together -- had the consequence that there are some witnesses with whom Plaintiffs claim to be unfamiliar. This is a self-inflicted wound. Had Plaintiffs pursued their discovery in a different manner, they may well have known whether the witnesses were relevant. For certain, the situation in which Plaintiffs find themselves is not the fault of Defendants' actions.

### B. Plaintiffs Have Information on the Fourteen Witnesses They Seek to Bar Because They Decidedly Are Not "Never-Before-Heard-Of".

Plaintiffs' description of these individuals as "never-before-heard-of" witnesses is

preposterous. Plaintiffs' Memorandum at 2 (Doc. 223-1). Take, for example, Eloise Foster. Ms. Foster is Maryland's Secretary of Budget and Management. She was a member of the Commission to Develop the Maryland Model for Funding Higher Education. *See* http://mlis.state.md.us/other/Funding_Higher_Ed/index.htm. The Commission's members were listed in the October 2008 initial disclosure as a category of individuals who had personal knowledge about the case. With minimal effort, Plaintiffs readily could have retrieved her name from the roster posted on the Funding Commission's website in the Fall of 2008. http://mlis.state.md.us/other/Funding_Higher_Ed/2008Roster.pdf, attached hereto as Exhibit 6[4] Moreover, on December 5, 2008, less than 40 days after the initial disclosure, Defendants provided Plaintiffs with an index to the materials on the Funding Commission's website, which included a Commission member roster. *See* E-mail from Ms. Anne Donahue to Mr. Aderson Francois, attached hereto as Exhibit 7.

In addition, Plaintiffs acknowledged receipt of a compact disc containing all of the voluminous materials on the Funding Commission website on June 11, 2009, more than six months before Plaintiffs noted depositions.[5] *See* E-mail exchange between Anne Donahue and Aderson Francois, attached hereto as Exhibit 8.

---

[4] The website also contained a report presented to the Funding Commission by Secretary Foster. http://mlis.state.md.us/other/Funding_Higher_Ed/2007Jun18_Fiscal_Outlook.pdf.

[5] Secretary Foster is not the only allegedly "never-before-heard-of" witness who was disclosed in these materials. Murray K. ("Ray") Hoy also was on the roster of members of the Funding Commission. *See* Exhibit 6. Plaintiffs did take the depositions of four Funding Commission members: Drs. Aldridge, Kirwan, Lyons and Richardson.

Even if Plaintiffs paid no attention to the extensive Funding Commission materials provided by Defendants in response to Plaintiffs' Second Request for Production of Documents, it is inconceivable that Plaintiffs could in good faith assert that Maryland's Secretary of Budget and Management is a "never-before-heard-of" witness when Plaintiffs devote 16 paragraphs of the complaint to funding issues and seek as a remedy in this case significant additional funding from the State. *See* Fourth Amended Complaint at ¶¶ 91-105, 139 and 143 and ¶¶ d, e, h, i, and j of the Prayers for Relief. (Doc. 165.)

Secretary Foster, an allegedly "never-before-heard-of" witness, was discussed in several depositions well over a year ago. On March 8, 2010, Plaintiffs showed deponent Geoffrey Newman an exhibit and asked him to identify the members of a particular committee that had authored the exhibit. *See* Transcript of Deposition of Geoffrey Newman (excerpts) at 176, attached hereto as Exhibit 9. Among the members identified was "Ms. T. Eloise Foster." *Id.* at p. 177, line 3. This question and answer then followed.

> Q What about Ms. T. Eloise Foster?
>
> A Ms. T. Eloise Foster at the time of the work group committee was a managing member of her own company. She was a former Secretary to the Department of Budget and Management prior to that under Governor Glendening, and *she is now currently the Secretary for the Department of Budget and Management under Governor O'Malley*.

*Id.* at lines 9 – 15 (emphasis added).

On March 16, 2010, the following exchange occurred between Plaintiffs' counsel and David Treasure during Mr. Treasure's deposition as a Rule 30(b)(6) designee of the Department of Budget and Management. *See* Transcript of Deposition of David Treasure (excerpts) attached hereto as Exhibit 10.

Q Other than Ms. Shultz and Mr. Martin, did you meet with anybody else in preparation for today's deposition?

A I met with Eloise Foster, the Secretary of Budget and Management.

Q What was the nature of your meeting with Ms. Foster?

A Just to clarify and make sure she understood that I would be speaking for the Department and to make sure I understand aspects of the department's position.

Q What aspects of the department's position did you discuss with the Secretary of Budget and Management?

A I was talking to her about her participation on the Commission for the Development of the Funding Model and to what extent she may have reacted to statements in there about comparability and competitiveness.

Q Did the Secretary of Budget and Management express to you in words or substance any view concerning whether Maryland's historically Black institutions were comparable and competitive with Maryland's traditionally White institutions?

***

A I would say that she expressed concurrence with the position that I articulated and what I would – how I would evaluate those propositions?

Q What was the position that you articulated?

A I articulated that, in my view, that the institutions were comparable and that they were competitive.

*Id.* at page 6, lines 12 – 25 and page 7, lines 1 – 23.

This exchange amply disclosed the role of Secretary Foster on the Funding Commission, whose members were on the initial disclosure. *Id.* at pages 24-26, in which Plaintiffs' counsel specifically ask "Who is the Secretary of Budget and Management?" and Mr. Treasure provides her name and explains her role as requested.

Mr. Chadfield Clapsaddle was the other Rule 30(b)(6) designee for the Department of Budget and Management. He, too, explained at some length the role of the Office of the Secretary of Budget and Management. Deposition of Chadfield Clapsaddle at page10, line 14; page 19, lines 15-25; page 20, lines 1-25; page 26, lines 16-18; and page 45, lines 6-8, attached hereto as Exhibit 11. These depositions occurred well before the end of discovery.

The other so-called "late-identified" and "never-before-heard-of" witnesses who Plaintiffs seek to bar also were covered by the categories of witnesses disclosed in the initial disclosure. Plaintiffs' Memorandum at 2 and 3. Mark Beck was covered under

the University System of Maryland disclosure of "budget experts – capital and operating." Had Plaintiffs used a different strategy in their institutional Rule 30(b)(6) depositions, Plaintiffs could have asked pertinent questions and would have learned of Mr. Beck. Moreover, one of Plaintiffs' experts, Dr. Harvey Kaiser, was well aware of Mr. Beck, because Dr. Kaiser contacted Mr. Beck without disclosing that Dr. Kaiser was working with Plaintiffs. *See* E-mail exchange between Dr. Kaiser and Mark Beck, attached hereto as Exhibit 12. Dr. Kaiser admitted during his deposition, after first stating that he had "[o]penly [stated] that [he] was hired by the Coalition as an expert in the case," that he did *not* tell Mr. Beck that he had been retained by the Coalition. Deposition of Dr. Harvey Kaiser at pages 9-11 (excerpt), attached hereto as Exhibit 13.

Anthony Foster and Benjamin Passmore fall in the same category as Mr. Beck, "budget experts – capital and operating" of the University System of Maryland with their emphasis being on research. UMBC Provost Elliot Hirshman falls in the categories of Provosts and Academic Deans. Jonathan Gibraltar is the president of Frostburg State University. John Wolfe, Wray Blair and Lonnie McNew are covered by the diversity initiatives category.[6] As stated above, had the Plaintiffs been interested in determining the names of persons covered by the categories of witnesses, Plaintiffs could have asked about them during their Rule 30(b)(6) depositions of the institutional representative: who is your budget expert, who are your vice presidents, who works on retention issues, who

[6] Mr. Blair's first name is incorrect on Defendant's Witness List. (Doc. 223-4.)

works on diversity issues, and the like. Similarly, Plaintiffs could have taken a Rule 30(b)(6) deposition of the University System of Maryland or questioned Chancellor Kirwan about these categories during his deposition. Plaintiffs' lack of interest and diligence is the self-inflicted wound of which Plaintiffs complain, but do not make Defendants' witnesses off-limits.

Moreover, Plaintiffs had other sources of information on these individuals. In addition to being covered by the disclosed categories, John Wolfe and Benjamin Passmore helped develop the 2009 State Plan for Postsecondary Education, http://www.mhec.state.md.us/higherEd/2004Plan/JUNE_2009_FinalEdited.pdf., copies of which were produced during discovery. Plaintiffs conducted a Rule 30(b)(6) deposition on the topic of the State Plan. Had they used that deposition differently, Plaintiffs easily could have learned more about these gentlemen.

Finally, the "never-before-heard-of" witnesses include four current and former employees of the Maryland Higher Education Commission (MHEC): David Beard; Takeia Bradley; Robert Parker; and Elizabeth Urbanski. Each of these individuals could have been found on the MHEC's website. http://www.mhec.state.md.us. On July 11, 2009, Defendants provided Plaintiffs with a compact disk containing screen shots of *every page* of its website, and recommended that they continue to monitor the website.[7] Letter

[7] Four other so-called "never-before-heard-of" witnesses names also can be found by a search of MHEC's website: Mark Beck; John Wolfe; Benjamin Passmore; and Anthony Foster.

from Catherine Shultz to Aderson Francois, attached hereto as Exhibit 14.

Had Plaintiffs selected topics related to these employees' responsibilities, these employees may have been among MHEC's Rule 30(b)(6) designees, but Plaintiffs did not pursue that route. Plaintiffs pursued their particular discovery priorities, and Defendants pursued theirs. That Plaintiffs' discovery efforts were not perfect is no reason to penalize Defendants.

Last, many State documents provided through discovery include reference to all of these "never-before-heard-of" witnesses. Had Plaintiffs' counsel asked for information on these witnesses prior to filing Plaintiffs' Motion *in Limine*, Defendants would have supplied hundreds of Bates numbers.

In short, Plaintiffs' chosen discovery strategy, and perhaps the extreme volume of paper and electronic documents in this case, has resulted in Plaintiffs' false assertion that these 14 witnesses are "never-before-heard-of," but Plaintiffs have no valid reason to complain. Defendants should be permitted to call the 14 witnesses at trial if Defendants so choose.

### C. Plaintiffs Are Not Harmed By the Few Remaining Categories of Witnesses that Defendants, By Necessity, Must Name Categorically.

Defendants have disclosed four categories of witnesses: custodians of records; photographers and/or videographers; successors to identified witnesses; and deans or department chairs of any academic programs alleged by Plaintiffs to be unnecessarily duplicative. Custodians of records will only be used to authenticate records. *See*

Defendants' Witness List, attached hereto as Exhibit 15 at p. 1 ("If Plaintiffs do not agree to authenticity of exhibits, Defendants reserve the right to call witnesses for the purpose of authenticating documents.") No substantive testimony will be offered through them. Plaintiffs have no need to know their identity in advance of trial and may cross-examine them as necessary. The same is true for photographers or videographers. Plaintiffs may cross-examine them to discern how the video or photography occurred, the conditions, their instructions and the like, but the individuals will not be offering substantive testimony. Plaintiffs have no need to know the identity of any such witness in advance of trial.

The successor category is necessitated by retirements and transfers. James E. Lyons, Sr., has retired. He was sued in his official capacity, and thus is no longer a Defendant. Elisabeth A. Sachs is the Interim Secretary of Higher Education and, therefore, is a substituted named Defendant. Similarly, Kevin M. O'Keefe is no longer Chairman of the Commission; Anwer Hasan now is Chairman. As such, Mr. Hasan is now a substituted named Defendant. Because they are newly in their positions, the Defendants were unable to name them earlier. The same is true for a successor to Thelma Thompson, the president of University of Maryland Eastern Shore, who is retiring. Plaintiffs are not disadvantaged by the addition of these witnesses.

The other two possible successor witnesses are the persons who have replaced Candace Caraco and Takeia Bradley, and taken over their responsibilities. Because

Plaintiffs did not choose to depose Ms. Caraco or Ms. Bradley, they are not disadvantaged by any substitution.

Last, Plaintiffs seek to bar testimony from "the deans or department chairs of any academic programs alleged by Plaintiffs to be illegal." Defendants listed these witnesses generically because "Plaintiffs have not identified the implicated programs [making it] impossible to further specify these identities." Defendant's Witness List at p. 4 (Ex. 15). Plaintiffs belittle the Defendants' position, claiming that Plaintiffs provided "a chart detailing the programs Plaintiffs allege are unnecessarily duplicative." Plaintiff's Memorandum at 14. (Document 223-1.) Plaintiffs have done nothing of the sort. Plaintiffs cite an e-mail from Ms. Harris to Ms. Donahue, which states: "To ensure we are all on the same page, I am attaching an updated spreadsheet reflecting the documents we have by way of 'files' on each program from MHEC." See Plaintiffs' Exhibit 21, Document 223-24 at 3. This e-mail does *not* say: "these are the specific programs we allege are illegal." Nor is that a fair interpretation of the e-mail. The context of this e-mail chain and other related correspondence demonstrates that the issue was whether or not Plaintiffs have certain program approval files and nothing more.

In fact, Plaintiffs have yet to let Defendants know which programs will be put at issue at trial. Defendants are able to make some assumptions based on the complaint, but do not know the programs with any specificity. Moreover, it is inconceivable that Plaintiffs plan to put on evidence on the 193 academic programs listed on Plaintiffs'

Exhibit 21. However, if they choose to present evidence on a particular program decision, Defendants are entitled to call the dean or department head in defense. Without Plaintiffs' specific designation, the Defendants cannot identify their witnesses on a particular program approval decision.

Further, Plaintiffs are not harmed by the lack of specificity on these witnesses. Plaintiffs never attempted to discover specific information from the Defendants on this category of witnesses through any of Plaintiffs' discovery efforts despite knowing of this category of deans and department heads since September 30, 2008 – over 20 months. Plaintiffs will be able to have their witnesses explain why in their view a program is unnecessarily duplicative. In contrast, Defendants would be at an extreme disadvantage if Defendants were not able to explain the educational justification for a program by relevant decision makers.

**D. Plaintiffs Have Primary Responsibility for the Imperfect Production of Academic Program Files.**

The production of academic program approval files has been a challenge to both parties, and each has an imperfect system. First, Plaintiffs have presented a "moving target" over five years. Plaintiffs' complaint references less than a dozen alleged instances of program duplication. Fourth Amended Complaint at ¶¶ 79 – 90 (Doc. 165.) Plaintiffs' interrogatories ask about the expansion of the University of Baltimore; engineering programs at UMBC and Morgan; joint masters of business administration at UB and Towson; and the graduate level Public Health program at UMB. *See*

Interrogatories at 4-7. (Ex.4.) Plaintiffs' answers to Defendants' interrogatories point to ten examples. *See* Plaintiffs' Answer to Defendants' Interrogatory No. 2, attached hereto as Exhibit 16. Plaintiffs' first set of requests for production of documents establishes a timeframe, which asks for decisions relating to the expansion of educational programs at any public four-year institution starting in 1996 and specifically requests documents relating to 15 programs. *See* Plaintiffs' First Set of Requests for Production of Documents, Request No. 10, attached hereto as Exhibit 17. During her deposition, Dr. Sue Blanshan was asked about programs beginning with 1988. (Doc. 223-11.) Periodically, Plaintiffs would ask for additional program records, some pre-dating this timeframe, which were produced if located by Defendants. *See* Correspondence among Plaintiffs' and Defendants' counsel, attached hereto as Exhibit 18.

Defendants have in good faith attempted to produce the necessary records, in response to Plaintiffs' changing focus, beginning with the request for production of documents of program files since 1996. MHEC staff searched for these records diligently and they were produced for Plaintiffs' counsel in January 2009. Declaration of Dr. Sue Blanshan, attached hereto as Exhibit 19. Unfortunately, neither Plaintiffs nor Defendants know what Plaintiffs' team of law students conducting the initial review tabbed for copying and production, and what they chose to omit. See E-mail from Catherine Shultz to Savaria Harris, attached hereto as Exhibit 20. Thus, alleged gaps in production are as likely to have resulted from Plaintiffs' actions as Defendants' inability to locate certain

academic program files. Further, because the students also did not understand to keep the files in their original order, Defendants' files were inadvertently commingled and mixed up, adding to Defendants' later burden in filling holes that Plaintiffs asserted existed.

Veteran MHEC staff had been assigned to do the original search and production of documents. Blanshan Decl. at 3. They reported that some of the records had been destroyed when the MHEC offices were moved in May 2002, and that the records were poorly organized and documents missing, so they could not find all the requested documents. Plaintiffs from time to time requested additional program files, and those files were produced. Blanshan Decl. at 4. When Plaintiffs reported that files that were covered by the original request for production of documents were missing, MHEC staff searched again. Blanshan Decl. at 5. If the files already had been produced, the Bates number was provided to Plaintiffs. *See E*x. 18. If the files had not already been produced, and were found, they were produced. *Id.*

In early 2011, while working on a different matter, a new MHEC staff person found two files that had not previously been located. Blanshan Decl. at 6. These files were promptly produced to Plaintiffs. *See* Letter from Anne Donahue to Savaria Harris. (Doc. 223-22.) Ms. Harris logically then sought confirmation that the "holes" in her document request now were filled. The new MHEC employee who located the two files was asked to search for any other files under the theory that new or different eyes might be able to find a file that had previously been overlooked. Blanshan Decl. at 6.

This significant effort at a second review unfortunately became an example of the adage "no good deed goes unpunished." The staff member pulled all related files, like name changes, off-campus approvals and discontinuance approvals, and did not limit herself to the program approval process documents. Blanshan Decl. at 7. This resulted in approximately eight inches of paper files, which were sent to the production vendor, creating the large number of documents that are the subject of Plaintiffs' complaint. A review of these documents demonstrates that many pre-dated the time frame in the Plaintiffs' request for production of documents, many were records of program actions unrelated to the initial program approval, and -- as Plaintiffs' concede -- a number of the files had been produced earlier. *See* Plaintiffs' Memorandum at 10, and Blanshan Decl. at 7.

In short, this effort -- aimed as helping Plaintiffs -- instead produced a mixed result. To the extent there are helpful files in this overbroad production, neither party is advantaged, because these files were as lost to Defendants as much as they were unavailable to Plaintiffs.[8] Defendants in no way gained an advantage. Now both parties have the documents. A mistake of multiple causes, including Plaintiffs' actions, provides no justification to bar relevant documents from introduction at trial.

---

[8] Plaintiffs found at least one program file useful, having listed it on their Exhibit List at no. 487, PS5_00001256. (Doc. 219.)

## II. PLAINTIFFS' COMPLAINTS ABOUT DEFENDANTS' EXHIBIT LIST ARE OFF-THE-MARK AND, TO THE EXTENT THEIR CONCERNS HAVE ANY VALIDITY, ARE AND HAVE BEEN EASILY REMEDIED.

Plaintiffs concede that the parties are amicably resolving Plaintiffs' concerns about Defendants' list. Memorandum at 18. Defendants will provide Plaintiffs with a disk containing a complete set of exhibits, which should resolve Plaintiffs' concerns.

Even though this issue is resolved, Defendants are compelled to point out that the allegedly vague descriptions of documents and categories of documents on Plaintiffs' "representative list" should not have confused Plaintiffs. Plaintiffs' Memorandum at 10-11 and 17-18. The exhibits cited by Plaintiffs use the terminology and document titles the parties have been using throughout the litigation. In any event, this matter does not need to be belabored as the parties are resolving exhibit list issues by exchanging full sets of exhibits.

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' motion in *limine*.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland

________/S/___________________
STEVEN M. SULLIVAN
Assistant Attorney General
Federal Bar No. 24930

CAMPBELL KILLEFER
Assistant Attorney General
Federal Bar No. 05707
CAROLYN W. SKOLNIK
Assistant Attorney General
Federal Bar No. 23484
BEATRICE NUÑEZ-BELLAMY
Honors Attorney
Federal Bar No. 29582

Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202-2021
Tel: (410) 576-6324

CATHERINE M. SHULTZ
Assistant Attorney General
Federal Bar No. 15635
DENISHA A. WATSON
Assistant Attorney General
Federal Bar No. 29214
Maryland Higher Education Commission
839 Bestgate Road, Suite 400
Annapolis MD 21401-3013
Tel: 410-260-4505

Counsel for Defendants