**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THE COALITION FOR EQUITY AND EXCELLENCE IN MARYLAND HIGHER EDUCATION, INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 06-2773-CCB |
| MARYLAND HIGHER EDUCATION COMMISSION, et al., | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO CERTIFY**
**INTERLOCUTORY APPEAL AND STAY PROCEEDINGS**

**INTRODUCTION**

The State's motion for interlocutory appeal is remarkable for its timing as well as the issues it seeks to certify under the strict requirements of 28 U.S.C. § 1292(b).  Both the timing and the issues raised demonstrate that the State's true motive in filing this motion is to further delay the case, which might make a meaningful remedy nearly impossible to achieve.  Further delay allows the State to increase the already breathtaking disparity in the number of unique, high demand programs between the HBIs and TWIs (122: 11), and allows it to continue the practice of unnecessary program duplication (to the detriment of the HBIs), while fortifying its ability to argue that transferring to the HBIs any programs placed illegally at the TWIs is "impractical" and "unprecedented." In that way, delay very much serves the State's interest in not remedying a vestige of the *de jure* era of segregation that the Court concluded it was never serious about to begin with. D.E. 382, October 7, 2013 Memorandum Opinion ("Memo.") at 50.

The State's motion comes a year and a half after the Court issued its October 7, 2013 Memorandum applying the law to the facts as presented by the parties at trial in January of 2012. It comes four years after the Court issued its summary judgment ruling articulating the applicable law, a ruling which Maryland agreed had "*clarified*" the legal standards.  Maryland Motion for Status Conference To Discuss Possible Mediation (D.E. 244) at 1.  Despite this clarification, the State now seeks interlocutory review on the grounds that the Court incorrectly applied the framework set forth by the Supreme Court in *United States v. Fordice*, 505 U.S. 717 (1992) to the facts of this case. But the State's mere disagreement with this Court's application of the relevant law to the facts at hand provides no basis for certification of an interlocutory appeal. The State simply disagrees with the Court's liability finding. Having failed to persuade the Court at trial, the State now seeks certification over one year later in an attempt to re-litigate the merits. Accordingly, none of the issues raised by the State are the proper subject of an interlocutory appeal, and its motion should be denied.

## ARGUMENT

I.    **The State's Motion Must Be Denied Because it Does Not Seek to Appeal an "Order," as Required by Section 1292(b).**

As an initial matter, it is not at all clear that the Court's October 7, 2013 Memorandum constitutes an "order" from which the State may seek an interlocutory appeal. Section 1292(b) provides that, under certain circumstances, a party may seek interlocutory appeal of a district court "order." *See* 28 U.S.C. § 1292(b). Accordingly, "[t]he basic requirement for interlocutory appeal under § 1292(b) is that the district court have made an order." 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930. Such appeals are thus not allowed if the district court does not enter any order following its opinion. *See In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 314 n.35 (3d Cir. 2010) (noting that "the District Court

could not have certified its 2006 Memorandum for appellate review under 28 U.S.C. § 1292(b) or Federal Rule of Civil Procedure 54(b), as it was an interlocutory ruling on a question of law, not an order or a judgment.").

Nowhere in or following its October 7, 2013 Memorandum did this Court issue an order based on its findings and conclusions. *See* Memo. In fact, the Court concluded its opinion by stating "In light of the above findings of fact and conclusions of law, the court proposes to defer entry of judgment pending mediation or further proceedings if necessary to establish an appropriate remedy." *Id.* at 60. The ensuing orders from the Court merely consisted of an order scheduling a telephonic conference (D.E. 386) and an order referring this case to Judge Grimm for mediation (D.E. 387). Therefore, consistent with the requirements of section 1292(b), the Court should deny the State's request for certification outright.

## II.     The State Unreasonably Delayed in Filing its Motion for More Than One Year After the Court Issued its Memorandum.

The State chose not to file this motion for more than a year and half. The Court can and should deny certification for this reason alone. A party seeking seeking interlocutory appeal cannot unreasonably delay in filing its motion. *See e.g. Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990) (The power to certify should not be abused "by promiscuous grants of motions to amend"); *Richardson Elecs., Ltd. v. Panache Broad. of Pennsylvania, Inc*., 202 F.3d 957, 958 (7th Cir. 2000) ("a district judge should not grant an inexcusably dilatory request"); *Morris v. Flaig*, 511 F. Supp. 2d 282, 314 (E.D.N.Y. 2007) ("courts have held that any delay in seeking amendment and certification 'must be reasonable.'"). This insistence on timely motions furthers the policy underlying section 1292(b), which aims to save time and resources by expediting litigation. Allowing the State to spring this motion on the Plaintiffs and the Court more than one

year after the opinion it seeks to appeal would undermine the statute's purpose and further protract these proceedings.

The State's eighteen month "deferral" in filing this motion was anything but reasonable. Courts have repeatedly and consistently denied certification motions as untimely for much shorter delays. *See, e.g., Green v. City of New York*, No. 05–CV–0429 (DLI)(ETB), 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (two months); *Ferraro v. Sec'y of U.S. Dept. of Health and Human Servs*., 780 F. Supp. 978, 979 (E.D.N.Y. 1992)  (two and a half months); *Weir*, 915 F.2d at 283, 287 (three months); *Morton College Bd. of Trustees v. Town of Cicero*, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998) (30 days); *Fabricant v. Sears Roebuck & Co*., Case No. 98-1281- CIV-NESBITT, 2001 U.S. Dist. LEXIS 24518, at *6 (S.D. Fla. Jan 29, 2001) (46 days); *Richardson Electronics, Ltd.,* 202 F.3d at 958 (two months); *Wallis v. Centennial Ins. Co.*, No. 08–02558 WBS GGH, 2012 WL 1552766 (E.D. Cal. May 1, 2012) (three months); *Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755, at *1 (N.D. Cal. Jan. 8, 2010) (two and a half months); *Abrams v. Van Kampen Funds, Inc*., No. 01 C 7538, 2002 WL 1989401, at *1 (N.D. Ill. Aug. 27, 2002) (two months); *United States for the Use and Benefit of N.E.W. Interstate Concrete, Inc. v. EUI Corp*., No. TH98-0104-C-T/H, 2000 WL 863039, at *1 (S.D. Ind. June 9, 2000) (two months).  This Court should do the same.

The State's reliance on one case to excuse its delay proves unavailing. In *Aparcio*, the court addressed a litigant's delay in taking advantage of a district court's ***pre-existing*** certification order, not a litigant's delay in moving for the certification order in the first instance. *Aparicio v. Swan Lake*, 643 F.2d 1109, 1111 (5th Cir. 1981). There, the district court had originally certified its order for appeal, but the defendant failed to subsequently apply to the court of appeals within the ten-day limit mandated by section 1292(b). *Id*. After a year, a

4

different judge *re*-certified the order, and the defendant petitioned the court appeals within ten days. *Id*. The Fifth Circuit allowed the appeal, holding that "if the district court, upon **reconsideration** of the Section 1292(b) criteria for certification of an interlocutory appeal, determines that the previous justification for a certification **continues** to exist, it may reenter the interlocutory order and thus trigger a new ten-day period. *Id*. at 1112. (emphasis added). Here, the Court never certified its October 7, 2013 Memorandum for interlocutory appeal. As such, the State's delay cannot be remedied by *re*-certification.

The State claims it "deferred requesting certification of an appeal while engaging in mediation, in an effort to achieve an agreed resolution that would potentially obviate the need for an appeal." D.E. 404, Defs.' Mot. to Certify Interlocutory Appeal of the Court's Oct. 7, 2013 Order ("Mot.") at 7 n.3.  But this purported justification, even taken as true, is unavailing for purposes of interlocutory appeal under section 1292(b). As the Seventh Circuit explained in *Weir*, a proper reason for delay would exist "if developments since the interlocutory order had been entered demonstrated, **as had been unclear earlier**, that the order resolved a controlling question of law about which there was substantial ground for a difference of opinion." *Weir*, 915 F.2d at 287 (emphasis added). Here, the State points to no developments since October 7, 2013 that demonstrate, as had been unclear before, that the Court's opinion involved "a controlling question of law about which there was substantial ground for a difference of opinion." Nor could it. The issues the State raises now were equally apparent when the Court issued its Memorandum on October 7, 2013.

III.     **Certification for Interlocutory Appeal is an Extraordinary Remedy Only Granted in Exceptional Circumstances.**

A party seeking an interlocutory appeal pursuant to section 1292(b) must show (1) that a controlling question of law exists (2) about which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see also Butler v. DirectsSAT USA, LLC*, No. CIV.A. DKC 10-2747, 2015 WL 1959421, at *6 (D. Md. Apr. 29, 2015). As the party seeking interlocutory appeal, the State "bears the burden of proving that the prospective appeal satisfies each of the statutory prerequisites for certification." *Boyd v. Coventry Health Care Inc*., 828 F. Supp. 2d 809, 820 (D. Md. 2011); *see also Price v. Atl. Ro-Ro Carriers, Inc*., No. CIV. CCB-11-1735, 2014 WL 7358729, at *1 (D. Md. Dec. 22, 2014) (J. Blake) ("Because the statute lists these criteria in the conjunctive, certification requires satisfaction of each."). Even if the statutory criteria are met, the district court has discretion to deny certification. *See Butler*, 2015 WL 1959421, at *6 ("The decision to certify an interlocutory appeal is firmly in the district court's discretion.").

Success in this task is neither common nor easily achieved. *See Fannin v. CSX Transp*., Inc., 873 F.2d 1438 at *2 (4th Cir. 1989) ("interlocutory review is not to be granted lightly"). Rather, certification is an "extraordinary remedy" only permitted in "exceptional circumstances." *See id.*; *see also Price*, 2014 WL 7358729, at *1 ("[certification] is reserved for 'exceptional circumstances [that] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'") (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).  As this Court recognized, "the Fourth Circuit has cautioned that [section] 1292(b) should be used sparingly and … that its requirements must be strictly construed." *Butler*, 2015 WL 1959421, at *6 (internal quotations omitted) (citing *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). At every turn, the State fails to meet this high burden.

**IV.     The State Presents No Controlling Question of Law About Which There is Substantial Ground for Difference of Opinion.**

Although phrased in strained and shifting language, the thrust of the State's argument is that the Court misapplied the relevant law. At bottom, the State argues the Court misapplied the framework set forth by the Supreme Court in *United States v. Fordice*, 505 U.S. 717 (1992). *See* Mot. at 9 (characterizing "the Court's application of *Fordice*" as "exceptional"); *id.* (arguing the Court's opinion "represents the first time any court applying *Fordice* has found a state liable" in light of the circumstances at hand); *id.* at 10 (claiming the Fourth Circuit has not addressed the issues involved "concerning the application of *Fordice*").

But whether the Court misapplied the law is not a "question of law" proper for interlocutory appeal. *See*, *e.g.*, *Maxtena, Inc. v. Mark*s, No. CIV.A. DKC 11-0945, 2014 WL 4384551, at *6 (D. Md. Sept. 2, 2014) (denying certification where the issue raised was "not a 'question of law' under section 1292(b), but [was] more appropriately characterized as the application of a legal principle to a set of facts"); *Clark Const. Grp., Inc. v. Allglass Sys., Inc*, No. CIV.A. DKC 2002-1590, 2005 WL 736606, at *2 (D. Md. Mar. 30, 2005) (the "antithesis of a proper § 1292(b) appeal" is one turning on "whether the district properly applied settled law to the facts or evidence of a particular case.") (internal quotations and citations omitted); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) ("The term 'question of law' does not mean the application of settled law to fact."). Nor is it a "controlling" question of law given that this case would continue regardless of its resolution. Interlocutory appeal would thus delay, rather than materially advance this litigation. As such, the Court should deny the State's motion for failure to meet all of section 1292(b)'s requirements.

A. **The State does not present a pure question of law because it merely disputes the Court's factual findings and argues the Court misapplied the relevant law.**

The State first characterizes the issue on which it seeks "guidance" from the Court of Appeals as follows:

> the appropriate legal standard to apply to determine whether Maryland has a policy of unnecessary program duplication that is traceable to the *de jure* era

Mot. at 10. Additionally, the State sets forth six intensely fact-specific issues "subsumed" within this larger question. *See id.* at 10-14. Later, the State identifies and articulates its purported "controlling question of law" as:

> The correct legal analysis for determining whether, despite having fully desegregated its TWIs, the State can be held liable based on a finding of unnecessary program duplication

Mot. at 14. None of these issues present a "question of law" as required under section 1292(b). "The term 'question of law' for purposes of section 1292(b), refers to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine, as opposed to questions of law heavily freighted with the necessity for factual assessment. *Butler*, 2015 WL 1959421, at *7 (internal quotations and citations omitted). Here, the State questions and disputes the Court's application of *Fordice* to the facts at hand - precisely the type of issue "heavily freighted with the necessity for factual assessment" ill-suited to interlocutory appeal. *See id.*; *see also* 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930 ("it seems better to keep courts of appeals aloof from interlocutory embroilment with the factual content of the record."). As such, the State simply seeks to re-litigate its position on the merits. But whether "Maryland has a policy of unnecessary program duplication that is traceable to the *de jure* era" and whether "despite having fully desegregated its

TWIs, the State can be held liable based on a finding of unnecessary program duplication" are mixed questions of law and fact that this Court has answered in the affirmative. The State's mere disagreement on the outcome is no basis for granting an interlocutory appeal.

In its motion, the State does not argue *Fordice* supplies the wrong standard, but that the Court arrived at the wrong conclusions in applying it. In teeing up the issues on which it seeks review, the State argues that "the issues of law addressed in [the Court's Memorandum], concerning **the application of Fordice**, have never been addressed by any court in the Fourth Circuit." Mot. at 10 (emphasis added). Furthermore, even a cursory review of the State's six subsidiary issues makes clear the State wants to challenge the Court's findings based on the evidence, rather than determine any controlling legal standard. In questioning whether the State "can be deemed" to have a policy of unnecessary program duplication traceable to *de jure* segregation based on the evidence at trial, the State seeks to revisit the Court's ultimate determination on liability. Its convoluted and protracted articulation of the issues it wants addressed reveals as much. *See*, *e.g.*, Mot. at 11 ("Whether the State can be deemed to have a 'policy' of unnecessary program duplication traceable to *de jure* segregation, as this Court found, when the Maryland Higher Education Commission ("MHEC") has a detailed process for reviewing all program proposals for compliance with requirements that include the principles set forth in *Fordice*, including its instructions with respect to unnecessary program duplication and educational necessity; there is no evidence the Commission has ever rejected a program proposal from an HBI; and the plaintiffs were able to identify only one instance when the Commission approved a non-HBI's program proposal over the objection of an HBI, and in that instance the program request involved an institution where minority students outnumber white students.").

No matter how worded, the State cannot repackage its core disagreement on liability as a clean "question of law" suitable for interlocutory review. The State's repeated citations and comparisons to *Fordice* similarly demonstrate that its request centers on a disagreement with the Court's ultimate findings, and not its choice of *Fordice* as the relevant legal standard. Throughout its motion, the State suggests it should not have been found liable based on the evidence and cites to *Fordice* as support for this conclusion. That the State believes this Court's finding that Maryland maintained a policy of unnecessary program duplication traceable to the *de jure* era and resulting determination of liability are unwarranted under *Fordice* does not prove sufficient for interlocutory appeal under section 1292(b).

The State also asserts that "no district court's findings and conclusions of law in a higher education desegregation case have survived an appeal without being reversed or modified at least in part." Mot. at 2. But this ignores the fact that the initial decisions in both *Ayers* and *Knight* were issued ***prior*** to the Supreme Court decisions in *Fordice* - the definitive legal standard applicable to higher education desegregation cases.

Furthermore, in arguing that the Court misapplied *Fordice* to the facts, the State mischaracterizes the Court's application of *Fordice* in the first instance. For example, in questioning whether it can be deemed to have maintained a policy of unnecessary program duplication, the State suggests the Court faulted its policies for not acting "retrospectively to eliminate accumulated duplication." Mot at. 12. But the Court's Memorandum makes clear it found that the State failed to address "***continuing*** historic duplication." Memo. at 50-51 (emphasis added). As such, contrary to the State's claims, this Court's analysis aligns precisely with the statements from *Fordice* to which the State cites. *See* Mot. at 12 (quoting *Fordice*) ("a state's 'constitutional obligations' are discharged when it 'eradicates *policies* and *practices*

10

traceable to its prior *de jure* dual system that ***continues*** to foster segregation'") (emphasis added). Thus, not only does the State fail to present a pure question of "law," it also manufactures disputed "questions" where none exist.

### B. The State's Purported Question of Law is Not "Controlling" Because its Resolution on Appeal Would Not be Completely Dispositive of the Litigation.

The Fourth Circuit has interpreted a "controlling question of law" to mean "a narrow question of pure law whose resolution will be ***completely dispositive*** of the litigation, either as a legal or practical matter, ***whichever way it goes***." *Fannin v. CSX Transp., Inc*., 873 F.2d 1438 at *5 (4th Cir. 1989) (emphasis added). *See id*. (finding that although "a decision favorable to [the defendant] would certainly be one on a question of law that, as it had developed, was 'controlling,' this obviously cannot be all that is implied by the term."). Beyond failing to qualify as "questions of law," the issues raised in the State's motion are not "controlling" because their resolution would not be "completely dispositive of the litigation … whichever way it goes." *Id.*

Certainly, in the likely event that the Court of Appeals were to agree with this Court's analysis of unnecessary program duplication, this case would simply continue exactly as it is now. *See Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 974 F. Supp. 2d 856, 865 (denying certification where "the case could be delayed on appeal for months, if not a year or more, only to wind up back where it was"). And even if the Court of Appeals disagreed with this Court's analysis of the issues raised, the parties would then have to re-litigate the merits under a new framework. *See Boyd v. Coventry Health Care, Inc*., 828 F. Supp. 2d 809, 821 (D. Md. 2011) (denying certification where "[e]ven if the Fourth Circuit held that [a different standard applied], a determination based on this new standard would still be required.") (internal quotations omitted). The State's purported questions of law also necessarily presume and rely on

the correctness of the Court's first two liability determinations. But should certification be granted, the court of appeals would have jurisdiction to review the entire "order." And Plaintiffs reserve their right to appeal on the merits as well. As such, certification at this point would risk entangling the court of appeals in a host of factual disputes - the antithesis of a section 1292(b) appeal - and causing further delay. Because the issues presented by the State would not completely resolve this litigation, they are not "controlling" and cannot justify the "extraordinary remedy" of certification. *See Fannin*, 873 F.2d 1438 at *2.

### V.      There is Not a Substantial Ground for Difference of Opinion.

The State claims there exists a substantial ground for difference of opinion "because the analyses in [*Fordice* and the *Ayers* decisions implementing it on remand] differ materially from this Court's." Mot. at 17. But this argument, again, merely repeats the State's objection to how the Court applied *Fordice* to the facts. It does not demonstrate that there exists a substantial ground for difference of opinion as to a "question of law." The State offers no cases suggesting disagreement over the applicable legal standard. Instead, the State merely disagrees with the outcome in this case based on its understanding of how *Fordice* should be applied. However, "[s]imply because settled law might be applied differently does not establish a substantial ground for difference of opinion." *Butler v. DirectsSAT USA, LLC*, No. CIV.A. DKC 10-2747, 2015 WL 1959421, at *10 (D. Md. Apr. 29, 2015) (internal quotations omitted); *see also Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co*., 597 F. Supp. 2d 120, 122 (D.D.C. 2009) ("Mere disagreement, even if vehement, with a court's ruling does not establish a substantial ground for difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal."). The fact that this case may involve different ***facts*** from those present in *Fordice* "does not evidence a substantial disagreement over a controlling question of law." *See*

*Butler*, 2015 WL 1959421, at *7 at 10; *see also id*. (finding no substantial ground for difference of opinion where movant merely offered a "variant outcome based on the application of settled law to a different factual scenario."). Thus, the State fails to show that a substantial ground for difference of opinion as to a "controlling question of law" exists.

Furthermore, even if relevant, the State's contention that "the analyses in [*Fordice* and the *Ayers* decisions implementing it on remand] differ materially from this Court's" is simply incorrect. In fact, the Court's decision followed the precise framework established by *Fordice* and its progeny. *See* Memo. at 22-24. *Fordice* requires a court to determine whether a state has met its affirmative duty to dismantle its prior dual system of higher education. *Fordice,* 505 U.S. at 728.  In making this determination, the Court adopted the same three-part analysis articulated in *Fordice* and applied in *Knight v. Alabama*, 14 F.3d 1534 (11th Cir. 1994). *See id*. Yet, in listing four purported "differences of opinion" between this Court's decision and the standard set forth in *Fordice*, the State misconstrues the applicable legal standards and relevant facts.

First, the State incorrectly interprets *Ayers* to suggest that unnecessary program duplication may *only* exist between "proximate, *racially identifiable* institutions." Mot. at 17 (citing *Ayers,* 111 F.3d 1183, 1218-1219 (5th Cir. 1997) (emphasis added) and *Knight,* 787 F. Supp. 1030, 1319 (N.D. Ala. 1991)). In *Ayers*, the Fifth Circuit noted the district court finding that "only program duplication between proximate, racially identifiable institutions ***was*** traceable to *de jure* segregation and had segregative effects." *Ayers*, 111 F.3d at 1218 (emphasis added). It never concluded that segregative program duplication ***could not*** exist in other contexts. In considering "the issue of program duplication between ***non-proximate*** institutions," the district court found that it simply had "not been established," not that it could not exist. *Ayers v. Fordice*, 879 F. Supp. 1419, 1486 (N.D. Miss. 1995) (emphasis added). Put simply, the State's selected

quote references a conclusion on the facts, not a standard to be applied. The State is also incorrect in suggesting that *Ayers* held that program duplication can only be found if both of the proximate institutions had low levels of other-race enrollment.  Mot. at 17 (citing *Ayers,* 111 F.3d at 1218).  The State's citation to *Ayers'* provides no basis for such a contention, and indeed, *Ayers* made no such finding.

Furthermore, *Knight* demonstrates that *Fordice* does not mandate that liability depends on both the TWI and the HBI having low other-race enrollment. *Knight* found unnecessary duplication between a TWI (Calhoun State Community College – Huntsville ("CSCC-H")) and an HBI (Alabama Agricultural & Mechanical University ("AAMU")) without a specific finding that CSCC-H remained a racially identifiable institution in its own right.  *Knight,* 787 F. Supp. at 1185, 1328-29.  Instead, *Knight* observed that AAMU remained predominantly black and CSCC-H competed for white students who might potentially desegregate that campus. *Id.* at 1329; *Knight,* 900 F. Supp. at 307. Thus, nothing in *Fordice, Ayers* or *Knight* prevents this Court from analyzing evidence that Maryland's traceable policy of program duplication perpetuates the racial identifiability of both proximate and non-proximate institutions, or requires this Court to determine the ongoing existence of racially identifiable TWIs.

Next, the State suggests that *Fordice* prevents this Court from finding a constitutional violation based on a single discriminatory vestige. As support, the State relies on *Ayers* to assert that "[t]he duplication issue…does not stand alone…" Mot. at 18 (quoting *Ayers,* 879 F. Supp. at 1445). But this argument misinterprets both that statement and the opinion in which it is contained. The court in *Ayers* observed that the facts *sub judice* required it to account for the interplay between different traceable policies and practices when considering the segregative effects of program duplication. *See Ayers,* 879 F. Supp. at 1445. The court noted the

unremarkable reality that duplication may operate in conjunction with other practices to ***promote segregation***. *Id.* (emphasis added). It does not follow, however, that duplication cannot establish a constitutional violation on its own. The State's unarticulated proposition - that its other practices and policies may ***mitigate*** the segregative effects of unnecessary program duplication - has no basis in the case law. In any case, nowhere does the State suggest this Court failed to consider all the relevant facts, including the State's other practices and policies, in concluding that Maryland in fact maintained a policy of unnecessary program duplication traceable to the de jure era.

The State also claims this Court imposed a "least segregative alternative" requirement to the framework outlined in *Fordice*. Mot. at 18. But the Court's memorandum makes clear the Court was explaining the State's obligation, under *Fordice*, to offer a "sound educational justification" for its program duplication, not imposing an additional requirement unmoored from *Fordice*. *See* Memo. at 56-57. Moreover, as the State admits, the Eleventh Circuit similarly adopted this analysis in *Knight*. Mot. at 18.

The State's final attempt to identify a "difference of opinion" contends that the Court departed from established case law in finding a constitutional violation where the HBIs attracted significant levels of white enrollment at some point in time. Mot. at 18-19. But neither *Fordice* nor its progeny prohibit such a conclusion. For example, in *Knight,* the court did not end its inquiry into whether unnecessary duplication constituted a traceable policy with ongoing segregative effects even after finding that AAMU had successfully attracted higher levels of white enrollment for a period of time. *Knight,* 787 F. Supp. at 1325-26.  Like this Court, *Knight* considered whether subsequent decreases in white student enrollment might be traceable to the state's *de jure* system of education, whether duplication had ongoing segregative effects, and

whether it could be practically eliminated. *Id.* at 1326. As such, this Court's analysis of duplication proves entirely consistent with both *Fordice* and the cases applying it.

Additionally, the State's own actions demonstrate a lack of actual disagreement over whether a state can be held liable based on a finding of unnecessary program duplication. Although Maryland's Attorney General has repeatedly advised the State of its obligations under *Fordice*, it has never contended that the State can continue unnecessary program duplication as long as it eliminates other traceable policies. Furthermore, the Partnership Agreement sets out the avoidance of unnecessary program duplication as a separate, independent obligation.

In a Memorandum dated April 20, 2005, Maryland's Attorney General's office provided "a detailed statement and analysis of the State of Maryland's obligations under federal law regarding dismantling its prior *de jure* segregated system of higher education, particularly with respect to the duplication of academic programs at the State's Historically Black Institutions by geographically proximate Traditionally White Institutions." PTX 14. The Attorney General's Office advised the State that it had a "continuing obligation" to avoid unnecessary duplication and thus objected to what it called the "alarming" duplication of Morgan's MBA program. The memo did not condition the State's duty on the existence of other traceable vestiges; nor did it suggest that diversity at the TWIs rendered the obligation moot.

Moreover, in the Defendants' Proposed Findings of Fact and Conclusions of Law (D.E. 353), the State rightly pointed out that *Fordice* requires "a" (singular) traceable policy - not numerous traceable policies. The State wrote:

> First, the burden is on the plaintiff to identify a current state policy that is 'traceable to the State's prior *de jure* segregation.' A current policy that is 'traceable' to a state's prior *de jure* segregation is derived from, a continuation of, rooted in, or has as its antecedent 'decisions that were made

> or practices that were instituted in the past for segregative reasons, thus rendering it a vestige of segregation.' *Id.* at ¶ 10 (internal citations omitted).

Similarly, in a 2005 published opinion, Maryland's Attorney General specifically advised the State that "it is possible for the State to have dismantled some aspects of prior segregation, and be discharged of any remedial obligation with respect to those factors, while remaining responsible for remedial measures in other areas". 90 Opinions of the Maryland Attorney General 153 (2005), PTX 698, at 176. Specifically pointing to the Partnership Agreement, the Attorney General's Office made clear that the various commitments operate independently, noting: "the State also agreed to complete a set of discrete activities. Each of these commitments appears designed to enhance student choice or reduce the stigmatic racial identifiability of institutions." *Id.* at 181. Like the confidential memo, this public opinion contained no suggestion that if the State eliminated all other vestiges, it could leave in place the one that was "part and parcel" of its de jure system of segregation. In sum, there is no substantial ground for difference of opinion as to the State's purported "question of law."

### VI.    An Interlocutory Appeal Would Prolong, Rather Than "Materially Advance the Termination of the Litigation."

The State's delay in filing this motion makes it exceedingly clear it has little interest in materially advancing the termination of the litigation. *See McDonald v. Holder*, No. 09-CV-0573-CVE-TLW, 2010 U.S. Dist. LEXIS 134059, at *6-7 (N.D. Okla. Dec. 17, 2010) ("Delay in filing a motion to certify an order for interlocutory appeal suggests that a party may be seeking to avoid an unfavorable ruling, rather than to expedite the litigation for the benefit of the Court and all parties."). Rather, this motion represents yet another bid to delay addressing remedies. An interlocutory appeal here would prolong, rather than materially advance, these proceedings given that this case will continue regardless of the outcome. And where an interlocutory appeal would

in fact delay the resolution of litigation, certification is not appropriate. *See Boyd v. Coventry Health Care, Inc.*, 828 F. Supp. 2d 809, 821 (D. Md. 2011) (denying certification where "[p]ermitting interlocutory appeal of this issue would inject even more delay into a case that has lingered on the Court's docket for over two years.").

As explained in Part IV.B., even if the Court of Appeals were to provide the State's requested "guidance" (*See* Mot. at 10), the parties would still have to litigate their positions under the new framework. Moreover, interlocutory appeal would not materially advance this litigation because "there is not a substantial likelihood that the Fourth Circuit will rule in [the State's] favor." *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 974 F. Supp. 2d 856, 865 (D. Md. 2013). As such, this case "could be delayed on appeal for months, if not a year or more, only to wind up back where it was." *Id.* And where "litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Price v. Atl. Ro-Ro Carriers, Inc.*, No. CIV. CCB-11-1735, 2014 WL 7358729, at *2 (D. Md. Dec. 22, 2014) (J. Blake).

Furthermore, certification now would result in multiple appeals should the parties seek review of the Court's remedial order down the road. *See Clark Const. Grp., Inc. v. Allglass Sys., Inc*, No. CIV.A. DKC 2002-1590, 2005 WL 736606, at *4 (D. Md. Mar. 30, 2005) ("it is doubtful that allowing Defendants to appeal the issue of liability while the issue of damages remains would 'materially advance the ultimate termination of the litigation.'"); *see also Winstead v. United States*, 863 F. Supp. 264, 269 (M.D.N.C. 1994) *aff'd,* 109 F.3d 989 (4th Cir. 1997) ("Certifying the action for review before damages have been determined would likely result in one appeal on the liability issue and a separate appeal on the damages issue. Creating a

situation necessitating two separate appeals is a waste of judicial resources and should be avoided if possible."). Such a drawn-out, piece-meal appeals process is exactly what courts should strive to avoid when considering certification motions. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) ("Permitting piecemeal, prejudgment appeals, we have recognized, undermines 'efficient judicial administration.'") (citations omitted); *see also Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013) ("Interlocutory review is a narrow exception to the longstanding rule against piecemeal appeals.") (internal quotations and citations omitted). The Court should thus deny the State's motion in order to avoid enabling multiple appeals.

### VII.    Even if the Court Certifies an Interlocutory Appeal, it Should Not Stay This Case.

The State also has not shown that a stay is warranted, even if the Court were to grant its request for interlocutory review. Section 1292(b) explicitly provides that a stay is not automatic pending an interlocutory appeal. 28 U.S.C. § 1292(b) ("application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."). As the State points out, "[t]he grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)).

Here, a stay is not appropriate where an interlocutory appeal would not completely resolve the case. *See supra* at 10-11. The Court and the parties gain nothing by letting the State halt this proceeding and further delay its ultimate resolution. Allowing the remedies phase to

continue will instead facilitate an efficient disposition of the case and enable any remaining issues for appeal to be considered all at once with the benefit of a complete record.

The State's contention that proceeding to a remedies phase "threatens to harm Maryland public higher education as a whole" (Mot. at 1) is belied by its previous stance and statements opposing bifurcation. In arguing for a single trial on both liability and remedies, the State conceded that "the question of liability and remedy are necessarily intertwined."  Maryland Opposition to Motion for Bifurcation (D.E. 132) at 1; *See also id*. at 10  (Noting that no further discovery on remedies was necessary because "[t]he parties have had sufficient opportunity to, and did, explore the issues of liability and remedy during the fact discovery period" and pointing out that "[t]he defendants have informed the plaintiffs that hybrid witnesses will address remedy.").

As the State predicted in opposing bifurcation, both parties at trial in fact presented some evidence relevant to remedies.  For Plaintiffs, Dr. Allen testified about the need for "transfer select high demand programs from the TWIs to the HBCUs that would help to create an institutional identity."  Allen Demonstrative Exhibits, PTX 856, at 46.  He described the need for at least "2 high demand clusters within the next 3-4 years" and within each niche "at least 3-4 new programs." *Id.* at 49. He even described some particular niches, such as "Green/Sustainability". *Id.* at 52, and Hospital and Health Care Facilities Management and Administration. *Id.* at 58. There was also substantial discussion about the joint Towson/University of Baltimore MBA program.  And none of this caused any injury to the Maryland's system of higher education that the State now predicts will occur if the Court does not take the extraordinary step of staying all remedial proceedings.

**CONCLUSION**

The State has failed to meet its heavy burden to show that interlocutory appeal under section 1292(b) is either allowed or warranted. Its own conduct and delay make clear certification is not justified in these circumstances. For all the foregoing reasons, Plaintiffs respectfully request that the State's Motion to Certify Interlocutory Appeal and Motion to Stay Proceedings be denied.

Dated:  May 21, 2015                    Respectfully submitted,

                                        /s/_____
                                        Michael D. Jones, Esq. (Bar No. 08634)
                                        Karen N. Walker (Bar No.14181)
                                        KIRKLAND & ELLIS LLP
                                        655 Fifteenth Street, N.W.
                                        Washington, D.C. 20005
                                        Telephone: (202) 879-5000
                                        Facsimile: (202) 879-5200
                                        Email: michael.jones@kirkland.com

                                        Jon Greenbaum (*pro hac vice*)
                                        Brenda Shum (*pro hac vice*)
                                        Genevieve Bonadies (*pro hac vice*)
                                        Lawyers' Committee for Civil Rights Under Law
                                        1401 New York Avenue, N.W., Suite 400
                                        Washington, DC 20005
                                        Telephone: (202) 662-8600
                                        Facsimile: (877) 303-5039
                                        Email: jgreenbaum@lawyerscommittee.org

                                        John C. Brittain (*pro hac vice*)
                                        Attorney At Law
                                        2513 Gadsby Place
                                        Alexandria, VA 22311
                                        Telephone: (832) 687-3007
                                        Email: jbrittatty@comcast.net