IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COALITION FOR EQUITY AND EXCELLENCE IN MARYLAND HIGHER EDUCATION, *et al.*, Plaintiffs, v. | * * * * | |
| MARYLAND HIGHER EDUCATION COMMISSION, *et al.*, Defendants. | * * | Case No.:  CCB-06-cv-2773 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO
MOTION TO CERTIFY INTERLOCUTORY APPEAL
OF THE COURT'S OCTOBER 7, 2013 ORDER**

The Court should reject the plaintiffs' arguments against certification because, as explained below, those arguments are either incorrect as a matter of law or, at best, misleading.

The State of Maryland does not lightly take the extraordinary step of seeking an interlocutory appeal under 28 U.S.C. § 1292(b).  Though it has been a frequent litigant in federal court, the State has heeded the caution, noted by the plaintiffs in their opposition, that "§ 1292(b) should be used sparingly."  Doc. 411 at 6 (citing *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989); *Butler v. DirectSAT USA, LLC*, No. DKC-10-2747, 2015 WL 1959421, at \*6 (D. Md., Apr. 29, 2015)).  In fact, a Westlaw search reveals no reference to any previous case where a request for § 1292(b) certification was made by the Office of the Attorney General on behalf of the State, its agencies or State officials.  Although it may be possible that such a request has been made at some time since the 1958 enactment of §

1292(b), the Office of the Attorney General is unaware of any record of its having filed a previous motion to certify an appeal under § 1292(b).

The State has taken the unusual measure of filing the pending request to certify an interlocutory appeal because this case involving desegregation of public higher education epitomizes the "exceptional circumstances" for which Congress intended to make an immediate appeal available upon certification under § 1292(b). *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (citation omitted); *see* House Report No. 1667, 85 Cong., 2d Sess., p. 2 ("[A]ppeals under this legislation [28 U.S.C. § 1292(b)] should only be used in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation. . . ."). Due to the acknowledged "importance" of legal questions that arise in a school desegregation case, *Springfield School Comm. v. Barksdale*, 348 F.2d 261, 262 (1st Cir. 1965), federal courts have repeatedly permitted State and local government officials and entities to avail themselves of the opportunity to appeal interlocutory rulings via § 1292(b) in such cases, including instances when the rulings appealed were necessarily fact intensive.[1] This history of permitting interlocutory appeals in desegregation cases

---

[1] *See*, *e.g.*, *Springfield School Comm.*, 348 F.2d at 262 (noting that interlocutory appeal was certified under 28 U.S.C. § 1292(b)); *Bradley v. Milliken*, 484 F.2d 215, 218 (6th Cir. 1973) (certified interlocutory appeal from 5 separate rulings issued over a 9 month period), *rev'd on other grounds*, 418 U.S. 717 (1974); *Pitts by Pitts v. Freeman*, 887 F.2d 1438, 1444 (11th Cir. 1989) (certified appeal of "any issue" arising from order denying school system's motion to dismiss), *rev'd on other grounds sub nom Freeman v. Pitts*, 503 U.S. 467 (1992); *Davis v. East Baton Rouge Parish Sch. Bd.*, 721 F.2d 1425, 1432 and n.6 (5th Cir. 1983) (certified interlocutory appeal from partial summary judgment); *Armstrong v. Bd. of Sch. Dir. of City of Milwaukee*, 616 F.2d 305, 308 (7th Cir. 1980) (certified interlocutory appeal from "finding of a violation" of Equal Protection Clause); *Los Angeles Unified Sch. Dist. v. Los Angeles Branch NAACP*, 714 F.2d 935, 939 (9th Cir. 1983) (certified interlocutory appeal from denial of school district's motion for summary

reflects the "'broader and more flexible'" approach that federal courts take in exercising their equitable powers, and their willingness to "'go much farther' to give 'relief,'" when, as in this case, "'the public interest is involved'" and more than "'only a private controversy is at stake.'"  *Kansas v. Nebraska*, 135 S. Ct. 1042, 1053 (2015) (citations omitted).

## REPLY ARGUMENT

**I.   THE COURT'S FINDINGS AND CONCLUSIONS OF LAW CONSTITUTE AN ORDER FOR PURPOSES OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND ANY QUESTION AS TO THE RULING'S STATUS CAN BE RESOLVED BY ENTRY OF A CLARIFYING ORDER.**

There is no merit to the plaintiffs' suggestion that the Court's findings of fact and conclusions of law as to liability, Doc. 382, do not constitute an "order" within the meaning of 28 U.S.C. § 1292(b).  Even if the ruling's status as an order were subject to doubt, the Court could resolve any such question simply by issuing a revised order clarifying that the findings of fact and conclusions of law are to be treated as an order of the Court.  *See Marconi Wireless Tele. Co v. United States*, 320 U.S. 1, 47-48 (1943) ("Although the interlocutory decision . . . was appealable, . . . the court did not lack power at any time prior to entry of its final judgment . . . to reconsider any portion of its decision and reopen any part of the case."); Fed. R. Civ. P. 54(b) (Generally "any order or other decision" that "does not end the action . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

---

judgment); *United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1343 (6th Cir. 1978) (certified interlocutory appeal from "4 opinions" dismissing claims on various grounds and denying a motion for summary judgment).

Congress has not provided a definition of "order," either in 28 U.S.C. § 1292 or other relevant statutes; nor is there a definition of "order" in Rule 5 of the Federal Rules of Appellate Procedure or elsewhere in the Rules. Black's Law Dictionary offers the following definition:

1. A command, direction, or instruction. . . .

2. A written direction or command delivered by a government official, esp. a court or judge.

- The word generally embraces final decrees as well as interlocutory directions or commands. — Also termed *court order*, *judicial order*. . . .

    "An order is the mandate or determination of the court upon some subsidiary or collateral matter arising in an action, not disposing of the merits, but adjudicating a preliminary point or directing some step in the proceedings." . . .

Black's Law Dictionary (10th ed. 2014) (quoting 1 Henry Campbell Black, *a Treatise on the Law of Judgments* §1, at 5 (2d ed. 1902)). The Court's October 7, 2013 Memorandum of findings of fact and conclusions of law satisfies this dictionary definition, because the Memorandum contains the Court's "written direction or command," a "determination of the court upon some subsidiary . . . matter arising in an action," though "not disposing of the merits" entirely. *Id.*; *see Smith v. Estate of Howell*, 372 Ark. 186, 189, 187, 272 S.W.2d 106, 109, 107 (2008) (applying similar definition of "order" and concluding that trial court's "Findings of Fact and Conclusions of Law constituted an order" which was, under the circumstances, "an appealable order").

In construing 28 U.S.C. § 1292 and its precursors, the Supreme Court has taken a practical or functional approach that considers the substantive effect of a court's ruling,

4

rather than its labelling. For example, in determining that a district court's interlocutory ruling in a patent case was appealable under the predecessor of § 1292(c), the Supreme Court analyzed what the district court did ("gave full consideration to the question presented by the motion and decided it upon the merits") and concluded that "the resulting order falls squarely within [the statute] as amended." *McCullough v. Kammerer Corp.*, 331 U.S. 96, 99 (1947) (applying former 28 U.S.C. § 227a (citation omitted)). Although the language of the former statute allowed for an appeal from an interlocutory "decree," rather than an "order," the Supreme Court held that the terminology was not dispositive. "The fact that the [district] Court designated its action as an 'order' rather than a 'decree' is not of crucial significance," "[f]or though called an 'order,' its binding effect in disposing of the question before it is the same as though it had been entitled a 'decree.'" *McCullough*, 331 U.S. at 99. Federal Courts of Appeals have taken this pragmatic view in applying other provisions of § 1292, and in doing so have made clear that appellate courts "are not governed by the district court's own characterization of the order," but instead will "'look beyond labels'" and will "take a 'functional approach, looking not to the form of the district court's order but to its actual effect.'" *Birmingham Fire Fighters Ass'n 117 v. Jefferson C'nty*, 280 F.3d 1289, 1292-93 (11th Cir. 2002) (applying 28 U.S.C. § 1292(a)(1); quoting *Gautreaux v. Chicago Hous. Auth.*, 178 F.3d 951, 956-57 (7th Cir. 1999) and *Sierra Club v. Marsh*, 907 F.2d 210, 213 (1st Cir. 1990)).

As described by one court, to qualify as an appealable order under § 1292(b), a ruling should have the following attributes: "These orders must be definitive, effective, and in a posture capable of affirmance or reversal." *Link v. Mercedes-Benz of North*

*America, Inc.*, 550 F.2d 860, 863 (3d Cir. 1977).  Unquestionably, in its substance and "actual effect," *Birmingham Fire Fighters Ass'n 117*, 280 F.3d at 1293, that is, "its binding effect in disposing of the question before it," *McCullough*, 331 U.S. at 99, this Court's Memorandum of findings of fact and conclusions of law satisfies all of the criteria for an "order" for purposes of § 1292(b).  The "actual effect" of the Court's ruling is to adjudicate the defendants' liability, and the Memorandum accomplishes that purpose "definitive[ly], effective[ly], and in a posture capable of affirmance or reversal," *Link*, 550 F.2d at 863.

By contrast, these attributes of an appealable interlocutory order were lacking in the only case cited by the plaintiffs as authority for their contention that this Court's Memorandum of findings of fact and conclusions of law did not constitute an order, *In re Community Bank of Northern Va.*, 622 F.3d 275 (3d Cir. 2010). That case involved the settlement of a class action.  To address would-be intervenors' concerns about the adequacy of class representation, the district court issued a "memorandum" assessing the "viability" of certain claims the class plaintiffs had "failed to assert," to determine whether, if the claims had been raised, they "could have survived a Rule 12(b)(6) motion to dismiss." *Id.* at 287-88.  Thus, the "memorandum" issued by the district court in *Community Bank* was perhaps the most purely advisory and academic exercise a court could ever undertake.  That court's memorandum could not be "definitive" or "effective" or "capable of affirmance or reversal," *Link*, 550 F.2d at 863, and, therefore, could not be an "order" appealable under § 1292(b), because it addressed claims that did not exist and speculated on the outcome of a motion to dismiss that was never filed.

The circumstances of the present case could hardly be more different from those in *Community Bank*. This Court's Memorandum of findings of fact and conclusions of law has an "actual effect" − adjudicating claims asserted by the plaintiffs and determining liability − that is virtually the same as the "actual effect" of the interlocutory ruling on liability that was appealed in *Gratz v. Bollinger*, 539 U.S. 244, 259 (2003), prior to litigation of remedies. *See Gratz v. Bollinger*, 122 F. Supp.2d 811, 814 (E.D. Mich. 2000). Although the district court in *Gratz* disposed of liability by ruling on a motion for partial summary judgment, that interlocutory ruling was no more "definitive," "effective," or "capable of affirmance or reversal," *Link*, 550 F.2d at 863, than this Court's findings of fact and conclusions of law resolving questions of liability after a trial. Despite its name, a partial summary judgment is "not a final judgment," but merely "a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56, Advisory Committee Notes, 1946 Amendment, Subdivision (d).

The "actual effect" of this Court's findings of fact and conclusions of law is even harder to distinguish from the "Ruling on Issue of Segregation," with findings of fact and conclusions of law, which a district court issued after trial but before determining remedies in *Bradley v. Milliken*, 338 F. Supp. 582 (E.D. Mich. 1971), *aff'd in part, rev'd in part*, 484 F.2d 215 (6th Cir. 1973), *rev'd sub nom Milliken v. Bradley*, 418 U.S. 717 (1974). That ruling was certified for interlocutory appeal under § 1292(b), along with four other rulings the district court issued at various times over a nine-month period. *See* 484 F.2d at 218. Similarly, the district court in *Chang v. University of Rhode Island*, 107 F.R.D. 343 (D. R.I. 1985), "certified [its] classwide liability findings for interlocutory appeal under 28

7

U.S.C. § 1292(b)," and the First Circuit "accepted appellate jurisdiction over the issues so certified," *id.* 107 F.R.D. at 344.

Under Fourth Circuit precedent, § 1292(b) certification is not precluded by the mere fact that a ruling is in memorandum form without a separate document labeled "order." Rather, in a case involving a "memorandum opinion finding in favor of the use plaintiff" but without determining damages, the Fourth Circuit instructed that an appeal under § 1292(b) would have been available if the "district court's memorandum opinion on liability" had "state[d] that its opinion involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal might materially advance the ultimate termination of the litigation," and if "application was made to [the appellate] court to permit a § 1292(b) appeal, as required by that section." *United States v. Dember Constr. Corp.*, 600 F.2d 11, 11 (4th Cir. 1979) (dismissing appeal for lack of a final order and failure to comply with the procedural requirements of § 1292(b)); *c.f. Stoffels on behalf of Telephone Concession Plan v. SBC Comm'ns, Inc.*, 677 F.3d 720, 726 (5th Cir. 2012) (recognizing that an "interlocutory memorandum opinion" with findings of fact and conclusions of law "was an 'order or other decision' that 'adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties'" within the meaning of Fed. R. Civ. P. 54(b)).

## II. IN 28 U.S.C. § 1292(b) CONGRESS PROVIDED THE ONLY APPLICABLE TIME LIMIT AND COURTS ARE NOT AT LIBERTY TO ADD A TIME REQUIREMENT NOT FOUND IN THE STATUTE OR FED. R. APP. P. 5.

Plaintiffs' contention that the motion to certify is untimely must be rejected, because the time of its filing does not violate any provision of 28 U.S.C. § 1292(b) or Rule 5 of the Federal Rules of Appellate Procedure. When a statute provides for a time limit, as § 1292(b) does ("The Court of Appeals which would have jurisdiction of an appeal of such an action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after entry of the order [certifying appealability]."), and the applicable federal Rule provides no other time limit, *see* Fed. R. App. P. 5(a)(3), binding Supreme Court and Fourth Circuit precedent governing interpretation of statutes and Rules precludes a district court from imposing any additional time limit. Moreover, the artificial, nonstatutory time limit posited by the plaintiffs could not be reconciled with Fourth Circuit precedent recognizing that certification of an appeal might still be available even after the moving party had failed to comply with the actual statutory time limit. *See Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 866-67 (4th Cir. 2001) (holding that the district court has authority to recertify an interlocutory appeal after the moving party failed to meet the statutory 10-day requirement). If an interlocutory appeal via recertification remains available after a failure to satisfy the express time requirement of § 1292(b), as *Safety-Kleen* permits, then it would make no sense whatsoever to bar certification due to untimeliness when the statutory criteria have been satisfied.

In any case, the authorities from other jurisdictions cited by the plaintiffs in support of their extrastatutory time limit proposition can be easily distinguished because, unlike this case where the statutory criteria are met, those cases involved instances when a district court either determined that the request for certification failed to satisfy one or more of the statutory criteria provided in § 1292(b), or concluded that § 1292(b) did not apply.[2]

As the Supreme Court has instructed, "[t]he starting point in discerning congressional intent is the existing statutory text," and "'when the statute's language is

---

[2] *See* Plaintiffs' Opposition at 4, citing *Green v. City of New York*, No. 05-cv-0429 (DLI) (ETB), 2006 WL 3335051 (E.D.N.Y. Oct. 23, 2006); *see id.* at *2-*3 (finding that none of the requirements stated in § 1292(b) were satisfied); *Ferraro v. Sec'y of U.S. Dept. of Health and Human Serv's.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992); *see id.* (finding that an interlocutory appeal would not materially advance the ultimate termination of the litigation because "plaintiff admit[ted]" that already pending promulgation of revised regulation would leave the plaintiff with "no grounds for an interlocutory appeal"); *Morton Coll. Bd. of Tr. v. Town of Cicero*, 25 F. Supp.2d 882 (N.D. Ill. 1998); *see id.* at 885 (explaining that the moving party had "failed to show that the statutory criteria of § 1292(b) have been met"); *Fabricant v. Sears Roebuck & Co.*, Case No. 98-1281-CIV-NESBITT, 2001 WL 883303 (S.D. Fla. Jan. 29, 2001); *see id.* at *2 (finding that movant had failed to satisfy two of the statutory criteria, substantial ground for difference of opinion and materially advance ultimate termination of the litigation); *Richardson Elec., Ltd. v. Panache Broadcast. of Pennsylvania*, 202 F.3d 957 (7th Cir. 1999); *see id.* at 958 (concluding that the court "shall not have to answer" the question "whether the appeal satisfies the criteria for a section 1292(b) appeal" because interlocutory appeals from orders granting or denying class certification are governed by Fed. R. Civ. P. 23(f)); *Wallis v. Centennial Ins. Co.*, No. 08-02558 WBS GGH, 2012 WL 1552766 (E.D. Cal. May 1, 2012); *see id.* at *3 (finding it "unclear" whether interlocutory appeal would materially advance the ultimate termination of the litigation, given that the issue to be appealed was whether the district court was bound by a state court order staying all judicial proceedings involving the defendants, and also concluding that it was not an "exceptional" case in light of ample Ninth Circuit precedent on the subject); *Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755 (N.D. Cal. Jan. 8, 2010); *see id.* at *4 (finding that movant had "failed to establish a substantial ground for difference of opinion"); *Abrams v. Van Kampen Funds, Inc.*, No. 01-C-7538, 2002 WL 1989401 (N.D. Ill. Aug. 27, 2002); *see id.* at *1 (finding that the question of law identified was "not controlling and its resolution will not materially advance, but rather delay, the resolution of the case"); *United*

plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (citations omitted); *Clark v. Absolute Collect. Serv., Inc.*, 741 F.3d 487, 489-90 (4th Cir. 2014) (same (quoting *Lamie*, 540 U.S. at 534)).  Because no one has suggested, in any of the authorities cited by the plaintiffs, that the time limit stated in the text of § 1292(b) is insufficiently "plain" or that what it requires is "absurd," Supreme Court and Fourth Circuit precedent mandates that this Court "enforce it according to its terms." *Id.*  This mandatory obligation does not permit a court to "read an absent word into the statute," or to give the statute a reading that is, "'in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included in its scope.'" *Lamie*, 540 U.S. at 538 (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)).  Applying these principles, the Fourth Circuit has rejected an attempt to read into a statutory time period provisions that were not adopted by Congress.  *See United States v. Wooten*, 688 F.2d 941, 950 (4th Cir. 1982) (holding that, based on "the plain and unambiguous language of the statute itself . . ., there can be no question that the only prohibition imposed by the Speedy Trial Act itself on the commencement of the criminal trial is the thirty-day limitation established by section 3161(c)(2)").  In so doing, the Court instructed that "'a judge must presume that Congress chose its words with as much care as the judge himself brings to bear on the task of statutory interpretation.'" *Id.* (citation omitted).

---

*States for the Use and Benefit of N.E.W. Interstate Concrete, Inc. v. EUI Corp.*, No. TH98-0104-C-T/H, 2000 WL 863039 (S.D. Ind. June 9, 2000); *see id.* at *4 (finding that movants "fail to adequately demonstrate how 'an immediate appeal from the order may materially advance the ultimate termination of the litigation'").

11

plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (citations omitted); *Clark v. Absolute Collect. Serv., Inc.*, 741 F.3d 487, 489-90 (4th Cir. 2014) (same (quoting *Lamie*, 540 U.S. at 534)).  Because no one has suggested, in any of the authorities cited by the plaintiffs, that the time limit stated in the text of § 1292(b) is insufficiently "plain" or that what it requires is "absurd," Supreme Court and Fourth Circuit precedent mandates that this Court "enforce it according to its terms." *Id.*  This mandatory obligation does not permit a court to "read an absent word into the statute," or to give the statute a reading that is, "'in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included in its scope.'" *Lamie*, 540 U.S. at 538 (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926)).  Applying these principles, the Fourth Circuit has rejected an attempt to read into a statutory time period provisions that were not adopted by Congress.  *See United States v. Wooten*, 688 F.2d 941, 950 (4th Cir. 1982) (holding that, based on "the plain and unambiguous language of the statute itself . . ., there can be no question that the only prohibition imposed by the Speedy Trial Act itself on the commencement of the criminal trial is the thirty-day limitation established by section 3161(c)(2)").  In so doing, the Court instructed that "'a judge must presume that Congress chose its words with as much care as the judge himself brings to bear on the task of statutory interpretation.'" *Id.* (citation omitted).

---

*States for the Use and Benefit of N.E.W. Interstate Concrete, Inc. v. EUI Corp.*, No. TH98-0104-C-T/H, 2000 WL 863039 (S.D. Ind. June 9, 2000); *see id.* at *4 (finding that movants "fail to adequately demonstrate how 'an immediate appeal from the order may materially advance the ultimate termination of the litigation'").

These proscriptions mandating adherence to the plain language of § 1292(b) prevent adoption of the nonstatutory pre-certification time requirement advocated by the plaintiffs. Because the same principles of construction apply with equal force to interpretation and application of the federal Rules, the Court is also precluded from extrapolating such a time limit from Rule 5(a)(3) of the Federal Rules of Appellate Procedure, which contains no language purporting to establish a time limit not found in § 1292.  *See Business Guides, Inc. v. Chromatic Comm'ns Enter's, Inc.*, 498 U.S. 533, 540 (1991) (applying the plain meaning rule of statutory construction to Fed. R. Civ. P. 11); *Leatherman v. Tarrant C'nty Narcotics Intell. & Coord. Unit*, 507 U.S. 163, 168 (1993) (applying the maxim *expressio unius est exclusio alterius* to Fed. R. Civ. P. 9(b)); *Thorn v. Jefferson-Pilot Life Ins., Co.*, 443 F.3d 311, 331 (4th Cir. 2006) (applying both sets of principles to interpretation of Fed. R. Civ. P. 23(b)(2)).  Since, in the case of Rule 5(a)(3), "the text of the Rule" is "clear and unambiguous," the Court's "inquiry is complete." *Business Guides*, 498 U.S. at 540-41. The Court must "'stick to [its] duty of enforcing'" both the "'terms of the statute as Congress has drafted it'" and the terms of the Rule as adopted, *Thorn*, 443 F.3d at 331 (citation omitted).  The nonstatutory time requirement that the plaintiffs seek to impose "is a result which must be obtained" either by Congressional enactment or "by the process of amending the Federal Rules, and not by judicial interpretation." *Leatherman*, 507 U.S. at 168.

Even if these mandatory requirements left any room for a court to impose an implicit pre-certification time requirement, the decisions cited by the plaintiffs at most would require that the moving party have "a reason for the delay" in seeking certification. *Weir*

*v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990).  As explained in the motion to certify, deferring the request for an appeal pending the mediation suggested by the Court constitutes more than sufficient good reason.  Pursuing the mediation not only served the Congressional purpose of promoting settlements,[3] but by attempting to resolve the litigation and bring it to an earlier end than it would otherwise have, the mediation simultaneously promised to serve the similar legislative objective of § 1292(b), which is "shortening of the period between commencement of an action and its ultimate termination, together with the avoidance of unnecessary work and expense. . . ." *Hearings on H.R. 6238 and H.R. 7260 before Subcomm. No. 3, House Comm. on the Judiciary*, 85th Cong., 2d Sess., ser. 11 (1958) at 14 (report of Tenth Circuit Committee).

### III. ALL OF THE 28 U.S.C. § 1292(b) CRITERIA FOR AN INTERLOCUTORY APPEAL ARE SATISFIED.

In attempting to show that this most exceptional of cases is not worthy of certification, the plaintiffs mischaracterize both the governing legal principles and the posture of this case.

---

[3] *See* Alternative Dispute Resolution Act of 1998, § 2, Findings and Declaration of Policy, Pub. Law 105-315, 112 Stat. 2993 (Oct. 30, 1998):
> Congress finds that—
> (1) alternative dispute resolution, . . . has the potential to provide a variety of benefits, including greater satisfaction of the parties, innovative methods of resolving disputes, and greater efficiency in achieving settlements;
> (2) certain forms of alternative dispute resolution, including mediation . . . may have the potential to reduce the large backlog of cases now pending in some Federal courts throughout the United States, thereby allowing the courts to process their remaining cases more efficiently; . . .

A.  **Certification Is Warranted by the Controlling Question of Law Presented by the Court's Conclusions of Law**.

With respect to the first criterion under § 1292(b), the plaintiffs are mistaken as to what may constitute a "question of law" under the statute and what makes the question "controlling," and they also misapprehend the nature of the question of law that makes this Court's Memorandum of findings of fact and conclusions of law an exemplary candidate for interlocutory review. As interpreted by this Court, a "'question of law' as used in section 1292(b) has reference to the meaning of a statutory or constitutional provision, regulation, or common law doctrine" − such as the meaning of the Equal Protection Clause and "common law doctrine" pertaining to desegregation of public higher education – as opposed to "whether the party opposing summary judgment had raised a genuine issue of material fact." *Kennedy v. Villa St. Catherine, Inc.*, No. PWG-09-3021 (WDQ), 2010 WL 9009364, *1 (D. Md. June 16, 2010) (quoting *Clark Const. Group, Inc. v. Allglass Sys., Inc.*, No. DKC-02-1590, 2005 WL 736606, at *2 (D. Md. March 30, 2005)) (other citation omitted). "An order involves a *controlling* question of law when either (1) reversal of the [district] court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *In re Travelstead*, 250 B.R. 862, 865-66 (D. Md. 2000). Since the Court has already resolved all questions of fact pertaining to liability, no "issue of material fact" poses any obstacle to appellate review. *Kennedy*, 2010 WL 9009364, *1. Because an appellate ruling in this instance could result in reversal of the liability determination on the plaintiffs' only surviving claim, which would conceivably "terminate the action," *In re Travelstead*, 250 B.R. at 866, the Court's

14

Memorandum of findings of fact and conclusion of law unquestionably presents a controlling question of law as defined by this Court and as applied in prior cases. *See* 19 Moore's Fed. Prac. 3d § 203.31[2] at 203-113 (Although the phrase "controlling question of law" has "a much broader meaning in the context of § 1292(b)" than just one that "will resolve the action entirely," "[o]f course, if resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling.").

The plaintiffs' arguments to the contrary are without merit. First, their characterization of the question of law presented as merely a matter of "application" of law, Doc. 411 at 8-9, is inaccurate in a number of ways, but even if it were a fair characterization, it would not distinguish this case from the prior desegregation cases where interlocutory appeals were certified based on district court orders that purported to *apply* established law. *See* cases cited in footnote 1. More fundamentally, for reasons of constitutional importance, Congress could not possibly have intended that an order would be disqualified from interlocutory review under § 1292(b), as the plaintiffs contend, merely because the controlling question of law pertains to the district court's application of what it perceives to be the law to the specific facts of the case. Because the Constitution limits the "Judicial Power" to "Cases" or "Controversies," U.S. Const., art. III, § 2, clause 1, federal courts "must not deal in abstractions, for courts can only adjudicate actual cases, involving issues that are precisely framed by their connection to specific litigants in a concrete context." *Gilles v. Torgersen*, 71 F.3d 497, 500 (4th Cir. 1995) (citing *Valley Forge Chris. College v. Americans United for Separ'n of Church and State*, 454 U.S. 464, 472 (1982); *United Pub. Workers v. Mitchell*, 330 U.S. 75, 89 (1947)).

Instead, an interlocutory decision may satisfy the first criterion of § 1292(b) where, as in this case, it "present[s] a clear-cut question of law against a background of established facts" to which the law has been applied by the district court. 19 Moore's Fed. Prac. 3d § 203.31[3] at 203-121. In fact, interlocutory review has been found "not appropriate" in cases where, unlike this one with its completed trial record, "the record must be more fully developed so that [the appellate court] can make a precise decision upon a precise record – not an abstract answer to an abstract question." *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 407 (8th Cir. 1979). However, even in a case where the district court has denied a party's motion for summary judgment upon concluding "there are fact issues" remaining to be resolved, there may still be "a legal question that can properly be the subject of appellate review" under § 1292(b). *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010).

Although one may find in cases allusions to a preference for the "pure question of law," *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010), such ideal purity is difficult to reconcile with the justiciability prerequisite of Article III, *Gilles*, 71 F.3d at 500. Nor can such a purity principle be considered an essential test for certification under § 1292(b) given the range of questions and orders that have been certified for appeal in actual "cases and controversies" that involved issues similar to those posed in this case. *See* footnote 1, *supra*. The reference to a "narrow question of pure law" quoted by the plaintiffs, Doc. 411 at 11 (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, *5 (4th Cir. 1989) (unpublished opinion)), is problematic because its source is an unpublished Fourth Circuit decision from 1989, which the appellate court would not have

16

accorded precedential value at the time it was issued, and the citation of which, in either the Fourth Circuit or this Court, remains "disfavored" under Fourth Circuit Local Rule 32.1.  In any case, the concern that led that panel to deny leave to appeal was one that unquestionably does not pertain here:  that "the only question that [the court] properly might consider on an interlocutory appeal" of the order at issue "would simply be whether the district court erred in concluding that summary judgment for [the defendant] was not warranted on the present record because there were on that record genuine issues of material fact. . . ." *Fannin*, 1989 WL 42583, *5.  The panel perceived that, in that posture, it was "a question of law heavily freighted with the necessity of factual assessment" that had yet to be undertaken by the district court, and threatened to "inflict[] on the court[] of appeals an unaccustomed and illsuited role as factfinders." *Id.*

This case presents no such problem, because this Court already has made all of the factual findings required, and the appellate court will not be expected to take on a "role as factfinders." *Id.*  Nor would the appellate court find it necessary to make any "factual assessment," *id.*, in order to determine whether a question of law presents a controlling question suitable for interlocutory review.  Whether this Court did so rightly or wrongly is a matter to be resolved on appeal, but it is patent from even casual inspection of the Court's Memorandum of findings of fact and conclusion of law that its adjudication of the claim of unnecessary program duplication did not merely apply settled legal principles.  For example, the courts in *Fordice/Ayers* expressed the essential elements of an actionable unnecessary program duplication claim as follows:  "only [1] program duplication [2] between . . . racially identifiable institutions" that are [3] "proximate." *Ayers v. Fordice*,

17

111 F.3d 1183, 1218 (5th Cir. 1997).  It is clear from the face of this Court's decision that the legal test it applied omitted the second element, because the lack of racially identifiable traditionally white institutions ("TWIs") in Maryland was conceded by the plaintiffs and the Court's findings of fact did not purport to address the matter.  Similarly, given *Fordice*'s instruction that unnecessary program duplication is not to be considered "in isolation," *United States v. Fordice*, 505 U.S. 717, 739 (1992), this Court's decision determining that unnecessary program duplication is Maryland's only remaining policy traceable to *de jure* segregation presents, on its face, a controlling question of law, which is whether unnecessary program duplication "in isolation" can suffice to justify relief.

Therefore, the Court's Memorandum presents a controlling question of law.

### B. The Remaining Criteria of § 1292(b) Are Satisfied.

The reasons why there is substantial ground for difference of opinion and why an interlocutory appeal may materially advance the ultimate resolution of this litigation are set forth in the defendants' motion.

### IV. A STAY OF PROCEEDINGS PENDING APPEAL IS APPROPRIATE GIVEN THAT THE ORDER TO BE APPEALED IS THE SOLE BASIS OF PLAINTIFFS' ENTITLEMENT TO RELIEF.

The reasons why a stay pending appeal is appropriate are set forth in the motion for stay.  The plaintiffs' observation that "a stay is not appropriate where an interlocutory appeal would not completely resolve the case," Doc. 411 at 19, does not pertain to this case, because an interlocutory appeal could result in reversal of the only claim on which the plaintiffs have prevailed, and the only basis for any remedy.  Proceeding with litigation

of remedies before the appellate court has an opportunity to rule would be a waste of judicial resources and would work a disservice to the people of Maryland.

## CONCLUSION

For the reasons stated, the Court should certify an interlocutory appeal of the October 7, 2013 findings of fact and conclusions of law by amending the order to add the statement that the Court finds it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court should also stay all proceedings pending appeal.

Respectfully submitted,

/s/
STEVEN M. SULLIVAN
Federal Bar No. 24930
KATHERINE D. BAINBRIDGE
Federal Bar No. 29591
KATHLEEN E. WHERTHEY
Federal Bar No. 23900
BEATRICE NUÑEZ-BELLAMY
Federal Bar No. 29582
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland  21202-2021
Tel: (410) 576-6325

Attorneys for Defendants