## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

THE COALITION FOR EQUITY AND :
EXCELLENCE IN MARYLAND :
HIGHER EDUCATION, *et al.* :
 :
 :
  v. : Civil No. CCB-06-2773
 :
 :
MARYLAND HIGHER EDUCATION :
COMMISSION, *et al.* :
 :

### MEMORANDUM

 Plaintiff The Coalition for Equity and Excellence in Maryland Higher Education and

named individuals associated with the organization ("the Coalition") sued the State of Maryland,

the Maryland Higher Education Commission, and its officers in their official capacities

(collectively, "the State") alleging violations of Title VI of the Civil Rights Act of 1964 and the

Equal Protection Clause of the Fourteenth Amendment.  After a bench trial, the court issued an

opinion containing findings of fact and conclusions of law ("the Ruling"), and holding that under

*United States v. Fordice*, 505 U.S. 717 (1992), unnecessary program duplication within

Maryland's system of higher education continues to have segregative effects for which the State

has no sound educational justification.  *Coal. for Equity & Excellence in Md. Higher Educ. v.*

*Md. Higher Educ. Comm'n*, 977 F. Supp. 2d 507 (D. Md. 2013).  At the court's suggestion, the

parties then engaged in mediation to determine an appropriate remedy.  That mediation recently

culminated without the parties having reached an agreement.  The State has now moved for a

certificate of appealability as to the Ruling, to stay the remainder of the case, and for an

extension of time to respond to the Coalition's remedial proposal.  For the reasons that follow, the court will grant the motion for a certificate of appealability, deny the motion to stay, and grant the motion for an extension.

## BACKGROUND

The Ruling, issued on October 7, 2013, examined three policies of the Maryland system of higher education allegedly traceable to the era of *de jure* segregation: (1) limited institutional missions of historically black institutions of higher education ("HBIs") as compared to traditionally white institutions ("TWIs"); (2) operational funding deficiencies at HBIs; and (3) unnecessary program duplication between HBIs and TWIs.  The court found that the Coalition failed to prove that "any current operational funding or mission related policy or practice" was traceable to the *de jure* era, but succeeded in proving that the State had "failed to eliminate the traceable *de jure* era policy of unnecessary program duplication for Maryland's HBIs."  *Coal. for Equity & Excellence*, 977 F. Supp. 2d at 524.  The court "strongly suggest[ed] that the parties enter mediation to attempt to generate a suitable plan to address" the problem of unnecessary program duplication, *id.* at 544, and on October 31, 2013, they agreed to mediation with Judge Paul Grimm, (Letter to Counsel, ECF No. 385).  Mediation commenced in January 2014 and continued for over a year.  Despite Judge Grimm's substantial efforts, however, the parties were unable to agree on an appropriate plan.

On May 4, 2015, one day before the Coalition's proposed remedies were due to be filed, the State moved to certify an interlocutory appeal of the Ruling.  In a separate motion filed that same day, the State moved to stay all proceedings other than those related to the motion to certify and to stay all proceedings if the court ultimately granted that motion.  The Coalition filed its

proposed remedies on May 5, 2015.  On May 15, 2015, the State moved for an extension of time

to respond to the Coalition's proposed remedies.  The Coalition then filed oppositions to each of

the State's motions.  On May 27, 2015, the court issued a letter indicating that the motion for an

extension would be granted, at least in part, depending on the resolution of the other pending

motions.

## ANALYSIS

### I.  Motion to Certify Interlocutory Appeal

"The Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b), was enacted to meet the

recognized need for prompt review of certain nonfinal orders."  *Coopers & Lybrand v. Livesay*,

437 U.S. 463, 474 (1978) (footnote omitted); *see also Kennedy v. Villa St. Catherine, Inc.*, No.

PWG-09-3021, 2010 WL 9009364, at *1 (D. Md. June 16, 2010)[1] (noting that the "purpose

behind the exception" to the normal appeals process "is to avoid unnecessary litigation" (citation

omitted)).  Section 1292(b) provides, in full, as follows:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order
> involves a controlling question of law as to which there is substantial
> ground for difference of opinion and that an immediate appeal from the
> order may materially advance the ultimate termination of the litigation, he
> shall so state in writing in such order. The Court of Appeals which would
> have jurisdiction of an appeal of such action may thereupon, in its
> discretion, permit an appeal to be taken from such order, if application is
> made to it within ten days after the entry of the order: *Provided, however,*
> That application for an appeal hereunder shall not stay proceedings in the
> district court unless the district judge or the Court of Appeals or a judge
> thereof shall so order.

28 U.S.C. § 1292(b).  Thus, certification of an interlocutory appeal under § 1292(b) is

appropriate where a district court makes an order, and "(1) the order to be appealed involves a

controlling question of law; (2) there is substantial ground for difference of opinion on that

---

[1] Unpublished cases are cited for the persuasiveness of their reasoning, not for any precedential value.

question of law; and (3) an immediate appeal from the order may materially advance the ultimate

termination of the litigation." *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 741

(D. Md. 2003).[2]  But interlocutory appeal under § 1292(b) is the exception, not the rule.

Accordingly, it "should be used sparingly," *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989),

and the party seeking its application must persuade the court that "exceptional circumstances

justify a departure from the basic policy of postponing appellate review until after the entry of a

final judgment." *Coopers & Lybrand*, 437 U.S. at 475 (citation omitted).

 The State argues that all the requirements of § 1292(b) are met here, and interlocutory

review is appropriate.  The Coalition responds that this case is not "exceptional," the Ruling is

not an "order" within the meaning of § 1292(b), that section's other requirements are not met,

and the State unreasonably delayed the filing of its motion to certify.  I agree with the State.

### A.  Whether This Case Presents Exceptional Circumstances

 Interlocutory review under § 1292(b) is limited to exceptional circumstances.  *Coopers &*

*Lybrand*, 437 U.S. at 475.  As the State notes, the Ruling "constitute[d] the first time since the

early 1990s that any district court in the United States has had occasion to issue a ruling on

liability in a case involving issues of desegregation in public higher education."  (State's Mot.

Certify 8, ECF No. 404.)  This case presents exceptional circumstances.

### B.  Whether the Ruling is an "Order"

 By its terms, § 1292(b) allows the interlocutory appeal only of an "order."  The Coalition

argues that the Ruling contained no order.  Rather, the Coalition points out that the Ruling

"propose[d] to defer entry of judgment pending mediation or further proceedings if necessary to

---

[2] A district court may amend a prior decision to state that the conditions necessary for an interlocutory appeal have been met.  *See* Fed. R. App. P. 5(a)(3).

establish an appropriate remedy."  977 F. Supp. 2d at 544.  The State responds that the Ruling

was an order in substance and effect because it disposed of the question before it, and if there

were any doubt the court could "issu[e] a revised order clarifying that the findings of fact and

conclusions of law are to be treated as an order of the Court."  (State's Reply in Support of Mot.

Certify 3, ECF No. 415.)

No definitive definition of order appears to exist to which the court must look here.  The

State points to a portion of the Black's Law Dictionary definition in which "order" is defined as

a "written direction or command" and a "determination of the court upon some subsidiary . . .

matter arising in an action."  *Order*, Black's Law Dictionary (10th ed. 2014).  The State says the

Ruling is a "written direction or command" and a "determination of the court upon some

subsidiary . . . matter arising in an action," and should therefore be viewed as an order.

The State also cites several cases that applied a functional approach to determining

whether a ruling is susceptible to interlocutory review.  In *McCullough v. Kammerer Corp.*, 331

U.S. 96 (1947), for example, the Supreme Court looked to the predecessor statute to § 1292(c)

and examined whether a patent ruling which was labeled an "order" qualified as a "decree."  *Id.*

at 98.  The Court held that the district court's labeling of the ruling was "not of crucial

significance" because its "binding effect in disposing of the question before it is the same as

though it had been entitled a 'decree.'"  *Id.* at 99.  Other cases agree that a functional approach is

appropriate.  *See Birmingham Fire Fighters Ass'n 117 v. Jefferson Cnty.*, 280 F.3d 1289, 1292-

95 (11th Cir. 2002) (applying a "functional approach" and "looking not to the form of the district

court's order but to its actual effect" in examining whether, under § 1292(a), a district court's

interpretation of a consent decree "modified" an injunction so as to render it appealable under

that provision (citation omitted)); *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977) ("These orders [under § 1292(b)] must be definitive, effective, and in a posture capable of affirmance or reversal.").

The State argues that the Ruling had the actual effect of adjudicating the State's liability definitely, effectively, and in a posture capable of affirmance or reversal, and should thus be construed as an order. The State further argues that the Ruling had the same actual effect as orders appealed under § 1292(b) in other high-stakes desegregation cases before the remedies were determined. *See Gratz v. Bollinger*, 122 F. Supp. 2d 811, 836 (E.D. Mich. 2000) (ruling on motions for summary judgment); *Bradley v. Milliken*, 338 F. Supp. 582, 594-95 (E.D. Mich. 1971) (ruling after trial).

The Coalition's lone authority in support of its position is *In re Community Bank of Northern Virginia*, 622 F.3d 275 (3d Cir. 2010). There, the court noted that "the District Court could not have certified its 2006 Memorandum for appellate review under 28 U.S.C. § 1292(b) or Federal Rule of Civil Procedure 54(b), as it was an interlocutory ruling on a question of law, not an order or a judgment." *Id.* at 314 n.35. But as the State points out, *Community Bank* involved the attempted settlement of a class action, and the memorandum addressed whether certain claims the plaintiffs had failed to assert "could have survived a Rule 12(b)(6) motion to dismiss." *Id.* at 288. In the State's words, that memorandum thus consisted of "the most purely advisory and academic exercise a court could ever take." (State's Reply in Support of Mot. Certify 6.) *See also Linton v. Shell Oil Co.*, 563 F.3d 556, 557 (5th Cir. 2009) ("[S]ection 1292(b) authorizes certification of orders for interlocutory appeal, not certification of questions."); 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3930 (3d ed.

2012) (noting that an order appealable under § 1292(b) should "raise issues that are ripe for appellate review").

Unlike the memorandum in *Community Bank*, the Ruling is not merely a "ruling on a question of law."  Rather, it was the culmination of the liability phase of the case.  *Community Bank* therefore does little to support the Coalition's argument.  Regardless, however, the Coalition's argument that the Ruling should not be construed as an appealable order places form over substance: the Ruling was this court's final adjudication of the State's liability in this case, and it is clearly susceptible to appellate review.  Further, given that the remaining requirements of § 1292(b) are met, the Coalition's formalistic approach would seem to frustrate the purpose of § 1292(b).  The court thus rejects the Coalition's argument that the Ruling was not an "order" within the meaning of § 1292(b).

Nonetheless, to avoid any uncertainty the court is today entering an order incorporating the findings of fact and conclusions of law contained in the Ruling and finding that the requirements of § 1292(b) have been met.  *See* Fed. R. App. P. 5(a)(3).

### C.  Whether the Ruling Involves a Controlling Question of Law

"The term 'question of law,' for purposes of § 1292(b), refers to 'a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine'—as opposed to 'whether the party opposing summary judgment had raised a genuine issue of material fact.'"  *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013) (quoting *Clark Constr. Grp., Inc. v. Allglass Sys., Inc.,* No. DKC-02-1590, 2005 WL 736606, at *2 (D. Md. March 30, 2005)).  And though a "controlling" question of law clearly includes every order that, "if erroneous, would be reversible error on final appeal," *id.* (citing *Katz v. Carte*

*Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)), a question also may be controlling "if interlocutory reversal might save time for the district court, and time and expense for the litigants," 16 Wright et al., *Federal Practice & Procedure* § 3930.

"Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010); *see, e.g., Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 621 F.3d 296, 301 (3d Cir. 2010) ("The District Court certified the following question for our review: 'whether a blanket policy of strip searching all non-indictable arrestees admitted to a jail facility without first articulating reasonable suspicion violates the Fourth Amendment of the United States Constitution as applied to the States through the Fourteenth Amendment.'"). Though "routine applications of well-settled legal standards" are not appropriate for interlocutory appeal, under certain circumstances even a question as prosaic as whether a complaint states a claim has been held to satisfy this standard. *See Text Messaging Antitrust Litig.*, 630 F.3d at 624-27 (addressing the application of post-*Twombly* pleading standards to a Sherman Act complaint).

The State frames the central controlling question of law here as "[t]he correct legal analysis for determining whether, despite having fully desegregated its TWIs, [it] can be held liable based on a finding of unnecessary program duplication[.]" (State's Mot. Certify 14.) The Coalition says this question is merely another way of asking whether the court misapplied settled law to the facts, and is therefore not a "controlling question of law" under § 1292(b). More specifically, the Coalition argues that what the State really wants is for the Fourth Circuit to reexamine this court's application of *Fordice*. But whether, under *Fordice*, a state can be held

liable for unnecessary program duplication despite having fully desegregated its TWIs is

certainly a question of law, and that question is potentially controlling here. The "multiple issues

subsumed within that question" are more fact-dependent, (*see* State's Mot. Certify 10-14 (setting

out six *Fordice*-related issues that turn on the facts of this case), and the Fourth Circuit may or

may not address them all. In either case, the Ruling involves a controlling question of law.

It is true, as the Coalition points out, that some cases refer to "a *pure* question of law,

something the court of appeals could decide quickly and cleanly without having to study the

record[.]" *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)

(emphasis added). But that standard is generally recited to justify denying interlocutory appeal

on a summary judgment ruling. *See, e.g., id.* Such was the case in *Fannin v. CSX

Transportation, Inc.*, 873 F.2d 1438 (4th Cir. 1989) (per curiam) (unpublished), on which the

Coalition places substantial reliance. *Fannin* included some strong language limiting the scope

of § 1292(b). *See id*. at *5 ("[T]he kind of question best adapted to discretionary interlocutory

review is a narrow question of pure law whose resolution will be completely dispositive of the

litigation, either as a legal or practical matter, whichever way it goes."). Ultimately, however, it

merely found that the defendant sought interlocutory review of the denial of its summary

judgment motion, and such review was not appropriate. *See id.* ("[I]t appears that the only

question that we properly might consider on an interlocutory appeal of this order would simply

be whether the district court erred in concluding that summary judgment for CSX was not

warranted . . . ."). Appellate review of this case would not involve a hunt for disputed issues of

material fact. Rather, the State seeks to challenge the application of *Fordice* to facts that have

now been found, and "there is no doctrine [concerning § 1292(b)] counseling courts to avoid

ruling on legal issues involving *undisputed* facts that are before them." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011).  Accordingly, the State has demonstrated the existence of a controlling question of law.

### D.  Whether There is Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion may exist where there is "a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits," or "where a court's challenged decision conflicts with decisions of several other courts." *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 97-98 (D.D.C. 2003).  "The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case."  16 Wright et al., *Federal Practice & Procedure* § 3930.

The State points to the lack of Fourth Circuit precedent concerning *Fordice*, and argues that substantial ground for difference of opinion arises from the fact that, at least in the State's view, the Ruling's analysis differs from that of *Fordice* and the *Ayers* decision[3] implementing it. (*See* State's Mot. Certify 17-18 (detailing examples of where the Ruling supposedly deviated from *Fordice* and *Ayers*).  The State further argues that this element of § 1292(b) is established by the fact that the Ruling's conclusions differ from the "complex educational judgments" of State officials.  (*Id.* at 19.)

In response, the Coalition argues that the State's own view as to its liability does not establish substantial ground for difference of opinion.  *See Nat'l Cmty. Reinvestment Coal. v. Accredited Home Lenders Holding Co.*, 597 F. Supp. 2d 120, 122 (D.D.C. 2009) ("Mere disagreement, even if vehement, with a court's ruling does not establish a substantial ground for

---

[3] *Ayers v. Fordice*, 111 F.3d 1183, 1217-21 (5th Cir. 1997).

difference of opinion sufficient to satisfy the statutory requirements for an interlocutory appeal."). The Coalition also seeks to refute the State's contention that the analysis in the Ruling differed from that in *Fordice* and *Ayers*.

The court is confident in the correctness of the Ruling's conclusions, but the Fourth Circuit has never examined *Fordice*. Though a case of first impression within a circuit is not generally sufficient to establish this element of § 1292(b), the State believes the Ruling misinterpreted *Fordice* in such a way as to conflict with it, and the other criteria for interlocutory appeal are satisfied.[4] Within the context of this extraordinarily important case, the court finds that there is substantial ground for difference of opinion sufficient to justify an interlocutory appeal.

### E.  Whether an Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation

"In determining whether certification will materially advance the ultimate termination of the litigation, a district court should consider whether an immediate appeal would: '(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'" *Lynn*, 953 F. Supp. 2d at 626 (citation omitted).

The trial in this case has already taken place. The State argues, however, that this element of § 1292(b) is satisfied where, as here, reversal could result in dismissal of the entire action. *See In re Travelstead*, 250 B.R. 862, 866 (D. Md. 2000) ("Reversal of the Bankruptcy Court's Order would result in dismissal of the entire action. Accordingly, the third requirement is met."). The State further argues that even if the case is not reversed, an appeal "is likely to

---

[4] In *Kennedy*, 2010 WL 9009364, the court certified an issue for interlocutory appeal despite it being a question of first impression. The court noted, however, that "when a matter of first impression also had other grounds for difference of opinion—and met the other two criteria—, district courts in this circuit have certified the issue for interlocutory appeal." *Id.* at *2. The Fourth Circuit appeared to agree, examining the issue and noting that "the requirements of § 1292(b) [were] clearly satisfied . . . ." *Kennedy*, 657 F.3d at 195.

provide guidance that will help clarify the issues" to be resolved during the remedies phase, thus

"possibly averting the need for a future appeal." (State's Mot. Certify 20.) The Coalition

responds that an interlocutory appeal would prolong the litigation, and result in multiple appeals

should the parties appeal later. *See Winstead v. United States*, 863 F. Supp. 264, 269 (M.D.N.C.

1994) ("Certifying the action for review before damages have been determined would likely

result in one appeal on the liability issue and a separate appeal on the damages issue. Creating a

situation necessitating two separate appeals is a waste of judicial resources and should be

avoided if possible.").

A reversal by the Fourth Circuit could advance the litigation by ending it. And if the

Fourth Circuit does not reverse, it may clarify the issues in such a way as to assist this court in

examining the parties' remedial proposals, which are much more complex than a monetary

damages calculation. Accordingly, the court finds that this element is satisfied.

### F.  Whether the State's Motion to Certify Is Timely

The only express time limitation in § 1292(b) provides that the party seeking an

interlocutory appeal must, within ten days of the district court's order certifying the appeal, file

an application with the appellate court. Some courts have found, however, that "[t]here is also a

nonstatutory requirement: the petition must be filed in the district court within a *reasonable time*

after the order sought to be appealed," *Ahrenholz*, 219 F.3d at 675, and "a district judge should

not grant an inexcusably dilatory request," *Richardson Electronics, Ltd. v. Panache Broad. of

Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000).

The parties were engaged in mediation until recently, and the timing of the State's motion

was reasonable and not inexcusably dilatory. None of the cases cited by the Coalition address a

12

situation like this one, where the delay was attributable solely to the failure of mediation. Accordingly, the delay should not bar an interlocutory appeal.

### G.  The Court Will Certify the Appeal

The requirements of § 1292(b) are satisfied here.  The court will certify an interlocutory appeal of the Ruling.

## II.  Other Motions

The State has also moved to stay the case pending resolution of the motion to certify, and if the court grants the motion to certify, to stay all proceedings pending resolution of the appeal. The court will deny the first request as moot.  As to the second request, § 1292(b) provides that certification of an interlocutory appeal "shall not stay proceedings" automatically; rather, a district judge must "so order."  28 U.S.C. § 1292(b).  "The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'"  *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) (citation omitted).

The State argues that a stay is warranted here because "[e]ven if the result of the interlocutory appeal does not end the case, . . . the appellate court's ruling is likely to provide guidance that will need to be applied on remand to this Court."  (State's Mot. Stay 2, ECF No. 405.)  The State adds that "[p]roceeding with litigation of remedies before the appellate court has an opportunity to rule would be a waste of judicial resources and would work a disservice to the people of Maryland."  (State's Reply in Support of Mot. Certify 19.)  The Coalition responds that allowing the remedies phase to continue is the most efficient means of handling this case.

Given that the Coalition has already filed its proposed remedies, the court will require the State to respond, albeit with an extension of time.  If the State refiles a motion to stay after briefing on remedies is complete, the court will revisit the issue, perhaps with the benefit of the Fourth Circuit's decision on whether to accept certification of the interlocutory appeal.

As to the State's motion for an extension of time to respond to the Coalition's remedial proposal, the State asks that its response be postponed "to no sooner than September 3, 2015." (State's Mot. Extension 1, ECF No. 409.)  The Coalition's remedial proposal presents complicated issues, and the State's request is reasonable.  Given that the court has required time to consider the motions, the State's response to the Coalition's remedial proposal will be due by September 30, 2015.

## CONCLUSION

For the reasons stated above, the court will grant the motion for a certificate of appealability, deny the motion to stay, and grant the motion for an extension.

A separate order follows.


June 29, 2015                                        _____/S/_____
Date                                                      Catherine C. Blake
                                                         United States District Judge

14