**EXH. 03**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| COALITION FOR EQUITY AND EXCELLENCE IN MARYLAND HIGHER EDUCATION, *et al.*, Plaintiffs | * | |
| v. | * | |
| MARYLAND HIGHER EDUCATION COMMISSION, *et al.*, Defendants. | * | Case No.: CCB-06-cv-2773 |

* * * * * * * * * * *

# DECLARATION OF ALLAN J. LICHTMAN

Allan J. Lichtman submits the following unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. The Office of the Attorney General of the State of Maryland has retained me as an expert in connection with the remedy phase proceedings in this case. In that capacity I reviewed the May 5, 2015 remedial proposal by Drs. Walter A. Allen and Clifton F. Conrad, their May 1, 2016 Reply Report, their July 6, 2016 revised Reply Report and the backup data provided by plaintiffs as support for those reports. I have prepared two reports analyzing the remedial proposals: the first dated November 20, 2015, and the second dated August 30, 2015. My first report was previously submitted to the Court as an exhibit, ECF 448-5. My second report is attached to this declaration as Exhibit 1.

2. The purpose of this declaration is to assess the methodology underlying plaintiff's claims regarding the effectiveness of their remedial proposal for diversifying Maryland's HBIs. "Methodology, therefore, is concerned not only with the products of scientific inquiry, but also the underlying assumptions and processes associated with the construction of knowledge from a particular scientific standpoint. … How we account for and disclose our scientific approach is essential, therefore, if consumers (e.g., the public, policy makers, practitioners, the research community) are to evaluate the results of our research critically." Ronald H. Heck, "Conceptualizing and Conducting Meaningful Research," in Clifton F. Conrad and Ronald C. Serlin, *Sage Handbook for Research in Education* (Sage: 2011), pp. 373-374.

3. This declaration sets forth the reasons that the methodology presented as support for the predictions regarding the effectiveness of the remedial proposal is unreliable and fails to satisfy well-established professional standards for making generalizations or predictions in social science. As demonstrated by Dr. Heck in Dr. Conrad's co-edited book, any findings in social

science study depend on the researchers' methodology. The declaration identifies and explains why Conrad and Allen's methodology lacks validity and reliability and fails to satisfy well-established professional standards for making generalizations or predictions in social science.

4. In his deposition, Dr. Conrad identifies three foundations for their remedial opinions, each of which is examined in this declaration:

1) The 2016 quantitative analysis presented in their July 6, 2016 Report;

2) A 1994 study of the motivations for white students to attend HBIs, published in 1997;[1]

3) Dr. Conrad's "extensive experience visiting HBCUs."

## II. Conrad and Allen's July 6, 2016 Report is Fatally Flawed in Its Methodology

5. Even if taken at face value, Conrad and Allen admit that the analysis in this report provides *no basis* for generalizations or predictions about the diversification potential of their remedial proposal. In his deposition, Dr. Allen states that in contrast to his scholarship that used inferential techniques such as regression analysis, their Report was strictly descriptive: "The analysis that was judged to be more appropriate was a descriptive analysis."[2] Dr. Conrad confirms that that they did not use inferential techniques to test hypotheses about their remedial proposal.[3]

6. Descriptive analysis is a well-recognized term of art in social science. Such analysis only describes what is already known about contents of data, for example, through averages and means, without providing any basis for making generalizations or predictions about what is not yet known, e.g., the capacity of plaintiffs' proposed remedial plan to enroll large numbers of students and high percentages of white students at the HBIs.

- Alan Agresti and Barbara Finlay, noted in *Statistical Methods for the Social Sciences* that "Methods for analyzing data include descriptive methods for summarizing the data and inferential methods for making predictions."[4]

- Rand Wilcox, in *Modern Statistics for the Social and Behavioral Sciences* distinguishes between "Summarizing data, using what are called descriptive statistics and "Inferential techniques, which roughly are methods aimed at making predictions or generalizations about a population of individuals or things when not all individuals or things can be measured.[5]

---

[1] C.F. Conrad, E.M. Brier, and J.M. Braxton, "Factors Contributing to the Matriculation of White Students in Public HBCUs," *Journal for a Just and Caring Education* 3 (1997): 37-62.

[2] Deposition of Walter Allen, September 8, 2016, p. 101.

[3] Deposition of Clifton Conrad, September 13, 2016, pp. 243-244, p. 245, l. 18-21, p. 246, l. 1 -5 .

[4] Alan Agresti and Barbara Finlay, *Statistical Methods for the Social Sciences*, 4th edition (Pearson: 2014), p. 4.

[5] Rand Wilcox, *Modern Statistics for the Social and Behavioral Sciences* (CRC Press, 2012), p. 1.

7. Dr. Allen indicates that given their descriptive approach to data, he can judge the effectiveness of their proposal only after it has already been in place for an unspecified number of years.[6] Inferential analysis, in contrast, provides the basis for evaluating policies *prior* to implementation.

8. Conrad and Allen's designations of high demand and exceptionally high demand programs, essential components of their remedial plan, fail to meet the two necessary tests of reliability and validity in social science research. By establishing standards of measurement, researchers operationalize a concept like "high demand" so that it becomes a variable that can be used for statistical analysis. However, analysis based on unreliable and invalid variables is essentially meaningless and cannot ground any scientific findings, whether descriptive or inferential.

9. As noted by Ellen Drost, "reliability is consistency of measurement, or stability of measurement over a variety of conditions in which basically the same results should be obtained."[7] However, Conrad and Allen designate high demand programs according to the number of degrees granted in Maryland for the single year of 2014, despite year-to-year variation in degrees conferred. Such variation is significant enough that in their July 6, 2016 Report Conrad and Allen changed the designation of *59* high demand and exceptionally high demand programs based on 2014 data as compared to earlier data used in their May 1, 2016 Report.[8]

10. In my report I noted that the proper methodology to minimize fluctuations is to average degrees granted over a number of years. Dr. Conrad testified that "ideally I would've liked to have done it over a period of years," but that "I just didn't have the time or energy to do it."[9]

11. Validity refers to "measuring what they [researchers] intended to measure."[10] For high demand programs, Conrad and Allen are measuring programs that purportedly would enroll high numbers of students and of white students at the HBIs. However, their methodology is based on degrees, not enrollments, and relies on arbitrary numerical cutoffs, for which they provide no substantive justification or any source in the literature.[11]

12. Conrad and Allen's designation of high demand programs is also largely determined by degrees granted at the TWIs, which confer far more degrees per institution than

---

[6] Allen Deposition, p. 102, l. 8-20.

[7] Ellen A. Drost, "Validity and Reliability in Social Science Research," *Education Research and Perspectives*, 38 (2011), pp. 105-106.

[8] Conrad and Allen, July 6, 2016 Report, Exhibit 4, "CHANGES TO 2014 PROGRAM INVENTORY."

[9] *Conrad Deposition*, p. 318, l. 7-19. Lichtman Report August 30, 2016, Report p.12, demonstrates the different results obtained from 5-year averages rather than single-year degree statistics. The source on which Conrad and Allen rely (MHEC, "Degree Trend Data Workbook 2014.") includes degrees per program for a 10-year span in spreadsheet format, from which any standard statistical software could produce averages almost instantaneously.

[10] Drost, "Validity and Reliability," p. 114.

[11] *Conrad Deposition*, p. 311, l. 4-16; Lichtman, August 30, 2016 Report, p. 12 demonstrates the sensitivity of program designations to cutoffs numbers.

the HBIs.[12] They do not demonstrate that designated high demand programs based on degrees granted at the TWIs translate into high enrollments or high white percentages in HBI programs.[13]

13. Conrad and Allen's designation of unique programs also lacks reliability because it depends on their arbitrary definition of "proximate uniqueness" based on regional designations. However, their identification of proximate regions has *twice shifted* arbitrarily. Dr. Conrad in his "Third Report" of June 15, 2010 combined Morgan, Coppin and Bowie into a single Baltimore-College Park Region.[14] However, in their May 5, 2015 Appendix to "Plaintiffs' Memorandum" (Doc. 406-2) Conrad and Allen incorporate Morgan and Coppin into a "Baltimore Region" and isolate Bowie in a newly distinct region of Montgomery, Prince George's and Charles County.[15] In their July 6, 2016 Report they revert to the 2010 regional designations, with Morgan, Coppin and Bowie again merged into a single Baltimore-College Park Region.

14. Their designation of "proximate uniqueness" also lacks validity because Maryland is a small state and its universities attract students from across the state, as well as from out of state, and internationally. UMES, for example, the most geographically isolated of the HBIs, enrolls only 23 percent of its students from Eastern Shore counties.[16] Conrad and Allen also identify an HBI program as "unique" even if duplicated at another HBI and count a TWI program as "unique" even if duplicated at another TWI. The TWIs have many more programs than the HBIs skewing the analysis toward finding duplication among HBI, but not TWI programs. Their concept of uniqueness also operates within an unrealistically closed system limited to the 4 HBIs and the 7 TWIs included in their Report. They exclude programs at Frostburg, St. Mary's, and the many private institutions in Maryland and in nearby D. C., Virginia, and Pennsylvania. They do not consider the explosive growth in online learning.[17]

15. Conrad and Allen's analyses further depend on their designations of "core programs," because these programs are excluded from their remedial program categories and their remedial proposal (with a single unexplained exception). However, Dr. Conrad indicates that any designation of core programs changes over time, so that the identification of core and non-core programs in their most recent Report might well change unpredictably by the time their remedial proposals would be implemented.[18]

16. Their designation of core programs also lacks validity, because Conrad and Allen provide no clear, verifiable criteria in their Report according to which programs are assessed as core or non-core. As with high demand programs, differences in the designations of core program will ripple across all of Conrad and Allen's analyses, which depend upon excluding core programs. They also provide no basis for concluding that unlike non-core programs, core

---

[12] Lichtman, August 30, 2016 Report, pp. 11-16.

[13] For a refutation of both these propositions, see Lichtman, August 30, 2016 Report pp. 16-20. My Report, p. 16, also demonstrates various other ways to operationalize "high demand" that Conrad and Allen do not utilize.

[14] "Third Expert Report of Dr. Clifton F. Conrad," June 15, 2010, pp. 6, 74.

[15] Appendix, "Plaintiffs' Memorandum In Support Of Plaintiffs' Remedial Proposal," Doc. 406-2, pp. 3-4.

[16] Lichtman November 20, 2015 Report, p. 22.

[17] For online learning opportunities see, Lichtman, August 30, 2016 Report, p. 21.

[18] For changes over time in Dr. Conrad's ascriptions of core programs, see Conrad Deposition, p. 285, l. 17-21, p. 286, l. 1-3.

programs cannot attract large number of students or large numbers of white students at the HBIs, or that core programs are duplicated across TWIs and HBIs.

17. Beyond problems with reliability and validity for their foundational concepts, Conrad and Allen's statistical analysis fails to meet standard social science criteria. Dr. Conrad points to Exhibits 6 and 8 as the primary statistical analyses in their July 6, 2016 Report.[19] Both suffer from the statistical fallacy of picking programs with predetermined results, (e.g., HBI programs with 10 or more white enrollments) and then reasoning backward to all programs at the HBIs. Among social scientists this fallacy is known as "grouping on the dependent variable" (e.g., white enrollments) and leads to biased results. Gary Goertz in his methodological text warns that "As is well known, selecting cases based on their value on the dependent variable can lead to the overrepresentation of positive cases in the sample, which can bias results in statistical analysis."[20]

18. Conrad and Allen compound the problem of pre-selected grouping on the dependent variable by using a grouping procedure that is correlated with purported explanatory variables. Thus, the total number of white students in programs is correlated with the total number of students in programs, which in turn is correlated with high demand and exceptionally high demand programs.[21]

19. Dr. Conrad recognized problems arising from limitations to pre-selected "successful cases." In deposition, he admitted that, for example, an analysis of the relationship between test scores and test preparation courses that was limited to the top 5 percent of test takers could lead to misleading findings, because it concealed the relationship between student scores and test preparation classes for most of the full spectrum of test takers. He concluded: "it would be helpful to look if you had the time, energy, resources, to look at the full spectrum, yeah."[22]

20. Conrad and Allen also examine the so-called "disproportion" between the percentage of programs in each of their remedial categories and the percentage of white students enrolled in these programs (Exhibit 7). If the percentage of white students enrolled is higher than the percentage of programs in a remedial category, they conclude that programs in this category are "disproportionately" enrolling white students. This analysis suffers from another statistical fallacy: the failure to provide a proper comparison. Charles C. Ragin notes that "Comparison provides a basis for making statements about empirical regularities and for evaluating and interpreting cases relative to substantive and theoretical criteria. In this broad sense, comparison is central to empirical social science research as it is practiced today."[23]

---

[19] Conrad Deposition, pp. 242-243.

[20] Gary Goertz, *Social Science Concepts: A User's Guide* (Princeton, 2012), p.178. See also, Lichtman, August 30, 2016 Report, pp. 49-50.

[21] See, Laura Irwin Langbein and Allan. J. Lichtman, *Ecological Inference* (Sage: 1978), pp. 13-21.

[22] Conrad Deposition, p. 280, l. 17-21, p. 281, l. 1-9, p. 282, l. 17-21, p. 283, l. 1-19. Conrad and Allen had been analyzing Maryland programs for 8 years and had the data on white enrollments in all programs, not just their pre-selected programs.

[23] Charles C. Ragin, *The Comparative Method: Moving Beyond Qualitative and Quantitative Strategies* (University of California Press, 1987), p. 1.

21. The missing comparison in Conrad and Allen's "disproportion" analysis is between the percentage of white students and the percentage of *all students* enrolled in each program category. Program categories may enroll a high percentage of white students, simply because they *enroll a high percentage of all students,* whether white or non-white.[24]

22. All three statistical analysis (Exhibits 6-8) also fail to account for the "confounding" influence of UMES, which enrolls a white student percentage that is nearly five times higher than at the Baltimore-College Park HBIs. Dr. Allen recognizes UMES as a "special case," noting that "it has higher rates of white enrollments than the other campuses' HBIs." [25]

23. Keith F. Punch in his book *Introduction to Research Methods in Education* notes the need to control variables that may "confound the relationship we want to study." These controls include "physical control" -- isolating distinct components of the confounding variable -- and "statistical control."[26] My August 30, 2016 Report utilizes physical control through analyses that separate UMES and the Baltimore-College Park HBIs.[27] It utilizes statistical control through a multiple regression analysis that includes the regional location of HBIs as a control variable.[28] Conrad and Allen fail to provide either type of control.

24. Another requisite of a social science study is that it must be based on evidence and analysis, not speculation and conjecture. However, Conrad and Allen admit in their July 6, 2016 Report that they cannot present any scientific evidence to prove the efficacy of programmatic niches in diversifying HBIs.[29]

25. Conrad and Allen present only anecdotal evidence of two purportedly successful programmatic niches currently at Maryland's HBI: education at Bowie and architecture at Morgan. Their analysis of Bowie programs, however, only cherry picks the education programs with the highest white percentages. As Professor Gary Klass of Illinois State University warned, "Cherry picking, the selective culling of evidence to support a claim, is a common problem in political debate and social science research."[30] The full spectrum of programs in Bowie's School of Education shows far less potential for desegregation than the selective examples would indicate, even though the education niche at Bowie has been in place since its founding, 150 years ago.[31] Architecture programs at Morgan do have a substantial white enrollment. However, none of these programs are unique; all are duplicated either proximately or statewide.

26. Conrad and Allen also fail to consider the contrary examples of programmatic niches in Rehabilitation Services at Coppin and UMES and in communication and related fields

---

[24] See Lichtman, August 30, 2016 Report, pp. 56-63 and Conrad Deposition, p. 333, p. 334, l. 1-12.
[25] Allen Deposition, p. 144, l. 16, p. 145, l. 11-12.
[26] Keith F. Punch, *Introduction to Research Methods in Education* (Sage: 2009), p. 228.
[27] Lichtman, August 30, 2016 Report, pp. 22-46, pp.49-56.
[28] *Ibid.*, pp. 46-48.
[29] Conrad and Allen, July 6, 2016 Report, p. 33.
[30] Gary Klass, *Just Plain Data Analysis: Finding, Presenting, and Interpreting Social Science Data*, 2nd ed. (Lanham, MD: Rowman & Littlefield, 2012) p. 37.
[31] Lichtman, August 30, 2016 Report, pp. 64-66.

at Morgan. These niches enroll *much lower* percentages of white students than the overall white percentages at the institutions.[32]

**III. Conrad and Allen's Work is Marked by Far More Errors Than Would Be Professionally Acceptable.**

27. Conrad and Allen's July 6, 2016 report – their third remedial submission not counting several reports prepared prior to trial -- *included more than 250 consequential corrections* of their May 1, 2016 report. As indicated above, these corrections included 59 changes to high demand and exceptionally high demand program designations based on 2014 degree-granting data. However, plaintiffs' backup disclosure data for their May 5, 2015 submission indicates that they *already had in their possession the 2014 degree completion data, 14 months prior to the July Report*.

28. Despite 250 corrections, the July 6, 2016 Report still had some 80 errors. These included incorrect designations of programs for their remedial categories, incorrect white percentages in programs, undergraduate programs identified as graduate programs and graduate programs identified as undergraduate programs, inclusion of non-existent or discontinued programs, erroneous listing of degrees granted in programs, the double-counting of programs in their remedial plan, and contradictions between the program inventory and the text of their report. No analysis with so many corrections and lingering errors would pass muster under peer review.

**IV. No Conclusions About the Effectiveness of Conrad and Allen's Remedial Proposal Can be Drawn From Conrad's 1994 Case Study of Southern HBIs**

29. Dr. Conrad's qualitative study of southern HBIs 22 years ago provides no basis for generalizing about Maryland HBIs today. According to John W. Creswell in his book, *Research Design*," "Qualitative generalization is a term that is used in a limited way in qualitative research, since the intent of this form of inquiry is not to generalize findings to individuals, sites or places outside of those under study."[33] Dr. Conrad has indicated that he was not willing to generalize from his 1994 study even to other southern institutions at the time, much less to Maryland 22 years later after major changes in American higher education.[34]

30. Dr. Conrad's study does not incorporate many of the safeguards designed to ensure that results of qualitative study are not tainted by investigator bias, preconceptions, and error. These include an external audits of the research design and methodology; an independent second party check on the interview instrument and the coding; replication with different subjects and contexts; peer debriefing of the project and its findings; checking of results with participants. Also included is triangulation – verification through information independent of the interviews.[35] In addition, Dr. Conrad testified that he has destroyed all of records from the 1994 study so it is not possible to review his findings.[36]

---

[32] Lichtman November 20, 2015 Report, pp. 14-15; August 30, 2016 Report, pp. 73-74.
[33] John W. Creswell, *Research Design: Qualitative, Quantitative, and Mixed Methods* (Sage: 2011), p. 203.
[34] Conrad Deposition, p. 138-141.
[35] See, for example, Creswell, *Research Design*, pp. 201-203.
[36] Conrad Deposition, pp. 138-140.

31. Dr. Conrad's study lacks validity because it samples the wrong population**.** He interviewed only whites who had already decided to attend an HBI, not including potential new white students—primarily high school and community college students. He did not interview any white students who chose not to attend an HBI. This methodological flaw in Dr. Conrad's study of only looking at 'successes' parallels the same flaw in the July 6, 2016 Report which also looked only at "successes" – programs with high white enrollments.

32. There is systemic bias in the sampling process (the selection of interview subjects). Administrators and faculty that he interviewed at the HBIs – a majority of his sample -- may also have a self-interest in gaining new programs and resources for their institutions. With respect to such interests Dr. Conrad conceded that, "I would only say there's some possibility they may have thought that, given the self-interest in people. Yeah."[37] These same administrators also selected most of the students that Dr. Conrad interviewed.[38]

33. Plank and Harris stress that scholars are expected "to include disconfirming evidence and alternative explanations for their findings."[39] However, Conrad and Allen's reports fail to discuss or even cite a 2004 study, with contrary findings to those of Dr. Conrad's study.[40] Dr. Conrad states in his deposition that he had only recently become aware of this study and had just skimmed its contents.[41] However, I cited and discussed this study in my November 20, 2015 Report, more than 7 months prior to their July 6, 2016 Report.[42]

**V. No Reliance Can be Placed on Dr. Conrad's Informal Visits to HBIs.**

34. Dr. Conrad's third foundation cannot provide a rationale for plaintiffs' remedial proposal. First, the visits were not systematic or based on any reliable or valid qualitative or quantitative research design or methodology. Second, it is not possible to evaluate any conclusions drawn from these visits because they were not memorialized or transcribed. Third, paralleling the methodological flaw in his 1994 study, Dr. Conrad would have encountered only white students who had already decided to attend an HBI. His HBI visits did not include white students who chose not to attend an HBI or high schools and community college students. Fourth, as noted above with respect to his 1994 study, administrators and faculty at the HBIs he visited would have an understandable self-interest in gaining new programs and concomitant resources for their institutions. Fifth, these visits were conducted over the course of many decades and higher education has undergone significant changes in recent years.

---

[37] Conrad Deposition, p. 195, l. 18-21.

[38] Conrad Deposition, p. 161, l. 2-11.

[39] David N. Plank and Debbi Harris, "Minding the Gap Between Research and Policymaking," in Conrad and Serlin, *Sage Handbook*, p. 42.

[40] Paul E. Sum, Steven Andrew Light, and Ronald F. King, "Race, Reform, and Desegregation in Mississippi Higher Education: Historically Black Institutions After *United States v. Fordice*" *Journal of Law and Social Inquiry* (2004), p. 431.

[41] Conrad Deposition, pp. 206-207.

[42] Lichtman, November 20, 2015 Report, pp. 54-55.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed in Washington, D.C., on September 29, 2016.

Allan J. Lichtman

Allan J. Lichtman

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE COALITION FOR EQUITY AND EXCELLENCE IN MARYLAND HIGHER EDUCATION, INC., et al.,

*Plaintiffs*

v. Civil No. CCB-06-2773

MARYLAND HIGHER EDUCATION COMMISSION, et al.,

*Defendants*

**SECOND EXPERT REPORT OF ALLAN J. LICHTMAN: RESPONSE TO PLAINTIFFS' REMEDIAL PROPOSALS**

AUGUST 30, 2016

TABLE OF CONTENTS

I. Overview ....................................................................................................1

II. Consequential Errors in the Work of Plaintiffs' Experts...............................................4

III. Biases in Conrad and Allen's Designation of High Demand Programs..............................10

IV. Biases in Conrad and Allen's Designation of Unique Programs.......................................21

V. Plaintiffs' Categories of Remedial Programs Demonstrate No Capacity for Diversification........................................................................................22

V.1. High Demand Programs..................................................................22

V.2. Exceptionally High Demand Programs.............................................29

V.3. Unique Programs.............................................................................34

V.4. Unique, High Demand Programs.......................................................42

V.5. Regression Analysis of Plaintiffs'' Remedial Program Categories on White Student Percentages in HBI Programs .........................................................46

V.6. Summary of Analyses of High Demand, Exceptionally High Demand, Unique, and Unique, High Demand Programs at Maryland's HBIS...................................48

VI. Conrad and Allen's Flawed Analyses of Their Categories of Remedial Programs....................................................................................................48

VI.1 Analysis of Conrad and Allen's Selected Exemplar Programs in Exhibit 6........49

VI.2 Analysis of Conrad and Allen's "Disproportion" Study in Exhibit 7..................56

VI.3 Analysis of Conrad and Allen's Selected Exemplar Programs in Exhibit 8.........63

VI.4 Analysis of Conrad and Allen's Selected Exemplar Programs in the Text of Their Report......................................................................................64

VII. The Failure of Conrad and Allen's Remedial Proposal To Meet Their Criteria For Successful Diversification..................................................................72

VIII. Conrad and Allen Substantially Underestimate the Enrollments Needed to Diversify Maryland's HBIs..................................................................................86

IX. Conclusions..................................................................................................88

*TABLES*

**TABLE 1**
ANALYSIS OF ERRORS IN CONRAD AND ALLEN'S EXEMPLAR UNIQUE, HIGH DEMAND PROGRAM PRESENTED IN THE TEXT OF THEIR REMEDIAL PROPOSAL, EXHIBIT 3, July 6, 2016 CORRECTED REPORT....7

**TABLE 2**
WHITE PERCENTAGES IN 4 HBI PROGRAMS THAT CONRAD AND ALLEN MISIDENTIFY AS NON-HIGH DEMAND THAT SHOULD BE HIGH DEMAND....9

**TABLE 3**
VARIABILITY IN DEGREE COMPLETION FOR PROGRAMS THAT CONRAD & ALLEN DESIGNATE AS HIGH DEMAND ....12

**TABLE 4**
DEGREES GRANTED PER INSTITUTION, MARYLAND HBIS AND TWIS....13

**TABLE 5**
COMPARISON OF DEGREES GRANTED PER INSTITUTION, WITH HIGH DEMAND PROGRAMS PER INSTITUTION....14

**TABLE 6**
COMPARISON OF DEGREES GRANTED PER INSTITUTION, WITH HIGH DEMAND PROGRAMS PER INSTITUTION.... 15

**TABLE 7**
PROGRAMS WITH HIGH TWI AND MUCH LOWER HBI ENROLLMENTS, ALL STUDENTS, FALL 2014....17

**TABLE 8**
MEAN ENROLLMENTS PER HIGH DEMAND PROGRAM, TWIS ....18

**TABLE 9**
REGRESSION ANALYSIS RESULTS FOR THE RELATIONSHIP BETWEEN NUMBER OF DEGREES GRANTED IN HBI PROGRAMS AND WHITE ENROLLMENT PERCENTAGE....20

**TABLE 10**
ALL NON-CORE, NON-JOINT PROGRAMS IDENTIFIED BY PLAINTIFFS' CRITERIA AS HIGH-DEMAND AT HBIS: TOTAL AND WHITE ENROLLMENT....23-26

**TABLE 11**
SUMMARY OF FINDINGS FROM TABLE 10 DATA ON HIGH DEMAND PROGRAMS AT HBIS IN MARYLAND....27

**TABLE 12**
ALL NON-CORE, NON-JOINT PROGRAMS IDENTIFIED BY PLAINTIFFS CRITERIA AS EXCEPTIONALLY HIGH-DEMAND AT HBIS: TOTAL AND WHITE ENROLLMENT..........30-31

**TABLE 13**
SUMMARY OF FINDINGS FROM TABLE 12 DATA ON EXCEPTIONALLY HIGH DEMAND PROGRAMS AT HBIS IN MARYLAND ..........32

**TABLE 14**
NON-CORE, NON-JOINT PROGRAMS AT MARYLAND PUBLIC HBIS THAT ARE PROXIMATELY UNIQUE BY PLAINTIFFS' CRITERIA: TOTAL AND WHITE ENROLLMENT..........35-39

**TABLE 15**
SUMMARY OF FINDINGS FROM TABLE 14 DATA ON UNIQUE PROGRAMS AT HBIS IN MARYLAND ..........40

**TABLE 16**
NON-CORE, NON-JOINT PROGRAMS AT MARYLAND PUBLIC HBIS THAT ARE BOTH PROXIMATELY UNIQUE AND HIGH DEMAND BY PLAINTIFFS' CRITERIA: TOTAL AND WHITE ENROLLMENT..........43-44

**TABLE 17**
SUMMARY OF FINDINGS FROM TABLE 15 DATA ON UNIQUE, HIGH DEMAND PROGRAMS AT HBIS IN MARYLAND..........45

**TABLE 18**
REGRESSION ANALYSIS RESULTS FOR THE RELATIONSHIP BETWEEN PLAINTIFFS' REMEDIAL PROGRAMMATIC CATEGORIES AND THE WHITE ENROLLMENT PERCENTAGES AT ALL HBI PROGRAMS..........47

**TABLE 19**
BALTIMORE-COLLEGE PARK (BSU, COPPIN, MSU)
HBI NON-CORE, NON-JOINT, EXEMPLAR PROGRAMS FROM CONRAD AND ALLEN EXHIBIT 6, JULY 6 2016 REPORT..........52

**TABLE 20**
BALTIMORE-COLLEGE PARK HBI EXCEPTIONALLY HIGH DEMAND, NON-CORE, NON-JOINT EXEMPLAR PROGRAMS FROM CONRAD AND ALLEN EXHIBIT 6, JULY 6, 2016 REPORT..........54

**TABLE 21**
UMES EXEMPLAR PROGRAMS FROM CONRAD AND ALLEN EXHIBIT 6, July 6, 2016 REPORT....55

**TABLE 22**
PROGRAMS THAT PLAINTIFFS' EXPERTS SELECTED TO ILLUSTRATE THE "DESEGREGATIVE POTENTIAL" OF EXCEPTIONALLY HIGH DEMAND PROGRAMS: EASTERN SHORE REGION (UMES) ....57

**TABLE 23**
CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF EXCEPTIONALLY HIGH DEMAND PROGRAMS....59

**TABLE 24**
CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF HIGH DEMAND PROGRAMS....60

**TABLE 25**
CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF UNIQUE PROGRAMS....61

**TABLE 26**
CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF PROXIMATELY UNIQUE, HIGH DEMAND PROGRAMS.... 62

**TABLE 27**
PROGRAMS WITH 15 OR MORE WHITE STUDENTS NOT INCLUDED IN CONRAD AND ALLEN EXHIBIT 8....65

**TABLE 28**
SCHOOL OF EDUCATION PROGRAMS AT BOWIE STATE, TOTAL AND WHITE ENROLLMENTS....67

**TABLE 29**
ENROLLMENTS IN ALL EXCEPTIONALLY HIGH DEMAND PROGRAMS AT COPPIN STATE....68

**TABLE 30**
CONRAD AND ALLEN'S SELECTED EXAMPLES OF EXEMPLAR PROGRAMS AT UMES....71

**TABLE 31**
COMMUNICATIONS AND RELATED PROGRAMS AT MORGAN....74

**TABLE 32**
NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT MORGAN STATE UNIVERSITY....76

**TABLE 33**
NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT COPPIN STATE UNIVERSITY....77

**TABLE 34** NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT BOWIE STATE UNIVERSITY....78

**TABLE 35**
NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT UMES....79

**TABLE 36**
NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT ALL FOUR HBIS COMBINED....80

**TABLE 37**
WHITE PERCENTAGE OF STUDENTS IN PROGRAMS PROPOSED TO TRANSFER FROM TWIS TO HBIS IN PLAINTIFFS' REMEDIAL PROPOSAL....83

**TABLE 38**
WHITE PERCENTAGE IN PROGRAMS AT SAME HBI AS PLAINTIFFS' PROPOSED PROGRAMS, SAME OR DIFFERENT DEGREE LEVEL (IDENTICAL TRANSFER PROGRAMS IN BOLD)....84

**TABLE 39**
WHITE PERCENTAGE IN SAME PROGRAMS AS IN PLAINTIFFS' PROPOSAL, AT DIFFERENT HBI ((PROPOSED TRANSFER PROGRAMS IN BOLD)....85

**TABLE 40**
NUMBER OF NEW STUDENTS NEEDED TO REACH PLAINTIFFS' GOAL OF 16.2% WHITE ENROLLMENTS IN HBIS....87

## 1. Overview: The Lack of a Scientific Method in Conrad and Allen's July 6, 2016 Report[1]

In their expert report of May 1, 2016, corrected on July 6, 2016 and again on August 19, 2016, Drs. Conrad and Allen propose a remedy to increase substantially the percentage of white students enrolled in Maryland's HBIs.[2] In order to fulfill this goal it is necessary to *predict* that the remedy will achieve *both* of the following two results:

* The remedial proposal must result in the enrollment of substantial numbers of new students at the HBIs.

* The new students enrolled through the remedial proposal must include a much higher percentage of white students than are presently enrolled at the HBIs.

If the remedial proposal results in the enrollment of too few students or an insufficiently high percentage of white students, it will fail to diversify Maryland's HBIs to any substantial degree.

To achieve these two objectives, Conrad and Allen propose a large-scale restructuring of public higher education in Maryland that includes the transfer of some 20 programs from TWIs to HBIs and the installation of some 72 new programs at the HBIs. If implemented, this proposal would increase the number of programs currently offered at the four HBIs by nearly 40 percent.[3]They additionally propose "the transfer [of] all academic degree programs in Management, Business Management, and closely aligned fields from UMUC to MSU."[4]

Conrad and Allen propose organizing these new and transferred programs into what they call "programmatic niches" based on commonalities among the programs. These niches, they assert, must be anchored in programs that they identify as *both* unique (not duplicated statewide or by a geographically proximate institution) and high demand. The niches could also include programs that are unique but not high demand or high demand but not unique, but their primary emphasis is on the need for additional programs at the HBIs that are both unique and high demand.[5]

To predict reliably that plaintiffs' strategy will substantially increase the percentage of white students enrolled at the HBIs it is necessary to conduct scientifically sound analyses that would establish the following four propositions:

1. That the designation of high demand and unique programs upon which the remedial proposal depends is based on a sound, unbiased methodology.

---

[1] I incorporate in this report the findings of my November 20, 2015 Report.
[2] Unless otherwise indicated, this Report will refer to Conrad and Allen's July 6, 2016 Report, in which I also incorporate the August 19, 2016 corrections, which pertains to planks of their remedial proposal. When referring to the August 19 correction, this report will cite that correction specifically.
[3] Conrad and Allen, July 6, 2016 Report, Exhibit 3, pp. 1-15.
[4] *Ibid.*, p. 17.
[5] Conrad and Allen July 6, 2016 Report, p. 40.

2. That plaintiffs' categories of remedial programs -- high demand, exceptionally high demand (a new category), unique, and unique, high demand programs -- have the capacity to enroll large numbers of new students, high percentages of which will be white.

3. That establishing programmatic niches would enhance the capacity of these programs to achieve these objectives.

4. That the specific programmatic niches proposed for each HBI fulfill plaintiffs' criteria of anchoring these niches primarily in programs that are both unique and high demand.

As these elements of analysis indicate, the assessment of the predictive efficacy of remedial programs is distinct from the assessment of what factors in the past may have accounted for a lack of diversity at the HBIs.

In his book on research design John W. Creswell explains that any reliable study must establish scientific "strategies of inquiry" to "inform the procedures" and specify scientifically appropriate "methods of data collection and analysis." However, in the 335 paragraphs of their July 6, 2016 Report plus 18 attached exhibits, Conrad and Allen fail to explain how their research design and methodology conform to standard practice in social science. The following are among the scientific requisites that Conrad and Allen fail to establish in their report: 1) that all concepts relied upon in their studies are fully justified, non-arbitrary, and free of bias; 2) that the analyses examine all relevant and available data, not just cherry-picked exemplars; 3) that the analyses include proper comparisons and controls; 4) that conclusions are not based upon speculation and conjecture; 5) that the remedy proposed is internally consistent with the requisites outlined in the report (e.g., the establishment of new and transferred programs in their "niches" at the HBIs that are primarily unique and high demand.

Dr. Creswell also stresses that researchers should "lodge their plans in ideas well-grounded in the literature."[6] However, Conrad and Allen cite no literature establishing the scientific validity of their research design or methodology. The one scholarly article that plaintiffs presented in their prior submission, co-authored by Dr. Conrad, exhibits the same lack of scientific rigor as their July 6, 2016 Report.[7] In this new report Conrad and Allen make no attempt to rehabilitate this single scholarly example in light of the critique presented in my Nov. 20, 2015 Report (pp. 56-58). In addition, they do not address the more recent and reliable contrary scholarship cited in my Nov. 20, 2015 Report (pp. 58-59).

Detailed scrutiny of Conrad and Allen's research indicates that the following deficiencies are manifest in the lack of scientifically reliable analyses needed to test any of the four essential elements of their remedial proposal.

* Conrad and Allen do not fully justify as non-arbitrary their numerical thresholds for classifying programs as high demand or exceptionally high demand (a new category) or test or

---

[6] John W. *Creswell, Research Design: Qualitative, Quantitative, and Mixed Methods Approaches* 2nd ed. (Sage: 2014), pp. 3, 5.

[7] C.F. Conrad, E.M. Brier, and J.M. Braxton, "Factors Contributing to the Matriculation of White Students in Public HBCUs," *Journal for a Just and Caring Education* 3 (1997): 37-62

adjust for systematic biases in their designation of programs as high demand, exceptionally high demand, or unique. In their article on "Bias in Social Research," Hammersly and Gomm warn that bias can undermine the validity of research, which they define as "systematic error that the researcher should have been able to recognize and minimize, as judged either by the researcher him or herself (in retrospect) or by others."[8]

* Rather than systematically testing the efficacy for diversification of their categories of programs by examining all HBI programs in each category, Conrad and Allen rely on self-selected examples. Even if accepted without dispute, cherry-picked examples cannot demonstrate that their categories of programs will enroll large numbers of students and much higher white percentages than are currently enrolled at the HBIs. As Professor Gary Klass of Illinois State University noted in his book on analyzing social science data, "Cherry picking, the selective culling of evidence to support a claim, is a common problem in political debate and social science research."[9] No reliable predictions about the effectiveness of program categories for diversification of the HBIs can be drawn from such selective data presentation. Rather, reliable predictions can be established by examining all the programs in each of their four categories of exceptionally high demand programs, high demand programs, unique programs (whether high demand or non-high demand), and programs that are both unique and high demand. There is also a standard statistical methodology, known as regression analysis, which can assess the relationships between all four categories of remedial programs and the white percentages of students in all HBI programs.

* Conrad and Allen also fail to provide the *controlled* analysis essential for establishing the scientific reliability of results. In a drug test, for example, this means comparing the drug-induced effects with a placebo effect to determine whether or not the effects of the drug are substantially different from the placebo effect. In the current context, the use of controls means comparing white student percentages in Conrad and Allen's four categories of programs with the control of the overall white percentages in each HBI studied. Only if the white student percentage in a program category is substantially higher than the overall white percentage at an HBI or group of HBIs (e.g., the 3 HBIs in the Baltimore-College Park region or the one HBI in the Eastern Shore Region) does that program category demonstrate any significant capacity for diversification. Charles C. Ragin notes that reliable conclusions in social science research depend upon comparisons, "Virtually all empirical social research involves comparison of some sort. Comparison provides a basis for making statements about empirical regularities and for evaluating and interpreting cases relative to substantive and theoretical criteria. In this broad sense, comparison is central to empirical social science research as it is practiced today."[10] As additionally explained by Geoffrey Marczyk, David DeMatteo, and David Festinger in their book on research design and methodology, in order to make reliable predictions "alternative explanations for the observed relationship must be ruled out." (e.g., that the white percentage in a

---

[8] M. Hammersly and G. Gomm, "Bias in Social Research," *Sociological Research Online,* vol. 2, no. 1, 4.13 <http://www.socresonline.org.uk/2/1/2.html>

[9] Gary Klass, *Just Plain Data Analysis: Finding, Presenting, and Interpreting Social Science Data*, 2nd ed. (Lanham, MD: Rowman & Littlefield, 2012) p. 37.

[10] Charles C. Ragin, *The Comparative Method: Moving Beyond Qualitative and Quantitative Strategies* (University of California Press, 1987), p. 1.

remedial category at an HBI or regional group of HBIs is not substantially higher than the overall white percentages at the institutions).[11]

* Conrad and Allen admit in their July 6, 2016 Report that they cannot present any scientific evidence to prove the efficacy of programmatic niches in diversifying HBIs. Thus, the foundation of their new remedial proposal for diversifying HBIs is purely speculative.

* Conrad and Allen fail to analyze the extent to which their proposed remedy meets their requirement of being anchored primarily in unique, high demand programs.

Conrad and Allen's failure to probe bias in their designation of high demand and unique programs, their cherry-picking of examples, their failure to include needed comparison and controls in their analyses, their passing over contrary evidence, their reliance on speculation, and their failure to demonstrate that their remedy fits their own requisites, are all indicative of another broad, general problem with their remedial report, what is known in social science as "confirmation bias." As explained by Raymond S. Nickerson in his article in the *Review of General Psychology*, confirmation bias occurs when "one selectively gathers, or gives undue weight to, evidence that supports one's position while neglecting to gather, or discounting, evidence that would tell against it." He further elaborates that, "People may treat evidence in a biased way when they are motivated by the desire to defend beliefs that they wish to maintain."[12]

This report will consider the many requisites for a successful remedial proposal outlined above. With necessary corrections (see Errata Sheet, Exhibit 1), the analyses in this report will draw on plaintiffs' own backup data disclosure. The analyses *contradict all of the propositions* upon which Conrad and Allen's remedial proposals depends. However, the report will first examine another critical requisite of a reliable analysis, the avoidance of an excessive number of consequential errors.

## II. Consequential Errors in the Work of Plaintiffs' Experts.

Errors committed by plaintiffs' in their remedial submissions, including the most recent corrected submissions, are far beyond any reasonable number of errors for a reliable analysis. On May 5, 2015, plaintiffs presented two remedial submission: Documents 406-1 and 406-2. I noted as many as 125 consequential errors in those submission, an analysis that I incorporate in this report. Consequential errors are substantive errors, not including typos, grammatical changes, and errors in the numbering or relabeling of tables or exhibits. However, it is not necessary to revisit these documents given that they are now superseded by three additional remedial submissions presented by plaintiffs. The first was a full remedial report from Conrad and Allen submitted on May 1, 2016. The second was a fundamentally corrected full remedial report

[11] Geoffrey Marczyk, David DeMatteo, and David Festinger, Essentials of Research Design and Methodology (Wiley: 2005) P. 21.
[12] Raymond S. Nickerson, "Confirmation Bias: A Ubiquitous Phenomenon in Many Guises," *Review of General Psychology*, 2 (1998), 175-176. A similar lack of appropriate scientific procedure was found in Dr. Conrad's co-authored article "Factors Contributing to the Matriculation of White Students in Public HBCUs." See pp. 56-58 of my Nov. 20, 2015 Report.

submitted on July 6, 2016. In addition, on August 19, 2016 plaintiffs' submitted a correction to planks in their remedial proposal.[13]

Conrad and Allen's July 6, 2016 report *included more than 250 consequential corrections* of their May 1, 2016 report. Their August 19, 2016 supplement, included three additional consequential corrections. A detailed accounting of these corrections is found in the Errata Sheet appended to this report. The corrections included a reclassification of programs designated as high demand or exceptionally high demand in earlier reports -- designations that are essential to Conrad and Allen's remedial approach. Conrad and Allen reported four categories of reclassification: from high demand to not high demand, from not high demand to high demand, from exceptionally high demand to not exceptionally high demand and from not exceptionally high demand to exceptionally high demand. Overall, Conrad and Allen made *59 corrections* to the program designations presented two months earlier in May (July 6, 2016 Report, Exhibit 4). They justify these corrections as updated according to the number of degrees granted in 2014.[14] However, plaintiffs' backup disclosure data for their May 5, 2015 submission indicates that they *already had in their possession the 2014 degree completion data*. Yet according to their own admission, they did not fully incorporate that data into either these submissions or their later May 2016 submission. They only did so *14 months after their initial submissions*, in their corrected July 6, 2016 report.

Above and beyond these 59 reclassifications, the July 6, 2016 report and August 19, 2016 supplement included some 200 additional corrections of their May 1, 2016 Report. Some of these changes, on their face, substantially weaken the rationale for Conrad and Allen's remedial proposal.

For example, in both their May 1, 2016 Report and their July 6, 2016 corrected report, Conrad and Allen state in the text that "some unique, high-demand programs at Maryland's HBIs are attracting significant numbers of white students."[15] In support of this claim, their May 1, 2016 Report initially cited 8 examples of such unique, high demand programs at the HBIs on pages 19-20 of Exhibit 3. However, in their corrected report, they cut the number of these exemplars in half, from 8 to 4. They eliminated Landscape Architecture at Morgan from their accounting because it is *neither* proximately unique nor high demand and conceded that the programs in Architecture and in Architecture and Environmental Design at Morgan and the program in Secondary Education (MA) at Bowie were incorrectly identified as both proximately

[13] Although purporting to correct and clarify plaintiffs' remedial proposal, their August 19, 2016 submission sows additional confusion. In her August 19 email, conveying the additional corrections, Brenda Shum of the Lawyers' Committee for Civil Rights Under Law states, "Plaintiffs' proposal recommended creating a new Doctorate in Electrical Engineering (CIP 141001) at Morgan in addition to Morgan's Masters in Electrical Engineering (see Doc. 480-1 at 164-66). To clarify, in connection with the creation of that new program, Plaintiffs are proposing that the Doctorate and Masters in Electrical Engineering at UMBC would be discontinued." It is not clear, however, from this statement whether plaintiffs' are proposing the transfer of these UMBC doctorate and master's program to Morgan, or simply proposing their termination. It is also unclear from the letter whether plaintiffs propose to establish one MBA program at Morgan or two separate programs, one online and one on-campus.

[14] In establishing the designation of programs, Conrad and Allen state that they use the average number of degrees granted at programs in 2014. However, they provide no calculations for any of their revised designations. (July 6, 2016 Report, Exhibit 4)

[15] July 6, 2016 Report, Exhibit 3, p. 19.

unique and high demand programs. The 4 surviving allegedly unique, high demand exemplar programs are *all from UMES, with none from HBIs in the Baltimore-College Park region.*

Conrad and Allen's July 6, 2016 Report, despite more than 250 consequential corrections of their May 1 2016 Report, still includes more than 80 consequential errors, far more than would reasonably be expected in a reliable analysis, especially on the third try over a period of some fourteen months. These new errors are detailed in the Errata Sheet. These errors include *26 new errors created by the erroneous reclassification of 59 high demand and exceptionally high demand programs in the corrected July 6, 2016 report. Thus, 44 percent of the July 6, 2016 corrections to such program designations from two months earlier are erroneous* according to Conrad and Allen's own criteria as indicated in the Errata Sheet.[16]

Correction of these 26 new July 2016 errors in program classification would require recalculating most of the statistics in Conrad and Allen's July 6, 2016 report. Many other errors are also significant as indicated by the following examples.

As noted above, the July report cut the number of unique, high demand programs cited in their remedial proposal text from 8 to 4. However, even these four exemplars programs are still marred by consequential errors as demonstrated in Table 1. Conrad and Allen's July 6, 2016 Report incorrectly identifies two of the four remaining UMES exemplar programs as unique, high demand programs: Education, Industrial Arts, Vocational and Technical Education MA (13.1309) and Business and Management Bachelor's (52.901). Conrad and Allen's list of high demand programs (Exhibit 10), the program inventory in their corrected report (Exhibit 4), and their backup data disclosure all correctly indicate that these 2 programs are not high demand. In addition, as also demonstrated in Table 1, based on their own backup data disclosure, Conrad and Allen overstate in their text the white percentage for *all 4* of these UMES programs.

The same multiple errors noted in Table 1 were also first committed in plaintiffs' May 5, 2015 submissions. Although I pointed out these errors in my November 20, 2015 Report on page 20, Conrad and Allen repeated the errors in their May 1, 2016 Report and again in their corrected July 6, 2016 Report.

In addition, at the conclusion of the paragraph that refers to proximately unique programs at the HBIs, Conrad and Allen state "While some unique, high-demand programs at Maryland's HBIs are attracting significant numbers of white students, there are very few of these programs (an average of three at the HBIs)—far too few of these programs to accomplish the goal of dismantling the dual structure of higher education." Yet according to their own data reported in Exhibit 5 of their July 6, 2016 Report there are 7 proximately unique, high demand programs at Baltimore-College Park HBIs and 15 at UMES, for a total of 22, an average of 4.4, not 3, per HBI. Corrections of classification errors cited in the Errata Sheet discloses 25 such programs at the HBIs, for an average of 6.3 per institution, more than double Conrad and Allen's claim (see Table 17).

[16] These errors in Conrad and Allen's July 6, 2016 Report represent the errors that I have discovered thus far. I make no claim that this list is exhaustive of all errors.

**TABLE 1**
**ANALYSIS OF ERRORS IN CONRAD AND ALLEN'S EXEMPLAR UNIQUE, HIGH DEMAND PROGRAM PRESENTED IN THE TEXT OF THEIR REMEDIAL PROPOSAL, EXHIBIT 3, July 6, 2016 CORRECTED REPORT**

| Institution and Program | Conrad & Allen White Percentage | Corrected White Percentage | Is Program Correctly Identified as Unique, High Demand? |
|---|---|---|---|
| | | | |
| UMES: Bachelor's, Ecology (CIP: 26.1301) | 60% | 32 of 57, 56% | **Yes**, High Demand and Unique Proximately Only Not Statewide |
| | | | |
| UMES: MA, Education, Industrial Arts, Vocational and Technical Education (CIP: 13.1309) | 59% | 11 of 22, 50% | **No**: Proximately Unique, But Not Included in Inventory of High Demand Programs |
| | | | |
| UMES: Bachelor's, Business and Management (CIP: 52.0901) | 57% | 27of 51, 53% | **No**: Proximately Unique, But Not Included in Inventory of High Demand Programs |
| | | | |
| UMES: MA, Special Education, (CIP: 13.1001) | 64% | 7 of 13, 54% | **Yes**, High Demand and Unique Proximately Only Not Statewide |
| | | | |
| | | | |
| Source: eisfall14mhecinventory; Updated Report, July 6, 2016 Exhibit 3, p. 19; Inventory of High Demand Programs, July 6, 2016 Report, Exhibit 10. | | | |

The following are other examples of consequential errors in Conrad and Allen's July 6, 2016 Report, documented in the Errata Sheet.

* Beyond the 27 errors in the classification of programs as high demand or exceptionally high demand Conrad and Allen's Program Inventory (Exhibit 4) and backup data disclosure include more than 35 additional consequential errors, including but not limited to the misidentification of program level, the listing of non-existent or cancelled programs, the double-counting of programs, the misplacement of enrollments from one program erroneously in another program, and contradictions between the inventory and the text of their report.

* Conrad and Allen misidentify as non-high demand 4 HBI programs that should be identified as high demand: Morgan: Bach, Strategic Communications (09.0999), Bach, Physical Education (13.1314); UMES: Bach, Biochemistry (26.0202); Coppin: Bach, Allied Health (51.0706, renamed Health Information Management in 2009). These errors are of significant import because all 4 HBI programs have low percentages of white enrollments as demonstrated in Table 2. Three of the 4 programs have a white enrollment of less than 1 percent. Combined the 4 programs enroll 434 total students and just 5 white students, for a white percentage of just 1.2 percent and a white enrollment of 1.3 students per program. Consequently, the failure to classify properly these 4 HBI programs as high demand results in overstating the relationship between high demand programs at the HBIs and the percentages and numbers of white students.

* Conrad and Allen misidentify as not unique, high demand 3 HBI programs that should be identified as unique, high demand: Morgan: Bach, Strategic Communications (09.0999) and Morgan: Bach: Family and Consumer Science (19.0101), and UMES: Bach: Biochemistry (26.0202). Again, these errors are of significant import, because these are all programs with low percentages of white enrollments. As already indicated in Table 2, the percentage of white students in Strategic Communications at Morgan is 0.8 percent and Biochemistry at UMES enrolls zero white students. In addition, the Morgan program in Family and Consumer Science has zero white students among 134 enrolled. Combined the 3 programs enroll 276 total students and just 1 white student, for a white percentage of just 0.4 percent and a white enrollment of .3 students per program. Thus, the failure to classify properly these 3 programs as unique, high demand programs results in overstating the relationship between unique, high demand programs at the HBIs and the percentages and numbers of white students.

* Their remedial proposal lists as unique the new doctoral program in Nursing Practice at Bowie (51.3818), when UMB also has a doctoral program in Nursing Practice in the same CIP code. Plaintiffs' program inventory (Exhibit 10) incorrectly lists the UMB doctorate as a master's program. This error adds another unique, high demand program to their remedial plan.

* Their remedial proposal double-counts the master's and doctoral programs in Computer Engineering (14.0901) both as programs transferred from UMBC to Morgan, and as new programs at Morgan. Conrad and Allen even note under both the transfer and new program designations that the program will be unique only "post-transfer." This error increases by two the actual number of unique, high demand programs in their proposal by two. In contradiction to this error, they correctly list the bachelor's in Computer Engineering only as a transferred program from UMBC, not as a new program at Morgan.

**TABLE 2**
**WHITE PERCENTAGES IN 4 HBI PROGRAMS THAT CONRAD AND ALLEN MISIDENTIFY AS NON-HIGH DEMAND THAT SHOULD BE HIGH DEMAND**

| Institution | Program | CIP | Total Enrollment | White Enrollment | Percent White |
|---|---|---|---|---|---|
| | | | | | |
| Morgan | Bach: Strategic Communication | 09.0999 | 122 | 1 | 0.8% |
| | | | | | |
| Morgan | Bach: Physical Education | 13.1314 | 212 | 2 | 0.9% |
| | | | | | |
| UMES | Bach: Biochemistry | 26.0202 | 20 | 0 | 0% |
| | | | | | |
| Coppin | Bach: Health Information Management | 51.0706 | 80 | 2 | 2.5% |
| | | | | | |
| **All Combined** | | | **434** | **5** | **1.2%** |
| | | | | | |
| Source: eisfall14mhecinventory. | | | | | |

* Their remedial proposal double-counts the master's in Forensic Studies (Science) (43.0116) as both a new program at Coppin and as transferred program from Towson. Conrad and Allen even note under both the transfer and new program designation that the program will be unique only "post-transfer." This error creates two unique, high-demand programs in their proposal instead of just one.

* Their remedial proposal lists a new master's program in Information Systems/Technology 11.0401 for Bowie. However, Bowie already has a duplicative master's program in Management of Information Systems in CIP 52.1201, which is cross-listed by the National Center for Educational Statistics classification with 11.0401.[17]

* Their remedial proposal lists a new bachelor's program in Information Systems/Technology 11.0401 for Bowie. However, Bowie already has a duplicative bachelor's program in Computer Technology in CIP 11.9999, which is defined by the National Center for Educational Statistics as "Computer and Information Sciences and Support Services, Other."[18]

* Conrad and Allen state in the description of the remedial proposal that it creates "clusters of non-core undergraduate and graduate programs." (Exhibit 3, p. 1) However, their proposal includes a new core bachelor's program in Environmental Studies and Policy (03.0104) for Morgan.

* Conrad and Allen state that "The UB doctorate in Management of Information and Interaction Design Systems duplicates or overlaps with the following Bowie programs: Computer Science (PhD), Management Information Systems (MS), Database Management/ Artificial Intelligence (Post BS Certificate) and Bioinformatics (BS)." (Exhibit 3, p. 16). However, they list this program as unique at Bowie after transfer from UB even though UMCP and UMBC both have PhD programs in Computer Science.

### III. Biases in Conrad and Allen's Designation of High Demand Programs

In addition to the 26 new errors in Conrad and Allen's July 6, 2016 Report created by changes in the classification of programs as high demand or exceptionally high demand, there are other serious problem with their program designations. First, Conrad and Allen fail to provide any rationale for the selection of their particular numerical thresholds for identifying programs as high demand or exceptionally high demand. As will be demonstrated below, the designation of many programs is highly dependent on the particular numerical threshold chosen.

Second, reliance on the single year of 2014 cannot account for year-to-year fluctuations in graduating students. In attempting to justify their use of 2012 rather than 2013 degree data in analyzing programs in other states, Conrad and Allen point to the "natural fluctuations" in graduating students, because "completion data inherently encompasses a smaller absolute number of students than enrollment."[19] Moreover, the fact that they sought to correct some 59

---

[17] https://nces.ed.gov/ipeds/cipcode/searchresults.aspx?y=55&aw=11.0401&sw=1,2,3&ct=1,2,3&ca=1,2,5,3,4.
[18] https://nces.ed.gov/ipeds/cipcode/searchresults.aspx?y=55&aw=11.9999&sw=1,2,3&ct=1,2,3&ca=1,2,5,3,4.
[19] Conrad and Allen May 1, 2016, p.55.

program designations based on updated 2014 data demonstrates the inherent instability of their designations, making them unreliable as guides to a remedial proposal.

The degree completion data in Table 3 additionally demonstrates how both arbitrary numerical thresholds and variability in degree completion can critically affect the designation of programs as high demand or exceptionally high demand. For example, of 10 programs that Conrad and Allen designate as high demand, Table 3 reports degree completion rates over the five- year period from 2010 to 2014. For each program analyzed in Table 3, the designation is dependent upon the particular year chosen as well as the numerical threshold. For all 10 programs in most years prior to 2014, the completion rate would not be sufficient to meet Conrad and Allen's threshold for a high demand program. For example, if Conrad and Allen had relied on 2013 rather than 2014 degree completion data, none of the 10 programs included in Table 3 would have met Conrad and Allen's threshold for a high demand program. Similarly, using the 5-year average degree completion to adjust for variability, none of the 10 programs would have met their high demand threshold.

A third problem demonstrates another fundamental bias in Conrad and Allen's approach to identifying high demand and exceptionally high demand programs which they claim in their July 6, 2016 Report are disproportionately located at TWIs as compared to HBIs. Their biased methodology guarantees this finding of imbalance because the TWIs are much larger institutions than the HBIs and graduate vastly more students per institution at every academic level each year. This methodology that identifies high demand and exceptionally high demand programs by the number of 2014 degrees granted in Maryland institutions will *by definition* find a much larger number of such programs concentrated at TWIs as compared to HBIs.

This problem is documented by the data reported in Table 4 on the number of degrees granted per institution for Maryland's public TWIs and HBIs. According to MHEC data on 2014 degree completion by institution, on average per institution the TWIs granted 4.4 times as many bachelor's degrees as the HBIs, 8.4 times more master's degrees, and 7.2 times more doctoral degrees.

Drawing on the data presented in Table 4, Table 5 analyzes whether high demand programs at the HBIs are underrepresented or overrepresented relative to the TWIs. Table 5 compares the ratio of degrees per institution at the TWIs relative to the HBIs with the ratio of high demand programs per institution at the TWIs to the HBIs, taking into account the total number of degrees granted by each institution. The results reported in Table 5 demonstrate that at every degree level the ratio of degrees per institution at the TWIs relative to the HBIs substantially exceeds the ratio of high demand programs per institution at the TWIs relative to the HBIs. For bachelor's degrees, the TWI to HBI ratio of degrees per institution exceeds the TWI to HBI ratio of high demand programs per institution by a margin of 2.3. For master's degrees, the ratio of degrees per institution exceeds the ratio of high demand programs per institution by 5.0. For doctoral degrees, the ratio of degrees per institution exceeds the ratio of high demand programs per institution by a factor of 1.8. Thus, after adjusting for the bias created by vast difference in degrees granted, HBIs are not underrepresented but *are substantially overrepresented* in the number of high demand programs per institution.

**TABLE 3**
**VARIABILITY IN DEGREE COMPLETION FOR PROGRAMS THAT CONRAD & ALLEN DESIGNATE AS HIGH DEMAND**

| Level, Program, Institution, CIP | Number of Degrees Granted in Program | | | | | |
|---|---|---|---|---|---|---|
| High Demand Programs | 2010 | 2011 | 2012 | 2013 | 2014 | 5-Yr. Mean |
| B: UMCP, Secondary Ed (13.1205) | 2* | 2* | 22* | 23* | 40 | 18* |
| B: Towson, Foreign Languages (16.0101) | 22* | 19* | 22* | 19* | 31 | 23* |
| B: Towson, Molecular Biology, Biochemistry, Bioinformatics (26.0299) | 12* | 22* | 18* | 18* | 27 | 19* |
| B: UB, Forensic Studies, 43.0106 | 21* | 12* | 16* | 19* | 25 | 19* |
| B: UMUC, Emergency Management (44.9999) | 7* | 11* | 25 | 21* | 32 | 19* |
| M: UB, Law of the U. S. (22.9999) | 7* | 14* | 12* | 11* | 13 | 11* |
| M: UMBC, Emergency Health Services (51.0904) | 8* | 7* | 7* | 8* | 14 | 9* |
| D: UMCP, Nutrition and Food Science (01.1001) | 0* | 5* | 4* | 5* | 8 | 4* |
| D: UMCP, Journalism (09.0401) | 5* | 4* | 2* | 5* | 6 | 4* |
| D: UMCP, Spanish (16.0905) | 3* | 4* | 6 | 5* | 7 | 5* |
| | | | | | | |
| * Does not meet Conrad and Allen threshold for designation as high demand: B: 25 degrees, M: 13 degrees, D: 6 degrees. | | | | | | |
| Source: MHEC, "Degree Trend Data Workbook 2014." Conrad and Allen, July 6, 2016 Report, Exhibit 10: High Demand Programs. | | | | | | |

**TABLE 4**
**DEGREES GRANTED PER INSTITUTION, MARYLAND HBIS AND TWIS**

| Institution | Undergraduate Degrees | Masters' Degrees | Doctoral Degrees |
|---|---|---|---|
| | | | |
| Morgan | 922 | 227 | 52 |
| Bowie | 741 | 278 | 7 |
| UMES | 585 | 68 | 101 |
| Coppin | 478 | 83 | 0 |
| | | | |
| Mean (Per School) | **682** | **164** | **40** |
| | | | |
| UMCP | 7,279 | 2,759 | 649 |
| UMUC | 4,188 | 3,647 | 49 |
| Towson | 4,291 | 1,114 | 20 |
| UMBC | 2,250 | 590 | 102 |
| Salisbury | 1,899 | 258 | 0 |
| UB | 665 | 472 | 317 |
| UMB | 337 | 785 | 875 |
| | | | |
| Mean (Per School) | **2,987** | **1,375** | **287** |
| | | | |
| Ratio, TWIs to HBIs | **4.4** | **8.4** | **7.2** |
| | | | |
| Source: MHEC 2015 Data Book, Degrees by Institution, 2013-14. | | | |

**TABLE 5**
**COMPARISON OF DEGREES GRANTED PER INSTITUTION, WITH HIGH DEMAND PROGRAMS PER INSTITUTION**

| Ratios and Difference | Bachelor Degrees | Master Degrees | Doctoral Degrees |
|---|---|---|---|
| | | | |
| **Ratio, Degrees Per Institution, TWIs to HBIs** | **4.4** | **8.4** | **7.2** |
| | | | |
| **Ratio, High Demand Programs Per Institution, TWIs to HBIs** | **2.1** | **3.4** | **5.4** |
| | | | |
| **Difference** | **+2.3** | **+5.0** | **+1.8** |
| | | | |
| Source: Table 4; Plaintiffs' Backup Data Disclosure as corrected per Errata Sheet. Unless otherwise indicated all citations to this Data Disclosure are as corrected. | | | |

Table 6 replicates the analysis in Table 5 for Conrad and Allen's newly established category of exceptionally high demand programs. The analysis again demonstrates that at every degree level the TWI to HBI ratio of degrees per institution substantially exceeds the TWI to HBI ratio of exceptionally high demand programs per institution. The results reported in Table 6 demonstrate that for bachelor's programs, which include the great majority of programs that Conrad and Allen identify as exceptionally high demand, the TWI to HBI ratio of degrees per institution exceeds the TWI to HBI ratio of exceptionally high demand programs per institution by a factor of 2.2. For master's degrees the ratio of degrees per institution exceeds ratio of exceptionally high demand programs per institution by a factor of 4.1. For doctoral degrees the ratio of degrees per institution exceeds the ratio of exceptionally high demand programs per institution by a factor of 3.3. Thus, HBIs *are substantially overrepresented* in the number of exceptionally high demand programs per institution, when the total number of degrees granted per institution is appropriately considered.

In absolute terms, Maryland's 4 HBIs have 132 high demand programs (56 percent of all programs). These high demand programs enroll 79.6 percent of all HBI students, but a lower 64.8 percent of white HBI students. At the Baltimore-College Park HBIs, the percentage of high demand programs is a slightly higher 58 percent. These Baltimore-College Park programs enroll 81.8 percent of all students and a lower 73.5 percent of white students. These findings demonstrate: 1) there is no dearth of high demand programs at the HBIs and 2) that the way in which Conrad and Allen define HBIs demonstrates no capacity of such programs for diversification.[20]

Conrad and Allen's failure to adjust for the bias in their designation of high demand and exceptionally high demand programs has important implications for their remedial strategy. The

[20] The percentage of high demand programs at the Baltimore-College Park HBIs only is a slightly higher 58 percent. Also, despite their very substantial lead in degrees produced per institution, the percentage of high demand programs at the TWIs is a slightly lower 54 percent.

**TABLE 6**
**COMPARISON OF DEGREES GRANTED PER INSTITUTION, WITH EXCEPTIONALLY HIGH DEMAND PROGRAMS PER INSTITUTION**

| Ratios and Difference | Bachelor Degrees | Master Degrees | Doctoral Degrees |
|---|---|---|---|
| | | | |
| **Ratio, Degrees Per Institution, TWIs to HBIs** | **4.4** | **8.4** | **7.2** |
| | | | |
| **Ratio, Exceptionally High Demand Programs Per Institution, TWIs to HBIs** | **2.2** | **4.3** | **3.9** |
| | | | |
| **Difference** | **+2.2** | **+4.1** | **+3.3** |
| | | | |
| Source: Table 4; Plaintiffs' Backup Data Disclosure. | | | |

identification of a program as high demand or exceptionally high demand based on degree completion numbers at large degree-granting TWIs means that when it comes to enrollments, such programs may not enroll even roughly comparable numbers of students at the much smaller degree-granting HBIs. The enrollment of large numbers of students is one of the requisites for an effective remedy along with high percentages of white students. Table 7 examines examples of high demand programs according to Conrad and Allen's degree completion thresholds with substantial overall enrollments at large TWIs that are duplicated at one or more HBIs. The results reported in this table indicate much lower enrollments at the HBIs for the same high demand programs. In every example but one, the enrollments at the HBIs are at least 80 percent lower than the enrollments at the TWI.[21]

As indicated in Table 8, this drop-off between high demand programs at the TWIs and the HBIs is a general phenomenon. The data reported in Table 8 indicates that mean total enrollments in high demand programs at the 7 TWIs is 2.6 times higher than mean total enrollments at the 4 HBIs. Moreover, this enrollment lag among high demand programs at the HBIs is not the consequence of competition from TWIs. As also indicated in Table 7, when considering only proximately unique high demand programs at the TWIs and the HBIs, mean enrollments for both groups of institutions falls off sharply, but mean enrollments at the TWIs is still 2.2 times higher than mean enrollments at the HBIs. Limiting the analysis to non-core, non-joint high demand programs only yields slightly more comparable ratios of 2.5 and 2.3, respectively.

Finally, it is also possible to test directly whether there exists a reliable positive relationship between the number of degrees granted in programs– the basis for Conrad and Allen's designation of remedial high demand and exceptionally high demand programs -- and the percentage of white students enrolled in HBI programs another requisite of any remedial program. It is feasible to conduct this test through an analysis that does not rely on the arbitrary numerical thresholds set by Conrad and Allen and critiqued above. Rather, the analysis examines the relationship between the number of degrees granted in a program at the HBIs and the percentages of white students in these programs.

The appropriate methodology for such a study is regression analysis. This standard procedure in social science examines the relationship between a phenomenon of interest known as the dependent variable, and one or more independent or explanatory variables. In this case the regression analysis examines the relationship between the percentage of white students in programs at the 4 HBIs (the dependent variable) and the number of degrees granted in each program in 2014, the independent variable. It also includes a second independent variable that controls for differences in white percentages between the Baltimore-College Park Region and the

[21] There are many ways in which Conrad and Allen could have adjusted for the bias in their designation of high demand programs. They could have used data on workforce demand for the graduates of various degree programs available at America's Career InfoNet, http://www.acinet.org/ and Specific Vocational Preparation (SVP) levels to determine types of job for which a program in a given CIP Code and degree levels also qualifies a student, http://online.onetcenter.org/find/. They could have turned to the employer surveys conducted by the National Association of Colleges and Employers: http://www.naceweb.org/surveys/job-outlook.aspx. Rather than relying solely on the raw number of degrees granted in a program they could have used the degrees granted in a program as a percentage of all degrees granted in an institution at the same academic level. They could have used national data on degree completion.

**TABLE 7**
**PROGRAMS WITH HIGH TWI AND MUCH LOWER HBI ENROLLMENTS, ALL STUDENTS, FALL 2014**

| Program | CIP | TWI Enrollment All Students | HBI Enrollment All Students | Difference |
|---|---|---|---|---|
| | | | | |
| D: Computer Science | 11.0101 | UMCP: 221 | Bowie: 34 | **-85%** |
| M: Special Education | 13.1001 | Towson: 144 | Bowie 17 | **-88%** |
| M: Special Education | 13.1001 | Towson: 144 | UMES 13 | **-91%** |
| B: Finance | 52.0801 | UMUC: 539 | UMES: 8 | **-99%** |
| B: Finance | 52.0801 | UMCP: 690 | UMES: 8 | **-99%** |
| B: Finance | 52.0801 | UMUC: 539 | Morgan: 80 | **-85%** |
| B: Finance | 52.0801 | UMCP: 690 | Morgan: 80 | **-88%** |
| B: Marketing | 52.1401 | UMUC: 422 | Coppin: 23 | **-95%** |
| B: Marketing | 52.1401 | UMUC: 422 | Morgan: 117 | **-72%** |
| B: Marketing | 52.1401 | UMUC: 422 | UMES: 2 | **-99%** |
| B: Information Systems | 11.0401 | UMCP: 2,355 | Coppin: 17 | **-99%** |
| M: Engineering | 14.0101 | UMCP: 468 | Morgan: 52 | **-89%** |
| M: Project/Tech Management | 52.0205 | UMUC: 252 | Morgan: 22 | **-91%** |
| M; Journalism | 09.0401 | UMCP: 43 | Morgan: 6 | **-86%** |
| M: Music | 50.0901 | UMCP: 100 | Morgan: 14 | **-86%** |
| B: Biochemistry | 26.0202 | UMCP: 250 | UMES: 20 | **-92%** |
| B: Art | 50.0702 | UMCP: 206 | Coppin: 42 | **-80%** |
| B: Social Sciences | 45.0101 | UMUC: 953 | Coppin: 12 | **-99%** |
| | | | | |
| Source: eisfall14mhecinventory; Plaintiffs' Backup Data Disclosure. | | | | |

**TABLE 8**
**MEAN ENROLLMENTS PER HIGH DEMAND PROGRAM, TWIS AND HBIS**

| | | |
|---|---|---|
| **All High Demand Programs** | | |
| **Institutions** | **Mean Enrollment Per Program, All High Demand** | **Mean Enrollment Per Program, Only Unique High Demand** |
| | | |
| 7 TWIs | 328 Total Students | 216 Total Students |
| | | |
| 4 HBIs | 125 Total Students | 97 Total Students |
| | | |
| Ratio: TWIs to HBIs | **2.6** | **2.2** |
| | | |
| **Non-Core, Non-Joint, High Demand Programs** | | |
| | | |
| 7 TWIs | 317 Total Students | 228 Total Students |
| | | |
| 4 HBIs | 129 Total Students | 99 Total Students |
| | | |
| Ratio: TWIs to HBIs | **2.5** | **2.3** |
| | | |
| Source: Plaintiffs' Backup Data Disclosure. | | |

Eastern Shore Region, with a value of 1 for Baltimore-College Park and a value of 0 for the Eastern Shore. This is a needed control because the percentage of white students at UMES is more than four and a half times greater than at the 3 Baltimore-College Park HBIs. Thus, regardless of any other characteristic, programs at UMES will have much higher white percentages than enrollments at the Baltimore-College Park HBIs. This is what is known as a confounding influence in statistical analysis, which unless controlled has the potential to create false or spurious statistical relationships. The analysis also controls for program level: bachelor's, master's, and doctorate.[22]

The analysis generates regression coefficients that measure the influence of independent variables on the dependent variable, controlling for all other variables in the analysis. Each coefficient estimates the positive or negative change in the dependent variable for each one unit change in the independent variable, controlling for the influence of all other independent variables in the analysis. In this case, the regression coefficient would indicate whether the percentage of white students in a program increases or decreases as the number of 2014 degree completions increases. The analysis also generates a measure of statistical significance, which indicates whether the relationship between the independent and dependent variable is likely the result of chance or random factors. Standard measures of statistical significance range from .1, which corresponds to a one in ten probability of obtaining the results under the chance hypothesis to .01, which corresponds to a one in one-hundred probability of obtaining the results under the chance hypothesis.

The results of analysis, reported in Table 9 demonstrate that for all HBI programs, rather than a positive relationship there is a negative relationship between the number of degrees granted in 2014 and the white percentages of HBI programs. However, the relationship is not statistically significant. These findings stand in direct contradiction to plaintiffs' supposition about the remedial efficacy of high demand and exceptionally high demand programs based on degrees granted in 2014. The results of regression analysis demonstrate that there is *no basis* for plaintiffs' assumption that programs with higher numbers of degrees conferred will attract higher percentages of white students at the HBIs. The strong statistically significant relationship between regional location and the percentage of white students in a program, independent of program level and degree numbers, underscores the importance of not merging together UMES and the Baltimore-College Park HBIs in any analysis of white enrollments in HBI programs.[23]

The lack of a positive relationship between degrees granted in 2014 and the white percentages in HBI programs is not a consequence of program duplication as defined by Conrad and Allen. Table 9 additionally reports the results of an analysis limited only to proximately unduplicated programs at the HBIs. The results disclose a higher negative regression coefficient, for the variable measuring degrees conferred, although again the relationship lacks statistical significance. *Thus, even when controlling for duplication, the findings refute plaintiffs' remedial presumption of a positive relationship between the number of degrees granted in 2014 and the white percentages in HBI programs.*

---

[22] Pp. 443-538 On regression analysis see for example, Mark Sirkin, *Statistics for the Social Sciences* 3rd ed., (Sage, 2006), pp. 443-538; on spurious relationships see pp. 164-172. For an application of regression analysis see Allan J. Lichtman, *Prejudice and the Old Politics: The Presidential Election of 1928*, 2000 ed. (Lexington: 2000).

[23] The negative relationship between numbers of degrees conferred and the percentage of white students at the HBIs is statistically significant absent the program level control.

**TABLE 9**
**REGRESSION ANALYSIS RESULTS FOR THE RELATIONSHIP BETWEEN NUMBER OF DEGREES GRANTED IN HBI PROGRAMS AND WHITE ENROLLMENT PERCENTAGE**

| All HBI Programs: Dependent Variable = Percentage of White Students | | |
|---|---|---|
| **Independent Variable** | **Regression Coefficient** | **Statistical Significance** |
| | | |
| # of 2014 Degrees Granted | -.06 | Not Significant |
| | | |
| Regional Location | -15.1 | <.00001 |
| | | |
| Program Level | +5.6 | <.00001 |
| | | |
| **Only Proximately Unduplicated HBI Programs: Dependent Variable = Percentage of White Students** | | |
| | | |
| # of 2014 Degrees Granted | -.18 | Not Significant |
| | | |
| Regional Location | -17.7 | <.00001 |
| | | |
| Program Level | +5.5 | <.1 |
| | | |
| Source: Plaintiffs' Backup Data Disclosure. | | |

In sum, the alleged imbalance between the TWIs and the HBIs with respect to programs that Conrad and Allen designate as high demand and exceptionally high demand, and therefore essential to plaintiffs' remedial strategy, is driven by the much greater number of degrees granted at the TWIs compared to the HBIs. When the number of degrees granted per institution is taken into account, the HBIs are substantially overrepresented in the balance of both high demand and exceptionally high demand programs. There is no lack of high demand programs at the HBIs; these programs already enroll the vast majority of HBI students, but a lower percentage of white students specifically.

Moreover, in terms of remedy, proposed new or transferred high demand programs at the HBIs are likely in many instances to result in far lower enrollments than the designation would indicate. White are underrepresented, not overrepresented, as compared to all student in high demand programs at the HBIs and controlled statistical analysis discloses a negative relationship between the number of degrees granted in HBI programs and the percentage of white students enrolled in these programs. Although the relationship is not statistically significant at standard levels, it clearly shows that there is no basis for concluding that high demand programs tend to enroll high percentages of white students than non-high demand programs. The same finding holds for exceptionally high demand programs. These many findings directly contradict a fundamental premise of plaintiffs' current remedial strategy, that high demand and exceptionally high demand program as gauged by the number of degrees granted in 2014 will enroll a substantially higher percentage of white students than are currently enrolled at the HBIs.

## IV. Bias in Conrad and Allen's Designation of "Unique" Programs

I use the term "unique" only for consistency with Conrad and Allen's Report. However, there is also bias in Conrad and Allen's designation of programs as "unique." For example, Conrad and Allen count an HBI program as "unique" even if duplicated at one or more other HBIs and count a TWI program as "unique" even if duplicated at one or more other TWIs, which have many more programs than the HBIs in the Baltimore-College Park Region. They count a program as "unique" if proximately unduplicated even if duplicated at another non-proximate institution. In addition, Conrad and Allen's concept of uniqueness for the remedial analysis, operates within an unrealistically closed system limited to the 4 public HBIs and the 7 public TWIs included in their study. They do not consider the availability of programs at Frostburg or St. Mary's among the state's public institutions, even though Maryland is a small state and these institutions draw broadly across the state. They do not consider the availability of programs at the many private institutions not only in Maryland but in nearby D. C., Virginia, and Pennsylvania. They do not consider the explosive growth in online learning. U. S. News has ranked 217 online undergraduate degree programs and 188 online graduate degree programs as well as including many other unranked online programs.[24]

[24] http://www.usnews.com/education/online-education/bachelors/rankings; http://www.usnews.com/education/online-education/education/rankings.

Taken together, biases in the designation of high demand and exceptionally high demand programs and in the designation of unique (unduplicated) programs also means that there will be bias in the designation of programs at the HBIs that are both high demand and unique.

**V. Plaintiffs' Categories of Remedial Programs Demonstrate No Capacity for Diversification**

The following analyses conform to standard scientific practice explained in the literature cited above by first examining, not self-selected exemplar programs, but *all programs* at Maryland's HBIs that fall into the four categories of programs that plaintiffs claim have the potential to significantly diversify these institutions: high demand programs, exceptionally high demand programs, unique programs (whether proximate or statewide), and programs that are both unique and high demand. Second, the analysis additionally conforms to standard scientific practice by including proper comparison and control. Specifically, the results for these analyses for undergraduate and graduate programs are assessed relative to the total percentage of white students at the four HBIs at these programmatic levels. The results of all four of these analyses show that plaintiffs' categories of remedial programs do not have the potential to significantly diversify Maryland's HBIs. In addition, these findings are confirmed by the results of a regression analysis that assesses the relationship between the white student percentages in *all* HBI programs and plaintiffs categories of remedial proposals.

**1. High Demand Programs**

The analyses for high demand programs are presented in detailed Table 10 and summary Table 11. Detailed Table 10 presents data for *all* non-core, non-joint HBI programs that plaintiffs designate as high demand. These program-by-program data include the total number of students enrolled, the number of white students enrolled, and the percentage of white students enrolled.[25] The results reported in this Summary Table 11 confirm the above findings that high demand programs as defined by Conrad and Allen have no capacity for diversifying the HBIs.

- **Bowie State University**

As indicated in Table 11, the 10 high demand undergraduate programs at Bowie enrolled 2,837 students, for an average of 283.7 students per program. However, these programs enrolled only 65 white students, for an average of 6.5 white students per program. Overall, white students comprised 2.3 percent of students in these high demand undergraduate programs, 0.2 percentage points lower than the 2.5 percent of white students among all undergraduates at Bowie.

[25] Conrad and Allen explicitly exclude both core programs and joint programs from their categories of unique remedial programs: "For purposes of our analysis of program uniqueness, we exclude both core programs *and joint programs.* Thus, a program is only considered unique if it is non-core, and *not offered as a joint degree with another institution.*" (Conrad and Allen July 6, 2016 Report, p. 6, emphasis added).

**TABLE 10**
**ALL NON-CORE, NON-JOINT PROGRAMS IDENTIFIED BY PLAINTIFFS' CRITERIA AS HIGH-DEMAND AT HBIS: TOTAL AND WHITE ENROLLMENT**

| CIP Code | Degree Level | HBI | Program Name | Total Students Enrolled | White Students Enrolled | White Student % |
|---|---|---|---|---|---|---|
| ***BOWIE STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 10.0202 – Radio And Television Broadcasting Technology/Technician | Bachelor's | Bowie | Communications Media | 395 | 5 | 1.3% |
| 11.0101 – Computer Science | Bachelor's | Bowie | Computer Science | 113 | 0 | 0% |
| 13.1202 Elementary Education & Teaching | Bachelor's | Bowie | Elementary Education | 116 | 7 | 6.0% |
| 13.1209 – Early Childhood Education | Bachelor's | Bowie | Early Childhood Education | 110 | 11 | 10.0% |
| 19.0706 – Child Development | Bachelor's | Bowie | Child & Adolescent Studies | 85 | 1 | 1.2% |
| 31.0504 - Sport & Fitness Administration/Management | Bachelor's | Bowie | Sport Management | 130 | 0 | 0% |
| 43.0104 - Criminal Justice/Safety Studies | Bachelor's | Bowie | Criminal Justice | 365 | 10 | 2.7% |
| 44.0701 - Social Work | Bachelor's | Bowie | Social Work | 214 | 8 | 3.7% |
| 52.0201 Business Admin | Bachelor's | Bowie | Business Admins | 695 | 12 | 1.7% |
| 51.3801 – Nursing | Bachelor's | Bowie | Nursing | 614 | 11 | 1.8% |
| ***Master's*** | | | | | | |
| 11.0101 – Computer Science | Master's | Bowie | Computer Science | 53 | 3 | 5.7% |
| 13.1001 Special Education & Teaching, General | Master's | Bowie | Special Education | 17 | 6 | 35.3% |
| 13.1101 Counselor Education/School Counseling & Guidance Services | Master's | Bowie | School Counseling | 63 | 11 | 17.5% |
| 13.1202 Elementary Education | Master's | Bowie | Elementary Education | 7 | 1 | 14.3% |
| 13.1315 Reading Teacher Education | Master's | Bowie | Reading Education | 21 | 4 | 19.0% |
| 42.2803 Counseling Psychology | Master's | Bowie | Counseling Psychology | 146 | 5 | 3.4% |
| 44.0401 – Public Admin. | Master's | Bowie | Public Admin. | 109 | 2 | 1.8% |
| 511508: Mental Health Counseling | Master's | Bowie | Mental Health Counseling | 65 | 5 | 7.7% |
| 51.3801 – Nursing | Master's | Bowie | Nursing | 123 | 14 | 11.4% |
| 52.0101 – Business/Commerce, General | Master's | Bowie | Business Administration | 43 | 1 | 2.3% |

| | | | | | | |
|---|---|---|---|---|---|---|
| 52.1005– Human Resource Development | Master's | Bowie | Human Resources | 103 | 0 | 0% |
| 52.1201 – Management Information Systems | Master's | Bowie | Management Information Systems | 133 | 4 | 3.0% |
| *Doctorate* | | | | | | |
| 11.0101 – Computer Science | Doctorate | Bowie | Computer Science | 34 | 2 | 5.9% |
| ***COPPIN STATE UNIVERSITY*** | | | | | | |
| *Bachelor's* | | | | | | |
| 11.0401 – Information Science | Bachelor's | Coppin | Management of Information Systems | 17 | 1 | 5.9% |
| 11.0701 – Computer Science | Bachelor's | Coppin | Computer Science | 56 | 0 | 0% |
| 13.1202 – Elementary Education & Teaching | Bachelor's | Coppin | Elementary Education | 43 | 1 | 2.3% |
| 13.1210 – Early Childhood Education & Teaching | Bachelor's | Coppin | Early Childhood Education | 87 | 0 | 0% |
| 31.0504 - Sport & Fitness Administration/Management | Bachelor's | Coppin | Sport Management | 154 | 7 | 4.5% |
| 43.0104 - Criminal Justice/Safety Studies | Bachelor's | Coppin | Criminal Justice | 214 | 2 | 0.9% |
| 50.0702 – Ethnomusicology | Bachelor's | Coppin | Urban Arts | 42 | 0 | 0% |
| 51.0706 –Health Professions | Bachelor's | Coppin | Health Information Management | 80 | 2 | 2.5% |
| 51.3801 – Nursing | Bachelor's | Coppin | Nursing | 683 | 9 | 1.3% |
| 52.1401 - Marketing/Marketing Management, General | Bachelor's | Coppin | Marketing | 23 | 1 | 4.3% |
| 52.0201 - Management | Bachelor's | Coppin | Management | 149 | 0 | 0% |
| 52.0301 - Accounting | Bachelor's | Coppin | Accounting | 60 | 3 | 5% |
| *Master's* | | | | | | |
| 13.1099 – Special Education | Master's | Coppin | Special Education | 22 | 0 | 0% |
| 13.1315 – Reading Teacher Education | Master's | Coppin | Reading | 1 | 0 | 0% |
| 51.2399 – Rehabilitation & Therapeutic Professions, Other | Master's | Coppin | Rehabilitation Counseling | 99 | 0 | 0% |
| 51.3811 - Nursing | Master's | Coppin | Nursing | 46 | 2 | 4.3% |
| ***MORGAN STATE UNIVERSITY*** | | | | | | |
| *Bachelor's* | | | | | | |
| 04.0201 – Architecture | Bachelor's | Morgan | Architecture & Environmental Design | 248 | 37 | 14.9 |
| 09.0401 – Journalism | Bachelor's | Morgan | Multimedia Journalism | 116 | 1 | 0.9% |
| 09.0402 – Journalism | Bachelor's | Morgan | Multi-Platform Production | 188 | 1 | 0.5% |
| 09.0999 – Communication Specialties | Bachelor's | Morgan | Strategic Communication | 122 | 1 | 0.8% |
| 11.0101 – Computer Science | Bachelor's | Morgan | Computer Science | 171 | 0 | 0% |
| 11.0401 – Information Systems | Bachelor's | Morgan | Management of Information Systems | 114 | 0 | 0% |
| 13.1202 – Elementary | Bachelor's | Morgan | Elementary Education | 209 | 2 | 1.0% |

| | | | | | | |
|---|---|---|---|---|---|---|
| Education & Teaching | | | | | | |
| 13.1314 Physical Education | Bachelor's | Morgan | Physical Education | 212 | 2 | 0.9% |
| 13.1307– Health Teacher Education | Bachelor's | Morgan | Health Education | 106 | 0 | 0% |
| 14.0801 - Civil Engineering, General | Bachelor's | Morgan | Civil Engineering | 221 | 10 | 4.5% |
| 14.1001 - Electronics, Electrical & Communication Engineering | Bachelor's | Morgan | Electrical Engineering | 504 | 11 | 2.2 |
| 19.0101 – Family and Consumer Science/ Human Sciences, General | Bachelor's | Morgan | Family Consumer Science | 134 | 0 | 0% |
| 190505 – Nutritional Science | Bachelor's | Morgan | Nutritional Science | 97 | 17 | 17.5% |
| 44.0701 Social Work | Bachelor's | Morgan | Social Work | 295 | 4 | 1.4% |
| 51.3801 – Nursing | Bachelor's | Morgan | Nursing | 322 | 7 | 2.2% |
| 52.0201 – Business Admin | Bachelor's | Morgan | Business Admin | 444 | 1 | 0.2% |
| 52.0201 - Management | Bachelor's | Morgan | Management | 83 | 0 | 0% |
| 52.0301 – Accounting | Bachelor's | Morgan | Accounting | 193 | 1 | 0.5% |
| 52.0801 – Finance, General | Bachelor's | Morgan | Finance | 80 | 1 | 1.2% |
| 52.0904 – Hotel & Restaurant Management | Bachelor's | Morgan | Hospitality Management | 91 | 1 | 1.1% |
| 52.1401 – Marketing/ Marketing Management, General | Bachelor's | Morgan | Marketing | 117 | 0 | 0% |
| ***Master's*** | | | | | | |
| 04.0201 – Architecture | Master's | Morgan | Architecture | 36 | 18 | 50.0% |
| 14.0101 – Engineering, General | Master's | Morgan | Engineering | 52 | 0 | 0% |
| 14.1001 – Electrical, Electronics & Communications Engineering | Master's | Morgan | Electrical Engineering | 24 | 2 | 8.3% |
| 44.0701 – Social Work | Master's | Morgan | Social Work | 183 | 8 | 4.4% |
| 50.0901 – Music | Master's | Morgan | Music | 14 | 0 | 0% |
| 51.2201 – Public Health | Master's | Morgan | Public Health | 51 | 2 | 3.9% |
| 51.3801 – Nursing | Master's | Morgan | Nursing | 15 | 0 | 0% |
| 52.0201 – Business Admin | Master's | Morgan | Business Admin | 116 | 0 | 0% |
| 52.0205 – Project Management | Master's | Morgan | Project Management | 22 | 0 | 0% |
| 52.0301 – Accounting | Master's | Morgan | Professional Accountancy | 5 | 0 | 0% |
| ***Doctorate*** | | | | | | |
| | | | | | | |
| 13.0401– Educational Leadership & Administration | Doctorate | Morgan | Urban Education Leadership | 93 | 4 | 4.3% |
| 13.0407 – Community College Leadership. | Doctorate | Morgan | Community College Leadership | 167 | 23 | 13.8% |
| 14.0101 – Engineering, General | Doctorate | Morgan | Engineering | 63 | 4 | 6.3% |
| 23.0101 – English | Doctorate | Morgan | English | 23 | 4 | 17.4% |
| 44.0701 – Social Work | Doctorate | Morgan | Social Work | 31 | 1 | 3.2% |
| 52.0201 – Business Admin | Doctorate | Morgan | Business Admin | 18 | 5 | 27.8% |
| ***University of Maryland Eastern Shore (UMES)*** | | | | | | |
| ***Bachelor's*** | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 11.0101 – Computer Science | Bachelor's | UMES | Computer Science | 161 | 8 | 5.0% |
| 19.0101 – Family and Consumer Sciences, General | Bachelor's | UMES | Human Ecology | 206 | 27 | 13.1% |
| 26.0202 – Biochemistry | Bachelor's | UMES | Biochemistry | 20 | 0 | 0% |
| 26.1301 – Ecology | Bachelor's | UMES | Environmental Science | 57 | 32 | 56.1% |
| 31.0505 – Exercise Science | Bachelor's | UMES | Exercise Science | 260 | 21 | 8.1% |
| 43.0107 – Criminal Justice/Police Science | Bachelor's | UMES | Criminal Justice | 434 | 19 | 4.4% |
| 52.0201 – Business Admin | Bachelor's | UMES | Business Admin | 168 | 6 | 3.6% |
| 52.0301 – Accounting | Bachelor's | UMES | Accounting | 87 | 6 | 6.9% |
| 52.0801 – Finance, General | Bachelor's | UMES | Finance | 8 | 0 | 0% |
| 52.0904 – Hotel & Restaurant Management | Bachelor's | UMES | Hospitality & Tourism Management | 175 | 22 | 12.6% |
| 52.1401 – Marketing/Marketing Management, General | Bachelor's | UMES | Marketing | 2 | 1 | 50% |
| ***Master's*** | | | | | | |
| 11.0101 – Computer Science | Master's | UMES | Applied Computer Science | 19 | 1 | 5.3% |
| 13.1001 – Special Education & Teaching, General | Master's | UMES | Special Education | 13 | 7 | 53.8% |
| 13.1101 – Counselor Education/School Counseling | Master's | UMES | Counselor Education | 36 | 13 | 36.1% |
| 45.0401 – Criminology | Master's | UMES | Criminology & Criminal Justice | 17 | 1 | 5.9% |
| 51.0912– Physician Assistant | Master's | UMES | Physician Assistant Studies | 74 | 13 | 17.6% |
| 51.2399 – Rehabilitation and Therapeutic Professions, Other | Master's | UMES | Rehabilitation Counseling | 35 | 6 | 17.1% |
| ***Doctorate*** | | | | | | |
| 01.1001 Food Science | Doctorate | UMES | Food Science & Technology | 11 | 2 | 18.2% |
| 13.0401 – Educational Leadership & Administration | Doctorate | UMES | Education Leadership | 42 | 17 | 40.5% |
| 30.9999 – General Studies | Doctorate | UMES | Organizational Leadership | 75 | 25 | 33.3% |
| 51.2001 Pharmacy | Doctorate | UMES | Pharmacy | 175 | 33 | 18.9% |
| 51.2308– Physical Therapy/Physical Therapist | Doctorate | UMES | Physical Therapy | 88 | 42 | 47.7% |
| Source: Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | | | |

**TABLE 11**
**SUMMARY OF FINDINGS FROM TABLE 10 DATA ON HIGH DEMAND PROGRAMS AT HBIS IN MARYLAND**

| Type | # of Programs | Total Enrolled | White Students Enrolled | Total Students Per Program | White Students Per Program | % White Students | % White Students At Level In Institution | Difference Between % White Students in Program and % White Students at Level in Institution |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| **BOWIE STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 10 | 2,837 | 65 | 283.7 | 6.5 | 2.3% | 2.5% | **-0.2%** |
| | | | | | | | | |
| **Graduate** | 13 | 917 | 58 | 70.5 | 4.5 | 6.3% | 7.2% | **-0.9%** |
| | | | | | | | | |
| **COPPIN STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 12 | 1,608 | 26 | 134 | 2.2 | 1.6% | 1.5% | **+0.1%** |
| | | | | | | | | |
| **Graduate** | 4 | 168 | 2 | 42.0 | 0.5 | 1.2% | 0.9% | **+0.3%** |
| | | | | | | | | |
| **MORGAN STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 21 | 4,067 | 97 | 193.7 | 4.6 | 2.4% | 2.0% | **+0.4%** |
| | | | | | | | | |
| **Graduate** | 16 | 913 | 71 | 57.1 | 4.4 | 7.8% | 9.2% | **-1.4%** |
| | | | | | | | | |
| **UNIVERSITY OF MARYLAND EASTERN SHORE** | | | | | | | | |
| **Undergrad** | 11 | 1,578 | 142 | 143.5 | 12.9 | 9.0% | 11.6% | **-2.6%** |
| | | | | | | | | |
| **Graduate** | 11 | 585 | 160 | 53.2 | 14.5 | 27.4% | 29.1% | **-1.7%** |
| | | | | | | | | |

the 13 high demand graduate programs at Bowie enrolled 917 students for an average of 70.5 per program. However, these programs enrolled only 58 white students for an average of 4.5 white students per program. Overall, white students comprised 6.3 percent of students in these high demand graduate programs, 0.9 percentage points less than the 7.2 percent of white students among all graduate students at Bowie.

- **Coppin State University**

As indicated in Table 11, the 12 high demand undergraduate programs at Coppin enrolled 1,608 students, for an average of 134 students per program. However, these programs enrolled only 26 white students, for an average of 2.2 white students per program. Overall, white students comprised 1.6 percent of students in these high demand undergraduate programs, 0.1 percentage points higher than the 1.5 percent of white students among all undergraduates at Coppin.

The 4 high demand graduate programs at Coppin enrolled 168 students for an average of 42.0 per program. However, these programs enrolled only 2 white students, for an average of 0.5 white students per program. The 1.2 percent of white students in high demand graduate programs is 0.3 percentage points higher than the 0.9 percent of white students among all graduate students at Coppin.

- **Morgan State University**

As indicated in Table 11, the 21 high demand undergraduate programs at Morgan enrolled 4,067 students, for an average of 193.7 students per program. However, these programs enrolled only 97 white students, for an average of 4.6 white students per program. Overall, white students comprised 2.4 percent of students in these high demand undergraduate programs, 0.4 percentage points higher than the 2.0 percent of white students among all undergraduates at Morgan.

The 16 high demand graduate programs at Morgan enrolled 913 students for an average of 57.1 per program. However, these programs enrolled only 71 white students for an average of 4.4 per program. Overall white students comprised 7.8 percent of students in these high demand graduate programs, 1.4 percentage points less than the 9.2 percent of white students among all graduate students at Morgan.

- **University of Maryland Eastern Shore**

As indicated in Table 11, the 11 high demand undergraduate programs at UMES enrolled 1,578 students, for an average of 143.5 students per program. However, these programs enrolled only 142 white students, for an average of 12.9 white students per program. Overall, white students comprised 9.0 percent of the enrollment in these high demand undergraduate programs, 2.6 percentage points less than the 11.6 percent of white students among all undergraduates at UMES.

The 11 high demand graduate programs at UMES enrolled 585 students for an average of 53.2 students per program. However, these programs enrolled only 160 white students for an average of 14.5 white students per program. Overall, white students comprised 27.4 percent of all students in these high demand graduate programs, 1.7 percentage points less than the 29.1 percent of white students among all graduate students at UMES.

- **Four HBIs Combined**

As indicated Table 11, in five of the eight undergraduate and graduate analyses for the four HBIs, the percentage of white students in the high demand programs was lower than the overall percentage of white students at that level of the institution. In 3 of these 5 instances, the difference was greater than 1 percentage point. In the remaining three analyses the percentage of white students was higher than the overall percentage of white students at the institution, but the differences were all less than 0.5 percentage points. Thus, high demand programs at these institutions *had either no impact or a slightly negative impact* on the enrollment of white students at either the undergraduate or graduate level in the four HBIs.

**2. Exceptionally High Demand Programs**

The analyses for exceptionally high demand programs are presented in detailed Table 12 and summary Table 13. As indicated by the results reported in summary Table 11, exceptionally high demand programs actually have a negative impact on the percentage enrollment of white students at the HBIs.

- **Bowie State University**

As indicated in Table 13, the 7 exceptionally high demand undergraduate programs at Bowie enrolled 2,512 students, for an average of 358.9 students per program. However, these programs enrolled only 53 white students, for an average of 7.6 white students per program. Overall, white students comprised 2.1 percent of students in these exceptionally high demand undergraduate programs, 0.4 percentage points less than the 2.5 percent of white students among all undergraduates at Bowie.

The 5 exceptionally high demand graduate programs at Bowie enrolled 412 students for an average of 82.4 per program. However, these programs enrolled only 19 white students for an average of 3.8 white students per program. Overall, white students comprised 4.6 percent of students in these exceptionally high demand graduate programs, 2.6 percentage points less than the 7.2 percent of white students among all graduate students at Bowie.

- **Coppin State University**

As indicated in Table 13, the 7 exceptionally high demand undergraduate programs at Coppin enrolled 1,222 students, for an average of 174.6 students per program. However, these programs enrolled only 16 white students, for an average of 2.3 white students per

**TABLE 12**
**ALL NON-CORE, NON-JOINT PROGRAMS IDENTIFIED BY PLAINTIFFS CRITERIA AS EXCEPTIONALLY HIGH-DEMAND AT HBIS: TOTAL AND WHITE ENROLLMENT**

| CIP Code | Degree Level | HBI | Program Name | Total Students Enrolled | White Students Enrolled | White Student % |
|---|---|---|---|---|---|---|
| ***BOWIE STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 10.0202 – Radio And Television Broadcasting Technology/Technician | Bachelor's | Bowie | Communications Media | 395 | 5 | 1.3% |
| 11.0101 – Computer Science | Bachelor's | Bowie | Computer Science | 113 | 0 | 0% |
| 13.1202 Elementary Education | Bachelor's | Bowie | Elementary Education | 116 | 7 | 6.0% |
| 43.0104 - Criminal Justice/Safety Studies | Bachelor's | Bowie | Criminal Justice | 365 | 10 | 2.7% |
| 44.0701 - Social Work | Bachelor's | Bowie | Social Work | 214 | 8 | 3.7% |
| 52.0201 Business Admin | Bachelor's | Bowie | Business Admins | 695 | 12 | 1.7% |
| 51.3801 – Nursing | Bachelor's | Bowie | Nursing | 614 | 11 | 1.8% |
| ***Master's*** | | | | | | |
| 44.0401 – Public Admin. | Master's | Bowie | Public Admin. | 109 | 2 | 1.8% |
| 51.3801 – Nursing | Master's | Bowie | Nursing | 123 | 14 | 11.4% |
| 52.0101 – Business/Commerce, General | Master's | Bowie | Business Administration | 43 | 1 | 2.3% |
| 52.1005– Human Resource Development | Master's | Bowie | Human Resources | 103 | 0 | 0% |
| ***Doctorate*** | | | | | | |
| 11.0101 – Computer Science | Doctorate | Bowie | Computer Science | 34 | 2 | 5.9% |
| ***COPPIN STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 11.0401 – Information Science | Bachelor's | Coppin | Management of Information Systems | 17 | 1 | 5.9% |
| 11.0701 – Computer Science | Bachelor's | Coppin | Computer Science | 56 | 0 | 0% |
| 13.1202 Elementary Education | Bachelor's | Coppin | Elementary Education | 43 | 1 | 2.3% |
| 43.0104 - Criminal Justice/Safety Studies | Bachelor's | Coppin | Criminal Justice | 214 | 2 | 0.9% |
| 51.3801 – Nursing | Bachelor's | Coppin | Nursing | 683 | 9 | 1.3% |
| 52.0201 - Management | Bachelor's | Coppin | Management | 149 | 0 | 0% |
| 52.0301 - Accounting | Bachelor's | Coppin | Accounting | 60 | 3 | 5.0% |
| ***Master's*** | | | | | | |
| 51.3811 - Nursing | Master's | Coppin | Nursing | 46 | 2 | 4.3% |
| ***MORGAN STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 09.0401 – Journalism | Bachelor's | Morgan | Multimedia Journalism | 116 | 1 | 0.8% |
| 11.0101 – Computer Science | Bachelor's | Morgan | Computer Science | 171 | 0 | 0% |
| 11.0401 – Information Systems | Bachelor's | Morgan | Management of | 114 | 0 | 0% |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | Information Systems | | | |
| 13.1202- Elementary Education | Bachelor's | Morgan | Elementary Education | 209 | 2 | 1.0% |
| 13.1307– Health Teacher Education | Bachelor's | Morgan | Health Education | 106 | 0 | 0% |
| 14.0801 - Civil Engineering, General | Bachelor's | Morgan | Civil Engineering | 221 | 10 | 4.5% |
| 14.1001 - Electronics, Electrical & Communication Engineering | Bachelor's | Morgan | Electrical Engineering | 504 | 11 | 2.2% |
| 19.0101 – Family and Consumer Science/ Human Sciences, General | Bachelor's | Morgan | Family Consumer Science | 134 | 0 | 0% |
| 44.0701 Social Work | Bachelor's | Morgan | Social Work | 295 | 4 | 1.4% |
| 51.3801 – Nursing | Bachelor's | Morgan | Nursing | 322 | 7 | 2.2% |
| 52.0201 – Business Admin | Bachelor's | Morgan | Business Admin | 444 | 1 | 0.2% |
| 52.0201 - Management | Bachelor's | Morgan | Management | 83 | 0 | 0% |
| 52.0301 – Accounting | Bachelor's | Morgan | Accounting | 193 | 1 | 0.5% |
| 52.0801 – Finance, General | Bachelor's | Morgan | Finance | 80 | 1 | 1.3% |
| ***Master's*** | | | | | | |
| 14.0101 – Engineering, General | Master's | Morgan | Engineering | 52 | 0 | 0% |
| 44.0701 – Social Work | Master's | Morgan | Social Work | 183 | 8 | 4.4% |
| 51.3801 – Nursing | Master's | Morgan | Nursing | 15 | 0 | 0% |
| 52.0201 – Business Admin | Master's | Morgan | Business Admin | 116 | 0 | 0% |
| 52.0205 – Project Management | Master's | Morgan | Project Management | 22 | 0 | 0% |
| ***Doctorate*** | | | | | | |
| | | | | | | |
| 13.0407 – Community College Leadership. | Doctorate | Morgan | Community College Leadership | 167 | 23 | 13.8% |
| 14.0101 – Engineering, General | Doctorate | Morgan | Engineering | 63 | 4 | 6.3% |
| 23.0101 – English | Doctorate | Morgan | English | 23 | 4 | 17.4% |
| ***University of Maryland Eastern Shore (UMES)*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 11.0101 – Computer Science | Bachelor's | UMES | Computer Science | 161 | 8 | 5.0% |
| 26.0202- Biochemistry | Bachelor's | UMES | Biochemistry | 20 | 0 | 0% |
| 26.1301 – Ecology | Bachelor's | UMES | Environmental Science | 57 | 32 | 56.1% |
| 31.0505 – Exercise Science | Bachelor's | UMES | Exercise Science | 260 | 21 | 8.1% |
| 43.0107 – Criminal Justice/Police Science | Bachelor's | UMES | Criminal Justice | 434 | 19 | 4.4% |
| 52.0201 – Business Admin | Bachelor's | UMES | Business Admin | 168 | 6 | 3.6% |
| 52.0301 – Accounting | Bachelor's | UMES | Accounting | 87 | 6 | 6.9% |
| 52.0801 – Finance, General | Bachelor's | UMES | Finance | 8 | 0 | 0% |
| ***Doctorate*** | | | | | | |
| 30.9999 – General Studies | Doctorate | UMES | Organizational Leadership | 75 | 25 | 33.3% |
| 51.2001 Pharmacy | Doctorate | UMES | Pharmacy | 175 | 33 | 18.9% |
| 51.2308– Physical Therapy/Physical Therapist | Doctorate | UMES | Physical Therapy | 88 | 42 | 47.7% |
| Source: Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | | | |

## TABLE 13
## SUMMARY OF FINDINGS FROM TABLE 12 DATA ON EXCEPTIONALLY HIGH DEMAND PROGRAMS AT HBIS IN MARYLAND

| Type | # of Programs | Total Enrolled | White Students Enrolled | Total Students Per Program | White Students Per Program | % White Students | % White Students At Level In Institution | Difference Between % White Students in Program and % White Students at Level in Institution |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| **BOWIE STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 7 | 2,512 | 53 | 358.9 | 7.6 | 2.1% | 2.5% | **-0.4%** |
| | | | | | | | | |
| **Graduate** | 5 | 412 | 19 | 82.4 | 3.8 | 4.6% | 7.2% | **-2.6%** |
| | | | | | | | | |
| **COPPIN STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 7 | 1,222 | 16 | 174.6 | 2.3 | 1.3% | 1.5% | **-0.2%** |
| | | | | | | | | |
| **Graduate** | 1 | 46 | 2 | 46 | 2 | 4.3% | 0.9% | **+3.4%** |
| | | | | | | | | |
| **MORGAN STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 14 | 2,992 | 38 | 213.7 | 2.7 | 1.3% | 2.0% | **-0.7%** |
| | | | | | | | | |
| **Graduate** | 8 | 641 | 39 | 80.1 | 4.9 | 6.1% | 9.2% | **-3.1%** |
| | | | | | | | | |
| **UNIVERSITY OF MARYLAND EASTERN SHORE** | | | | | | | | |
| **Undergrad** | 8 | 1,195 | 92 | 149.4 | 11.5 | 7.7% | 11.6% | **-3.9%** |
| | | | | | | | | |
| **Graduate** | 3 | 338 | 100 | 112.7 | 33.3 | 29.6% | 29.1% | **+0.5%** |
| | | | | | | | | |

program. Overall, white students comprised 1.3 percent of students in these exceptionally high demand undergraduate programs, 0.2 percentage points lower than the 1.5 percent of white students among all undergraduates at Coppin.

There is only 1 exceptionally high demand graduate program at Coppin, which has a white enrollment of 4.3 percent, 3.4 percentage points higher than overall white graduate percentage at Coppin. However, this is only a single program from with just 46 students and 2 white students from which reliable generalizations cannot be drawn. Even taken at face value its white percentage is not nearly high enough to effect any substantial diversification at the HBIs.

- **Morgan State University**

As indicated in Table 13, the 14 exceptionally high demand undergraduate programs at Morgan enrolled 2,992 students, for an average of 213.7 students per program. However, these programs enrolled only 38 white students, for an average of 2.7 white students per program. Overall, white students comprised 1.3 percent of students in these exceptionally high demand undergraduate programs, 0.7 percentage points lower than the 2.0 percent of white students among all undergraduates at Morgan.

The 8 high demand graduate programs at Morgan enrolled 641 students for an average of 80.1 per program. However, these programs enrolled only 39 white students for an average of 4.9 per program. Overall white students comprised 6.1 percent of students in these exceptionally high demand graduate programs, 3.1 percentage points less than the 9.2 percent of white students among all graduate students at Morgan.

- **University of Maryland Eastern Shore**

As indicated in Table 13, the 8 exceptionally high demand undergraduate programs at UMES enrolled 1,195 students, for an average of 149.4 students per program. However, these programs attracted only 92 white students, for an average of 11.5 white students per program. Overall, white students comprised 7.7 percent of the enrollment in these high demand undergraduate programs, 3.9 percentage points less than the 11.6 percent of white students among all undergraduates at UMES.

The 3 exceptionally high demand graduate programs at UMES enrolled 338 students, for an average of 112.7 students per program, but only 100 white students for an average of 33.3 students per program. The 29.6 percent of white students in this program is 0.5 percentage points higher than the 29.1 percent of white students among all graduate students at UMES.

- **Four HBIs Combined**

As indicated in Table 13, in 6 of the 8 undergraduate and graduate analyses for the four HBIs, the percentage of white students in the exceptionally high demand programs was lower than the overall percentage of white students at that level of the institution

(undergraduate or graduate). In 3 of these 6 instances, the difference was greater than 2.5 percentage points. Of the remaining two analyses in which the percentage of white students in the exceptionally high demand programs was higher than the overall percentage of white students at the relevant institutional level, one involved only a single program. Thus, exceptionally high demand programs at these institutions *had either no impact or a slightly negative impact* on the enrollment of white students at either the undergraduate or graduate level in the four HBIs.

In sum, the foregoing analyses of all high demand and exceptionally high demand programs at the HBIs demonstrate that any effort to diversify the HBIs by adding or transferring such programs would likely fail. These programs as a general rule do enroll large numbers of students, but relatively few white students. Adding or transferring such programs to the HBIs would not expand the percentage of white students enrolled at the HBIs and may even slightly reduce these percentages. These findings are consistent with the above analyses regarding plaintiffs' methodology for designating programs as high demand or exceptionally high demand.

**3. Unique Programs**

The next set of analyses for programs that plaintiffs designate as proximately unique, whether high demand or not, are presented in Table 14 and summary Table 15. The results reported in Table 15 demonstrate that these unique programs have no capacity for diversifying the HBIs, even though plaintiffs' remedial strategy is purportedly designed to remedy duplication.

- **Bowie State University**

As indicated in Table 15, the 3 unique undergraduate programs at Bowie enrolled 116 students, for an average of 38.7 students per program. However, these programs enrolled only 3 white students, for an average of 1.0 white students per program. Overall, white students comprised 2.6 percent of students in these unique undergraduate programs, 0.1 percentage point more than the 2.5 percent of white students among all undergraduates at Bowie.

The 5 unique graduate programs at Bowie enrolled 368 students for an average of 73.6 per program. However, these programs enrolled only 19 white students for an average of 3.8 white students per program. Overall, white students comprised 5.2 percent of students in these unique graduate programs, 2.0 percentage points less than the 7.2 percent of white students among all graduate students at Bowie.

- **Coppin State University**

As indicated in Table 15, the 6 unique undergraduate programs at Coppin enrolled 110 students, for an average of 18.3 students per program. *However, these programs enrolled no white students.* The zero percentage of white students in the unique undergraduate programs is 1.5 percentage points less than the 1.5 percent of white students among all undergraduates at Coppin.

**TABLE 14**
**NON-CORE, NON-JOINT PROGRAMS AT MARYLAND PUBLIC HBIS THAT ARE PROXIMATELY UNIQUE BY PLAINTIFFS' CRITERIA: TOTAL AND WHITE ENROLLMENT**

| CIP Code | Degree Level | HBI | Program Name | Total Enrolled | White Students Enrolled | White % |
|---|---|---|---|---|---|---|
| ***BOWIE STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 13.1316 – Science Teacher Education/ General Science Teacher Ed | Bachelor | Bowie | Science Education | 21 | 2 | 9.5% |
| 19.0706 – Child Development | Bachelor | Bowie | Child & Adolescent Studies | 85 | 1 | 1.2% |
| 45.9999 – Policy Sciences | Bachelor | Bowie | Technology | 10 | 0 | 0% |
| ***Master's*** | | | | | | |
| 09.9999 – Communication, Journalism, and Related Programs, Other | Master | Bowie | Organizational Communication | 105 | 1 | 1.0% |
| 42.2803 - Counseling Psychology/Human Res. Dev. | Master | Bowie | Counseling Psychology | 146 | 5 | 3.4% |
| 42.2803 - | | | | | | |
| 42.2805 School Psychology | Master | Bowie | School Psychology | 14 | 4 | 28.6% |
| 51.1508 – Mental Health Counseling/Counselor | Master | Bowie | Mental Health Counseling | 65 | 5 | 7.7% |
| ***Doctorate*** | | | | | | |
| 13.0411 – Superintendency and Educational System Administration | Doctoral | Bowie | Education Leadership/Executive Fellows | 38 | 4 | 10.5% |
| ***COPPIN STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 27.9999 – Mathematics and Statistics, Other | Bachelor | Coppin | Chemistry | 20 | 0 | 0% |
| 41.9999 – Science Technologies/Technicians, Other | Bachelor | Coppin | General Science | 8 | 0 | 0% |
| 51.2399 – Rehabilitation and Therapeutic Professions, Other | Bachelor | Coppin | Rehabilitation Services | 26 | 0 | 0% |
| 51.0201 – Entertainment Management | Bachelor | Coppin | Entertainment Management | 31 | 0 | |
| 52.0206 – Non-Profit/Public/Organizational Management | Bachelor | Coppin | Non-Profit Leadership | 7 | 0 | 0% |
| 520299 – Business Management & Administration | Bachelor | Coppin | Management Science | 18 | 0 | 0% |

| | | | | | | |
|---|---|---|---|---|---|---|
| *Master's* | | | | | | |
| 13.0403 – Adult and Continuing Ed Admin | Master | Coppin | Adult & Continuing Ed | 13 | 0 | 0% |
| 13.1399 – Teacher Education & Professional Development, Specific Subject Areas | Master | Coppin | Curriculum & Instruction | 7 | 0 | 0% |
| 43.0199 – Corrections and Criminal Justice, Other | Master | Coppin | Criminal Justice | 23 | 1 | 4.4% |
| 51.1501 – Substance Abuse/Addiction Counselling | Master | Coppin | Alcohol and Substance Abuse Counselling | 44 | 1 | 2.3% |
| 51.2399 – Rehabilitation and Therapeutic Professions, Other | Master | Coppin | Rehabilitation Counseling | 99 | 0 | 0% |
| ***MORGAN STATE UNIVERSITY*** | | | | | | |
| *Bachelor's* | | | | | | |
| 09.0402 – Broadcast Journalism | Bachelor | Morgan | Multi-Platform Production | 188 | 1 | 0.5% |
| 09.0701 - Telecommunications | Bachelor | Morgan | Telecommunications | 3 | 0 | 0% |
| 09.0999 – Public Relations – Advertising, Applied Comm. | Bachelor | Morgan | Strategic Communication | 122 | 1 | 0.8% |
| 14.1201 – Engineering Physics | Bachelor | Morgan | Engineering Physics | 34 | 3 | 8.8% |
| 14.3501 – Industrial Engineering | Bachelor | Morgan | Industrial Engineering | 131 | 5 | 3.8% |
| 19.0101 – Family and Consumer Science/ Human Sciences, General | Bachelor | Morgan | Family Consumer Science | 134 | 0 | 0% |
| 52.0209 – Transportation/ Transportation Management | Bachelor | Morgan | Transportation Systems | 62 | 1 | 1.6% |
| 52.0701 – Entrepreneurship/ Entrepreneurial Studies | Bachelor | Morgan | Entrepreneurship | 17 | 0 | 0% |
| 52.0904 – Hotel/Motel Administration/Management | Bachelor | Morgan | Hospitality MGMT | 91 | 1 | 1.1% |
| 52.1304 – Actuarial Science | Bachelor | Morgan | Actuarial Science | 20 | 0 | 0% |
| 52.2001 – Construction Management | Bachelor | Morgan | Construction Management | 57 | 3 | 5.3% |
| *Master's* | | | | | | |
| 04.0301 – City/Urban, Community and Regional Planning | Master | Morgan | City & Regional Planning | 34 | 6 | 17.6% |
| 09.0701 – Radio and Television | Master | Morgan | Telecommunications | 2 | 0 | 0% |
| 13.0406 – Higher Education Administration | Master | Morgan | Higher Education Administration | 7 | 0 | 0% |
| 13.1316 – Science Teacher | Master | Morgan | Science | 3 | 0 | 0% |

| | | | | | | |
|---|---|---|---|---|---|---|
| Education/ General Science Teacher Ed | | | Education | | | |
| 30.0101 – Biological & Physical Sciences | Master | Morgan | Science | 18 | 3 | 16.7% |
| 30.1401 – Museology/ Museum Studies | Master | Morgan | Museum Studies & Historical Preservation | 7 | 3 | 42.9% |
| 42.2708 – Psychometrics and Quantitative Psychology | Master | Morgan | Psychometrics | 1 | 1 | 100% |
| 52.0209 – Transportation/ Transportation Management | Master | Morgan | Urban Transportation | 15 | 5 | 33% |
| 52.0904 – Hotel/Motel Administration/Management | Master | Morgan | Hospitality MGMT | 4 | 0 | 0% |
| ***Doctorate*** | | | | | | |
| 13.0406 – Higher Education/ Higher Education Admin | Doctoral | Morgan | Higher Education | 50 | 4 | 8.0% |
| 13.1311 – Mathematics Teacher Education | Doctoral | Morgan | Mathematics Education | 20 | 2 | 10.0% |
| 13.1316 – Science Teacher Education/ General Science Teacher Ed | Doctoral | Morgan | Science Education | 14 | 1 | 7.1% |
| 14.0101 – Engineering, General | Doctoral | Morgan | Engineering | 63 | 4 | 6.3% |
| 26.1305 – Environmental Biology | Doctoral | Morgan | Bio-Environmental Sciences | 11 | 2 | 18.2% |
| 27.0303 – Computational Mathematics | Doctoral | Morgan | Industrial & Computational Mathematics | 4 | 0 | 0% |
| 42.2708 – Psychometrics and Quantitative Psychology | Doctoral | Morgan | Psychometrics | 8 | 0 | 0% |
| 51.2201 – Public Health, General (MPH, DPH) | Doctoral | Morgan | Public Health | 73 | 3 | 4.1% |
| ***University of Maryland Eastern Shore (UMES)*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 01.0000 – Agriculture, General | Bachelor | UMES | Agriculture, General | 47 | 9 | 19.1% |
| 01.0101 – Agribusiness | Bachelor | UMES | Agribusiness | 4 | 1 | 25% |
| 03.0508 – Urban Forestry | Bachelor | UMES | Urban Forestry | 2 | 1 | 50% |
| 05.0201 – Afro-American Studies | Bachelor | UMES | African American Studies | 5 | 0 | 0% |
| 13.1001 – Elementary, Special Ed | Bachelor | UMES | Special Ed | 45 | 19 | 42,2% |
| 13.1302 – Art Education | Bachelor | UMES | Art Education | 7 | 1 | 14.3% |
| 13.1303 – Business Teacher Education | Bachelor | UMES | Business Education | 2 | 0 | 0% |
| 13.1309 – Technology Teacher Education/Industrial Arts Teacher Ed | Bachelor | UMES | Technology & Engineering Education | 16 | 4 | 25% |

| | | | | | | |
|---|---|---|---|---|---|---|
| 13.1312 – Music Education | Bachelor | UMES | Music Education | 21 | 3 | 14.3% |
| 14.0101 – Engineering, General | Bachelor | UMES | Engineering | 147 | 20 | 13.6% |
| 15.0201 – Civil Engineering Technology/Technician | Bachelor | UMES | Construction Management/Technology | 66 | 19 | 28.8% |
| 15.9999 – Engineering Technologies/Technicians, Other | Bachelor | UMES | Engineering Technology | 64 | 8 | 12.5% |
| 19.0101 – Family and Consumer Sciences, General | Bachelor | UMES | Human Ecology | 206 | 27 | 13.1% |
| 26.0202 Biochemistry | Bachelor | UMES | Biochemistry | 20 | 0 | 0% |
| 26.1301 – Ecology | Bachelor | UMES | Environmental Science | 57 | 32 | 56.1% |
| 43.0107 – Law Enforcement & Corrections | Bachelor | UMES | Criminal Justice | 434 | 19 | 4.4% |
| 49.0101 – Aeronautics/Aviation/Aerospace Science and Technology, General | Bachelor | UMES | Aviation Science | 62 | 9 | 14.5% |
| 50.0402 – Commercial and Advertising Art | Bachelor | UMES | Applied Design | 67 | 4 | 6.0% |
| 51.2399 – Rehabilitation and Therapeutic Professions, Other | Bachelor | UMES | Rehabilitation Services | 151 | 11 | 7.3% |
| | | | | | | |
| 52.0901 – Hospitality Administration/Management, General | Bachelor | UMES | Pro Golfer Association (PGA) Golf Management | 51 | 27 | 52.9% |
| 52.0904 – Hotel/Motel Administration/Management | Bachelor | UMES | Hospitality and Tourism Management | 175 | 22 | 12.6% |
| *Master's* | | | | | | |
| 01.1001 – Food Science & Technology | Master | UMES | Food & Agricultural Science | 17 | 4 | 23.5% |
| 03.0301 – Fishing and Fisheries Sciences and Management | Master | UMES | Quantitative Fisheries and Resource Economics | 2 | 2 | 100% |
| 11.0101 Applied Computer Science | Master | UMES | Applied Computer Science | 19 | 1 | 5.3% |
| 13.1001 – Special Education | Master | UMES | Special Education | 13 | 7 | 53.8% |
| 13.1101 - Counselor Education | Master | UMES | Counselor Ed | 36 | 13 | 36.1% |
| 13.1309 – Technology Teacher Education/Industrial Arts Teacher Ed | Master | UMES | Career & Technology Education | 22 | 11 | 50.0% |
| 40.0501 – Chemistry | Master | UMES | Chemistry | 3 | 0 | 0% |

| | | | | | | |
|---|---|---|---|---|---|---|
| 51.0912 – Physician Assistant | Master | UMES | Physician Asst | 74 | 13 | 17.6% |
| 450401 – Criminology | Master | UMES | Criminology & Criminal Justice | 17 | 1 | 5.9% |
| 51.2399 – Rehabilitation and Therapeutic Professions, Other | Master | UMES | Rehabilitation Counseling | 35 | 6 | 17.1% |
| 01.1001 Food Science & Technology | Doctoral | UMES | Food Science | 11 | 2 | 18.2% |
| 13.0401 Elementary/Sec School Administration | Doctoral | UMES | Educational Leadership | 42 | 17 | 40.5% |
| 30.9999 – Interdisciplinary Studies | Doctoral | UMES | Organizational Leadership | 75 | 25 | 33.3% |
| 51.2001 Pharmacy | Doctoral | UMES | Pharmacy | 175 | 33 | 18.9% |
| 51.2308 Physical Therapy | Doctoral | UMES | Physical Therapy | 88 | 42 | 47.7% |
| Source: Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | | | |

## TABLE 15
## SUMMARY OF FINDINGS FROM TABLE 14 DATA ON UNIQUE PROGRAMS AT HBIS IN MARYLAND

| Type | # Of Programs | Total Enrolled | White Students Enrolled | Total Students Per Program | White Students Per Program | % White Students | % White Students At Level In School | Difference: % White Students in Program and % White Students in School |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| **BOWIE STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 3 | 116 | 3 | 38.7 | 1.0 | 2.6% | 2.5% | **+0.1%** |
| | | | | | | | | |
| **Graduate** | 5 | 368 | 19 | 73.6 | 3.8 | 5.2% | 7.2% | **-2.0%** |
| | | | | | | | | |
| **COPPIN STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 6 | 110 | 0 | 18.3 | 0 | 0% | 1.5% | **-1.5%** |
| | | | | | | | | |
| **Graduate** | 5 | 186 | 2 | 37.2 | 0.4 | 1.1% | 0.9% | **+0.2%** |
| | | | | | | | | |
| **MORGAN STATE UNIVERSITY** | | | | | | | | |
| **Undergrad** | 11 | 859 | 15 | 78.1 | 1.4 | 1.7% | 2.0% | **-0.3%** |
| | | | | | | | | |
| **Graduate** | 17 | 334 | 34 | 19.6 | 2.0 | 10.2% | 9.2% | **+1.0%** |
| | | | | | | | | |
| **UNIVERSITY OF MARYLAND EASTERN SHORE** | | | | | | | | |
| **Undergrad** | 21 | 1,649 | 236 | 78.5 | 11.2 | 14.3% | 11.6% | **+2.7%** |
| | | | | | | | | |
| **Graduate** | 15 | 629 | 177 | 41.9 | 11.8 | 28.1% | 29.1% | **-1.0%** |
| | | | | | | | | |

The 5 unique graduate programs at Coppin enrolled 186 students for an average of 37.2 per program. However, these programs enrolled only 2 white students, for an average of 0.4 per program. The 1.1 percent of white students in unique graduate programs is 0.2 percentage points higher than the 0.9 percent of white students among all graduate students at Coppin.

- **Morgan State University**

As indicated in Table 15, the 11 unique undergraduate programs at Morgan enrolled 859 students, for an average of 78.1 students per program. However, these programs enrolled only 15 white students, for an average of 1.4 white students per program. Overall, white students comprised 1.7 percent of students in these unique undergraduate programs, 0.3 percentage points lower than the 2.0 percent of white students among all undergraduates at Morgan.

The 17 unique graduate programs at Morgan enrolled 334 students for an average of 19.6 per program. However, these programs enrolled only 34 white students for an average of 2.0 per program. Overall, students comprised 10.2 percent of students in these unique graduate programs, 1.0 percentage points more than the 9.2 percent of white graduate students at Morgan.

- **University of Maryland Eastern Shore**

As indicated in Table 15, the 21 unique undergraduate programs at UMES enrolled 1,649 students, for an average of 78.5 students per program. However, these programs attracted only 236 white students, for an average of 11.2 white students per program. Overall, white students comprised 14.3 percent of the enrollment in these unique undergraduate programs, 2.7 percentage points more than the 11.6 percent of white students among all undergraduates at UMES.

The 15 unique graduate programs at UMES enrolled 629 students for an average of 41.9 students per program. However, these programs enrolled only 177 white students for an average of 11.8 white students per program. Overall, white students comprised 28.1 percent of all students in these unique graduate programs, 1.0 percentage points less than the 29.1 percent of white students among all graduate students at UMES.

- **Four HBIs Combined**

As indicated Table 15, in 4 of the 8 undergraduate and graduate analyses for the four HBIs, the percentage of white students in the unique programs was lower than the overall percentage of white students at that level of the institution (undergraduate or graduate). In the remaining 4 analyses, the percentage of white students in the unique programs was higher than overall percentage of white students at the relevant institutional level. The magnitude of the differences were on balance about equal for both positive and negative differences. Thus, unique programs at these institutions had *no impact* on the enrollment of white students at either the undergraduate or graduate level in the four HBIs. Looking

at the 3 HBIs in the critical Baltimore-College Park region, the 48 unique graduate and undergraduate programs enrolled a total of 81 white students. This number amounts to less than one-half of one percent of the total enrollments at these three institutions and equals an average of 1.7 white students per program.

**4. Unique, High Demand Programs**

This is a particularly important remedial category for plaintiffs as well. As demonstrated below, they claim that such programs must anchor their remedial "niches" and that such programs have the a particularly powerful capacity to enroll a high percentage of white students: "Maryland's own experience demonstrates that when the HBIs offer unique, high-demand programs, those programs tend to attract students of all races."[26] However, they fail to test this claim by examining the white percentages of all unique, high demand programs at the HBIs.

That missing analysis is provided in Tables 16 and 17 below. Table 17 summarizes the findings of Table 16 for all programs designated as both unique and high demand programs. Given the limited number of programs in this category, Table 17 examines undergraduate and graduate programs for the three HBIs combined in the Baltimore-College Park Region as well as for UMES. The results reported in this Table and discussed below for the four HBIs individually and in combination demonstrate that these unique programs have no capacity for diversifying the HBIs. Overall, these programs have *lower* white percentages than the corresponding overall percentages at the HBIs.[27]

- **Baltimore-College Park Region HBIs (Bowie, Coppin, and Morgan)**

As indicated in Table 17, the 5 unique, high demand undergraduate HBI programs in the Baltimore-College Park Region enrolled 620 students, for an average of 124 students per program. However, these programs enrolled only 4 white students, for an average of 0.8 white students per program. Overall, white students comprised 0.6 percent of students in these unique, high demand undergraduate programs, 1.5 percentage point less than the 2.1 percent of white students among all undergraduates at the three Baltimore-College Park HBIs.

[26] Conrad and Allen July 6, 2016 Report, p. 11.

[27] Conrad and Allen incorrectly claim in their July 6, 2016 Report (p. 51) that my Nov. 20, 2015 Report failed to analyze these programs that are both unique and high-demand, analyzing only programs that are either unique or high demand separately. In support of this claim, they cite a single example of one high demand program that I examined on p. 21 of my report which was designed only to show that plaintiffs are incorrect in their claim that high demand programs alone offer what they call "desegregative potential." Conrad and Allen's critique fails to consider *five plainly labeled tables* and their textual discussion in my Nov. 20, 2015 Report that analyze extensively programs that are both unique and high demand (Tables 1 & 3 pp. 8, 17; Tables 4 & 5 pp. 23-25; Table 9, pp. 39, 40, 42). With respect to my analyses of unique, high-demand programs from other settlement states, Conrad and Allen also claim that their analyses of high demand programs was based on Maryland data only, citing "Conrad's Third Expert Report at 86" (July 6, 2016 Report, p. 54). However, this citation contains no such limitation and indicates that Conrad "placed major emphasis on the IPEDS [degree completion] data," which is a nationwide data set. Moreover, throughout their July 6, 2016 Report Conrad and Allen reference their analyses of high demand programs in states other than Maryland (see for example, pp. 7, 33, and 44).

**TABLE 16**
**NON-CORE, NON-JOINT PROGRAMS AT MARYLAND PUBLIC HBIS THAT ARE BOTH PROXIMATELY UNIQUE AND HIGH DEMAND BY PLAINTIFFS' CRITERIA: TOTAL AND WHITE ENROLLMENT**

| CIP Code | Degree Level | HBI | Program Name | Total Enrolled | White Students Enrolled | White % |
|---|---|---|---|---|---|---|
| ***BOWIE STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 19.0706 – Child Development | Bachelor | Bowie | Child & Adolescent Studies | 85 | 1 | 1.2% |
| ***Master's*** | | | | | | |
| 42.2803 - Counseling Psychology/Human Res. Dev. | Master | Bowie | Counseling Psychology | 146 | 5 | 3.4% |
| 51.1508 – Mental Health Counseling/Counselor | Master | Bowie | Mental Health Counseling | 65 | 5 | 7.7% |
| ***Doctorate*** | | | | | | |
| ***COPPIN STATE UNIVERSITY*** | | | | | | |
| ***Master's*** | | | | | | |
| 51.2399 – Rehabilitation and Therapeutic Professions, Other | Master | Coppin | Rehabilitation Counseling | 99 | 0 | 0% |
| ***MORGAN STATE UNIVERSITY*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 09.0402 – Broadcast Journalism | Bachelor | Morgan | Multi-Platform Production | 188 | 1 | 0.5% |
| 09.0999 – Public Relations – Advertising, Applied Comm. | Bachelor | Morgan | Strategic Communication | 122 | 1 | 0.8% |
| 19.0101 – Family and Consumer Science/ Human Sciences, General | Bachelor | Morgan | Family Consumer Science | 134 | 0 | 0% |
| 52.0904 – Hotel/Motel Administration/Management | Bachelor | Morgan | Hospitality MGMT | 91 | 1 | 1.1% |
| ***Doctorate*** | | | | | | |
| 14.0101 – Engineering, General | Doctoral | Morgan | Engineering | 63 | 4 | 6.3% |
| ***University of Maryland Eastern Shore (UMES)*** | | | | | | |
| ***Bachelor's*** | | | | | | |
| 19.0101 – Family and Consumer Sciences, General | Bachelor | UMES | Human Ecology | 206 | 27 | 13.1% |
| 26.0202 Biochemistry | Bachelor | UMES | Biochemistry | 20 | 0 | 0% |
| 26.1301 – Ecology | Bachelor | UMES | Environmental Science | 57 | 32 | 56.1% |
| 43.0107 – Law Enforcement & | Bachelor | UMES | Criminal Justice | 434 | 19 | 4.4% |

| | | | | | | |
|---|---|---|---|---|---|---|
| Corrections | | | | | | |
| | | | | | | |
| 52.0904 – Hotel/Motel Administration/Management | Bachelor | UMES | Hospitality and Tourism Management | 175 | 22 | 12.6% |
| ***Master's*** | | | | | | |
| 11.0101 Applied Computer Science | Master | UMES | Applied Computer Science | 19 | 1 | 5.3% |
| 13.1001 – Special Education | Master | UMES | Special Education | 13 | 7 | 53.8% |
| 13.1101 - Counselor Education | Master | UMES | Counselor Ed | 36 | 13 | 36.1% |
| 51.0912 – Physician Assistant | Master | UMES | Physician Asst | 74 | 13 | 17.6% |
| 450401 – Criminology | Master | UMES | Criminology & Criminal Justice | 17 | 1 | 5.9% |
| 51.2399 – Rehabilitation and Therapeutic Professions, Other | Master | UMES | Rehabilitation Counseling | 35 | 6 | 17.1% |
| 01.1001 Food Science & Technology | Doctoral | UMES | Food Science | 11 | 2 | 18.2% |
| 13.0401 Elementary/Sec School Administration | Doctoral | UMES | Educational Leadership | 42 | 17 | 40.5% |
| 30.9999 – Interdisciplinary Studies | Doctoral | UMES | Organizational Leadership | 75 | 25 | 33.3% |
| 51.2001 Pharmacy | Doctoral | UMES | Pharmacy | 175 | 33 | 18.9% |
| 51.2308 Physical Therapy | Doctoral | UMES | Physical Therapy | 88 | 42 | 47.7% |
| Source: Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | | | |

## TABLE 17
## SUMMARY OF FINDINGS FROM TABLE 16 DATA ON UNIQUE, HIGH DEMAND PROGRAMS AT HBIS IN MARYLAND

| Type | # of Programs | Total Enrolled | White Students Enrolled | Total Per Program | White Students Per Program | % White Students | % White Students At Level 3 HBIs | Difference Between % White Students in Program and % White Students at Level |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| **ALL UNIQUE, HIGH DEMAND PROGRAMS: THREE BALTIMORE-COLLEGE PARK REGION HBIS** | | | | | | | | |
| **Undergrad** | 5 | 620 | 4 | 124.0 | 0.8 | **0.6%** | **2.1%** | **-1.5%** |
| | | | | | | | | |
| **Graduate** | 4 | 373 | 14 | 93.3 | 3.5 | **3.8%** | **6.3%** | **-2.5%** |
| | | | | | | | | |
| **ALL UNIQUE, HIGH DEMAND PROGRAMS: UMES** | | | | | | | | |
| | | | | | | | | |
| **Undergrad** | 5 | 892 | 100 | 178.4 | 20.0 | **11.2%** | **11.6%** | **-0.4%** |
| | | | | | | | | |
| **Graduate** | 11 | 585 | 160 | 53.2 | 14.5 | **27.4%** | **29.1%** | **-1.7%** |
| | | | | | | | | |

The 4 unique graduate HBI programs in the Baltimore-College Park Region enrolled 373 students for an average of 93.3 per program. However, these programs enrolled only 14 white students for an average of 3.5 white students per program. Overall, white students comprised 3.8 percent of students in these unique graduate programs, 2.5 percentage points lower than the 6.3 percent of white students among all graduate students at the Baltimore-College Park HBIs.

Taken together, the 9 unique, high demand undergraduate and graduate programs in the Baltimore-College Park Region enrolled a total of 18 white students. This number amounts to about one-tenth of one percent of the total enrollments at these three institutions and equals an average of 2.0 white students per program.

- **University of Maryland Eastern Shore**

As indicated in Table 17 the 5 unique, high demand undergraduate programs at UMES enrolled 892 students, for an average of 178.4 students per program. However, these programs enrolled only 100 white students, for an average of 20 white students per program. Overall, white students comprised 11.2 percent of the enrollment in these unique, high demand undergraduate programs, 0.4 percentage points less than the 11.6 percent of white students among all undergraduates at UMES.

The 11 unique, high demand graduate programs at UMES enrolled 585 students for an average of 53.2 students per program. However, these programs enrolled only 160 white students for an average of 14.5 white students per program. Overall, white students comprised 27.4 percent of all students in these unique graduate programs, 1.7 percentage points less than the 29.1 percent of white students among all graduate students at UMES.

- **Four HBIs Combined**

As indicated in Table 17, *in all four analyses* the percentage of white students enrolled in unique, high demand programs was *lower than* the overall percentage of white students at the institutions studies. In 3 of 4 analyses the difference was 1.5 percentage points or greater. Thus, unique, high demand programs at Maryland's HBIs on balance, *slightly diminished diversification* at these institutions. Notably, these are the programs that plaintiffs' claim to have the greatest potential for diversification.

**5. Regression Analysis of Plaintiffs' Remedial Program Categories on White Student Percentages in HBI Programs.**

The standard statistical technique of regression analysis that assesses the relationship between a dependent variable and independent or explanatory variables, controlling for all other variables in the analysis, tests the influence of plaintiffs' remedial program categories on white student percentages in *all programs* at Maryland's HBIs. Table 18 reports the results of two regression analyses, both of which include the percentage of white students at non-core, non-joint HBI programs as the dependent variable. The first analysis includes as independent

**TABLE 18**
**REGRESSION ANALYSIS RESULTS FOR THE RELATIONSHIP BETWEEN PLAINTIFFS' REMEDIAL PROGRAMMATIC CATEGORIES AND THE WHITE ENROLLMENT PERCENTAGES AT ALL HBI PROGRAMS**

| **All HBI Programs: Dependent Variable = Percentage of White Students Model with High Demand Programs** | | |
|---|---|---|
| **Independent Variable** | **Regression Coefficient** | **Statistical Significance** |
| | | |
| High Demand Programs | -.5 | Not Significant |
| | | |
| Proximately Unique Programs | +4.3 | Not Significant |
| | | |
| Proximately Unique and High Demand Programs | -3.5 | Not Significant |
| | | |
| Regional Location | -14.2 | <.00001 |
| | | |
| Program Level | +5.8 | <.00001 |
| | | |
| **All HBI Programs: Dependent Variable = Percentage of White Students Model with Exceptionally High Demand Programs** | | |
| Exceptionally High Demand Programs | -.2.8 | Not Significant |
| | | |
| Proximately Unique Programs | +3.5 | Not Significant |
| | | |
| Proximately Unique and High Demand Programs | -3.1 | Not Significant |
| | | |
| Regional Location | -14.2 | <.00001 |
| | | |
| Program Level | +5.6 | <.00001 |
| | | |
| Source: Plaintiffs' Backup Data Disclosure. | | |

variables: high demand HBI programs, proximately unique HBI programs, and HBI programs that are both unique and high demand. The second analysis is identical to the first except that it includes exceptionally high demand rather than high demand HBI programs. It is not possible to include both high demand and exceptionally high demand programs in the same analysis because exceptionally high demand programs are a subset of high demand programs. Both analyses also include the regional and program level controls described above.

The results of the regression analysis confirm the findings of the analyses reported in Tables 10-17 that plaintiffs' categories of remedial programs have no capacity to diversify Maryland's HBIs. In both analyses 2 of the 3 programmatic variables have signs indicating a negative relationship with the percentage of white students in a HBI program. However, the crucial finding is that contrary to plaintiffs' claims, none of the 3 programmatic variables has a statistically significant relationship with the percentage of white students in an HBI program, even at the most lenient .1 level. Thus, in two sets of analyses *there is no statistically significant relationship found for the influence of plaintiffs' programmatic categories on white student percentages at HBIs.*

Both analyses also show a strong negative relationship, independent of program categories and progress degree level, between location in the Baltimore-College Park region and the percentage of white students in a HBI program. This finding additionally underscores the importance of distinguishing between UMES and the Baltimore-College Park HBIs in any analysis of remedial programs.

### 6. Summary of Analyses of High Demand, Exceptionally High Demand, Unique, and Unique, High Demand Programs at Maryland's HBIS

In sum, the foregoing analyses of all high demand, exceptionally high demand, unique, and unique, high demand programs at the HBIs demonstrate that any effort to diversify the HBIs by adding or transferring such programs would likely fail. These programs as a general rule do enroll large numbers of students, but relatively few white students as a percentage of all students. For the most part the percentage of white students in these remedial programs is lower than the corresponding percentage of white students overall at the same level and HBI. When considering all HBI programs there is no statistically significant relationship between the percentage of white students in a program and a remedial category. Adding or transferring such programs to the HBIs would very substantially raise the costs to the state, but would not expand the percentage of white students enrolled at the HBIs and may even slightly reduce these percentages.

## VI. Conrad and Allen's Flawed Analyses of Their Categories of Remedial Programs

In attempting to demonstrate the effectiveness of their remedial strategy, Conrad and Allen fail to provide an analysis of the white percentages in all HBIs programs that fall within their four remedial categories. They also fail to deploy regression analysis or any standard statistical technique to assess the relationship between remedial programmatic categories and the white student percentages in all HBI programs. Instead, the limited analyses that they do present in their Exhibits 6-8 and their textual discussion examine only self-selected programs and fail to provide needed comparisons with other HBI programs. In addition, the tables in their exhibits omit essential information needed to assess the efficacy of their categories of remedial programs.

The following analyses will first examine Conrad and Allen's three analytic exhibits and then examine the examples they present in the text of their report. The results demonstrate that even Conrad and Allen's cherry-picked exemplar programs contradict their claims that their remedial programs are likely to diversify Maryland's HBIs.

**1. Analysis of Conrad and Allen's Selected Exemplar Programs in Exhibit 6**

The most extensive quantitative analysis of HBI programs in Conrad and Allen's July 6, 2016 Report is contained in their Exhibit 6. This exhibit presents a self-selected set of 34 programs that enroll 10 or more white students in Maryland's 4 HBIs. Before delving into the details of Exhibit 6 it is important to note that plaintiffs do not present a reliable scientific analysis of the selected exemplar programs, because the analysis includes no comparison groups. Exhibit 6 does not compare the white percentages in the selected programs to the white percentages in other programs at HBIs that are high demand, exceptionally high demand, unique, or both high demand and unique and high demand. They do not compare the white percentages in the selected programs to the overall white percentages in undergraduate and graduate programs at the 4 HBIs.

Conrad and Allen's analysis in Table 6 and all other of their analyses of exemplar programs also suffer from a fatal statistically fallacy that derives from picking a set of known predetermined results, (e.g., HBI programs with 10 or more white enrollments) and then reasoning backward from these preset results to all programs at the HBIs. Technically this fallacy is known as "grouping on the dependent variable" (e.g., white enrollments) and leads to invalid findings. Dan Kahan, the Elizabeth K. Dollard Professor of Law and Professor of Psychology at Yale University explains: "'Selecting on the dependent variable' refers to the practice of restricting one's set of observations to cases in which some phenomenon of interest has been observed," e.g., a certain number or percentage of white students in HBI programs. The problem is that this procedure results in "*excluding* from the set cases in which the phenomenon was *not* observed. Necessarily, any inferences one draws about the *causes* of such a phenomenon will then be *invalid* because in ignoring cases in which the phenomenon didn't occur one has omitted from one's sample instances in which the putative cause might have been present but *didn't* generate the phenomenon of interest—an outcome that would falsify the conclusion." (emphasis in original)[28]

This fallacy is illustrated by the following example. In investigating the influences on SAT scores, an investigator preselects students who score in the ninetieth percentile or above and discovers that most of these students have brown hair. However, it would be fallacious to conclude from this analysis that brown hair color leads to high-level SAT scores, because it

---

[28] Dan Kahan, "Don't Select on the Dependent Variable in Studying the Science Communication Problem," The Cultural Cognition Project at Yale University, November 19, 2013, http://www.culturalcognition.net/blog/2013/11/19/dont-select-on-the-dependent-variable-in-studying-the-scienc.html. Conrad and Allen compound the problem of pre-selected grouping on the dependent variable by using a grouping procedure that is correlated with purported explanatory variables. Thus, the total number of white students in programs is correlated with the total number of students in programs, which in turn is correlated with high demand and exceptionally high demand programs. For the problems that arise from such a procedure see, Laura Irwin Langbein and Allan. J. Lichtman, *Ecological Inference* (Sage Quantitative Applications in the Social Sciences; 1978), pp. 13-21.

excludes cases in which students with brown hair scored below the ninetieth percentile. The appropriate procedures are the ones followed in the above analyses for this report 1) to compare scores for brown-haired students with scores for all students taking the SAT; and 2) to enter various student hair colors into a multiple regression equation as independent variables to assess which if any had a statistically significant relationship, which could be positive or negative, with the dependent variable of SAT scores.

In addition to these methodological problems, critical information is omitted from Exhibit 6. This Exhibit presents the number of white students in each program, but does not present the number of all students in each program, essential information for evaluating the effectiveness of the chosen programs. It is telling that Conrad and Allen omit the total number of enrolled students from Exhibit 6, given that they stress in their report the importance of calculating the mean percentage of white students in program categories not by an unweighted average of individual programs but by dividing the total number of white students by the total number of all students.[29]

Examination of the analysis in Exhibit 6 demonstrates that it proves the opposite of what plaintiffs claim. That is, it demonstrates that even the programs that plaintiffs self-select as the best exemplars of their remedial strategy do not demonstrate any capacity to significantly diversify Maryland's HBIs.

To analyze properly Conrad and Allen's table in Exhibit 6 it is first necessary to separate the 3 HBIs in the Baltimore-College Park Region from UMES, because as noted earlier UMES has nearly five times the white percentages in these three other institutions and their combination will bias all results. Moreover, as the Court has already noted in its October 2013 opinion on liability: "unnecessary program duplication is not a problem on the Eastern Shore, where only 9% of UMES' programs are regionally duplicated."[30] Although UMES has only about a fifth of the enrollments at the 4 Maryland HBIs, programs at UMES comprise 57 percent of plaintiffs' exemplar non-core programs in Exhibit 6, after eliminating 3 core programs and one joint program that Conrad and Allen say should not be considered in diversifying the HBIs. The programs at UMES will be considered separately in light of current white percentages at the institution.

Table 19 presents an analysis of the non-core, non-joint Baltimore-College Park programs included in Conrad and Allen's Exhibit 6. It replicates the information in Exhibit 6, but also adds in the omitted total number of students in each program.

---

[29] Conrad and Allen incorrectly claim in their July 6, 2016 Report (p. 57) that the controls included in the analyses in my November 20, 2015– the overall or undergraduate and graduate white percentages at the HBIs – are based on an unweighted average of the white percentage in each program, thus failing to consider that "various programs at an institution enroll different absolute numbers of students and thus must be weighted differently in calculating institutional averages." (Conrad and Allen, July 6, 2016 Report, p. 57) In fact, as plainly indicated in my analytic tables, my controls are based on dividing the total enrollment of white students by the total enrollment of all students. See, for example, Lichtman Nov. 20, 2015 Report, pp. 6-7, 12-14, 17). I continue to follow that practice in this report.

[30] *Coalition for Excellence and Equity v. MHEC*, 977 F.Supp.2d 507 (2013), at 536.

An examination of the exemplar programs in Table 19 for the Baltimore-College Park Region that considers *both* the number of white students in the programs and the total number of students discloses that even these self-selected best programs exhibit no significant capacity to diversify the HBIs. As indicated in Table 19, the 13 non-core, non-joint programs combined in this region have a white percentage of only 6.0 percent.[31] Although this some 3 percentage points higher than the 3.0 percent average of total students at the Baltimore-College Park HBIs, it is not nearly high enough to make any significant dent in the white percentages at these institutions. Even if 100 such exemplar programs identified by Conrad and Allen could be added to the 3 HBIs, the total percentage of white students at the institutions would increase by some 2 percentage points.

Given Conrad and Allen's selection procedures based on the number -- not the percentage -- of white students these exemplars are almost all high demand programs. However according to Conrad and Allen's own designation, *all of the 13 exemplar programs at the Baltimore-College Park HBIs are duplicated at a TWI -- none is even proximately unique.* Although Conrad and Allen incorrectly critique my report for neglecting to analyze programs that are both unique and high demand, *their selected best exemplar programs in the Baltimore-College Park Region include not a single program that is both unique and high demand. It includes not a single program that is unique, whether high demand or not. This finding contradicts the original and fundamental premises of plaintiffs' remedial strategy: 1) that diversification of the HBIs requires alleviation of the any current duplication in HBI programs 2) that any remedial plan must be anchored in programs that are both unique and high demand.*

This focus on exemplar programs that are high demand but universally duplicated in the crucial Baltimore-College Park Region stands in fundamental contradiction to the remedial approach taken by plaintiffs' May 5, 2015 submission. In that submission plaintiffs' stress that the remedy for the lack of diversity at Maryland's HBIs must consist of programs that are *both* unique and high demand.[32] They criticize remedies in other states for their failure to focus on such unique, high demand programs:

> "In terms of its focus, Plaintiffs' Remedial Proposal differs from the remedies in other cases involving *de jure* era vestiges in higher education. For the most part, remedies in Louisiana, Mississippi, and Alabama ultimately were not aimed at eliminating the segregative practice of unnecessary program duplication, and thus did not focus on creating niches of *unique, high-demand programs*." (emphasis added)[33]
>
> "The recommendations offered by Plaintiffs respond to the fundamental failure of other states to refine the programmatic identity of the HBIs to ensure that each

[31] This percentage is calculated by dividing the total number of white students by the total number of all students. It does not rely on an unweighted average of the white percentage in programs, as plaintiffs incorrectly claimed. I relied on in my Nov. 20, 2015 Report.

[32] Plaintiffs other set of exemplar programs, presented in the July 6, 2016 Exhibit 8, includes only 2 Baltimore-College Park programs, both of which are duplicated.

[33] Document 406-1, "Plaintiffs' Memorandum in Support of Plaintiffs' Remedial Proposal," May 5, 2015, p. 22.

**TABLE 19**
**BALTIMORE-COLLEGE PARK (BSU, COPPIN, MSU)**
**HBI NON-CORE, NON-JOINT, EXEMPLAR PROGRAMS FROM CONRAD AND ALLEN EXHIBIT 6, JULY 6 2016 REPORT**

| School | Program | CIP | Level | Duplication | Total Enrolled | White Enrolled | White Percent |
|---|---|---|---|---|---|---|---|
| BSU | Business Administration** | 520201 | B | **Duplicated** | 695 | 12 | **1.7%** |
| BSU | Nursing** | 513801 | B | **Duplicated** | 614 | 11 | **1.8%** |
| MSU | Electrical Engineering** | 141001 | B | **Duplicated** | 504 | 11 | **2.2%** |
| BSU | Criminal Justice** | 430104 | B | **Duplicated** | 365 | 10 | **2.7%** |
| MSU | Civil Engineering** | 140801 | B | **Duplicated** | 221 | 10 | **4.5%** |
| BSU | Early Childhood Education* | 131209 | B | **Duplicated** | 110 | 11 | **10%** |
| BSU | Nursing** | 513801 | M | **Duplicated** | 123 | 14 | **11.4%** |
| MSU | Community Coll. Leadership ** | 130407 | D | **Duplicated** | 167 | 23 | **13.8%** |
| MSU | Architecture & Environ. Design * | 040201 | B | **Duplicated** | 248 | 37 | **14.9%** |
| MSU | Nutritional Science* | 190505 | B | **Duplicated** | 97 | 17 | **17.5%** |
| BSU | School Counseling* | 131101 | M | **Duplicated** | 63 | 11 | **17.5%** |
| MSU | Architecture* | 040201 | M | **Duplicated** | 36 | 18 | **50%** |
| MSU | Landscape Architecture | 040601 | M | **Duplicated** | 23 | 12 | **52.2%** |
| **All Programs Combined** | | | | | **3266** | **197** | **6.0%** |
| | | | | | | | |
| * High Demand Program, ** Exceptionally High Demand Program | | | | | | | |
| | | | | | | | |
| Source: Conrad and Allen Report, July 6, 2016: "EXHIBIT 6 - HBI PROGRAMS WITH AT LEAST 10 WHITE STUDENT ENROLLMENT" Excludes core programs (1); eisfall14mhecinventory. | | | | | | | |

> fulfills a unique role within a state's coordinated, cost-effective system of affordable, high-quality institutions. Adding or enhancing discrete programs which are *unique but not high-demand*, or *high-demand but not unique*, does relatively little to influence student choice or alter the racial identifiability of those institutions." (emphasis in original)[34]

> "Where unnecessary program duplication has been found to perpetuate a dual structure of higher education, the remedy should seek to confront this lack of programmatic identity which encourages white students to enroll at the HBIs. An effective remedy for the duplication found here must therefore ensure that a meaningful number of sufficiently *unique, high-demand pro*grams are placed at the HBIs and organized around distinct programmatic niches." (emphasis added)[35]

> "To dismantle a dual curricular structure through the creation of a meaningful number of *unique, high-demand programs* at the HBIs will require enhancing, adding, or transferring such programs to the HBIs in order to stablish distinctive programmatic identities for those campuses."(emphasis added)[36]

Additional analysis demonstrates that these Baltimore-College Park exemplar programs in Exhibit 6 that Conrad and Allen designate as exceptionally high demand programs are of no avail for diversifying the HBIs. Table 20 analyzes the exceptionally high demand non-core HBI programs in the Baltimore-College Park programs from Exhibit 6. The Table again replicates the information in Exhibit 6, adding the omitted total number of students in each program. As indicated in Table 20, the 6 exceptionally high demand programs combined have a white percentage of only 3.4 percent, barely above the mean white percentage for all programs at the Baltimore-College Park HBIs. Even if 100 such exemplar exceptionally high demand programs could be added to the 3 HBIs, the total percentage of white students at the institutions would increase by about three-tenths of one percent.

Turning to the exemplar programs that Conrad and Allen selected for UMES, Table 21 provides an analysis of these programs following the same procedures indicate above. The analysis presented in Table 21 indicates that these programs lack the capacity for significant diversification at the HBIs. As indicated in Table 21, the percentage of white students in these programs is 17.6 percent, just 3.1 percentage points higher than the overall 14.5 percent white enrollment at UMES. Even if triple the number of these 17 exemplar programs were added to UMES that would increase the white percentage at the institution by only some 2 percentage points.[37]

---

[34] *Ibid.*, p. 37.
[35] *Ibid.*
[36] *Ibid.*, p. 44.
[37] These findings for UMES are consistent with the findings in my Nov. 2, 2015 Report (pp. 22-25, 26-33).

**TABLE 20**
**BALTIMORE-COLLEGE PARK HBI EXCEPTIONALLY HIGH DEMAND, NON-CORE, NON-JOINT EXEMPLAR PROGRAMS FROM CONRAD AND ALLEN EXHIBIT 6, JULY 6, 2016 REPORT**

| School | Program | CIP | Level | Duplication | Total Enrolled | White Enrolled | White Percent |
|---|---|---|---|---|---|---|---|
| **BSU** | Nursing | 513801 | B | **Duplicated** | **614** | **11** | **1.8%** |
| **BSU** | Business Admin | 520201 | B | **Duplicated** | **695** | **12** | **1.7%** |
| **MSU** | Electrical Engineering | 141001 | B | **Duplicated** | **504** | **11** | **2.2%** |
| **BSU** | Criminal Justice | 430104 | B | **Duplicated** | **365** | **10** | **2.7%** |
| **MSU** | Civil Engineering | 140801 | B | **Duplicated** | **221** | **10** | **4.5%** |
| **BSU** | Nursing | 513801 | M | **Duplicated** | **123** | **14** | **11.4%** |
| **MSU** | Community College Leadership | 130407 | D | **Duplicated** | **167** | **23** | **13.8%** |
| | | | | | | | |
| | | | | | | | |
| **All Programs Exceptionally High Demand Programs Combined** | | | | | **2689** | **91** | **3.4%** |
| | | | | | | | |
| Source: Conrad and Allen Updated Report, July 6, 2016: "EXHIBIT 6 - HBI PROGRAMS WITH AT LEAST 10 WHITE STUDENT ENROLLMENT;" eisfall14mhecinventory. | | | | | | | |

**TABLE 21**
**UMES EXEMPLAR PROGRAMS FROM CONRAD AND ALLEN EXHIBIT 6, July 6, 2016 REPORT**

| Program | CIP | Level | Duplication | Total Enrolled | White Enrolled | White Percent |
|---|---|---|---|---|---|---|
| Physical Therapy** | 512308 | D | Unique (P) | 88 | 42 | 47.7% |
| Pharmacy** | 512001 | D | Unique (P) | 175 | 33 | 18.9% |
| Environmental Science** | 261301 | B | Unique (P) | 57 | 32 | 56.1% |
| Human Ecology* | 190101 | B | Unique (P) | 206 | 27 | 13.1% |
| Pro Golfers' Association | 520901 | B | Unique (P,S) | 51 | 27 | 52.9% |
| Organizational Leadership** | 309999 | D | Unique (P,S) | 75 | 25 | 33.3% |
| Hospitality & Tourism Manag.* | 520904 | B | Unique (P,S) | 175 | 22 | 12.6% |
| Exercise Science ** | 310505 | B | Duplicated | 260 | 21 | 8.1% |
| Engineering | 140101 | B | Unique (P) | 147 | 20 | 13.6% |
| Elementary/Special Education | 131001 | B | Unique (P) | 45 | 19 | 42.2% |
| Construction Management | 150201 | B | Unique (P) | 66 | 19 | 28.8% |
| Criminal Justice** | 430107 | B | Unique (P) | 434 | 19 | 4.4% |
| Education Leadership* | 130401 | D | Unique (P) | 42 | 17 | 40.5% |
| Counselor Education* | 131101 | M | Unique (P) | 36 | 13 | 36.1% |
| Physician Assistant* | 510912 | M | Unique (P) | 74 | 13 | 17.6% |
| Career and Tech Education | 131309 | M | Unique (P) | 22 | 11 | 50% |
| Rehabilitation Services | 512399 | B | Unique (P,S) | 151 | 11 | 7.3% |
| | | | | | | |
| **All Programs Combined** | | | | **2104** | **371** | **17.6%** |
| * Designated as high demand ** Designated as exceptionally high demand | | | | | | |
| Conrad and Allen Updated Report, July 6, 2016: "EXHIBIT 6 - HBI PROGRAMS WITH AT LEAST 10 WHITE STUDENT ENROLLMENT;" eisfall14mhecinventory. | | | | | | |

In this case, nearly all the programs are designated as proximately unduplicated by Conrad and Allen; that is, the programs are not also offered at Salisbury. However, none are unduplicated statewide. Moreover, 6 of the 17 programs (35 percent) are not high demand programs according to Conrad and Allen's designations.

Table 22 examines the UMES exemplar programs in Exhibit 6 that fall into Conrad and Allen's new category of exceptionally high demand programs for UMES. The data reported in Table 22 indicates that even in this most elevated category of high demand programs, the combined white percentage is 15.8 percent, just 1.3 percentage points above the overall white percentage of 14.5 percent at UMES and far below levels needed to indicate any significant capacity to diversify this institution.

**2. Analysis of Conrad and Allen's "Disproportion" Study in Exhibit 7**

In Exhibit 7 Conrad and Allen provide a different analysis of high demand, exceptionally high demand, unique, and both unique and high demand programs. This analysis does not examine the white percentages of in these programs, but rather compares the percentages of white students at HBIs enrolled within each category of program to the percentage of such programs among all programs at the HBIs. This analysis assumes that the potential for diversification of a program category is demonstrated if the percentage of all white students enrolled in that program category is higher than the percentage of such programs among all HBI programs, For example, Exhibit 7 indicates that exceptionally high demand programs comprise 20.9 percent of all HBI programs in Maryland, but enroll 34.1 percent of white students. Therefore, the percentage of white student in exceptionally high demand programs exceeds the percentage of such programs by a ratio of 1.6, what Conrad and Allen call the "disproportion" in Exhibit 7.[38] Conrad and Allen claim that any such disproportion above 1.0 in their analyses, indicates that a given program category disproportionately enrolls white students.

However, Conrad and Allen have conducted a classic apples to oranges comparison. An analyst cannot just compare the percentage of white students to the percentage of programs, because the total number of enrolled students varies greatly from program to program. It may well be the programs included in their comparisons enroll a disproportionate percentage of white students, because they enroll a disproportionate percentage of all students, thus indicating no special capacity for diversification. To avoid such biased comparison, the proper methodology is to compare the percentage of white students in plaintiffs' four program categories with the percentage of all students in these programs. Only in this way is it possible to determine whether the programs disproportionately enroll white students or disproportionally enroll all students, whether white or non-white.

[38] Conrad and Allen July 6, 2016 Report, Exhibit 7.

**TABLE 22**
**PROGRAMS THAT PLAINTIFFS' EXPERTS SELECTED TO ILLUSTRATE THE "DESEGREGATIVE POTENTIAL" OF EXCEPTIONALLY HIGH DEMAND PROGRAMS: EASTERN SHORE REGION (UMES)**

| Program | CIP | Level | Duplication | Total Enrolled | White Enrolled | White Percent |
|---|---|---|---|---|---|---|
| | | | | | | |
| Physical Therapy** | 512308 | D | Unique (P) | 88 | 42 | **47.7%** |
| Pharmacy** | 512001 | D | Unique (P) | 175 | 33 | **18.9%** |
| Environmental Science** | 261301 | B | Unique (P) | 57 | 32 | **56.1%** |
| Organizational Leadership** | 309999 | D | Unique (P,S) | 75 | 25 | **33.3%** |
| Exercise Science** | 310505 | B | Duplicated | 260 | 21 | **8.1%** |
| Criminal Justice** | 430107 | B | Unique (P) | 434 | 19 | **4.4%** |
| **Sum all Programs** | | | | 1089 | 172 | **15.8%** |
| | | | | | | |
| Conrad and Allen Updated Report, July 6, 2016: "EXHIBIT 6 - HBI PROGRAMS WITH AT LEAST 10 WHITE STUDENT ENROLLMENT;" eisfall14mhecinventory. | | | | | | |

For example, as indicated above, Conrad and Allen report that the percentage of all programs in the HBIs that are exceptionally high demand is 20.9, but that these programs enroll 34.1 percent of white students at the HBIs, for a disproportion of 1.6. However, Conrad and Allen fail to report that exceptionally high demand programs enroll 58.1 percent of all students at the four HBIs, for a much higher "disproportion" of 2.8, which means that relative to all students, white students *are substantially underrepresented, not overrepresented, in exceptionally high demand programs.*[39]

There are other problems with Conrad and Allen's methodology. The percentage of white students within any program category will be influenced by the balance between the 3 Baltimore-College Park HBIs and UMES, which has a much higher white percentage. In addition, the analysis blurs together undergraduate and graduate programs, which also have very different levels of enrollment.[40]

Tables 23-26 reanalyze the "disproportion" study using the appropriate methodology that analyzes undergraduate and graduate programs for the Baltimore-College Park Region and UMES. The analysis also introduces the essential comparison missing in Conrad and Allen's analysis: the total share of students enrolled in each program category, not just the share of white students. The program categories would indicate significant potential for diversification only if the share of white students were consistently and substantially higher than the percentage of programs and if higher than also higher than the share of all students.

The results of analysis reported in Tables 23-26 contradict Drs. Conrad and Allen's claim that these categories of programs are especially effective in attracting high percentage of white students.[41] To the contrary, the results show that the categories of programs selected by Conrad and Allen for their remedial strategy do not typically attract a higher proportion of white students as compared to all students at the HBIs. Thus, the analysis provides additional demonstration that Conrad and Allen's remedial categories of programs lack the capacity to significantly diversify Maryland's HBIs.

Table 23 examines Conrad and Allen's new category of exceptionally high demand programs, which should constitute a powerful indicator of the effectiveness of their remedial

---

[39] This analysis and all other "disproportion" analyses in Conrad and Allen's July 6, 2016 Report are also flawed by their many errors in identifying programs as high demand or exceptionally high demand as well as some errors in identifying programs as unique.

[40] As with other analyses, this analysis is also flawed by numerous errors in the designation of programs.

[41] Tables are based on plaintiffs' backup data disclosure with corrections indicated above.

**TABLE 23**
**CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF EXCEPTIONALLY HIGH DEMAND PROGRAMS**

| Baltimore-College Park Region: Bachelor's Programs | | | | | | |
|---|---|---|---|---|---|---|
| **Category of Program** | **Percentage of Programs at HBIs (43/100)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Exceptionally High Demand | 43.0% | 47.9% | **1.1** | 65.6% | **1.5** | **-0.4** |
| | | | | | | |
| **Baltimore-College Park Region: Graduate Programs** | | | | | | |
| | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (14/78)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Exceptionally High Demand | 17.9% | 27.0% | **1.5** | 35.6% | **2.0** | **-0.5** |
| | | | | | | |
| **Eastern Shore Region: All Programs*** | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (14/56)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Exceptionally High Demand | 25.0% | 37.8% | **1.5** | 50.5% | **2.0** | **-0.5** |
| | | | | | | |
| * There are not a sufficient number of exceptionally high demand programs at UMES for partition into undergraduate and graduate programs. | | | | | | |
| | | | | | | |
| Source: Plaintiffs' Backup Data Disclosure. | | | | | | |

## TABLE 24
## CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF HIGH DEMAND PROGRAMS

| Baltimore-College Park Region: Bachelor's Programs | | | | | | |
|---|---|---|---|---|---|---|
| **Category of Program** | **Percentage of Programs at HBIs (70/100)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| High Demand | 70% | 85.0% | 1.2 | 85.6% | 1.2 | 0 |
| | | | | | | |
| **Baltimore-College Park Region: Graduate Programs** | | | | | | |
| | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (34/78)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| High Demand | 44.9% | 59.0% | 1.3 | 65.3% | 1.5 | -0.2 |
| | | | | | | |
| **Eastern Shore Region: Bachelor's Programs** | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (17/36)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| High Demand | 47.2% | 47.6% | 1.0 | 68.8% | 1.5 | -0.5 |
| | | | | | | |
| **Eastern Shore Region: Graduate Programs** | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (11/20)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **1.** | **Difference Between White & Total Disproportion** |
| High Demand | 55.0% | 77.7% | 1.4% | 82.5% | 1.5 | -0.1 |
| | | | | | | |
| Source: Plaintiffs' Backup Data Disclosure. | | | | | | |

**TABLE 25**
**CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF PROXIMATELY UNIQUE PROGRAMS**

| Baltimore-College Park Region: Bachelor's Programs | | | | | | |
|---|---|---|---|---|---|---|
| **Category Of Program** | **Percentage of Programs at HBIs (21/100)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Unique | 21.0% | 6.8% | 0.3 | 8.4% | 0.4 | -0.1 |
| | | | | | | |
| **Baltimore-College Park Region: Graduate Programs** | | | | | | |
| | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (27/78)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Unique | 34.6% | 24.8% | 0.7 | 28.8% | 0.8 | -0.1 |
| | | | | | | |
| **Eastern Shore Region: Bachelor's Programs** | | | | | | |
| | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (22/36)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Unique | 61.1% | 58.4% | 1.0 | 51.1% | 0.8 | +0.2 |
| | | | | | | |
| **Eastern Shore Region: Graduate Programs** | | | | | | |
| | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (15//20)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| | | | | | | |
| Unique | 75.0% | 85.9% | 1.1 | 88.7% | 1.2 | -.01 |
| | | | | | | |
| Source: Plaintiffs' Backup Data Disclosure. | | | | | | |

**TABLE 26**
**CONRAD AND ALLEN'S ALLEGED DISPROPORTIONATE IMPACT OF PROXIMATELY UNIQUE, HIGH DEMAND PROGRAMS**

| Baltimore-College Park Region: Undergraduate Programs | | | | | | |
|---|---|---|---|---|---|---|
| **Category of Program** | **Percentage of Programs at HBIs (6/100)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Unique High Demand | 6.0% | 1.8% | 0.3 | 4.9% | 0.8 | -0.5 |
| | | | | | | |
| **Baltimore-College Park Region: Graduate Programs** | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (4/78)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Unique High Demand | 5.1% | 6.3% | 1.2 | 12.1% | 2.4 | -1.2 |
| | | | | | | |
| **Eastern Shore: Undergraduate Programs** | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (5/36)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Unique High Demand | 13.9% | 24.2% | 1.7 | 25.0% | 1.8 | -0.1 |
| | | | | | | |
| **Eastern Shore: Graduate Programs** | | | | | | |
| **Category of Program** | **Percentage of Programs at HBIs (11/20)** | **Percentage of White Students** | **Disproportion** | **Percentage of Total Students** | **Disproportion** | **Difference Between White & Total Disproportion** |
| Unique High Demand | 55.0% | 77.7% | 1.4 | 82.5% | 1.5 | -0.1 |
| | | | | | | |
| Source: Plaintiffs' Backup Data Disclosure. | | | | | | |

strategy. However, the results reported in Table 23, demonstrate that exceptionally high demand programs do not enroll a disproportionate share of white students. In all three analyses the disproportion between the percentages of exceptionally high demand programs at the HBIs and the percentage of white students is lower than the disproportion between the percentage of programs and the percentage of all students. Thus, this analysis confirms that as compared to all students, *white students are underrepresented* in exceptionally high demand programs.

Table 24 examines high demand programs. In 3 of the 4 analyses, the disproportion between the percentage of exceptionally high demand programs at the HBIs and the percentage of white students is lower than the disproportion between the percentage of programs and the percentage of all students. In the remaining analysis there is an equal "disproportion" for white students and for all students. Thus, on balance for all four analyses, as compared to all students, *white students are underrepresented* in high demand programs.

Table 25 examines Conrad and Allen's category of proximately unique programs. This is another important category because plaintiffs' proposal is allegedly crafted to remedy duplication. In 2 of the 4 analyses, however, the proportion of unique programs is higher than the proportion of white students in these programs. These results yield disproportions of less than 1.0, which indicate that white students are underrepresented in unique programs. In one analysis, the proportion of unique programs is equal to the proportion of white students in these programs, indicating no disproportion. In the remaining analysis, the disproportion is greater for all students than for white students. On balance, the analyses demonstrate that *white students are underrepresented* in unique programs.

Table 26 examines Conrad and Allen's category of proximately unique and high demand programs, the category that they have stressed as having especially significant potential for diversification. Yet, in one analysis the disproportion for white students is less than 1.0 and in the remaining three analyses, the disproportion is lower for the percentage of white students that for the percentage of all students. Thus, the analyses demonstrate that *white students are underrepresented* in unique, high demand programs.

### 3. Analysis of Conrad and Allen's Selected Exemplar Programs in Exhibit 8

Conrad and Allen also present in Exhibit 8 of their Report, 10 programs that have 15 or more white students enrolled *and* 15 percent white enrollment. Exhibit 8 additionally illustrates the fallacy of analysis based only on cases that fit preselected criteria. The Exhibit is so highly selective that it yields misleading results. *Of the 10 programs included in the Exhibit, 8 are from UMES, which has an overall white enrollment of nearly 15 percent* (14.5 percent). The remaining two programs from the Baltimore-College Park region are both from Morgan State and both are designated as duplicated programs and only one of the two is designated as high demand. There are no programs for either Bowie or Coppin. Exhibit 8 simply shows that if you specify your selection criteria tightly enough it is possible to find a few examples of programs with larger numbers and percentages of white students out of more than 230 programs at the HBIs, especially when UMES is included.

As with Conrad and Allen's other analysis, Exhibit 8 lacks the comparisons that are essential to evaluating its results. Table 27 provides the necessary comparison by examining all other HBI programs with 15 or more white students. Five of the seven programs in Table 27 are bachelor's programs from UMES. Taken together these programs enroll a white percentage of 8.9 percent, 2.7 percentage points below the white percentage of 11.6 percent for all bachelor's programs at UMES. Once again, there are no programs from Bowie or Coppin. The only programs from the Baltimore-College Park Region are a single bachelor's program and a single doctoral program at Morgan. These programs enroll a white percentage above Morgan averages, but not nearly high enough to effect any significant diversification. Reliable conclusions, moreover, about HBIs in the Baltimore-College Park Region cannot be drawn from a single bachelor's and a single doctoral program at one institution. Conrad and Allen also designate both of these Morgan programs as duplicated programs, so they cannot serve as exemplars of the remedial efficacy of alleviating program duplication at the HBIs. Taking together all of Conrad and Allen's exemplar programs for the Baltimore-College Park region, *not a single one of these programs is a unique, high demand program or even a unique program, whether high demand or not.*

**4. Analysis of Conrad and Allen's Selected Exemplar Programs in the Text of Their Report**

In addition to these Exhibits, Conrad and Allen follow the precedent of their previous report in citing in their text some selected examples of programs that allegedly help prove the efficacy of their remedial proposal. In a tacit response to the criticisms of their examples in my Nov. 20, 2015 Report, Conrad and Allen abandon many of their previous examples and present new sets of examples in their May 1, and corrected July 6, 2016 Report.[42] Once again, these examples do not withstand scrutiny.

* **Bowie State**: Conrad and Allen claim that although the overall white enrollment at Bowie is low, some of its programs most successful in attracting white students are associated with its historic identity as a teacher's college. In support of this proposition, they cite "the master's in Teaching (40.0% white enrollment), master's in Special Education (35.3% white enrollment), master's in School Psychology (28.6% white enrollment), the master's in Reading Education (19.1% white enrollment), and master's in School Counseling (17.5% white enrollment)."[43]

Bowie, however, was founded in 1865 as a teacher's college.[44] Thus, its 150-year long association with education cannot be projected to predict white enrollments any newly-established "niche" under plaintiffs' proposal. Plaintiffs have not provided analyses demonstrates

[42] As noted above, I stand by the criticism in my Nov. 20, 2015 Report of some 125 consequential errors in plaintiffs' submission of May 20, 2015. Some of these criticisms, derive from their use of 2013 enrollment data. However, most do not. Conrad and Allen write in their July 6, 2016 report that I was "writing in 2015," and therefore had access to the 2014 data. However, defendants' previous submission was presented nearly four months into 2015 and 2014 enrollment data had been available for some time (Lichtman, Nov. 20, 2015 Report, p. 115). Plaintiffs' backup data disclosure for their 2015 submissions, indicates that they had obtained 2014 graduation data, but for some reason had failed to take the initiative to obtain the available 2014 enrollment data.

[43] Conrad and Allen July 6, 2016 Report, p. 39.

[44] Bowie State University, History, http://bowie.stateuniversity.com/

**TABLE 27**
**PROGRAMS WITH 15 OR MORE WHITE STUDENTS NOT INCLUDED IN CONRAD AND ALLEN EXHIBIT 8**

| School | Level & Program | CIP | Unique | High Demand | Total Enrolled | White Enrolled | % White |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| UMES | B: Human Ecology | 19.0101 | Yes | Yes | 206 | 27 | 13.1% |
| UMES | B: Hospitality & Tourism | 52.0904 | Yes | Yes | 175 | 22 | 12.6% |
| UMES | B Engineering | 14.0101 | Yes | No | 147 | 20 | 13.6% |
| UMES | B: Criminal Justice | 43.0107 | Yes | Yes | 434 | 19 | 4.4% |
| UMES | B: Exercise Science | 31.0505 | No | Yes | 260 | 21 | 8.1% |
| ALL UMES | | | | | **1222** | **109** | **8.9%** |
| | | | | | | | |
| Morgan | B: Architecture & Environmental Design | 04.0201 | No | Yes | 248 | 37 | 14.9% |
| Morgan | D: Community College Leadership | 13.0407 | No | Yes | 167 | 23 | 13.8% |
| | | | | | | | |
| Source: Plaintiffs' Backup Data Disclosure; | | | | | | | |

that any such newly-created "niches," with no historic identity will have even roughly similar potentials to enroll white students. Moreover, rather than presenting a complete picture, Conrad and Allen once again cherry-pick 5 of the 13 programs in Bowie's College of Education -- those with the highest white percentages. Examination of all 13 programs presents a different picture. As indicated in Table 28, 2 of the unanalyzed 8 programs have *no white students* and 4 others have 10.5 percent or fewer white students. Overall, the education programs at Bowie attracted 611 students and 64 white students for an average of 5 white students per program and an overall white percentage of 10.5 percent. Thus, education programs demonstrate only limited potential for significant diversification despite Bowie's century and a half association with education.

* **Coppin State**: Conrad and Allen claim that exceptionally high demand programs at Coppin indicate that such programs "can also contribute to program diversity, especially for specific campuses." They state that 27.3 percent of Coppin's programs are exceptionally high demand, but enroll 53.3 percent of white students, for a ratio of 1.95, which they erroneously state means that "white students are more than twice as likely to be enrolled in these exceptionally high programs."[45] However, Conrad and Allen once again do not complete the analysis by examining the total number of students enrolled in Coppin's exceptionally high demand programs. These programs enrolled a higher 57 percent of all Coppin students, for a higher ratio of 2.09. Thus, contrary to Conrad and Allen's claim, as compared to the enrollment of all students, white students are *not overrepresented, but slightly underrepresented,* in Coppin's exceptionally high demand programs.

Conrad and Allen also cherry pick 2 of 14 exceptionally high demand programs at Coppin to demonstrate their effectiveness in diversification. They cite the bachelor's program in Management Information Systems which has a white enrollment of 5.9 percent and the bachelor's program in Accounting which has a white enrollment of 5.0 percent. Although higher than the overall white enrollment at Coppin, these two self-selected programs have a white percentage that is too low to demonstrate any potential for diversification. Conrad and Allen also concede that these are both *duplicated* programs.

Examination of all 14 high exceptionally demand programs included in Conrad and Allen's analysis above demonstrates that overall, exceptionally high demand programs at Coppin enroll a very small percentage of white students. As indicated in Table 29, the two examples chosen by Conrad and Allen have the highest white percentage of all 14 exceptionally high demand programs at Coppin. Even these two exemplars enroll only 4 white students between them. The complete analysis demonstrates that taken together, all 14 exceptionally high demand programs at Coppin enroll a white percentage of 1.5 percent -- about equal to the overall white percentage at Coppin. On average, these 14 exceptionally high demand programs enroll only 1.5 white students per program and 4 of the programs enroll no white students. Although Conrad and Allen's ratio analysis includes all exceptionally high demand programs, Table 29 demonstrates

[45] Conrad and Allen Report, July 6, 2016, p. 37-38.

## TABLE 28
## SCHOOL OF EDUCATION PROGRAMS AT BOWIE STATE, TOTAL AND WHITE ENROLLMENTS

| CIP Code | Degree Level | Program | Total Enrolled | White Students Enrolled | White Student % |
|---|---|---|---|---|---|
| | | | | | |
| 13.1316 | Bachelor's | Science Education | 21 | 2 | 9.5% |
| 13.1202 | Bachelor's | Elementary Education | 116 | 7 | 6.0% |
| 13.1209 | Bachelor's | Early Childhood Education | 110 | 11 | 10% |
| 31.0504 | Bachelor's | Physical Education: Sport Management | 130 | 0 | 0% |
| 13.0401 | Master's | Elementary & Secondary School Admin | 49 | 6 | 12.2% |
| 13.1202 | Master's | Elementary Education | 7 | 1 | 14.3% |
| 13.1101 | Master's | School Counseling | 63 | 11 | 17.5% |
| 13.1315 | Master's | Reading Education | 21 | 4 | 19.0% |
| 13.1205 | Master's | Secondary Education | 5 | 0 | 0% |
| 13.1205 | Master's | Teaching (MAT) | 20 | 8 | 40% |
| 42.2805 | Master's | School Psychology | 14 | 4 | 28.6% |
| | Master's | Special Education | 17 | 6 | 35.3% |
| 13.0411 | Doctorate | Elementary/Secondary School Admin: Education Leadership/Executive Fellows | 38 | 4 | 10.5% |
| **TOTAL** | | | 611 | 64 | 10.5% |
| Source: eisfall14mhecinventory, Plaintiffs' backup disclosure data. | | | | | |

**TABLE 29**
**ENROLLMENTS IN ALL EXCEPTIONALLY HIGH DEMAND PROGRAMS AT COPPIN STATE**

| Program | CIP | LEVEL | Total Students Enrolled | White Students Enrolled | White Percent of Total Students Enrolled |
|---|---|---|---|---|---|
| | | | | | |
| MANAGEMENT INFORMATION SYSTEMS | 11.0401 | BACH | 17 | 1 | 5.9% |
| COMPUTER SCIENCE | 11.0701 | BACH | 56 | 0 | 0% |
| ELEMENTARY EDUCATION | 13.1202 | BACH | 43 | 1 | 2.3% |
| ENGLISH (CORE) | 23.9999 | BACH | 32 | 0 | 0% |
| BIOLOGY (CORE) | 26.0101 | BACH | 101 | 3 | 3.0% |
| APPLIED PSYCHOLOGY (CORE) | 42.0101 | BACH | 165 | 3 | 1.8% |
| CRIMINAL JUSTICE | 43.0104 | BACH | 214 | 2 | 0.9% |
| SOCIAL WORK (W/ UMBC) (JOINT) | 44.0701 | BACH | 187 | 1 | 0.5% |
| SOCIAL SCIENCES (CORE) | 45.0101 | BACH | 12 | 0 | 0% |
| POLITICAL SCIENCE (CORE) | 45.1001 | BACH | 22 | 1 | 4.5% |
| NURSING | 51.3801 | BACH | 683 | 9 | 1.3% |
| MANAGEMENT | 52.0201 | BACH | 149 | 0 | 0% |
| ACCOUNTING | 52.0301 | BACH | 60 | 3 | 5.0% |
| NURSING | 51.3811 | MAST | 46 | 2 | 4.3% |
| **TOTAL ALL PROGRAMS** | | | **1,787** | **26** | **1.5%** |
| **TOTAL ALL PROGRAMS NOT COUNTED CORE OR JOINT PROGRAMS** | | | **1,268** | **18** | **1.4%** |
| Source: eisfall14mhecinventory, Plaintiffs' backup disclosure data. | | | | | |

that the exclusion of core and joint programs yield a very slightly lower mean of 1.4 percent of white students

Thus, contrary to Conrad and Allen's claim, a complete analysis demonstrates that the exceptionally high demand programs at Coppin disclose no capacity for diversification.

* **Morgan State**: Conrad and Allen cite architecture programs for the claim that "white student enrollment was also highest in unique, high-demand programs at Morgan State University: Landscape Architecture, Architecture, and Architecture and Environmental Design.[46] However, examination of their backup data disclosure and program inventory reveals that the program in Landscape Architecture is not designated as a high demand program, In addition, their backup data disclosure and program inventory also indicates that *none of these three programs are unique, high demand* but rather are all duplicated either proximately or statewide..

Plaintiffs make a point of noting that the programs are duplicated only at University of Maryland College Park, as though this were an exception to their duplication analysis. However, as the institution with the largest numbers of students, programs, and degrees, UMCP is the most important contributor to plaintiffs' analysis of duplication at the TWIs compared to the HBIs and to their designation of high demand and exceptionally high demand programs. Conrad and Allen cannot dismiss duplication of the HBI's programs at UMCP without fundamentally revising the calculations that ground their remedial strategy. In other contexts, plaintiffs also highlight the importance of duplication at UMCP, stating, "However, unnecessary duplication by a flagship will still produce segregative effects at HBIs with overlapping service areas."(e.g., UMCP and Morgan in the Baltimore-College Park Region)[47]

Plaintiffs also maintain in their report that the establishment of the joint MBA program at UB/Towson in 2005 resulted in a collapse of white enrollments in the duplicated MBA program at Morgan: "As the Court is aware, the controversial Towson/UB MBA program is illustrative of the importance of establishing and maintaining unique, high-demand programs at the HBIs. The Morgan State MBA program attracted a critical mass of white students before the Towson/UB MBA was introduced. Since then, however, white student enrollment in Morgan's MBA program has declined precipitously." (Conrad and Allen July 6, 2016 Report, Exhibit 3 pp. 19-20). However, this claim is both unsupported by any enrollment statistics from Morgan's program over time and is contrary to fact.

In 2004, according to Morgan's website, Morgan's MBA program enrolled only 28 students, none of them white.[48] White enrollments in Morgan's MBA program cannot have "declined precipitously" from zero Moreover, overall enrollments in Morgan's MBA program began to take off only in 2006, the year after adoption of the joint Towson/UB program. In that year, the Morgan MBA program enrolled 68 students, well more than double the 2004 number –

[46] Conrad and Allen, July 6, 2016 Report, p. 38, Exhibit 3, p. 19.
[47] Conrad and Allen July 6, 2016 Report, p 21. See also their analysis of programs related to Agriculture on p. 39.
[48] http://www.morgan.edu//Documents/ADMINISTRATION/OFFICES/inst-research/busi_enroll04-05.htm

but only one of them white.[49] In fall 2015, before Towson and UB terminated their joint program, enrollments in Morgan's MBA program had increased to 128, nearly five times the 2004 enrollments, including 2 white students. The black 2015 enrollment in Morgan's MBA program, moreover, was only 32.8 percent (42 students), far below the mean of 56 percent for all master's programs at Morgan in fall 2015.[50]

Conrad and Allen also draw a contrast between Morgan's MBA program and its bachelor's program in Architecture and Environment Design. They state, "Not insignificantly, the major programs at HBI Morgan State University that are currently attracting substantial numbers of white students are high-demand programs such as the B.S. degree in Architecture and Environmental Design (15% white students)." However, they fail to note that according to their own program inventory and backup data disclosure, the MBA program is not only a high demand program as well, but unlike the Architecture program also meets their criteria for an exceptionally high demand program. They also fail to note that the Architecture program, like the MBA program, is a duplicated and not a proximately unique program. Thus, the MBA program at Morgan is a duplicated, exceptionally high demand program, whereas Conrad and Allen's exemplar Architecture program falls into Conrad and Allen's lesser remedial category of a duplicated, high demand, but not exceptionally high demand program.

* **UMES**: With respect to this institution, Conrad and Allen state, "Similarly, a number of programs associated with UMES's land-grant mission have high levels of white enrollment. These include the bachelor's in Human Ecology (13.1% white enrollment), bachelor's in Engineering (13.6% white enrollment), and master's in Engineering Technology (12.5% white enrollment). This also shows the significance of clustering related programs within a programmatic niche consistent with that institutional identity."[51] However, Conrad and Allen fail to note that all of these exemplar programs for their programmatic niche strategy have a white percentage that is *lower* than the overall white percentage of 14.5 percent at UMES. In addition, they erroneously identify the program in Engineering Technology as a master's program, when the only such program at UMES is a bachelor's program. They also fail to note that their inventory of high demand programs (July 6, 2016 Report, Exhibit 10) *does not list either the Engineering program or the Engineering Technology program as high demand programs*. These examples further illustrate the confounding effect of merging together UMES data with data from the Baltimore-College Park region.[52]

Conrad and Allen also cite as exemplar programs at UMES the master's program in Rehabilitation Counseling and the doctoral programs in Pharmacy and Physical Therapy (Conrad and Allen, July 6, 2016 Report, p. 20). Table 30 compares their white percentages with the white

---

[49] http://www.morgan.edu//Documents/ADMINISTRATION/OFFICES/inst-reseaorch/busi_enroll06-07.html.
[50] These claims regarding the MBA at Morgan were made in nearly verbatim in plaintiffs' May 2015 submissions, refuted in my November 20 2015 Report, repeated again without qualification in their May and July 2016 Reports. See, Lichtman, November 20, 2015 Report, p.38.For Fall 2015 master's enrollments see, http://www.morgan.edu//Documents/ADMINISTRATION/OFFICES/inst-research/Fall2015GraduateEnrollmentbyProgramandRace.pdf.
[51] Conrad and Allen, July 6, 2016 Report, p. 39.
[52] eisfall14mhecinventory.

**TABLE 30**
**CONRAD AND ALLEN'S SELECTED EXAMPLES OF EXEMPLAR PROGRAMS AT UMES**

| **Master's Program** | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| **Program** | **Total Enrolled** | **White Enrolled** | **Plaintiffs' White Percent** | **Percent White in all Masters' Programs UMES** | **Difference in Percentage Points** |
| | | | | | |
| Master's in Rehabilitation Counseling 51.2399 | 35 | 6 | 17.1% | 26.3% | **-9.2%** |
| | | | | | |
| **Doctoral Programs** | | | | | |
| | | | | | |
| **Program** | **Total Enrolled** | **White Enrolled** | **White Percent** | **Percent White in all Doctoral Programs UMES** | **Difference in Percentage Points** |
| Doctorate in Pharmacy UMES 51.2001 | 175 | 33 | 18.9% | 30.0% | **-11.1%** |
| | | | | | |
| Doctorate in Physical Therapy 51.2308 | 88 | 42 | 47.7% | 30.0% | **+17.7%** |
| | | | | | |
| Doctoral Programs Combined | 263 | 75 | 28.5% | 30.0% | **-1.5%** |
| | | | | | |
| Source: Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | | |

percentages in the appropriate program level. The data reported in Table 30 indicates that the cited master's program has a white percentage that is below the overall white percentage for master's programs at UMES. In addition, one of the two doctoral programs has a white percentage that is below the overall white percentage for doctoral programs at UMES. The two doctoral programs combined have a white percentage that is below the overall white percentage for doctoral programs at UMES.

Conrad and Allen also fail to note that Coppin has an identical program in Rehabilitation Counseling in the same CIP code (51.2399) as the UMES program. Also identical to the UMES program the Coppin program is proximately and statewide unique (e.g., not duplicated by any TWI in the state) and high demand. The Coppin program enrolls 99 total students and *no white students*.

* **All HBIs Combined.** On page 1 of their remedial proposal (Exhibit 3), Conrad and Allen attempt to assess current overall diversity at all 4 HBIs combined. They attempt to assess not only the white percentage of HBI students, which they calculate at about 5 percent, but also the "non-black" percentage, which they claim is less than 10 percent. However, this diversity analysis is again based on an apples to oranges comparison, which greatly understates the current diversity at the HBIs. In calculating the approximate 5 percent white percentage, Conrad and Allen use for the numerator of their fraction only students at the HBIs that MHEC identifies as white (for enrollments by race see, MHEC 2016 Data Book (pp. 8-9), However, their denominator includes all student designations listed by MHEC, including International Students (who are not identified by race), students whose race is unknown, and multiracial students. Yet in calculating the non-black percentage at the HBIs they fail to use as the comparable numerator all students not identified as black, but rather they use a limited subset that excludes international students, multiracial students, and students of unknown race, none of whom is identified by MHEC as black. To conduct an appropriate apples to apples comparison for non-black students -- which equals 100% minus the percentage of black students, -- it is necessary to include in the numerator the same measure used for the white calculation, all students identified by MHEC as black. Under this analysis the percentage of black students at the HBIs is 79 percent and the corresponding percentage of "non-black" students is not less than 10 percent, but rather a much higher 21 percent.[53]

## VII. The Failure of Conrad and Allen's Remedial Proposal To Meet Their Criteria For Successful Diversification

Plaintiffs' new remedial proposal detailed in Exhibit 3 of Conrad and Allen's July 6, 2016 Report attempts to create new programmatic niches at Maryland's HBIs. Conrad and Allen admit that they have no scientific evidence to demonstrate that the creation of such niches has

[53] The 79 percent black enrollment and the corresponding 21 percent non-black enrollment represents 16,437 identified by MHEC as black divided by the 20,805 total student enrollment at the HBIs.

any efficacy in diversifying the HBIs. As a result, the foundation of their new remedial proposal for diversifying HBIs is purely speculative:

> "At the outset, it must be emphasized that scientific analysis cannot prove or disprove the desegregative potential of establishing institutional identity at the HBIs. Based on our research and expertise, we anticipate that a meaningful level of desegregation will be produced by clustering unique, high-demand programs within distinct programmatic niches. To our knowledge, however, this is a promising strategy which has never been adopted or implemented in any state. As a result, data is unavailable for a quantitative analysis to measure its success in achieving sustained levels of desegregation at an HBI."

Conrad and Allen also ignore the quantitative analysis presented in my Nov. 20, 2015 Report demonstrating the lack of efficacy of programmatic niches for diversifying HBIs. This includes an analysis of the programmatic niche at the HBIs in Rehabilitation Services (pp. 14-15) and the analysis of resegregation at Tennessee State University despite taking over its proximate competition and thereby creating numerous proximately unique programmatic niches (pp. 45-50). They also fail to analyze the programmatic niche established at Morgan State in communications and related fields. As indicated in Table 31, this niche includes 8 programs: 6 undergraduate and 2 master's programs. All but two of the programs are either high demand or unique programs. Three of the 8 programs (38 percent) are exceptionally high demand programs and two of the 8 programs (25 percent) are both unique proximately and statewide and high demand. In contrast, the 3 niches that plaintiffs propose for Morgan include respectively, 11 percent, 10 percent, and 0 percent unique, high demand programs – see Table 32 below.

As indicated in Table 31, this programmatic niche at Morgan demonstrates no capacity for diversification. In fact, it greatly underenrolls white students by any standard of comparison. *None of the 8 programs has a white percentage that reaches even 1 percent* of all students enrolled. Five of the 8 programs (63 percent) enroll not a single white student. Overall the 8 programs in this niche enroll 496 students for an average of 62 students per program. However, they enroll just 3 white students for an average of .4 white students per program. The overall white percentage in these programs of 0.6 percent is 3.8 percentage points lower than the overall 4.4 percent of white students at Morgan.

**TABLE 31**
**COMMUNICATIONS AND RELATED PROGRAMS AT MORGAN**

| Program: CIP Code | Attributes | Total Enrolled | Whites Enrolled | White % |
|---|---|---|---|---|
| *Bachelor's* | | | | |
| 04.0101 – Speech Communication (Core) | Ex. High Demand | 21 | 0 | 0% |
| 09.0401 – Multi-Media Journalism | Ex. High Demand | 116 | 1 | 0.9% |
| 09.0402 – Multi-Platform Production | Unique (P,S.) Ex High Demand | 188 | 1 | 0.5% |
| 09.0701 – Telecommunications | Unique (P. S.) | 3 | 0 | 0% |
| 09.0999 – Strategic Communications | Unique (P. S.) High Demand | 122 | 1 | 0.8% |
| 10.0304 – Screenwriting & Animation | | 38 | 0 | 0% |
| *Master's* | | | | |
| 09.0401 –Journalism | | 6 | 0 | 0% |
| 09.0701 – Telecommunications | Unique (P. S.) | 2 | 0 | 0% |
| All Programs Combined | | 496 | 3 | 0.6% |
| | | | | |
| Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | |

Nonetheless, Conrad and Allen affirm that their new programmatic niches must conform to the specific requirement of being anchored in programs that are both unique and high demand according to their characterization:

> "We therefore recommend that the State establish institutional identity at each of its HBIs *anchored in a meaningful number of unique, high-demand programs* – along with high-demand programs (which are not unique) and unique programs (which are not high-demand) organized around programmatic niches." (emphasis added) [54]
>
> "Unique programs and high-demand programs – both individually but especially when coupled together – offer significant desegregative potential. An institutional identity requires a substantial number of high-demand, non-core programs that are unduplicated as well as those which are either unique or high-demand."[55]
>
> "There is an absence of a meaningful number of unique (not duplicated at geographically proximate TWIs), high-demand programs at the HBIs that would attract non-black students to these institutions by providing them with an institutional identity beyond race."[56]
>
> "To a large extent, the absence of a meaningful number of unique and unique, high-demand programs continues to impede the ability of the HBIs to establish an institutional identity based on their academic programs. This is particularly acute in the Baltimore area."[57]

However, as demonstrated in Tables 32-36, plaintiffs' proposals for the critical Baltimore-College Park Region, fall far short of their requirement for anchoring the new programmatic niches in programs that are both unique and high demand. These designations of programs do not include joint programs or core programs, following Conrad and Allen's exclusion quoted above. Although I do not endorse all of their designations I only made three corrections, to eliminate the double-counting of the master's and doctoral programs in Computer Engineering proposed for Morgan; to eliminate the double-counting of the Forensic Studies (Science) program proposed for Coppin; and to correct the erroneous classification of the doctoral program in Nursing Practice proposed for Bowie, because UB also has a duplicated doctoral program in Nursing Practice. These errors in plaintiffs' proposal are cited above.

Table 32 examines plaintiffs' proposals for Morgan State. The information reported in Table 32 indicates that for plaintiffs' proposed "Business and Management" niche, 11 percent of new and transfer programs are unique, high demand programs. In their proposed "Urban Environment, Health and Sustainability" niche, 10 percent of both new and transferred programs are unique, high demand programs. In their "Engineering" niche, 0 percent of both new and

[54] July 6, 2016 Report, p. 40.
[55] *Ibid.*, p. 7.
[56] *Ibid.*, Exhibit 3, pp. 17-18.
[57] *Ibid.*, p. 7.

### TABLE 32
### NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT MORGAN STATE UNIVERSITY

| | | | |
|---|---|---|---|
| **Business and Management** | | | |
| | **Total # of Programs** | **# of Unique, High Demand Programs** | **% of Programs That are Unique, High Demand** |
| **New & Transfer Programs** | 9 | 1* | **11%** |
| | | | |
| **Urban Environment, Health, Sustainability** | | | |
| | **Total # of Programs** | **# of Unique, High Demand Programs** | **% of Programs That are Unique, High Demand** |
| **New & Transfer Programs** | 9 | 1* | **10%** |
| | | | |
| **Engineering** | | | |
| | **Total # of Programs** | **# of Unique, High Demand Programs** | **% of Programs That are Unique, High Demand** |
| **New & Transfer Programs** | 10 | 0* | **0%*** |
| | | | |
| **All Program Areas Combined** | | | |
| | **Total # of Programs** | **# of Unique, High Demand Programs** | **% of Programs That are Unique, High Demand** |
| **All New & Transfer Programs Combined** | 28 | 2 | **7%** |
| | | | |
| Source: Conrad and Allen July 6, 2016 Report, Exhibit 3, pp. 2-7. | | | |
| | | | |
| * Excludes joint and core programs that plaintiffs' experts' state should not be counted as unique programs: "For purposes of our analysis of program uniqueness, we exclude both core programs *and joint programs.* Thus, a program is only considered unique if it is non-core, and *not offered as a joint degree with another institution.*" (Conrad and Allen July 6, 2016 Report, p. 6, emphasis added) | | | |

**TABLE 33**
**NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT COPPIN STATE UNIVERSITY**

| Nursing and Allied Health | | | |
|---|---|---|---|
| | **Total # of Programs** | **# of Unique, High Demand Programs** | **% of Programs That are Unique, high Demand** |
| **New & Transfer Programs** | 11 | 0 | **0%** |
| | | | |
| **Criminal Justice and Applied and Political Sciences** | | | |
| | **Total # of Programs** | **# of Unique, High Demand Programs** | **% of Programs That are Unique, high Demand** |
| **New & Transfer Programs** | 13 | 4 | **31%** |
| | | | |
| **All Program Areas Combined** | | | |
| | **Total # of Programs** | **# of Unique, High Demand Programs** | **% of Programs That are Unique, high Demand** |
| **All New & Transfer Programs Combined** | 24 | 4 | **17%** |
| Source: Conrad and Allen, July 6, 2016 Report, Exhibit 3, pp. 8-10. | | | |

**TABLE 34**
**NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT BOWIE STATE UNIVERSITY**

| Computer Sciences | | | |
|---|---|---|---|
| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
| New & Transfer Programs | 9 | 0 | 0% |
| | | | |
| Professional Studies: Nursing, Social Work, and Education | | | |
| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
| New & Transfer Programs | 4 | 0 | 0% |
| | | | |
| All Program Areas Combined | | | |
| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
| All New & Transfer Programs Combined | 13 | 0 | 0% |
| Source: Conrad and Allen July 6, 2016 Report, Exhibit 3, pp. 14-16. | | | |

**TABLE 35**
**NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT UMES***

| Engineering and Aviation Sciences | | | |
|---|---|---|---|
| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
| **New & Transfer Programs** | 4 | 4 | **100%** |
| | | | |
| **Agriculture and Environmental Sciences** | | | |
| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
| **New & Transfer Programs** | 8 | 3 | **38%** |
| | | | |
| **Pharmacy and Health Professions** | | | |
| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
| **New & Transfer Programs** | 7 | 4 | **57%** |
| | | | |
| **All Program Areas Combined** | | | |
| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
| **New & Transfer Programs** | 19 | 11 | **58%** |
| | | | |
| Source: Conrad and Allen Updated Report, July 6, 2016, Exhibit 3, pp. 10-14. * All proposed programs are new programs, with no proposed transfer programs. All unique programs are unduplicated proximately at Salisbury, not statewide according to Conrad and Allen's designations in Exhibit 3. | | | |
| | | | |

**TABLE 36**
**NUMBER AND PERCENTAGE OF "UNIQUE, HIGH DEMAND" PROGRAMS ANCHORING PLAINTIFFS' PROPOSED PROGRAMMATIC NICHES AT ALL FOUR HBIS COMBINED**

| | Total # of Programs | # of Unique, High Demand Programs | % of Programs That are Unique, High Demand |
|---|---|---|---|
| **3 HBIS IN BALTIMORE-COLLEGE PARK REGION** | | | |
| All New and Transfer Programs Combined | 65 | 6 | 9% |
| | | | |
| **UMES** | | | |
| | | | |
| New and Transferred Programs Combined | 19 | 11 | 58% |
| | | | |
| Source: Conrad and Allen Updated Report, July 6, 2016, Exhibit 3, pp. 2-16. | | | |

transferred programs are unique, high demand programs. Among all new and transferred programs proposed for Morgan, 7 percent are unique, high demand programs.

Table 33 examines plaintiffs' proposals for Coppin State. The information reported in Table 33 indicates that for plaintiffs' proposed "Nursing and Allied Health" niche, 0 percent of new and transfer programs are unique, high demand programs. For plaintiffs' proposed "Criminal Justice and Applied and Political Sciences" niche, 31 percent of new and transfer programs are unique, high demand programs. Among all new and transferred programs proposed for Coppin, 17 percent are unique, high demand programs.

Table 34 examines plaintiffs' proposals for Bowie State. The information reported in Table 34 indicates that among all new and transferred programs that plaintiffs propose for Bowie, *none* is a unique, high demand programs. The tally is *zero unique, high demand programs among* all 13 proposed new and transferred programs.

Table 35 examines plaintiffs' proposals for UMES, which consist only of new programs, with no proposed transferred programs. The information reported in Table 35 indicates that for plaintiffs' proposed "Engineering and Aviation Sciences" niche, 100 percent of new programs are unique, high demand programs. In their proposed "Agriculture and Environmental Sciences" niche, 38 percent of new programs are unique, high demand programs. In their "Pharmacy and Health Professions" niche, 57 percent of new programs are unique, high demand programs. Among all new programs proposed for UMES, *58 percent are unique, high demand programs*.

Table 36 summarizes results of plaintiffs' proposal for all four HBIs combined. The results reported in Table 36 indicate that for all 65 programs proposed for the 3 HBIs in the Baltimore-College Park region, *only 6 programs (9 percent)* are unique, high demand programs. The great bulk of the unique, high demand programs in the remedial proposal are for UMES. Yet as this Court has concluded and by Conrad and Allen's own admission, the problem of a lack of unique, high demand programs is confined to the 3 Baltimore-College Park HBIs and does not apply to UMES. Conrad and Allen state on page 7 of their July 6, 2016 Report that UMES has 15 non-core unique, high demand programs, closely comparable to the 18 at Salisbury.[58]

Conrad and Allen's remedial proposal also fails to substantially remedy duplication in the critical Baltimore-College Park Region, regardless of whether programs are high demand or not. Only a corrected 23 percent of their non-core, non-joint proposals for this region are proximately unique to the region (15 of 65).

Conrad and Allen also incorrectly state in this section of Exhibit 3 (p. 19) that currently at Maryland's HBIs, "there are very few of these programs [unique, high demand] (an average of three at the HBIs)." Yet there own tables in Exhibit 5 of their July 6, 2016 Report indicate that there are 22 unique, high demand programs at Maryland's four HBIs, for an average of 5.5 such programs at each institution. Corrected data (see Tables above) indicates that there are actually 25 such programs, for an average of 6.3 per institution.

[58] As indicated above unique, high demand programs do not contribute to diversification at UMES, given that both at the undergraduate and graduate level the white percentages in these programs is lower than the overall percentage of white students in each level at UMES.

With respect to the 23 programs that Conrad and Allen propose to transfer from TWIs to HBIs in their remedial proposal or terminate at the TWIs according to their August 19, 2016 correction, they do not indicate the white percentages in these programs. As indicated in Table 37, these are not programs with overwhelming percentages of white students. To the contrary, plaintiffs propose to eliminate at the TWIs many of the most highly integrated programs in Maryland's system of public higher education. According to the data reported in Table 37, only 3 of these 23 programs have a majority white enrollment and the mean white enrollment in all programs is only 40.8 percent. Plaintiffs propose to eliminate these integrated programs even though the multiple analyses presented above demonstrate no capacity for such programs to diversify the HBIs. These program transfers also stand in striking contrast to the experience at Tennessee State University, when this HBI absorbed all the programs at the nearly all-white University of Nashville and yet still experienced an almost instant resegregation.

Additional pinpoint analysis of the diversification potential for proposed transferred and new programs at the HBIs can be achieved through two sets of paired comparisons. First, there are some proposed programs that can be compared to already existing programs at the same HBI, at the same or a different degree level. All comparison program selected have equal or stronger attributes according to plaintiffs' criteria. For example, plaintiffs' a new master's program in Health Information Management (51.0706) for Coppin, They designate this program as unique, not high demand. However, Coppin already has an existing bachelor's program in Health Information Management (51.0706), with the stronger designation of unique, high demand, but enrolls only 2 white students among 80 total students, for a white percentage of 2.5 percent. An assessment of the white enrollments in such existing programs, provides direct insight into the diversification potential of the proposed program additions.

Table 38 provides an analysis of white enrollments in 13 proposed programs for which such a paired comparison is possible. As indicated above, in all instances the attributes of the existing programs according to plaintiffs' criteria are either identical to or more favorable to white enrollment. The analyses presented in Table 38 indicates that plaintiffs' proposed programs have no potential for diversification. *Twelve of the 13 matched programs in Table 38 have a white percentage of less than 5 percent*. The remaining program with a white percentage of 28.6 percent includes only 14 students. Particularly telling are the first 3 rows of Table 38, which include programs that plaintiffs propose to transfer from a TWI to Morgan, but also are programs that already exist exactly at Morgan, with the same CIP code and the same attributes, post-transfer. The white percentages in these programs are 1.3 percent, 0 percent, and 0.5 percent respectively.

A second set of paired comparisons is provided in Table 39. This Table compares programs proposed for HBIs with the same programs at the same degree level and at least equal attributes that exist at another HBI. For example, plaintiffs' propose a new bachelor's programs in Information Systems for Bowie, which they say will be a duplicated, exceptionally high program. However, both Coppin and Morgan already have duplicated, exceptionally high demand bachelor's programs in Information Systems. Taken together, these programs enroll 131 students and 1 white student, for a white percentage of 0.7 percent. Overall, the analyses presented in Table 39 provide additional indication that plaintiffs' proposed programs for the HBIs have no potential for diversification. Among existing HBI programs that are identical to

**TABLE 37**
**WHITE PERCENTAGE OF STUDENTS IN PROGRAMS PROPOSED TO TRANSFER FROM TWIS TO HBIS IN PLAINTIFFS' REMEDIAL PROPOSAL**

| TWI | Program | Level | CIP | Total Enrolled | White Enrolled | % White Students |
|---|---|---|---|---|---|---|
| UMBC | Environmental Engineering | Masters | 14.0801 | 8 | 3 | **37.5%** |
| UMBC | Environmental Engineering | Doctoral | 14.0801 | 10 | 2 | **20%** |
| UMBC | Computer Engineering | Bachelor | 14.0901 | 355 | 174 | **49%** |
| UMBC | Computer Engineering | Masters | 14.0901 | 14 | 4 | **28.6%** |
| UMBC | Computer Engineering | Doctoral | 14.0901 | 18 | 6 | **33.3%** |
| UMBC * | Electrical Engineering | Masters | 14.1001 | 17 | 6 | **35.3%** |
| UMBC * | Electrical Engineering | Doctoral | 14.1001 | 33 | 11 | **33.3%** |
| UMUC | Criminal Justice | Bachelor | 43.0104 | 1968 | 763 | **38.8%** |
| UMUC | Investigative Forensics | Bachelor | 43.0106 | 378 | 176 | **46.6%** |
| UMUC | Digital Forensics & Cyber Investigation | Masters | 43.0116 | 256 | 115 | **44.9%** |
| UMUC | Community College Policy & Administration (DM) | Doctoral | 52.0101 | 138 | 63 | **45.7%** |
| UMUC | Accounting & Financial Management | Masters | 52.0304 | 447 | 127 | **28.4%** |
| UMUC | Finance | Bachelor | 52.0801 | 539 | 205 | **38.0%** |
| UB | Forensic Studies | Bachelor | 43.0106 | 62 | 32 | **51.6%** |
| UB | Criminal Justice | Bachelor | 43.0107 | 396 | 121 | **30.6%** |
| UB | Criminal Justice | Masters | 43.0107 | 53 | 14 | **26.4%** |
| UB | Information & Interaction Design | Doctoral | 50.0401 | 17 | 11 | **64.7%** |
| UB | Business Administration (Online MBA) | Masters | 52.0101 | 14 | 5 | **35.7%** |
| UB** | Business Administration | Masters | 52.0101 | 352 | 189 | **53.7%** |
| UB | Accounting & Business Advisory Services | Masters | 52.0301 | 44 | 21 | **47.7%** |
| Towson | Forensic Science | Masters | 43.0106 | 49 | 24 | **49.0%** |
| Towson | Integrated Homeland Security | Masters | 52.0201 | 44 | 20 | **45.5%** |
| Towson UMUC | Accounting | Bachelor | 52.0301 | 2,300 | 970 | **42.2%** |
| **Total** | | | | **7,512** | **3,062** | **40.8%** |
| | | | | | | |

* Programs slated for termination according to plaintiffs' August 19, 2006 submission. ** Added in plaintiffs'' August 19, 2006 submission.

Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory.

**TABLE 38**
**WHITE PERCENTAGE IN PROGRAMS AT SAME HBI AS PLAINTIFFS' PROPOSED PROGRAMS, SAME OR DIFFERENT DEGREE LEVEL (IDENTICAL TRANSFER PROGRAMS IN BOLD)**

| Proposed Program | Attributes | Existing Program | Attributes | White % Existing Program |
|---|---|---|---|---|
| **MSU: Bach: Finance 52.0801**** | Duplicated Ex High Demand | MSU: Bach: Finance 52.0801 | Duplicated Ex High Demand | **1.3% 1/80** |
| **MSU: Mast: Business Admin 52.0101**** | Duplicated Ex High Demand | MSU: Mast: Business Admin 52.0101 | Duplicated Ex High Demand | **0% 0/116** |
| **MSU: Bach: Accounting 52.0301**** | Duplicated Ex High Demand | MSU: Bach: Accounting 52.0301 | Duplicated Ex High Demand | **0.5% 1/193** |
| CSU: Mast: Criminal Justice 43.0107 | Unique Not High Demand | CSU: Mast: Criminal Justice 43.0199 | Unique Not High Demand | **4.3% 1/23** |
| MSU: Mast/Doct: Information Systems 11.0401 | Duplicated Ex High Demand | MSU: Bach: Information Systems 11.0401 | Duplicated Ex High Demand | **0% 0/114** |
| MSU: Doct: Electrical Engineering 14.1001 | Duplicated Ex High Demand | MSU: Bach: Electrical Engineering 14.1001 | Duplicated Ex High Demand | **2.2% 11/504** |
| MSU: Mast/Doct: Civil Engineering 14.0801 | Duplicated High Demand | MSU: Bach: Civil Engineering 14.0801 | Duplicated Ex High Demand | **4.5% 10/221** |
| CSU: Mast: Bio, Life Sciences 26.0101 | Duplicated Not High Demand | CSU: Bach: Biology 26.0101 | Duplicated Ex High Demand* | **3.0% 3/101** |
| CSU: Mast: Health info Management 51.0706 | Unique Not High Demand | CSU: Bach: Health info Management 51.0706 | Unique, high Demand* | **2.5% 2/80** |
| BSU: Bach: Information Systems Technology 11.0401 | Duplicated Not High Demand | BSU: Bach: Computer Technology 11.9999 | Duplicated Not High Demand | **0.5% 1/197** |
| BSU: Mast: Psychology 42.0101 | Duplicated High Demand | BSU: Bach: Psychology 42.0101 | Duplicated Ex High Demand* | **3.4% 11/321** |
| BSU: Doct: School Psychology 42.2805 | Unique Not High Demand | BSU: Mast: School Psychology 42.2805 | Unique Not High Demand | **28.6% 4/14** |
| BSU: Mast: Social Work 44.0701 | Duplicated Ex High Demand | BSU: Bach: Social Work 44.0701 | Duplicated Ex High Demand | **3.7% 8/214** |
| *These programs have stronger attributes than the matched proposed programs according to plaintiffs' criteria. ** Plaintiffs' propose to transfer these programs from TWIs to HBIs; the same programs or overlapping programs already exist at Morgan. | | | | |
| | | | | |
| Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | |

## TABLE 39
## WHITE PERCENTAGE IN SAME PROGRAMS AS IN PLAINTIFFS' PROPOSAL, AT DIFFERENT HBI ((PROPOSED TRANSFER PROGRAMS IN BOLD)

| Proposed Program | Attributes | Existing Program | Attributes | White % Existing Program |
|---|---|---|---|---|
| BSU: Bach: Information Systems 11.0401 | Duplicated Ex High Demand | MSU/CSU: Bach: Information Systems 11.0401 | Duplicated Ex High Demand | **0.8% 1/131** |
| CSU: Bach: Criminal Justice 43.0107 | Unique Ex High Demand | UMES: Bach: Criminal Justice 43.0107 | Unique Ex High Demand | **4.4% 19/434** |
| MSU: Bach: Finance 52.0801 | Duplicated Ex High Demand | UMES: Bach: Finance 52.0801 | Duplicated Ex High Demand | **0% 0/8** |
| MSU: Mast: Business Admin 52.0101 | Duplicated Ex High Demand | BSU: Mast: Business Admin 52.0101 | Duplicated Ex High Demand | **2.3% 1/43** |
| MSU: Bach: Accounting 52.0301 | Duplicated Ex High Demand | CSU: Bach: Accounting 52.0301 | Duplicated Ex High Demand | **5.0% 3/60** |
| MSU: Bach: Accounting 52.0301 | Duplicated Ex High Demand | UMES: Bach: Accounting 52.0301 | Duplicated Ex High Demand | **6.9% 6/87** |
| CSU: Bach: Exercise Science 31.0505 | Duplicated Ex High Demand | UMES: Bach: Exercise Science 31.0505 | Duplicated Ex High Demand | **8.1% 21/260** |
| CSU/BSU: Mast: Social Work 44.0701 | Duplicated Ex High Demand | MSU: Mast: Social Work 44.0701 | Duplicated Ex High Demand | **4.4% 8/183** |
| | | | | |
| Plaintiffs' Backup Data Disclosure; eisfall14mhecinventory. | | | | |

programs proposed by plaintiffs' for a different HBI, *6 of 8 have a white percentage of 5 percent or less*. The remaining 2 programs have white percentages of 8.1 percent or less. It is telling that these programs include 3 UMES bachelor's programs with white percentages far below the UMES average for bachelor's programs.

The analyses presented in Tables 38 and 39 directly refute Conrad and Allen's unsupported claim that regarding their transfers of programs from TWIs to HBIs: "To the extent it was necessary to identify a discrete set of programs for proposed transfer to an HBI, we selected programs which offer high levels of desegregative potential and which the HBI has demonstrated capacity to absorb."[59]

## VIII. Conrad and Allen Substantially Underestimate the Enrollments Needed to Diversify Maryland's HBIs

The achievement of plaintiffs' white enrollment goals for the HBIs, even assuming their remedy has any potential for diversification, is far more difficult than Conrad and Allen indicate. They write in their May 1, 2016 Report that to "to approach the percentage of white enrollment the HBIs reported as a whole in fall of 1975, (16.2%), Bowie would need to add 861 white students if the number of students of other races remained the same, Coppin would need to add 552 white students, UMES would need to add 89 white students and Morgan would need to add 1,183 white students. (Conrad and Allen Updated Report, July 6, 2016, p. 12)

This claim ignores the fact that any new or transferred programs at the HBIs will bring in not only white students, but non-white students as well. Table 40 assumes strictly for purposes of illustration that all new and transferred programs have an average white percentage of 20 percent, far higher than what plaintiffs' data would indicate. That is especially true of the 3 HBIs in the Baltimore-College Park region where their best exemplar programs had a properly weighted average of just 6 percent for white students (Table 12 above). Table 40, which indicates how many new students would have to be added to Maryland's HBIs to achieve plaintiffs' minimal enrollment goal of 16.2 percent white students, demonstrated that 97 percent of the added students would be added to the 3 HBIs in plaintiffs' the Baltimore-College Park region (56,750/58,650). These 3 HBIs begin with a combined white percentage of 3 percent, compared to 14.5 percent for UMES in plaintiffs' Eastern Shore region.

Even at the unrealistic hypothetical of 20 percent white enrollment in new and transferred programs at the HBIs, Table 40 indicates that for the 3 Baltimore-College Park HBIs it would require *an additional 56,750 students* to reach the 16.2 percent white enrollment for each HBI. This would increase the total enrollment at these three HBIs *by 4 and a half times*, from 16,526 to 73,276. Table 40 additionally indicates that for UMES, which currently is much closer to the goal of 16.2 percent white enrollment than the Baltimore-College Park institutions, it would still require an additional 1,900 students to reach the white enrollment goal. This would increase the total enrollment at UMES by 44 percent, from 4,279 to 6,179, simply to increase the white percentage by 1.7 percentage points. For all 4 HBIs combined, Table 40 indicates that it would

[59] Conrad and Allen Report, July 6, 2016, p. 28.

**TABLE 40**
**NUMBER OF NEW STUDENTS NEEDED TO REACH PLAINTIFFS' GOAL OF 16.2% WHITE ENROLLMENTS IN HBIS**

| Institution | Total Enrolled | White Enrolled | White % | Added Total Students | Added White Students | New Total Enrollment | New White Enrollment | New White % |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Bowie | 5,695 | 201 | 3.5% | 18,750 | 3,750 | 24,445 | 3,951 | 16.2 % |
| | | | | | | | | |
| Coppin | 3,133 | 45 | 1.4% | 12,000 | 2,400 | 15,133 | 2,445 | 16.2 % |
| | | | | | | | | |
| Morgan | 7,698 | 256 | 3.3% | 26,000 | 5,200 | 33,698 | 5,456 | 16.2 % |
| | | | | | | | | |
| **Balt.-College Park HBIs** | **16,526** | 502 | 3.0% | **56,750** | 11,350 | **73,276** | 11,852 | 16.2 % |
| | | | | | | | | |
| UMES | 4,279 | 619 | 14.5 % | 1,900 | 380 | 6,179 | 999 | 16.2 % |
| | | | | | | | | |
| **All HBIs** | **20,805** | 1,121 | 5.4% | **58,650** | 11,730 | **79,455** | 12,851 | 16.2 % |
| | | | | | | | | |
| MHEC, 2016 Data Book, Enrollment By Race/Ethnicity And By Gender, Fall 2014. | | | | | | | | |

require *an additional 58,650 students* to reach the 16.2 percent white enrollment for each HBI. This would increase the total enrollment at these three HBIs *by nearly 4 four-fold,* from 20,805 to 79,455. This new enrollment tally of 79,455 for the four HBIs equals *46 percent of all 171,502 students enrolled at all 13 four-year public institutions in the state of Maryland.*[60]

Moreover, to achieve the increase of 58,650 new total students even at the unrealistic 20 percent white enrollment level, would require a vast number of students per program in plaintiffs' proposal. Even counting joint and core programs, which brings the number of proposed programs up from 85 to 92, these new and transferred programs would have to average some 637 students per program to reach the target level. The current average at the HBIs is 119 total students for undergraduate programs and 37 total students for graduate programs. Given that two-thirds percent of plaintiffs' proposed new and transferred programs are graduate programs, the average enrollment of all proposed programs is 64 students per program, 573 students per program short of the 630 total student average per program needed for a 16.2 percent white enrollment at the HBIs, with a mean of 20 percent white enrollments in the added programs. If core and joint programs were not included, the shortfall would be substantially higher. Even if *all 92* new and transferred programs proposed, including core and joint programs proposed by plaintiffs were added to Maryland's HBIs at a mean of 64 students per program with the highly unrealistic mean of 20 percent white students per program, this would increase the white percentage at the four HBIs by *just 3.2 percentage points, from 5.4 percent to 8.6 percent.*

**IX. Conclusions**

Examination of Conrad and Allen's corrected July 6, 2016 Report strengthens the findings of my Nov. 20, 2015 Report that plaintiffs' remedial proposal will be of no avail in diversifying either the 3 HBIs in the Baltimore-College Park Region or UMES. Conrad and Allen in their July 6, 2016 Report do not challenge the many analytic tables in my earlier report, Moreover, the new analyses and examples they present in their July 6, 2016 Report fail to meet accepted scientific standards for proving any of the essential elements of their remedial proposal. Although the July 6, 2016 contains more than 250 consequential corrections of Conrad and Allen's May 1, 2016 Report, it still includes more than 80 consequential errors -- far too many errors for a reliable scientific analysis, especially after multiple submissions.

Appropriate scientific analysis of *all* HBI programs in their four categories of remedial programs demonstrates that none of these programs has any capacity for the diversification of Maryland's HBIs. These findings are confirmed by a regression analysis that demonstrates no positive statistically significant influence of any category of plaintiffs' remedial programs on the percentage of white students in HBI programs.

The few quantitative analyses that Conrad and Allen present in their July 6, 2016 Report involve only cherry-picked exemplar programs and do not meet the scientific standards of providing needed comparisons or complete information for evaluating these programs. Their exhibits and textual examples when appropriately reanalyzed demonstrate that even their self-selected exemplar programs provide no indication of any significant potential to diversify the HBIs. Tellingly, all of the Baltimore-College Park exemplar programs in their exhibits are

[60] MHEC *2016 Data Book.*

duplicated programs, with no unique programs of any kind included. Similarly, their attempted comparison of the white percentages in categories of remedial programs with the percentage of such programs among all programs fails to account for the percentage of students overall in such programs, distinctions between UMES and the Baltimore-College Park HBIs, and between undergraduate and graduate programs. Reanalysis of such comparison demonstrates again no capacity for diversification among Conrad and Allen's categories of remedial programs.

Conrad and Allen also present no new scholarship in support of their remedial strategy and do not attempt to rehabilitate, in light of prior criticism, the one allegedly supportive study from their earlier report. They also ignore the contradictory scholarship presented in my Nov. 20, 2015 Report.

Although Conrad and Allen place new emphasis in this report on the creation of so-called "programmatic niches" at the HBIs, they cannot cite any scientific evidence in support of the efficacy of such niches and they ignore contrary evidence. In addition, analysis of their remedial proposals for so-called "programmatic niches" at the HBIs fall far short of their stated requirement of anchoring such niches in unique, high demand programs. Of the 65 non-core, non-joint new and transferred programs Conrad and Allen propose for the 3 Baltimore-College Park HBIs, where remedy is said to be most essential, only 6 programs (9 percent) are unique, high demand programs.

Conrad and Allen's remedial proposal would also eliminate at the TWIs 23 of the most integrated programs in the state, with a mean white percentage of just 40.8 percent. Specific analysis of proposed program transfer provides additional confirmation that once transferred to an HBI, these programs have no capacity for diversification.

With respect to their minimal diversification goal of 16.2 percent white enrollment at the HBIs, even with a white percentage of new and transferred programs of 20 percent white enrollment, far above the percentages in Conrad and Allen's exemplar programs, it would be necessary to add 58,650 new students at the HBIs, which would result in a combined HBI enrollment that is nearly four times greater than the current enrollment.

**AUGUST 30, 2016**

Allan J. Lichtman

**Exhibit 1: Errata: Conrad and Allen Updated July 16, 2016 Remedial Report, August 19, 2016 Addition**

## I. Consequential Corrections Made July 6, 2016 and August 19, 2016 by Conrad and Allen in Their May 1, 2016 Report[1]

1. Corrections in the Classification of programs as high demand or exceptionally high demand, elimination and addition of programs (Exhibit 4: EXPLANATION OF CHANGES TO UPDATED 2014 PROGRAM INVENTORY, pp. 1-2): **59 corrections**

2. Corrections in Degree Level (Exhibit 4, p. 2): **1 correction.**

3. Corrections in "uniqueness": (Exhibit 4, p. 2): **1 correction.**

4. Corrections made in Conrad and Allen Remedial Proposal for new and transferred programs to 4 HBIs Combined: **61 corrections.**

5. Corrections made in Exhibit 5): "UNIQUE, NON-CORE PROGRAMS (INCLUDING HIGH-DEMAND PROGRAMS) BY DEGREE LEVEL IN THREE COMPARISON GROUPS": **43 corrections.**

6. Corrections made in Exhibit 6: "HBI programs enrolling 10 or more students": **22 corrections.**

7. Corrections made in Exhibit 7: "DISPROPORTIONATE IMPACT OF UNIQUE AND/OR HIGH-DEMAND PROGRAMS": **10 corrections.**

8. Corrections made in Exhibit 8: "HBI PROGRAMS WITH AT LEAST 15 WHITE STUDENTS + 15% WHITE ENROLLMENT": **5 corrections.**

9. Corrections for misidentification of programs as unique, high demand, exceptionally high demand, or unique and high demand, both individual programs and combinations of programs in text and exhibits. (pp. 11- 38, Exhibit 3, pp. 19-20): **59 corrections.**

10. Corrections for high demand and exceptionally high demand programs misidentified in the May 1, 2016 Report as having no graduates in 2014. These corrections did not appear in redline on the redlined version that plaintiffs' submitted. They were ascertained by compared the May 1, 2016 version to the corrected July 6, 2016 version. **11 corrections.**

---

[1] Consequential corrections are substantive corrections, not including typos, grammatical changes, and renumbering or relabeling of tables or exhibits. These are errors that I have been able to discover since submission of the corrected Conrad and Allen Report on July 6, 2016 and the additional corrections on August 19, 2016. I make no claim that the list is exhaustive. Corrections on based on the following sources: MHEC, "Degree Trend Data Workbook 2014." https://data.mhec.state.md.us/mac_Trend.asp, eisfall14mhecinventory; q3 Active and Discontinued Academic Programs, institutional websites (where cited), and the texts and exhibits of Conrad and Allen, May 1, 2016 Report and July 6,2016 Report.

**II. New Errors Created by "Corrections" in Conrad and Allen's July 6, 2016 Report**

**1. Programs incorrectly reclassified as "Now High Demand" (Exhibit 4. P. 1): 3 of 13 reclassified programs**

13.0501: Instructional Technology (Bachelor): There are only master's and doctoral programs in category, no bachelor's.

51.3818: Nursing Practice Masters: No such master's program exists.

51.3818: Nursing (Doctoral): Correct CIP for Nursing (Doctoral) is 51.3808, 51.3818 is for the distinct doctoral program in Nursing Practice. Nursing doctorate is only at UMB: 5 degrees in 2014, 1 short of 6 degree threshold. Plaintiffs' backup data disclosure incorrectly lists 286 degrees for 2014, *which is the number for the UMB masters in Nursing, not the doctorate in Nursing.*

**2. Programs incorrectly reclassified as "No Longer High Demand" (Exhibit 4. P. 1): 13 of 15 reclassified programs.**

09.0999 Strategic Communication (Bachelor): Only at Morgan 34 degrees 2014, 9 more than 25 degree threshold. UB had a bachelor's program in Corporate Communication in same CIP code, but it was discontinued in 2012.

13.1314 Physical Education (Bachelor): At Morgan 25 degrees 2014, Salisbury, 40 degrees, Towson, 22 degrees, average 29 degrees, 4 more than threshold (bachelor's in Physical Education at UMCP has been suspended and is replaced by bachelors in Kinesiology, with 267 degrees in 2014).[2] Program at UMES was discontinued in 2010.

26.0202 Biochemistry (Bachelor): At UMCP 51 degrees, 2014, UMES 0 degrees 2014, average 25.5, .5 more than threshold. UMES program was only approved in 2011, so it would not yet have graduates in 2014; correct number of degrees is therefore 51 for one program, 26 more than threshold.

26.0210 Biochemistry and Molecular Biology (Bachelor): At UMBC 67 degrees, 2014, 32 more than threshold. The distinct program at Towson 26.0299 in Molecular Biology, Biochemistry and Bioinformatics that Conrad and Allen evaluate separately is listed on their inventory as a high demand program, even though it had 27 graduates in 2014, 40 less than the UMBC program which is no longer designated as high demand.

[2] https://sph.umd.edu/department/knes/physical-education.

45.0201 Anthropology (Bachelor): At UMBC 22 degrees, 2014, UMCP 46 degrees 2014, average 34, 9 more than threshold.

51.0706 Allied Health (Bachelor) Only at Coppin. Allied Health discontinued in 2009, replaced by renamed Health Information Management in same CIP: 51.0706 in School of Allied Health (only bachelor's program in School), 40 graduates 2014, 15 more than threshold.[3] Plaintiff's backup data disclosure incorrectly lists number of degrees for Health Information Management at Coppin as 0, not 40.

24.0199 Professional Studies (Masters): At Towson 14 degrees, 2014, 1 more than threshold. UMCP and UMBC have masters' in Professional Studies in another CIP code with 109 degrees and 74 degrees respectively. These programs are also incorrectly designated by Conrad and Allen as non-high demand.

30.9999 General Interdisciplinary Studies (Masters): At UMBC 74 degrees, 2014, UMCP two programs at masters in CIP, Professional Studies, 109 degrees, Historic Preservation, 9 degrees, average 64 degrees, 51 more than threshold.

43.0116 Digital Forensics & Cyber Investigations (Masters): At UMUC 15 degrees, 2014, 2 more than threshold. UB program in Forensic Science –High Tech Crime in same CIP was approved in 2012 and did not begin producing graduates in 2014.

26.0204 Molecular Biology (Doctoral): At UMCP 8 degrees, 2014, 2 more than threshold. The program at UMB was discontinued in 2006.

26.0502 Microbiology (Doctoral): At UMB 6 degrees, 2014, meets threshold.

30.0101 Marine/Estuarine/Environmental (Doctoral): At UMCP (Joint, UMAB, UMBC) 8 degrees, 2014, 2 more than threshold.

51.2010 Pharmaceutical Science (Doctoral): At UMB, 8 degrees, 2014, 2 more than threshold.

**3. Programs incorrectly reclassified as "Now Extremely or Exceptionally High Demand" (Exhibit 4. P. 2): 4 of 18 reclassified programs**

51.3818: Nursing Practice (Masters): No such master's program exists.

51.0202 Clinical Audiology (Doctoral): At UMCP, 6 degrees 2014, 5 short of threshold.

51.0203 Audiology (Doctoral): At Towson, 10 degrees 2014, 1 short of threshold.

51.3808: Nursing (Doctoral): At UMB: 5 degrees in 2014, 6 short of threshold. Plaintiffs' backup data disclosure incorrectly lists 286 degrees for 2014, *which is the number for the UMB masters in Nursing, not the doctorate in Nursing.*

**4. Programs incorrectly reclassified as "No Longer Extremely or Exceptionally High Demand" (Exhibit 4. P. 2): 6 of 13 reclassified programs.**

---

[3] https://www.coppin.ed.u/sah/rankings.

13.1202 Elementary Education & Teaching (Bachelor): At Bowie 20 degrees 2014, Coppin, 5 degrees, Morgan 16 degrees Salisbury, 124 degrees, Towson, 164 degrees, UMCP, 69 degrees average 66 degrees, 16 more than threshold.

26.0202 Biochemistry (Bachelor): At UMCP 51 degrees, 2014, UMES 0 degrees 2014, UMES only approved in 2011, so would not have graduates in 2014. Counting only UMCP, 1 more than threshold.

26.0210 Biochemistry and Molecular Biology (Bachelor): At UMBC 67 degrees, 2014, 17 more than threshold.

51.0701 Health Care Management (Bachelor): At Towson 51 degrees, 2014, 1 more than threshold. Plaintiffs' list bachelor's program at UMUC as having 0 degrees. However, this programs was approved in 2013 so would have no graduates in 2014.

52.0304 Accounting & Financial Management (Master): At UMUC 103 degrees, 2014, 68 more than 35 degree threshold.

14.0801 Civil Engineering (Doctoral): At UMCP 16 degrees, 2014, 5 more than 11 degree threshold. UMBC program in Environmental Engineering is distinct from Civil Engineering in that it involved the merger In 2011 of its programs of Chemical and Biochemical Engineering and Civil and Environmental Engineering to create a distinct new program in Chemical, Biochemical, and Environmental Engineering, with master's and doctoral degrees.[4] In their revised remedial proposal plaintiffs' recognize this distinction.

**III. Other Errors in July 6, 2016 Corrected Report**

**1. Errors in Conrad and Allen's Program Inventory and Backup Data 38 Errors.**

Coppin master's program in Substance Abuse/Addiction Counselling (CIP: 51.1501) is misidentified as a bachelor's program.

Bowie's bachelor's program in Science Teacher Education (CIP: 13.1316) is misidentified as a master's program.

There is no bachelor's program in Instructional Technology at Towson (13.0501)

Plaintiffs' inclusion of bachelor's program in Instructional Technology (13.0501) is a double-counting of master's program in Industrial Technology.

The doctoral program in Nursing Practice at UMB (51.3818) is misidentified as a master's program.

The program inventory incorrectly lists the master's in Electronic Commerce (52.0208) at UMCP rather than UMUC.

[4] http://www.umbc.edu/engineering/cbe/general/index.php.

The backup data disclosure shows no enrollments in Electronic Commerce in the incorrect ascription at UMCP.

The program inventory incorrectly lists the master's in Computer Systems Management (52.1201) at UMCP rather than correctly at UMUC.

The backup data disclosure shows no enrollments in Computer Systems Management in the incorrect ascription at UMCP.

Master's program in Agricultural and Resource Economics (01.0103) at UMCP shows no enrollments in plaintiffs' backup data disclosure.

There is no master's program in Women's Studies (05.0207) at UMCP. [5] Plaintiffs' backup data disclosure shows no enrollments.

There is no master's program in Communication (09.0101) at UMCP. There is only a PhD program, although UMCP may award an interim MA in some cases after 2 years.[6] Plaintiff's backup data disclosure shows no enrollments in the master's program.

There is no master's program in Astronomy (400201) at UMCP. There is only a PhD program, although as above UMCP may award an interim MA.[7] Plaintiff's backup data disclosure shows no enrollments in the master's program.

Bachelor's program in Radio, Television and Film (09.0701) at UMCP was discontinued in 1992. Plaintiff's backup data disclosure shows no enrollments in the program.

Plaintiff's backup data disclosure shows no enrollments in master's program in Psychology (42.0101) at UMCP.

Plaintiff's backup data disclosure shows no enrollments in master's program in Art History (50.0703) at UMCP.

Conrad and Allen's backup data disclosure includes two master's programs in CIP: 11.0401 at Towson, Applied Information Technology and Information Technology. However, Towson only has a master's program in Applied Information Technology.[8]

Plaintiffs' backup enrollment data in Information Technology is incorrectly taken from UMUC master's in Health Informatics Administration in CIP 11.0401.

Conrad and Allen's enrollment data for Health Informatics Administration (11.0401) at UMUC taken from distinct UMUC program master's in Information Technology.

---

[5] http://wmst.umd.edu/academics/graduate-studies.
[6] http://www.comm.umd.edu/graduate/faq#q22.
[7] http://www.astro.umd.edu/graduate/graddegrees.html.
[8] http://www.towson.edu/academics/graduate/programs/index.html.

Conrad and Allen's enrollment data for master's in Information Technology (11.0401) at UMUC is taken from the master's in Information Management at UMCP.

Conrad and Allen's enrollment data for master's in Information Management (11.0401) at UMCP is incorrect.

Conrad and Allen designate Master's in Teaching (MAT) (13.1205 & 13.9999) at Bowie, Coppin and Morgan as proximately unique programs, when Towson and UMUC also have MAT programs.[9]

Plaintiffs' backup data disclosure shows no enrollments in master's program in Biological Sciences (26.0101) at UMCP.

Master's program in Molecular and Cell Biology (26.0204) at UMB discontinued in 2010.[10] Plaintiffs' backup data disclosure shows no enrollments.

Plaintiffs' backup data disclosure shows no enrollments in master's program in Biological Chemistry (26.0210) at UMB.

Plaintiffs' backup data disclosure shows no enrollments in master's program in Family Science (19.0707) at UMCP.

Plaintiffs' backup data disclosure shows no enrollments in master's program in Biological Sciences (26.0101) at UMCP.

Conrad and Allen list Master's Program in Behavior, Ecology, Evolution and Systematics (26.1399) at UMCP. This is a PhD program only.[11] Plaintiffs' backup data disclosure shows no enrollments in master's program.

Plaintiffs' backup data disclosure shows no enrollments in master's program in Pharmaceutical Sciences (51.2010) at UMB. There is no such master's program.[12]

Plaintiffs' backup data disclosure shows no enrollments in master's program in Physics (40.0801) at UMBC. There is no such master's program.[13]

Plaintiffs' backup data disclosure shows no enrollments in master's program in Atmospheric Physics (40.0899) at UMBC.

Plaintiffs' backup data disclosure shows no enrollments in master's program in Veterinary Medicine Sciences (51.2501) at UMCP.

---

[9] Towson University, "Teaching (M.A. T.)," https://www.towson.edu/coe/departments/teaching/; UMUC, Master of Arts in Teaching, http://www.umuc.edu/academic-programs/masters-degrees/teaching.cfm.
[10] "Degree Trend Data Workbook 2014."
[11] http://www.bisi.umd.edu/applying/.
[12] http://www.pharmacy.umaryland.edu/about/depts/psc/.
[13] http://physics.umbc.edu/grad/.

Bachelor's program in Medicinal Chemistry (40.0599) at Towson discontinued in 2012.

Bachelor's program in Family and Consumer Science (19.0101) at Morgan listed as duplicated proximately and statewide. However, it is the only program at any level with this title and CIP code and Conrad and Allen's notes attached to their May 2016 backup data disclosure states, "Note: this program's website looks substantially different than programs on family science. Family science has more of a sociological bent and family and consumer science focuses much more on economics." There are no new notes submitted with July 2016 backup data disclosure.

Bachelor's program in Health Information Management (51.0706) at Coppin listed as duplicative of bachelor's program in Emergency Health Services at UMBC in different CIP 51.0904. However, UMBC program is more specific than Coppin program a standard that Conrad and Allen used to distinguish other programs as unique (for example, Geography bachelors at Coppin and Geography and Environmental Planning at Towson, both in same CIP of 45.0701).

Bachelor's program in Global Business at UMUC (52.1101) was discontinued in 2012.

Bachelor's program in Engineering Technology at UMES 15.9999, incorrectly identified in text as a master's program. (p. 39)

Plaintiffs'' backup data disclosure has zero degrees for the UMB master's program in Nursing (51.3808), which should be 286 degrees.

**2. Errors in Remedial Proposal 7 errors**

Their remedial proposal lists as unique the new doctoral program in Nursing Practice at Bowie (51.3818), when UMB also has a doctoral program in Nursing Practice in the same CIP code. As indicated above, plaintiffs' program inventory (Exhibit 10) incorrectly lists the UMB doctorate as a master's program.

Their remedial proposal double-counts the master's and doctoral programs in Computer Engineering (14.0901) both as programs transferred from UMBC to Morgan and as new programs at Morgan. Conrad and Allen even note under both the transfer and new program designations that the program will be unique only "post-transfer." This error increases by two the actual number of unique, high demand programs in their proposal by two. In contradiction to this error, they correctly list the bachelor's in Computer Engineering only as a transferred program from UMBC, not as a new program at Morgan.

Their remedial proposal double-counts the master's in Forensic Studies (Science) (43.0116) as both a new program at Coppin and as transferred program from Towson. Conrad and Allen even note under both the transfer and new program designation that the program will

be unique only "post-transfer." This error creates two unique, high-demand programs in their proposal instead of just one.

Their remedial proposal lists a new master's program in Information Systems/Technology 11.0401 for Bowie. However, Bowie already has a master's program in Management of Information Systems in CIP 52.1201, which is cross-listed by the National Center for Educational Statistics classification with 11.0401.[14]

Their remedial proposal lists a new bachelor's program in Information Systems/Technology 11.0401 for Bowie. However, Bowie already has a duplicative bachelor's program in Computer Technology in CIP 11.9999, which is defined by the National Center for Educational Statistics as "Computer and Information Sciences and Support Services, Other."[15]

Conrad and Allen state in the description of the remedial proposal that it creates "clusters of non-core undergraduate and graduate programs." (Exhibit 3, p. 1) However, their proposal includes a new core bachelor's program in Environmental Studies and Policy (03.0104) for Morgan.

Conrad and Allen state that "The UB doctorate in Management of Information and Interaction Design Systems duplicates or overlaps with the following Bowie programs: Computer Science (PhD), Management Information Systems (MS), Database Management/ Artificial Intelligence (Post BS Certificate) and Bioinformatics (BS)." (Exhibit 3, p. 16). However, they list this program as unique at Bowie after transfer from UB even though UMCP and UMBC both have PhD programs in Computer Science.

**3. Errors in unique, high demand programs 5 errors**

Conrad and Allen misidentify as not unique, high demand, Morgan: Bach, Strategic Communications (09.0999), which should be unique, high demand.

Conrad and Allen misidentify as not unique, high demand, Morgan, Bach: Family and Consumer Science (19.0101), which should be unique, high demand.

Conrad and Allen misidentify as not unique, high demand, UMES: Bach: Biochemistry (26.0202), which should be unique, high demand.

Conrad and Allen misidentify as unique, high demand: UMES: Master's: Education, Industrial Arts, Vocational and Technical Education (CIP: 13.1309), which is not high demand

Conrad and Allen misidentify as unique, high demand UMES: Bachelor's, Business and Management, (CIP: 52.0901), which is not high demand.

**3. Errors in the white percentages of programs. 5 errors**

---

[14] https://nces.ed.gov/ipeds/cipcode/searchresults.aspx?y=55&aw=11.0401&sw=1,2,3&ct=1,2,3&ca=1,2,5,3,4.
[15] https://nces.ed.gov/ipeds/cipcode/searchresults.aspx?y=55&aw=11.9999&sw=1,2,3&ct=1,2,3&ca=1,2,5,3,4.

Conrad and Allen state that the white percentage in UMES: Bachelor's Ecology (CIP: 26.1301) is 60 percent, when the correct percentage is 56 percent.

Conrad and Allen state that the white percentage in UMES: Master's Education, Industrial Arts, Vocational and Technical Education (CIP: 13.1309) is 59 percent, when the correct percentage is 50 percent.

Conrad and Allen state that the white percentage in UMES: Business and Management (CIP: 52.0901) is 57 percent, when the correct percentage is 53 percent.

Conrad and Allen state that the white percentage in UMES: Master's Special Education (CIP: 13.1001) is 60 percent, when the correct percentage is 54 percent.

Conrad and Allen state that since adoption of the joint Towson/UB MBA in 2005, "white student enrollment in Morgan's MBA program has declined precipitously." Morgan's website shows there was no white enrollment in the MBA program at the time of the joint program's adoption.[16]

**4. Errors in the Identification of Programs With Purportedly No Graduates in 2014.**

Conrad and Allen note in Updated Exhibit 10 "High Demand Programs," p. 1 of their July 6, 2016 Report: "In several instances where the thresholds identified were not realized because one or more institutions were offering the program but had graduated no students in 2014 I choose to identify programs as high-demand. To illustrate, see the bachelor's program in Architecture [04.0201] identified below. In such instances I put an asterisk (*) next to the program." However, there is no asterisk placed next to the bachelor's program in Architecture or any other program that remains on their revised list of high demand programs. Similarly, in Updated Exhibit 10, "Exceptionally High Demand Programs," Conrad and Allen state "In several instances where the thresholds identified were not realized because one or more institutions were offering the program but had graduated no students in 2014 I choose to identify programs as high-demand. In these instances I placed an asterisk (*) next to the program." However, there is no asterisk placed next to any of the exceptionally high demand programs that remain on their revised list.

[16] http://www.morgan.edu//Documents/ADMINISTRATION/OFFICES/inst-research/busi_enroll04-05.htm.