IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COALITION FOR EQUITY AND      *
EXCELLENCE IN MARYLAND
HIGHER EDUCATION, *et al.*,      *
           Plaintiffs
    v.                                 *

MARYLAND HIGHER EDUCATION      *     Case No.: CCB-06-cv-2773
COMMISSION, *et al.*,
           Defendants.      *

      *      *      *      *      *      *      *      *      *      *      *

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL
DISCOVERY REGARDING STANDING AND MOOTNESS**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Because subject-matter jurisdiction is a core requirement and remains so throughout the case, the State is entitled to discovery about whether (a) the Coalition is a viable organization that exists for purposes other than to be a plaintiff in this case, and (b) especially given the admitted uncertainties about what it means to be a "member" of the Coalition, the Coalition has current student members whose own injuries can confer derivative standing on the Coalition.

Plaintiffs do not seriously defend either of the grounds on which they refused discovery in their responses: law of the case and student privacy. Moreover, by proffering declarations and evidence of the Coalition's corporate status, Plaintiffs effectively concede that the Coalition's continued right to sue is a proper subject of discovery. Indeed, seven years ago, Plaintiffs agreed to produce virtually all of the

documents that Defendants now seek, and waived the objections Plaintiffs now assert. *See* Exh. A, 1/20/09 Plaintiffs' Responses to Defendant MHEC's First Request (etc.). The Court should reject Plaintiffs' effort to edit the factual record on which resolution of the Coalition's standing should be decided.

## ARGUMENT

### I. PLAINTIFFS WAIVED THEIR OBJECTIONS TO THIS DISCOVERY SEVEN YEARS AGO.

Early in the case, defendant MHEC served document requests addressing virtually all of the issues now raised. MHEC asked for "The Coalition's membership and donor lists from 2005 to present" (#8); "All documents that relate to the legal status of the Coalition" (#1); and "All documents that relate to advocacy for educational parity (#3), among others. In each instance, the Coalition responded without qualification (in early 2009) that "Plaintiffs will provide these requested documents." Exh. A, pp. 1-2. Because the Coalition has affirmatively waived any objection to producing the documents at issue here, this Court need not analyze Plaintiffs' arguments further.

### II. DISCOVERY TO DETERMINE IF A LIVE CASE OR CONTROVERSY EXISTS IS RELEVANT AND APPROPRIATE.

Putting waiver aside, Plaintiffs have abandoned the contention in their latest discovery responses that the continued existence of an Article III case or controversy "is not relevant to the current remedies phase of the case." See ECF 503-1 at 6-7.

At the outset of this case, the named Plaintiffs included several current HBI students, and so the Coalition's own standing to sue carried less importance. ECF 382, at

4 (listing Plaintiffs). However, it seems undisputed that the last of the named student-Plaintiffs has graduated. See ECF 382, at 20 (relying on then-current students). Plaintiffs chose to proceed without a certified class, and the existence of a justiciable case or controversy therefore depends on whether the Coalition can maintain this action either as a representative of "members" who are current students, or in its own right.[1] This Court previously upheld the Coalition's derivative standing to sue on behalf of current student members, ECF 382 at 20, without reaching the question "whether the Coalition itself would have standing" in its own right. ECF 382 at 17 n.3. But the Court recognized that the Coalition's representative standing was not permanent. ECF 382 at 20. The State's discovery requests concern the Coalition's standing in its own right as well as its right to represent the interests of current HBI students.

This is not a Rule 23-certified class, which may continue to seek injunctive relief as long as unlawful conduct harms the class based on a *judicial determination* that the class representatives are adequate representatives of the class because their own interests are sufficiently aligned with the interests of the class as a whole and are typical of the class. Instead, an organization like the Coalition is permitted to represent the interests of members based on the members' commitment to the organization and the alignment of the organization's goals with the particular injury asserted by its members. Typically,

---

[1] Plaintiffs have in the past asserted that HBI alumni have standing. ECF 367 35-36. However, an alumna or alumnus of an HBI cannot assert the injury in fact on which this Court relied. ECF 382 at 18. That is especially true with regard to program duplication, the only one of Plaintiffs' claims that this Court upheld. *Bostic v. Schaefer*, 760 F.3d 352, 369 (4th Cir. 2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

3

organizational Plaintiffs engage in a wide range of activities aligned with the interests at stake in the litigation, and whether *members* of the organization are injured for Article III purposes is a straightforward inquiry. But neither circumstance exists here.

The Coalition came into being in 2006, contemporaneous with the prior state court litigation, and all of its activities (other than this litigation itself in which the Coalition asserts it has engaged) are bound up with the litigation. Moreover, there is reason now to believe that the Coalition no longer has an existence apart from its role as a plaintiff. The loss of tax status and its standing as a Maryland corporation (apparently now restored) are evidence of the Coalition's inactivity in other realms, as is the absence of any web or social media presence. The declaration of David Burton does not describe *any* recent (non-litigation) activities of the Coalition. And, unlike the declarations Plaintiffs previously submitted by current students, the declarations of the four students do not refer to any Coalition activity in which the student has engaged. "Membership" in the Coalition also appears to be a much more ambiguous status than in the usual associational standing case.[2] The discovery the State has sought would allow the State to determine whether the Court should be asked, by an appropriate motion, to consider whether the "membership" in the Coalition is sufficiently meaningful a status to allow the Coalition

---

[2] Plaintiffs represented during a recent status call that there would not be "clearcut pieces of paper that say this person joined on this or that date." Rather, "students of HBIs typically become members because meetings come up and they attend them." 10/17/16 Tr. at 24. Once the facts are fully developed, the Court may be presented with the question whether attendance at a meeting qualifies as a basis for an organization to sue on behalf of the attendee, if that is all it means to be a member of the Coalition.

to sue on behalf of its members, or whether the Coalition is just an *ad hoc* (and therefore insufficient) substitute for a class.

The Coalition also asserted standing in its own right based on the diversion of resources.  ECF 367 at 39.  That assertion places in issue the Coalition's other activities and its resources.   For example, if the Coalition has received funding for the purpose of conducting this lawsuit, the litigation is not a diversion of its resources.[3]  If the Coalition's *raison d'être* is to prevail in this litigation, litigating the case is not a diversion of resources.  Neither the State nor the Court is obligated to accept Mr. Burton's conclusory "no" answer to the question (posed by Plaintiffs in his deposition) whether the Coalition's "primary purpose" is "to advance this litigation."  (3/12/10 Dep. at 37).

### III. THE LAW OF THE CASE DOCTRINE DOES NOT LIMIT OTHERWISE PROPER DISCOVERY ABOUT THE CONTINUED EXISTENCE OF A JUSTICIABLE CONTROVERSY.

Plaintiffs offer a *pro forma* defense of the "law of the case" argument they made in their objections to discovery, but they offer no reason why it applies here.  They do not address *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003), which makes clear that if there is any category of decision a district court *should*

---

[3] David Burton testified in his 2010 deposition that the Coalition had received one large "earmark donation[]" to support the Coalition's work. Burton Dep. Tr. 3/12/10 at 43.  RPD 4 requests documents concerning that donation and any other support the Coalition may have received in order to ascertain the terms and conditions of the donations.

reconsider when asked to do so, it is a decision about Article III subject-matter jurisdiction.

Plaintiffs also fail to grapple with the fact that the Court left open the possibility, in its liability opinion, that the Article III facts could change. ECF 382 at 20. That day has come. The State seeks discovery of the current facts, so that it can make an informed decision whether those facts warrant reconsideration of the Article III question.

## IV. PLAINTIFFS HAVE FAILED TO ESTABLISH THE CHILLING EFFECT ON ASSOCIATION THAT IS REQUIRED TO LIMIT PROPER DISCOVERY.

Rather than defend the refusal to produce membership records of current HBI *students* on privacy grounds, Plaintiffs offer a new argument about hiding the identities of HBI *faculty and administrators* who are said to be members of the Coalition—a concern Plaintiffs had not advanced before and which comes as a surprise given the repeated descriptions of the Coalition as an organization of HBI alumni or "current and former students."  *Compare* ECF 165 (4th amended complaint) ¶ 11 (members include alumni) and ECF 367-2 (Burton dec.) ¶ 3 (members include current and former students) *with* ECF 508-1 (Burton dec.) ¶ 3 (members *also* include "faculty, administrators and other interested persons").

Plaintiffs histrionically invoke the McCarthy era (ECF 508 at 8), but they offer no factual basis for believing that the purpose of the State's discovery request was to identify HBI faculty and administrators (a) who might be Coalition members, but (b) whose membership was previously unknown. Their membership cannot possibly add to standing. Thus, before Plaintiffs filed their opposition, their arguments focused on

6

purported statutory or constitutional privacy interests of students, not the concerns of faculty or administrators. Had Plaintiffs raised a concern about faculty/administrator members earlier, the State would have agreed to redaction of membership documents to conceal the names of any faculty or administrators who may be Coalition members.

To expedite production of the important information about *student* membership, and because faculty and administrator members cannot be a basis for Coalition standing, it would be sufficient for the Coalition to state the number of faculty, administrator and HBI members without identifying them, so that the proportion of current students who may assert live interests in diversifying the HBIs can be compared with the total number of Coalition members (and, inferentially, the interest of the Coalition as a group) who may have distinct interests.

Plaintiffs identify no reason why current HBI students would object to disclosure of their membership in the Coalition, much less purport to satisfy the standard federal courts generally follow in adjudicating requests for membership information in the context of civil discovery. See ECF 503-1 at 11 n.7; *In re Motor Fuels Sales Practices Litigation*, 641 F.3d 470, 491 (10th Cir. 2011) (describing *prima facie* showing of chilling effect required to assert a First Amendment-based privilege). As the Fourth Circuit wrote in a related context, "A finding of a substantial 'chill' on protected First Amendment rights requires a showing that the statutory scheme will result in threats, harassment, or reprisals to specific individuals." *Master Printers v. Donovan*, 751 F.2d 700, 704 (4th Cir. 1984) (addressing statutory disclosure under LMRDA). In previous declarations, student members not only identified themselves as members but also

described participating in public events sponsored by or associated with the Coalition, suggesting there is no concern about being publicly identified with the Coalition. See ECF 367-12 ¶¶ 10-13; 367-13 ¶¶ 7-9; 367-14 ¶¶ 6-8. There is simply no factual foundation for shielding information about current student members or filing declarations *in camera*.

Plaintiffs refer repeatedly to *NAACP v. Alabama,* 357 U.S. 449 (1958), a case involving a civil contempt judgment against the organization for disobeying an order in a suit instituted by the Alabama Attorney General to enjoin the NAACP from operating in the State shortly after the Montgomery bus boycott. The Court sustained the NAACP's refusal to produce its membership lists in light of "an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *Id.* at 462. But not only have Plaintiffs made no such showing with regard to student members of the Coalition, they offer no reason to think that there could be any possible chilling effect on student members.[4] And unlike *NAACP v. Alabama*, the Coalition is the *plaintiff* here, having chosen to place its membership at issue.

As a result, the cases Plaintiffs cite do not justify limiting discovery in this case, where the Coalition's membership, activities and governance are directly relevant to Article III jurisdiction. The privacy issue in *In re Search of Information*, 21 F. Supp. 3d

---

[4] Even if there were, the State has expressed willingness to agree to a protective order as long as it would permit verification that the member is in fact a current student of an HBI.

1, 7 (D.D.C. 2013) (Facciola, Magistrate Judge), was the absence of probable cause for a criminal warrant for information concerning third parties, including members of Facebook groups the target of the investigation may have joined. The court in *Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002), held that the discovery sought was irrelevant to the Federal Advisory Committee Act claim in that case. The court went on to use a test the D.C. Circuit applied to discovery "involving requests for internal communications and communications among various groups" which the Plaintiffs did not meet. *Id.* Plaintiffs do not argue that discovery would be barred under that standard.[5] Plaintiffs' state court decision, *Lubin v. Agora, Inc.*, 389 Md. 1, 882 A.2d 833, 846 (2005), is another case where the organization – unlike the Coalition – did not affirmatively place its membership at issue and where the State's need for information about securities fraud could have been satisfied by alternative means. In any event, Defendants easily meet *Lubin*'s test of a "substantial relation between the information sought and an overriding and compelling State interest," *id.*, because of membership's direct link to standing.

---

[5] "Before compelling discovery, this court must assess (1) whether the information goes to the 'heart of the lawsuit,' (2) whether the party seeking the discovery sought the information through alternative sources, and (3) whether the party seeking disclosure made reasonable attempts to obtain the information elsewhere." *Id.* at 455. That test is inapplicable to the discovery sought here, but even if it were, the information sought (1) goes to the Coalition's capacity to sue; and (2) is not available from alternative sources.

## V. THE LIMITED INFORMATION PLAINTIFFS HAVE OFFERED IS INSUFFICIENT TO RESOLVE QUESTIONS ABOUT THE COALITION'S STANDING.

Plaintiffs submit they can satisfy their discovery obligations by identifying four current students, one from each HBI, and by formally stating that certain documents sought in discovery do not exist. But neither form of disclosure is sufficient.

As to the current students, the problem is that the declarations do not provide sufficient information to resolve ambiguities about what it means to be a "member" of the Coalition. Typically, membership organizations maintain lists of their members, and members of the organizations have a say in choosing the organization's leadership and setting its policy objectives. That is what makes an organization a valid legal representative of the interests of its members for purposes of Article III under certain circumstances. David Burton's latest declaration states that membership in the Coalition is open to "[a]ll interested persons," that it conducts meetings at HBIs "as-needed," which "members and interested persons at that HBI may attend." ECF 508-1 ¶ 3. The present record does not demonstrate any link between how membership in the Coalition is defined and the kind of say in what positions the Coalition takes that is fundamental to the rationale for representative standing, or what differentiates Coalition members from "interested persons." Unlike the declarations submitted to the Court after the liability trial, which stated when the students became members of the Coalition and how they participated in Coalition activities (but not in its governance), the new declarations state only that each student is a "current member," leaving unanswered questions about whether the students became members of the Coalition only recently, and the likelihood

that the case has become moot. In addition, the discovery sought is necessary in order to avoid the need to revisit Article III issues periodically throughout the life of this case, including when it is on appeal. For example, one of the four student declarants is a senior at Morgan and expects to graduate in 2017, ECF 508-4 ¶ 1, in all likelihood before the case is concluded.

The proposed responses to the State's requests for the production of documents relating to the Coalition's activities and finances are also insufficient. Plaintiffs now offer to confirm that they have no responsive documents regarding "membership requirements," "funding" or a social media presence rather than refusing to answer. ECF 508 at 10. The table below summarizes the difference between the documents the State requested and Plaintiffs' offer to respond:

| Request # | Documents Sought | Proposed Response | Information requested but not provided in proposed response |
|---|---|---|---|
| 1 | Membership requirements, including applications and membership forms | No responsive documents re: "membership requirements" | Unclear whether this also means no membership forms or records of members. |
| 2 | Number of members, including membership lists | Declarations of four current students | Number of members not provided and no documents identifying student members. |
| 3 | Organization and governance, including officers and directors and | Current certificate of good standing | Organization and governance and evidence of meetings not |

11

|   | agendas and minutes of meetings |   | provided |
|---|---|---|---|
| 4 | Funding | No responsive documents | No information concerning a donation testified to in a prior deposition |
| 5 | Activities | No response | No information provided about activities since 2012 |
| 6 | Online or social media presence | No responsive documents | Sufficient if the proposed response includes online presence as well as social media presence |

The information Plaintiffs have provided or have offered to provide is insufficient to resolve questions about the Coalition's current standing, which must at this stage be based on evidence, not mere allegations. The absence of any documents about the Coalition's activities leaves open the question whether the Coalition has done anything since the liability trial other than to litigate this case, especially in light of the conceded absence of an online and social media presence and the lapse in the Coalition's corporate and tax status. The absence of any membership forms leaves open the question whether status as a "member" of the Coalition means anything. And the absence of any information about the Coalition's organization, governance, and meetings leaves open the question whether the Coalition is accountable to members so as to make it a fit representative of their asserted Article III injuries. Finally, Plaintiffs have refused provide any information that could support Coalition standing to sue in its own right

based on diversion of its resources. Those open questions do not in themselves warrant filing a motion to dismiss at this time, but they plainly establish a need for more information to determine whether the Court has Article III jurisdiction.

## **Conclusion**

For all of the foregoing reasons, but especially because of Plaintiffs' unequivocal waiver seven years ago of their objections, this Court should compel production of each category of documents sought by Defendants, subject to entry of any necessary protective order as described above.

| | |
|---|---|
| /s/ | /s/ |
| CYRIL V. SMITH | BRIAN E. FROSH |
| Federal Bar No. 07332 | Attorney General of Maryland |
| ALICIA L. SHELTON | STEVEN M. SULLIVAN |
| Federal Bar No. 11538 | Federal Bar No. 24930 |
| ZUCKERMAN SPAEDER LLP | JENNIFER A. DEROSE |
| 100 East Pratt Street, Suite 2440 | Federal Bar No. 28374 |
| Baltimore, Maryland 21202-1031 | Assistant Attorneys General |
| Tel: (410) 332-0444 | Office of the Attorney General |
| csmith@zuckerman.com | 200 Saint Paul Place |
| ashelton@zuckerman.com | Baltimore, Maryland  21202-2021 |
| | Tel: (410) 576-6300 |
| | bfrosh@oag.state.md.us |
| | ssullivan@oag.state.md.us |
| CATHERINE SAUDEK DUVAL | jderose@oag.state.md.us |
| Federal Bar No. 16760 | |
| DAVID A. REISER (Admitted *pro hac vice*) | |
| ZUCKERMAN SPAEDER LLP | |
| 1800 M Street NW, Suite 1000 | |
| Washington, DC 20036-5807 | |
| Tel: (202) 778-1800 | |
| cduval@zuckerman.com | |
| dreiser@zuckerman.com | |
| | |
| Dated:  November 2, 2016 | *Attorneys for Defendants* |